# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CABOT MICROELECTRONICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DUPONT DE NEMOURS, INC., ROHM AND | ) C.A. No. 20-738-MN |
| HAAS ELECTRONICS MATERIALS CMP INC., | ) |
| ROHM AND HAAS ELECTRONIC MATERIALS | ) |
| CMP ASIA INC. (d/b/a ROHM AND HAAS | ) |
| ELECTRONIC MATERIALS CMP ASIA INC., | ) |
| TAIWAN BRANCH (U.S.A.)), ROHM AND HAAS | ) |
| ELECTRONIC MATERIALS ASIA PACIFIC CO. | ) |
| LTD., ROHM AND HAAS ELECTRONIC | ) |
| MATERIALS K.K., *and* ROHM AND HAAS | ) |
| ELECTRONIC MATERIALS LLC | ) |
| | ) |
| Defendants. | ) |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
(LETTER ROGATORY)**

The United States District Court for the District of Delaware presents its compliments to

the Appropriate Judicial Authority of Japan, and requests international judicial assistance to obtain

evidence to be used in the above-captioned civil action before the United States District Court of

the District of Delaware.  This Court has authority to submit this Letter Rogatory under 28 U.S.C.

§§ 1651 and 1781(b)(2).

This Court requests the international judicial assistance, which is necessary in the interests

of justice.  Specifically, this Court requests the assistance of the Appropriate Judicial Authority of

Japan, by the proper and usual process of Japan's courts, to compel the below-named third-party

to produce the documents requested in **Attachment A** and to be examined under oath through the

person(s) most knowledgeable about the topics in **Attachment B**:

Fuso Chemical Co., Ltd.
Nissei Fushimi-machi Bldg.
Shinkan, 3-10, Koraibashi 4-chome,
Chuo-ku, Osaka 541-0043
+81-6-6203-4771

Based on representations made by Plaintiff CMC Materials Inc. ("CMC"), this Court believes that justice cannot be served between the parties in the above-captioned civil action unless the evidence requested herein is made available by the Appropriate Judicial Authority of Japan, particularly with respect to the validity of CMC's U.S. Patent No. 9,499,721.  CMC asserts that Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "DuPont") commit acts of patent infringement by making, using, selling, offering to sell, and/or importing chemical-mechanical planarization slurries that comprise "colloidal silica abrasive particles," including those alleged to be made by the Fuso Chemical Co., Ltd. **Attachment C** (Complaint) at ¶¶ 16-21, 26-28.  This court believes that Fuso Chemical Co., Ltd., as a manufacturer of identified colloidal silica particles, is in possession of unique documents and things and has unique knowledge regarding material facts that are relevant for the proper prosecution of the above-referenced civil action, and that cannot be obtained without the assistance of the Appropriate Judicial Authority of Japan.

## I.    FACTS

This judicial proceeding is a civil action initiated by the plaintiff:

CMC Materials Inc.
870 N. Commons Drive
Aurora, IL 60504 U.S.A.

The defendants are:

DuPont de Nemours, Inc.
974 Center Road, Building 730
Wilmington, DE 19805-1269 U.S.A.

Rohm and Haas Electronic Materials CMP, LLC
451 Bellevue Road
Newark, DE 19713-3431 U.S.A.

Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic
Materials CMP Asia Inc., Taiwan Branch (U.S.A.))
4F., NO.6, LN. 280, Zhongshan N. Rd.
Dayuan Dist., Taoyuan City 337017 Taiwan

Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.
6, Kesi 2nd Rd.
Chunan, Miaoli 350401 Taiwan

Rohm and Haas Electronic Materials K.K.
Sanno Park Tower, 2-11-1
Nagata-cho, Chiyoda-ku,
Tokyo 100-0014 Japan

Rohm and Haas Electronic Materials LLC
455 Forest Street
Marlborough, MA 01752-3001 U.S.A.

This civil action is governed by the laws of the United States, 35 United States Code §§ 1

et seq., based on a Complaint filed by CMC on June 1, 2020 (**Attachment C**).  CMC's Complaint

alleges infringement of U.S. Patent No. 9,499,721 by DuPont.  CMC seeks an injunction barring

the making, using, selling, and/or offering for sale within the United Sates and/or importing into

the United States of Accused Products as well as monetary damages and any available equitable

relief.   **Attachment C** at ¶¶ 16-21 and "Prayer for Relief."   The Accused Products are

characterized generally as chemical mechanical planarization compositions formulated with

colloidal silica abrasive particles, such as Fuso's colloidal silica particles (*id*. at ¶¶ 26-28), and

infringement of at least claim 1 depends in-part on characteristics of the colloidal silica particles (*id*. at ¶ 26).

This civil action was stayed on July 6, 2020, in view of a parallel proceeding before the United States International Trade Commission ("ITC"). Because the proceeding before the ITC has been terminated and is now final, the stay in this civil action was lifted on May 18, 2022, and the discovery process commenced.

DuPont seeks foreign discovery from Fuso because it is the manufacturer of colloidal silica particles for use in chemical-mechanical planarization slurries. CMC alleges that Fuso's colloidal silica particles have been imported into the United States and used in products, which are alleged to infringe their U.S. Patent No. 9,499,721. Fuso was also the source of colloidal silica abrasive particles described in the Examples of CMC's U.S. Patent No. 9,499,721. DuPont believes Fuso possesses unique documents and information concerning the colloidal silica abrasive particles relating to, *inter alia*, the first sale or offer for sale, first public use, first disclosure, inventorship, and numerous other issues relating to at least the validity of U.S. Patent No. 9,499,721.

## II. DISCOVERY REQUESTED

It is respectfully requested that the Appropriate Judicial Authority of Japan compel Fuso to produce copies of documents, as described in **Attachment A**. It is additionally requested that the Appropriate Judicial Authority of Japan compel Fuso to make available for examination under oath the person(s) most knowledgeable to provide testimony regarding deposition topics set forth in **Attachment B**. The requested documents and deposition testimony will provide important evidence related to U.S. Patent No. 9,499,721. The Complaint is **Attachment C** to this Letter Rogatory.

This Court understands the confidential nature of the documents and testimony requested from Fuso. Under Rule 26.2 of this Court, until there is a protective order in place, disclosure of confidential information of Fuso would be limited to trial counsel, who are obligated to maintain confidentiality. Any future protective order in this civil action would also protect the confidentiality of any documents that Fuso produces and testimony that Fuso provides.

Certified Japanese translations of **Attachments A, B,** and **C** are provided.

## III.   SPECIAL METHODS AND PROCEDURES REQUESTED TO BE FOLLOWED

To the extent permitted by the applicable laws of Japan, this Court respectfully requests that the Appropriate Judicial Authority of Japan require that the following methods and procedures be followed in connection with the deposition and document production requested herein.

With regard to the production of documents identified in **Attachment A**, in the event any document called for by these documents is withheld in whole or in part on the basis of any applicable privilege under Japanese law, it is requested that Fuso furnish a privilege log that identifies each document for which any privilege is claimed and that provides, with respect to each document, the following information:

1.    The date the document was created and last modified;

2.    The subject matter of the document;

3.    The person(s) who prepared the document;

4.    All persons to whom the document was distributed, shown, or explained;

5.    The document's present custodian; and

6.    The nature of the privilege asserted.

Additionally, it is respectfully requested that each document described in **Attachment A** be produced or provided for inspection and copying in its entirety, without abbreviation or

redaction, as maintained in the ordinary course of business, at least ten (10) days before the examination.

With regard to the deposition, it is respectfully requested that an examiner or other appropriate judicial officer of Japan, or consular officer at the United States embassy and/or consulate in Japan direct that the witness be duly sworn in accordance with the applicable procedures of Japan, and that the testimony be taken and transcribed by a qualified court reporter and videographer chosen by DuPont's representatives.

To the extent permitted by the applicable laws of Japan, this Court respectfully requests that the Appropriate Judicial Authority of Japan require that the following methods and procedures be followed in connection with the examination and document production requested herein:

1.  Fuso be required to designate one or more knowledgeable officers, directors, managing agents, employees, or other person(s) to testify on behalf of Fuso;

2.  Fuso be required to identify the person or persons who will testify pursuant to this Request and the matter or matters about which each person will testify;

3.  The examination be conducted orally;

4.  The parties' legal representative or their designees (such as their attorneys), interpreters, and an Official Court Reporter and Videographer be permitted to be present during the examination;

5.  There be excluded from the examination all persons other than those individuals permitted under bullet 4 and any official of the court of Japan or staff of the United States embassy and/or consulate required to be present during such proceedings;

6.  The Official Court Reporter and Videographer be permitted to record verbatim the examination;

7.  The Official Court Reporter and Videographer be permitted to record the examinations by audiovisual means;

8.  The attorneys from the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, acting as legal representatives of DuPont, or their designees, be permitted to conduct the examination;

9.  The person conducting the examination be permitted to ask questions regarding the topics in **Attachment B**;

10. Ten and a half (10.5) hours be allotted for the examination of each witness who requires a translator, and seven (7) hours be allotted for the examination of each English-speaking witness;

11. The witnesses be examined as soon as practicable; and

12. The documents be provided by Fuso no later than ten business days before the deposition at a convenient location to be determined.

Finally, it is requested that the individual identified below be furnished as soon as practically possible with a copy of the executed Letter Rogatory and be informed as soon as practicable of the time and place for examination of the witness(es).

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

## III.     RECIPROCITY

The United States District Court for the District of Delaware is willing to provide similar

assistance to judicial tribunals of Japan.

## IV.     REIMBURSEMENT FOR COSTS

To the extent that there are expenses associated with providing assistance in response to

this Letter Rogatory, the fees and costs incurred will be borne by Defendants.  Requests for

reimbursement may be submitted to Defendants' counsel via email to: DuPont-

Delaware@finnegan.com or via U.S. mail to:

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

| Date of Request: | Signature and Seal of Requesting Authority: |
|---|---|
| ____ of _____, 2022 | _____<br><br>The Honorable Maryellen Noreika<br>United States District Judge<br>United States District Court for the Delaware<br>Wilmington, DE, United States of America |

# Attachment A

## Documents and Things to be Produced by Fuso Chemical Co., Ltd

### INSTRUCTIONS

1. For each request for production, produce any and all documents within the scope of the request that are in your possession, custody, or control.

2. If any responsive document is in a language other than English and an English translation exists, provide both documents and translation.

3. All documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments and enclosures.

4. Electronic records and computerized information must be produced in their native electronic format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

5. If your response to a particular request for production is a statement saying that you lack the ability to comply with that request, specify whether the inability to comply is because the particular item or category of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in your possession, custody, or control, in which case the name and address of any person or entity known or believed by you to have possession, custody, or control of that information or category of information must be identified.

6. In the event that any document called for by these requests has been destroyed or discarded, that document is to be identified by stating: (i) the author(s), addressee(s) and any indicated blind copyee(s); (ii) the document's date, number of pages, and attachments or appendices; (iii) the document's subject matter; (iv) the date of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or

discard; and (vi) whether any copies of the documents presently exist and, if so, the name of each custodian or each copy.

7.      If no documents exist that are responsive to a particular request, that fact should be stated in your responses to such a request.

8.      Mark each page which you consider to contain confidential business information with the designation "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER". If a page is not marked with such designation, it is assumed that it does not contain confidential business information.

9.      Please identify the individual or individuals you intend to proffer to testify on your behalf at least ten (10) days prior to the date of the first day of deposition taken pursuant to this subpoena, and identify the topics upon which each deponent will be prepared to testify.

## DEFINITIONS

1.      "Fuso," "You," and "Your" means Fuso Chemical Co., Ltd., any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of Fuso Chemical Co., Ltd., its predecessors-in-interest, parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by Fuso, either directly or indirectly, as well as the principals, directors, officers, owners, employees, members, agents, representatives, consultants, accountants, and attorneys of these entities.

2.      The term "CMC" means CMC Materials, Inc., any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of CMC Materials, Inc., its predecessors-in-interest, parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by  CMC

2

Materials, Inc., including Cabot Microelectronics Corporation, either directly or indirectly, as well as the principals, directors, officers, owners, employees, members, agents, representatives, consultants, accountants, and attorneys of these entities.

3.    The term "DuPont" means, solely for purposes of these Requests, DuPont de Nemours Inc. and Rohm and Haas Electronic Materials CMP, LLC, any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of DuPont de Nemours Inc. or Rohm and Haas Electronic Materials CMP, LLC, their predecessors-in-interest, including Dow Chemical Company and Rohm and Haas Electronic Materials CMP, Inc., as well as their parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by DuPont de Nemours Inc. or Rohm and Haas Electronic Materials CMP, LLC.

4.    "Person" means any natural person or entity, including corporations, proprietorships, partnerships, associations, joint ventures, businesses, trusts, organizations, governmental agencies, and other entities, and any combination thereof, and all predecessors in interest, successors, affiliates, subsidiaries, and related entities.

5.    "Asserted Patent" means U.S. Patent No. 9,499,721.

6.    "Colloidal Silica Abrasive Particles" means, solely for the purposes of these Requests and Topics, silica particles that are prepared using any sol-gel process.

7.    "BS", "HL", and "PL" each refer to Fuso colloidal silica abrasive particle series designations, including all specific grades therein, e.g, BS-3 and PL-3C.

8.    "PL-xxC" refers to any PL-series colloidal silica abrasive particle treated with aminopropyl trialkoxysilane, e.g. PL-3C.

9.    "Zeta Potential" in the context of a particle means, solely for the purposes of these

3

Requests, the electrical potential difference between the electrical charge of the ions surrounding the particle and the electrical charge of the bulk solution containing the particle, such as used in Japanese published patent application JP2016-8157A.

10.     The term "document(s)" includes all non-identical copies of a document, all drafts of final documents, all printed, recorded, or graphically portrayed matter in any form or embodiment, whether stored electronically or optically, or reproduced by any process, or written or produced by hand, or recorded in any other way, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Fuso's actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing. For avoidance of doubt, the term "document(s)" includes any communications, whether written or electronic, other inquiries, correspondence, consultations, negotiations, agreements, understandings, letters, notes, telegrams, advertisements, computer mail, email, and all other documents evidencing any verbal or nonverbal interaction between persons and entities. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

11.     The terms "each," "any," and "all" mean both any and all, and both each and every.

12.     The terms "and" or "or" shall both be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a document request. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, and the singular form shall be deemed to include the plural and vice-versa. All pronouns shall be construed to refer to the masculine, feminine, or neuter gender, in singular or plural, to make the request most inclusive.

4

13.     When a document or thing "concerning" any matter is requested, the request encompasses, in whole or in part, any document or thing, as the case may be, constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating, evidencing, discussing, referring to, relating to, dealing with, prepared in connection with, or in any way pertaining to the requested matter.

14.     The term "describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, shall mean: (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what s/he said or did; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

15.     "Identify" in the case of documents or things shall mean to state, to the extent known, the (1) type of document or thing (e.g., letter, telephone call, etc.), (2) its general subject matter, (3) its date of creation, (4) the author(s), addressee(s), recipient(s), and all persons who received or saw the document or thing, and (5) the place where the document or thing may be inspected, or if a copy of the document or thing has been previously supplied to Fuso or produced to Fuso, to so state and to specifically and individually identify the previously-supplied Bates number or production number.

16.     "Identify" in the case of a product shall mean to state, to the extent known, the (1) product's name, (2) all trade names, (3) all internal names, including but not limited to names used during development, (4) all product numbers, part numbers, and SKU numbers, (5) all trademarks, and (6) all documents sufficient for interpreting such names, numbers, and marks.

17.     The term "date" means the exact day, month, and year, if ascertainable, or if not, Your best approximation thereof.

5

## DOCUMENTS AND THINGS TO BE PRODUCED

1.     For each of the colloidal silica particle disclosed, provided, sampled, sold, and/or offered for sale before June 25, 2015, by You to CMC or DuPont, including but not limited to particles with product designations HL-2, HL-3, PL-2L, PL-xxC, BS-1H, BS-2H, and BS-3, documents and things sufficient to show:

      a.     all sales, offers to sell, importations into the United States, promotion, and sampling of such particles, including communications related to the same, and the manufacturing batch or lot numbers of such particles;

      b.     each process, method, technique, and manufacturing processes used to make such particles, including the catalysts (e.g., ammonium, ammonia, ethyloxypropylamine, tetramethyl ammonium hydroxide, and ethylenediamine) used therein; and

      c.     product specifications and any measurements or estimations of chemical mechanical planarization ("CMP") properties or performance, pH, particle size, zeta potential, internal nitrogen content, or internal phosphorous content of such particles or formulations thereof.

2.     For any entity other than CMC or DuPont to whom any "PL" grade, "HL" grade, or "BS" grade colloidal silica abrasive particles were disclosed, provided, sampled, sold, and/or offered for sale by You before June 25, 2015, documents and things sufficient to show:

      a.     all sales, offers to sell, importations into the United States, promotion, and sampling of such particles, as well as communications related to the same;

      b.     each process, method, technique, and manufacturing processes used to make such particles, including the catalysts (e.g., ammonium, ammonia, ethyloxypropylamine, tetramethyl ammonium hydroxide, and ethylenediamine) used therein; and

c.   product specifications and any measurements or estimations of CMP properties or performance, pH, particle size, zeta potential, internal nitrogen content, or internal phosphorous content of such particles or formulations thereof.

3.   Documents and things sufficient to show Your relationship, agreements, and communications with CMC with respect to:

a.   supplying or developing colloidal silica abrasive particles, including formulations thereof, before June 25, 2015, including all communications with CMC, all contracts or agreements with CMC, all invoices or other charges to or from CMC, and all payments received from or made to CMC; and

b.   exclusivity over the production or supply of any colloidal silica abrasive particle, including colloidal silica abrasive particles with the product designations HL-3, BS-2, BS-2H or BS-3, as well as all documents relating to restrictions on any CMC competitor, including but not limited to DuPont, from acquiring such particles.

4.   Documents and things sufficient to show all evaluation, estimations, or testing of colloidal silica abrasive particles to detect residual catalyst compounds in colloidal silica abrasive particles made using one or more of the following catalysts: ammonium, ammonia, ethyloxypropylamine, tetramethyl ammonium hydroxide, and ethylenediamine.

5.   Documents and things sufficient to show and describe all sales before June 25, 2015 to a customer of colloidal silica abrasive particles with the product designations HL-2, HL-3, PL-2L, PL-xxC, BS-1H, BS-2H, BS-3, and ▮▮▮▮, including documentation concerning the dates of the sales and the identities of customers receiving the particles.

6.   Documents and things sufficient to show and describe the colloidal silica abrasive particles and the preparations described in the Examples and Comparative Examples disclosed in

7

Japanese published patent application JP2016-8157A, including any unreported testing of those particles or formulations thereof.

7.      All communications and agreements with CMC concerning the timing of Your filing of any patent application, including the application that led to Japanese published patent application JP2016-8157A on June 25, 2014, as well as any communications or agreements with CMC concerning the ownership of the subject matter disclosed in any such application.

# Attachment B

**Topics for the Deposition of Fuso Chemical Co., Ltd.**

**INSTRUCTIONS**

1.      You shall make sure your designees are prepared to testify fully on the following topics, after conducting a diligent and thorough investigation into all information within your possession, custody, and control, including by educating the designees with such information.

2.      Your designees shall bring to this deposition all documents reviewed, relied upon, or consulted in preparation for this deposition.

**DEFINITIONS**

1.      "Fuso," "You," and "Your" means Fuso Chemical Co., Ltd., any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of Fuso Chemical Co., Ltd., its predecessors-in-interest, parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by Fuso, either directly or indirectly, as well as the principals, directors, officers, owners, employees, members, agents, representatives, consultants, accountants, and attorneys of these entities.

2.      The term "CMC" means CMC Materials, Inc., any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of CMC Materials, Inc., its predecessors-in-interest, parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by  CMC Materials, Inc., including Cabot Microelectronics Corporation, either directly or indirectly, as well as the principals, directors, officers, owners, employees, members, agents, representatives, consultants, accountants, and attorneys of these entities.

3.      The term "DuPont" means, solely for purposes of these Requests, DuPont de Nemours Inc. and Rohm and Haas Electronic Materials CMP, LLC, any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of DuPont de Nemours Inc. or Rohm and Haas Electronic Materials CMP, LLC, their predecessors-in-interest, including Dow Chemical Company and Rohm and Haas Electronic Materials CMP, Inc., as well as their parent corporations, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that are wholly or partially owned or controlled by DuPont de Nemours Inc. or Rohm and Haas Electronic Materials CMP, LLC.

4.      "Person" means any natural person or entity, including corporations, proprietorships, partnerships, associations, joint ventures, businesses, trusts, organizations, governmental agencies, and other entities, and any combination thereof, and all predecessors in interest, successors, affiliates, subsidiaries, and related entities.

5.      "Asserted Patent" means U.S. Patent No. 9,499,721.

6.      "Colloidal Silica Abrasive Particles" means, solely for the purposes of these Requests and Topics, silica particles that are prepared using any sol-gel process.

7.      "BS", "HL", and "PL" each refer to Fuso colloidal silica abrasive particle series designations, including all specific grades therein, e.g, BS-3 and PL-3C.

8.      "PL-xxC" refers to any PL-series colloidal silica abrasive particle treated with aminopropyl trialkoxysilane, e.g. PL-3C.

9.      "Zeta Potential" in the context of a particle means, solely for the purposes of these Requests, the electrical potential difference between the electrical charge of the ions surrounding the particle and the electrical charge of the bulk solution containing the particle, such as used in Japanese published patent application JP2016-8157A.

10.     The term "document(s)" includes all non-identical copies of a document, all drafts of final documents, all printed, recorded, or graphically portrayed matter in any form or embodiment, whether stored electronically or optically, or reproduced by any process, or written or produced by hand, or recorded in any other way, and all other data compilations from which information can be obtained and translated if necessary, that are or have been in Fuso's actual or constructive custody or control, regardless of the medium on which they are produced, reproduced, or stored (including computer programs and files containing any requested information), and any recording or writing. For avoidance of doubt, the term "document(s)" includes any communications, whether written or electronic, other inquiries, correspondence, consultations, negotiations, agreements, understandings, letters, notes, telegrams, advertisements, computer mail, email, and all other documents evidencing any verbal or nonverbal interaction between persons and entities. Any document bearing marks, including initials, stamped initials, comments, or notations not part of the original text or photographic reproduction thereof, is a separate document.

11.     The terms "each," "any," and "all" mean both any and all, and both each and every.

12.     The terms "and" or "or" shall both be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of a document request.  The use of a verb in any tense shall be construed as the use of the verb in all other tenses, and the singular form shall be deemed to include the plural and vice-versa.  All pronouns shall be construed to refer to the masculine, feminine, or neuter gender, in singular or plural, to make the request most inclusive.

13.     When a document or thing "concerning" any matter is requested, the request encompasses, in whole or in part, any document or thing, as the case may be, constituting, containing, embodying, reflecting, describing, analyzing, identifying, mentioning, stating,

3

evidencing, discussing, referring to, relating to, dealing with, prepared in connection with, or in any way pertaining to the requested matter.

14.     The term "describe," when used in relation to an act, event, instance, occasion, transaction, conversation, or communication, shall mean: (1) to state the date and place thereof; (2) to identify the individual participants; (3) to summarize separately for each individual participant what s/he said or did; and (4) to identify each document used or prepared in connection therewith or making any reference thereto.

15.     "Identify" in the case of documents or things shall mean to state, to the extent known, the (1) type of document or thing (e.g., letter, telephone call, etc.), (2) its general subject matter, (3) its date of creation, (4) the author(s), addressee(s), recipient(s), and all persons who received or saw the document or thing, and (5) the place where the document or thing may be inspected, or if a copy of the document or thing has been previously supplied to Fuso or produced to Fuso, to so state and to specifically and individually identify the previously-supplied Bates number or production number.

16.     "Identify" in the case of a product shall mean to state, to the extent known, the (1) product's name, (2) all trade names, (3) all internal names, including but not limited to names used during development, (4) all product numbers, part numbers, and SKU numbers, (5) all trademarks, and (6) all documents sufficient for interpreting such names, numbers, and marks.

17.     The term "date" means the exact day, month, and year, if ascertainable, or if not, Your best approximation thereof.

## TOPICS FOR TESTIMONY

1.      The deponents' position(s) at Fuso, their technical background, and their familiarity with the documents produced in response to this Letter Rogatory

2.      Your relationship with CMC and DuPont with respect to the design, development, manufacture, testing, importation into the U.S., packaging, storing, shipping, distributing, sampling, marketing, selling, and/or offering to sell colloidal silica abrasive particles with product designations HL-2, HL-3, PL-2L, PL-xxC, BS-1H, BS-2H, and BS-3.

3.      Identification and description of each type of colloidal silica abrasive particle provided by You to CMC or DuPont before June 25, 2015.

4.      Your agreements with CMC with respect to supplying colloidal silica abrasive particles with product designations HL-2, HL-3, PL-2L, PL-xxC, BS-1H, BS-2H, or BS-3 before June 25, 2015, including all communications, contracts, invoices and/or charges to or from CMC, and all payments received from or made to CMC.

5.      Any discussions or agreements with CMC for product exclusivity over any type of colloidal silica abrasive particle, including all communications restricting access to such particles by any CMC competitor, including but not limited to DuPont.

6.      For colloidal silica abrasive particles with the product designations HL-2, HL-3, PL-2L, PL-xxC, BS-1H, BS-2H, BS-3, and ▮▮▮▮, prepared before June 25, 2015:

   a.      the process, method, technique, and manufacturing processes used to make such particles, including the catalysts (e.g., ammonium, ammonia, ethyloxypropylamine, tetramethyl ammonium hydroxide, and ethylenediamine) used therein;

   b.      product specifications and any measurements or estimations of chemical mechanical planarization ("CMP") properties or performance, pH, particle size,

zeta potential, internal nitrogen content, or internal phosphorous content of such particles or formulations thereof;

c.    the date(s) each such particle were first offered and first became available to a customer;

d.    the date(s) each such particle was first sold or offered to sell to a customer; and

e.    the date(s) of the first importation of each such particle into the United States.

6.    Any testing of CMP slurries containing colloidal silica particles according to any test method disclosed in U.S. Patent No. 9,449,721, including testing for zeta potential.

7.    The Examples and Comparative Examples disclosed in Japanese published patent application JP2016-8157A, as well as any undisclosed testing relating to this patent application.

8.    All communications and agreements with CMC concerning the timing of Your filing of any patent application, including the application that led to Japanese published patent application JP2016-8157A on June 25, 2014, as well as any communications or agreements with CMC concerning the ownership of the subject matter disclosed in any such application.

Attachment C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-738-MN |
| | ) |
| DUPONT DE NEMOURS, INC., ROHM | ) **JURY TRIAL DEMANDED** |
| AND HAAS ELECTRONIC MATERIALS | ) |
| CMP LLC, ROHM AND HAAS | ) |
| ELECTRONIC MATERIALS CMP ASIA | ) |
| INC. (d/b/a ROHM AND HAAS | ) |
| ELECTRONIC MATERIALS CMP ASIA | ) |
| INC, TAIWAN BRANCH (U.S.A.)), ROHM | ) |
| AND HAAS ELECTRONIC MATERIALS | ) |
| ASIA-PACIFIC CO. LTD., ROHM AND | ) |
| HAAS ELECTRONIC MATERIALS K.K., | ) |
| and ROHM AND HAAS ELECTRONIC | ) |
| MATERIALS LLC, | ) |
| | ) |
| Defendants. | ) |

**FIRST AMENDED COMPLAINT**

Plaintiff CMC Materials, Inc.[1] ("CMC") alleges as follows against Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP LLC, Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "Defendants").

---

[1] Original plaintiff Cabot Microelectronics Corporation changed its name to CMC Materials, Inc. while this litigation was stayed. The parties are preparing a stipulation to effect this change formally. The Rule 7.1 disclosure statement for plaintiff remains accurate.

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, of CMC's U.S. Patent No. 9,499,721 (the "'721 Patent"), and for such other relief as the Court deems just and proper.

2.     CMC is one of the largest suppliers of consumable materials to the semiconductor industry.  Among its many innovations, CMC has for decades been a pioneer in providing chemical mechanical planarization ("CMP") slurry products to nearly all semiconductor device manufacturers in the United States and throughout the world.

3.     CMP slurries play a critical role in the increasingly complex production of advanced semiconductor devices.  CMP slurries, in conjunction with CMP pads, are used to remove excess material that is deposited during the numerous steps in semiconductor device manufacturing and to level and smooth the surfaces of various layers of the semiconductor devices via a combination of chemical reactions and mechanical abrasion, leaving minimal residue and defects on the device surface.  CMP enables semiconductor manufacturers to produce smaller, faster, and more complex semiconductor devices with a greater density of transistors.  Innovation in CMP slurries is constantly needed to meet the ever-growing demand for such leading-edge devices with lower defectivity, higher production throughput, and lower cost.

4.     CMC spends millions of dollars in research and development ("R&D") annually and has invested considerable capital, labor, expertise, and ingenuity in delivering innovative CMP slurry solutions to the semiconductor industry.  Before the '721 Patent, CMP slurries for dielectric applications were dominated by traditional products that require a high concentration of abrasive silica particles in a high pH environment—a design that achieves high removal rates of dielectric materials, but has a high cost and a high defect level.

5. As part of CMC's extensive R&D efforts, by 2014, the inventors of the '721 Patent developed low pH CMP slurry products for dielectric applications based on engineered colloidal silica abrasive particles. Even at a low solid content, these CMP slurries can improve planarity, reduce defects, speed up polishing rates, and lower the cost of ownership—all significant benefits to CMC's customers in addressing the increasingly precise and numerous polishing steps needed in advanced semiconductor device manufacturing. These novel slurries, released by CMC as part of its D922x family of slurries, were praised by CMC's customers and have since enjoyed commercial success across the semiconductor industry.

6. The '721 Patent, entitled "Colloidal Silica Chemical-Mechanical Polishing Composition," was duly and legally issued by the United States Patent and Trademark Office on November 22, 2016, to named inventors Steven Grumbine, Jeffrey Dysard, Ernest Shen, and Mary Cavanaugh. *See* Exhibit A. The application leading to the '721 Patent was filed on June 25, 2015, and claims priority to a provisional application filed on June 25, 2014. *See id.* A true, correct, and certified copy of the '721 Patent is attached hereto as Exhibit A.

7. Each and every Defendant has, for years, infringed, directly and/or indirectly, CMC's '721 Patent by making, using, selling, and/or offering for sale within the United States and/or importing into the United States products that are covered by one or more of the claims of the '721 Patent (at least composition claims 1, 3, 4, 6, 10, 11, 13, 14, 17, 18, 19, 20, 24, 26, 27, 28, 29, 31, 35, 36, 37 and method claims 39, 40, 41, 42, 43, 44, and 46, collectively, the "Asserted Claims"), including at least the Optiplane 2300 and 2600 family of products and other products with similar components and characteristics (collectively, the "Accused Products").

8. Indeed, the International Trade Commission ("ITC"), in *Certain Chemical Mechanical Planarization Slurries and Components Thereof*, Inv. No. 337-TA-1204 ("1204

Investigation") has already found knowing infringement of the '721 Patent by all Defendants based on their importation and sale of the Accused Products.

9.      In the 1204 Investigation, after extensive fact and expert discovery and a full evidentiary hearing with all Defendants represented by counsel, an Administrative Law Judge ("ALJ") found that each of the Defendants named in this matter directly and/or indirectly infringe one or more of the Asserted Claims of the '721 Patent.  Exhibit B (July 8, 2021 Initial Determination, Public Version) at 87-144.  The ALJ also rejected all of Defendants' invalidity and unenforceability arguments with respect to the '721 Patent.  *See id.* at 169-297; *id.* at 169 (summarizing Defendants' six invalidity and unenforceability arguments).

10.     Each of Defendants' infringement, inducement, and/or contribution to infringement was and continues to be willful, with full pre-suit knowledge of the '721 Patent, with full pre-suit knowledge of infringement, and with blatant disregard for CMC's intellectual property rights as embedded in the '721 Patent.

11.     Indeed, the ALJ found that "each of the respondents" (and therefore each of the Defendants here) "knew of the '721 Patent" and "knew" that the composition of Defendants' CMP slurries was "patented" by CMC well before CMC filed suit in June 2020.  *Id.* at 142-43. Specifically, "the timeline of events shows that [Defendants] were well-aware of the '721 patent during their development of the Accused Products," and the evidence in fact shows "that any development that [Defendants] had prior to the '721 patent did not work and was abandoned."  *Id.* at 134, 211.

12.     Defendants' knowledge and egregious willful infringement is further confirmed by the fact that, "one month after learning of CMC's patent," a 2017 patent application filed by Rohm and Haas Electronic Materials CMP Holdings, Inc., another affiliate of each of the Defendants,

-4-

included nearly identical language to the '721 Patent, as shown below. *See id.* at 210-11 (citing

U.S. 10,557,060).

| CMC's '721 Patent at 11:4-13 (Published December 31, 2015) | DuPont's '060 Patent at 7:28-38 (Filed March 1, 2016) |
|---|---|
| By permanent positive charge it is meant that the positive of the colloidal silica particles in the original polishing charge on the silica particles is not readily reversible, for example, via flushing, dilution, filtration, and the like. A permanent positive charge may be the result of incorporating the positive charged species in the particle. A permanent positive charge may further result from a covalent attachment between the particle and a positively charged species and is in contrast to a reversible positive charge that may be the result, for example, of an electrostatic interaction between the particle and a positively charged species. | The term permanent positive surface charge as used herein is meant that the positive charge on the silica particles is not readily reversible. That is, the positive charge on the silica particles is not reversed through flushing, dilution or filtration. A permanent positive charge can be the result, for example, of covalently bonding a cationic species to the colloidal silica particles. Colloidal silica having a permanent positive charge is in contrast to colloidal silica having a readily reversible positive charge, which can be the result of an electrostatic interaction between a cationic species and the colloidal silica. |

13.     In addition, all Defendants "have had direct knowledge of their infringement of the

'721 patent since at least April 13, 2020, when CMC sent a claim chart detailing infringement" to

Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, and Rohm

and Haas Electronic Materials LLC. *Id.* at 134.

14.     On information and belief, each Defendant operates in concert with each other

Defendant, and under the direction and control of Defendant DuPont de Nemours, Inc., with

respect to the making, using, selling, offering for sale, and importation of the domestically

manufactured Accused Products and, accordingly, each Defendant became aware of its direct

and/or indirect infringement of the '721 Patent at least by April 13, 2020.

15.     The full ITC reviewed the ALJ's findings, found in favor of CMC on all issues, and

issued an exclusion order and cease and desist orders against Defendants on December 16, 2021.

*See* Exhibit C (Comm'n Op.).   The ITC specifically upheld the ALJ's findings on direct and

indirect infringement. *See e.g.*, *id.* at 14 ("The Commission affirms that finding with regard to the

composition claims, and finds that importation of the Optiplane™ slurry is a violation of section

337 because it constitutes the importation of an 'article[] that – infringe[s]' within the meaning of section 337(a)(1)(B)(i)."), 19 ("Thus, the Commission affirms the ID's finding that Respondents contribute to Rohm and Haas Electronic Materials CMP LLC's direct infringement of the method claims for the reasons stated in the ID."). The ITC determined not to review, and therefore maintained, the ALJ's findings on validity. *Id.* at 6.

16.    Defendants did not appeal any of the ITC's findings. Accordingly, the ITC's findings became final, and this Court lifted the stay of this case on May 18, 2022. D.I. 18. CMC now seeks, and is entitled to, a monetary recovery resulting from Defendants' infringement, including treble damages, a finding of willful infringement, and any necessary additional injunction to stop Defendants' remaining infringement for the life of the '721 Patent.

## THE PARTIES

17.    Plaintiff CMC is a publicly traded Delaware corporation with its principal place of business at 870 North Commons Drive, Aurora, IL 60504.

18.    Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business at 974 Centre Road, Building 730, Wilmington, DE 19805. Defendant DuPont de Nemours, Inc. is the ultimate parent of the remaining Defendants and sells and offers to sell the Accused Products and controls the making, use, and importation of the Accused Products by the other Defendants.

19.    Defendant Rohm and Haas Electronic Materials CMP LLC, a subsidiary of DuPont de Nemours, Inc., is a Delaware corporation with its principal place of business at 451 Bellevue Road, Newark, DE 19713. Defendant Rohm and Haas Electronic Materials CMP LLC makes, uses, sells, offers to sell, and imports the Accused Products.

20.    Defendant Rohm and Haas Electronic Materials CMP Asia Inc., a subsidiary of

DuPont de Nemours, Inc., which also does business as Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.), is a Delaware corporation with its principal place of business at 4F., NO.6, LN. 280, Zhongshan N. Rd., Dayuan Dist., Taoyuan City, 337017 Taiwan. Defendant Rohm and Haas Electronic Materials CMP Asia Inc. imports the Accused Products and/or induces the making, use, sale, offering to sell, and importing of the Accused Products.

21.     Defendant Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., a subsidiary of DuPont de Nemours, Inc., is a Taiwan corporation with its principal place of business at 6, Kesi 2nd Rd., Chunan, Miaoli, 350401 Taiwan.  Defendant Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. imports the Accused Products and/or induces the making, use, sale, offering to sell, and importing of the Accused Products.

22.     Defendant Rohm and Haas Electronic Materials K.K., a subsidiary of DuPont de Nemours, Inc., is a Japanese corporation with its principal place of business at Sanno Park Tower, 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo 100-0014 Japan.  Defendant Rohm and Haas Electronic Materials K.K. imports the Accused Products and/or components thereof, and/or induces the making, use, sale, offering to sell, and importing of the Accused Products.

23.     Defendant Rohm and Haas Electronic Materials LLC, a subsidiary of DuPont de Nemours, Inc., is a Delaware company with its principal place of business at 455 Forest Street, Marlborough, MA 01752.  Defendant Rohm and Haas Electronic Materials LLC imports, sells and/or offers to sell the Accused Products and/or induces the making, use, sale, offering to sell, and importing of the Accused Products.

## JURISDICTION AND VENUE

24.     CMC incorporates by reference paragraphs 1-23.

25.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C.

§§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271.

26.     This Court has personal jurisdiction over Defendant DuPont de Nemours, Inc. because DuPont de Nemours, Inc., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware.  Personal jurisdiction also exists over DuPont de Nemours, Inc. because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including having its principal place of business in the state.

27.     This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials CMP LLC because Rohm and Haas Electronic Materials CMP LLC, directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware.  Personal jurisdiction also exists over Rohm and Haas Electronic Materials CMP LLC because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including having its principal place of business in the state.

28.     This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials CMP Asia Inc. because Rohm and Haas Electronic Materials CMP Asia Inc., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware.  Personal jurisdiction also exists over Rohm and Haas Electronic Materials CMP Asia Inc. because it is an entity organized under the laws of Delaware and has purposefully

-8-

availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

29.     This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. because Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. because it has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

30.     This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials K.K. because Rohm and Haas Electronic Materials K.K., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products and/or components thereof in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials K.K. because it has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

31.     This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials LLC because Rohm and Haas Electronic Materials LLC, directly or through affiliates,

has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials LLC because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

32.     On information and belief, including based upon the information set forth below in paragraphs 34-62, the six Defendants named in this matter are operating in concert, under the direction and control of Defendant DuPont de Nemours, Inc., with respect to the making, using, selling, offering for sale, and importation of the domestically manufactured Accused Products. For example, via its direction and control, Defendant DuPont de Nemours, Inc. induces and contributes to infringement by other subsidiary Defendants, as the ALJ found and the ITC confirmed.

33.     Venue properly lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and Haas Electronic Materials CMP Asia Inc., and Rohm and Haas Electronic Materials LLC are Delaware companies and therefore reside in this judicial district, and Defendants Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. and Rohm and Haas Electronic Materials K.K. are foreign entities who may be sued in any judicial district, including Delaware.

## COUNT I — INFRINGEMENT OF U.S. PATENT NO. 9,499,721

34.     CMC incorporates by reference the allegations of paragraphs 1-33.

35.     CMC is the owner and sole assignee of the '721 Patent and has full right to enforce

and license the '721 Patent.

36.     The Accused Products satisfy each and every limitation of at least claim 1 of the

'721 Patent:

> 1.     A chemical mechanical polishing composition comprising:
>
> a water based liquid carrier;
>
> colloidal silica abrasive particles dispersed in the liquid carrier;
>
> a chemical species incorporated in the colloidal silica abrasive particles internal to an outer surface thereof, wherein the chemical species is a nitrogen containing compound or a phosphorus containing compound;
>
> a pH in a range from about 3.5 to about 6;
>
> wherein the colloidal silica abrasive particles have a permanent positive charge of at least 15 mV; and
>
> wherein the chemical species is not an aminosilane or a phosphonium silane.

37.     The Accused Products directly and indirectly infringe at least this claim 1.  Indeed, in the 1204 Investigation, the ALJ found overwhelming evidence of infringement.  *See* Exhibit B at 87-144.  And the ITC confirmed Defendants' direct and indirect infringement.  *See* Exhibit C.

38.     Specifically, "[t]he Accused Products are chemical mechanical polishing compositions used for chemical mechanical planarization," as shown by Defendants' own "marketing material and safety data sheets for the Accused Products."  *See, e.g.*, Exhibit B at 92.

39.     Moreover, as found by the ALJ, "[t]he Accused Products include a water based liquid carrier."   *Id.* at 93.  Defendants' own "recipes and technical documents" prove this limitation is met.  *Id.*

40.     The Accused Products also include "colloidal silica abrasive particles."  *Id.* at 93-94.  As found by the ALJ, Defendants' own "documents describe the Accused Products as including colloidal silica abrasive particles dispersed in a liquid carrier."  *Id.*

41.     The Accused Products comprise, and the ALJ also found that, "a chemical species,
incorporated in the colloidal silica abrasive particles internal to an outer surface thereof, wherein
the chemical species is a nitrogen containing compound or a phosphorous containing compound."
*Id.* at 95-96.  Indeed, at the ITC, Defendants did not "dispute this limitation is met." *Id.* at 95.
Moreover, testing of the Accused Products, including testing by CMC's expert in the 1204
Investigation confirmed that this limitation is met.  *Id.*

42.     The Accused Products also have a pH of between approximately 3.5-6.  *Id.* at 97.
The pH of the Accused Products was shown by CMC's expert, which was "consistent with
[Defendants'] technical documents." *Id.*

43.     In the Accused Products, the colloidal silica abrasive particles have a permanent
positive charge of at least 15 mV.  As found by the ALJ, "[i]nfringement is clear from the extensive
testing [CMC's expert] directed and oversaw at two independent commercial labs…." *Id.* at 97.
"The Accused Products were measured in accordance with testing procedure in the '721 patent."
*Id.* at 98.  The "infringing permanent positive charge values measured by" multiple instruments
"were highly consistent." *Id.*  "Ultimately," as the ALJ concluded, "the permanent positive charge
values of all Accused Products fall well within the claimed range." *Id.* at 99.

44.     Finally, in the Accused Products, the ALJ found that "the chemical species … is
not an aminosilane or a phosphonium silane." *Id.* at 106.  In fact, "the particles do not contain
aminosilane or phosphonium silane compounds." *Id.*

45.     For all of the above reasons, all of the Accused Products practice claim 1—as CMC
effectively informed Defendants before filing suit, as the ALJ already found, and as the ITC
already confirmed.  *Id.* at 106.

46.     In addition to composition claim 1, there is infringement of, and the ALJ likewise

-12-

found infringement of, numerous additional claims, including composition claims 3, 4, 6, 10, 11, 13, 14, 17, 18, 19, 20, 24, 26, 27, 28, 29, 31, 35, 36, 37 and method claims 39, 40, 41, 42, 43, 44, and 46. *Id.* at 107-124.

47.     Each Defendant directly and/or indirectly infringes these claims, both literally or under the doctrine of equivalents, by making, using, selling and/or offering for sale within the United States and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

48.     For example, Defendant "Rohm and Haas Electronic Materials CMP LLC makes, uses, sells, and tests the Accused Products" in the United States and directly infringes all of the composition and method claims of the '721 Patent.  Exhibit B at 140; *see also* Exhibit C at 19 ("Rohm and Haas Electronic Materials … make[s] the infringing slurries in the United States and thereby directly infringes the asserted composition claims.").  Specifically, "Rohm and Haas Electronic Materials CMP LLC combines the … particle with other components of the Accused Products" to make the Accused Products in the United States.  Exhibit B at 140.  "Rohm and Haas Electronic Materials CMP LLC then tests the completed slurries using the process claimed in the method claims, and thereby directly infringe[s] the asserted method claims."  Exhibit C at 19; *see also* Exhibit E (DuPont Public Interest Statement) at 2 ("Since 2000, DuPont has owned and operated a state-of-the-art production facility in Newark, Delaware where Optiplane™ CMP slurries are manufactured … Thus, DuPont's Optiplane™ CMP slurries are a domestically manufactured product.").

49.     In addition, Defendant DuPont de Nemours, Inc. offers for sale and sells the Accused Products in the United States.  For example, DuPont admitted that "after using the imported particles to make and use the Accused Products, respondents sell samples of the Accused

Products to customers and others in the United States." Exhibit B at 129. The Accused Products are advertised and offered for sale in the United States on Defendant DuPont de Nemours, Inc.'s website. *See* Exhibit D (DuPont Website); *see also* Exhibit E (DuPont Public Interest Statement) at 3 ("Multiple semiconductor companies … use DuPont's Optiplane™ CMP slurries."); Exhibit F (DuPont Public Interest Submission) at 1 ("DuPont is a global leader in the CMP slurry market and supplies its domestically made slurries to major companies in the semiconductor chip manufacturing industry in the United States and overseas.").

50.     Finally, Defendants Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials CMP Asia Inc., (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.), Rohm and Haas Electronic Materials Asia-Pacific Co. Ltd., and Rohm and Haas Electronic Materials K.K. import the Accused Products and/or components thereof into the United States, and Rohm and Haas Electronic Materials LLC imports, sells, and/or offers to sell the Accused Products in the United States.

51.     In addition to directly infringing the '721 Patent, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '721 Patent.

52.     As set forth in paragraphs 1-51, each of the Defendants has known about the '721 Patent and its respective infringement well before the original Complaint was filed in this matter. Moreover, Defendants were adjudicated to infringe each and every Asserted Claim nearly one year ago and have still continued to knowingly and willfully infringe.

53.     In addition, in violation of 35 U.S.C. § 271(b), each of the Defendants has actively induced and continues to actively induce others (including other Defendants, customers of the Accused Products, and other third parties) to directly infringe the '721 Patent, by engaging in and

-14-

actively acting in concert with each other relating to: (a) the supply of the Accused Products and/or components of the Accused Products with the intention they will be used in the United States in an infringing manner by other Defendants, customers, and/or other third parties; (b) the marketing, distribution, and/or sale of the domestically-manufactured Accused Products to domestic and foreign customers (including on Defendants' websites); and/or (c) the instruction and encouragement of customers to use the Accused Products in an infringing manner with knowledge that these actions would infringe the '721 Patent. *See* Exhibit B at 139 ("In light of the above, respondents knowingly induced infringement of the '721 patent with specific intent to do so, including by providing components in the United States to assemble and/or making infringing products, selling these products to United States customers for use in the United States and otherwise intentionally causing direct infringement.").

54.     For example, as the ITC found, "Defendants DuPont de Nemours, Inc. and Rohm and Haas Electronic Materials K.K., actively induce other respondent subsidiaries, including at least Rohm and Haas Electronic Materials CMP in Delaware to infringe the '721 Patent." Exhibit C at 17. "Specifically, employees of DuPont de Nemours, Inc. and subsidiary Rohm and Haas Electronic Materials K.K. of Japan purchase BS-3 colloidal silica particles in Japan and cause them to be imported into the United States with the intention that they will be used in the United States by Rohm and Haas Electronic Materials CMP LLC to make infringing CMP slurries, which are then used in an infringing manner in the United States by Rohm and Haas Electronic Materials CMP LLC, its customers, and a third-party lab." *Id.*

55.     Similarly, at least Defendants Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)) and Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. actively induce other Defendants, including

at least Rohm and Haas Electronic Materials CMP LLC, to infringe the '721 Patent. Defendants Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)) and Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. are engaged in the marketing, selling, and/or offering for sale of the Accused Products to customers and such activities cause Rohm and Haas Electronic Materials CMP LLC to make, use, and test the Accused Products in the United States, and thereby directly infringe the '721 Patent, to facilitate such sales and marketing activities.

56.     Furthermore, as the ALJ found, "there is direct infringement by respondents' customers and respondents induce this infringement by supplying them with the Accused Products" and instructing their use in a manner that infringes the claims. Exhibit B at 138. For example, at least Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP LLC, and Rohm and Haas LLC induce United States customers to infringe the '721 Patent by supplying the Accused Products and instructing their use in a manner that infringes both the asserted composition and method claims of the '721 Patent. In this regard, the evidence shows that Defendants "are familiar with how their customers use the Accused Products," and such use directly infringes the '721 Patent. Exhibit B at 138.

57.     In violation of 35 U.S.C. § 271(c), each of the Defendants has also contributed to and is continuing to contribute to infringement of the '721 Patent by others (such as other Defendants and customers) by selling and/or offering for sell within the United States and/or importing into the United States the Accused Products and/or components of the Accused Products, that are especially made and/or adapted for infringing the '721 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

58.     For example, Defendants, "including DuPont de Nemours, Inc. and subsidiaries

Rohm and Haas Electronic Materials CMP LLC and Rohm and Haas Electronic Materials K.K. of Japan, cause to be imported into the United States … the … particle component of the Accused Products." Exhibit B at 140. The importation and "supply of the particles by the foreign respondents," Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.) and Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., and Rohm and Haas Electronic Materials K.K., "contributes to direct infringement by Rohm and Haas Electronic Materials CMP LLC." Exhibit C at 18-19. "Rohm and Haas Electronic Materials CMP LLC uses the [imported and] supplied particle to make the infringing slurries in the United States and thereby directly infringes the asserted composition claims." *Id.* at 19. In addition, with respect to the method claims of the '721 Patent, "Rohm and Haas Electronic Materials CMP LLC then tests the completed slurries using the process claimed in the method claims, and thereby directly infringe the asserted method claims." *Id.* at 19.

59. The supplied particle is a "component that [Defendants] control for purposes of making the Accused Products" and thus has no substantial non-infringing uses and is not a staple article of commerce. Exhibit B at 136; *see also id.* at 141 ("[N]either the Accused Products nor the imported … particles have any substantial non-infringing use …. Respondents import … colloidal silica particles that are specifically designed and tailored for respondents to use in respondents' Accused Products …. [The imported colloidal silica particle] is not an off-the-shelf commodity product."); *id.* at 142 ("Indeed, respondents have identified no other use for the … particles than to be made into the Accused Products, and the Accused Products in turn have no use other than to be used for CMP as described in the '721 Patent …. For at least these reasons the … particles are especially made for infringement of the '721 patent and are not a staple article.").

60. In addition, as the ALJ found, "all respondents," and thus all Defendants in this

matter, "contribute to the infringement of respondents' United States customers" and other third parties that use and test the Accused Products in the United States.  Exhibit B at 142.

61.    Defendants' infringement of the '721 Patent is deliberate and willful, justifying enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  As the ALJ found, "[i]t appears respondents followed CMC's invention" and were "well-aware of the '721 Patent during" Defendants' "development of the Accused Products."  Exhibit B at 134.  As described above, each of the Defendants knew of the '721 Patent and knew that the composition of the Accused Products was patented well before CMC filed suit in June 2020.  Nonetheless, despite being on notice of infringement of the '721 Patent, and even after fully litigating the case and receiving a ruling by the ITC in favor of CMC on all issues, each of the Defendants has continued its infringing activity knowing and intending to directly and/or indirectly infringe the '721 Patent.

62.    Defendants' infringement has caused and is continuing to cause damage and irreparable injury to CMC, and CMC will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.  By this action, CMC seeks to stop Defendants' willful, unauthorized, and improper use of the '721 Patent, and to obtain monetary relief, including significant damages for the significant harm caused to CMC by Defendants' willful infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, CMC prays for relief as follows:

a.    That each Defendant has infringed and continues to infringe the '721 Patent, either directly and/or indirectly;

-18-

b.        That each Defendant's infringement of the '721 Patent has been and continues to be willful;

c.        In accordance with 35 U.S.C. § 284, that each Defendant be ordered to pay to CMC all monetary damages to which CMC is entitled (together with pre and post judgment interest), including increased damages for willful infringement;

d.        That this case be declared exceptional in accordance with 35 U.S.C. § 285 and that CMC be awarded and Defendants pay CMC's attorneys' fees;

e.        An injunction prohibiting further infringement of the '721 Patent; and

f.        Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

A jury trial is demanded on all claims and issues so triable.

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: June 1, 2022

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*

-19-

# EXHIBIT 2

## デラウエア地区
## 米国地方裁判所

| | |
|---|---|
| Cabot Microelectronics Corporation<br><br>原告<br><br>対<br><br>DuPont de Nemours, Inc.、Rohm and Haas Electronics Materials CMP Inc.、Rohm and Haas Electronic Materials CMP Asia Inc. （商号Rohm and Haas Electronic Materials CMP Asia Inc.、Taiwan Branch （U.S.A.））、Rohm and Haas Electronic Materials Asia-Pacific Co. Ltd.、ローム・アンド・ハース電子材料株式会社、およびRohm and Haas Electronic Materials LLC<br><br>被告 | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）　民事訴訟番号：20-738-MN<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） |

## 国際司法共助要請
## （嘱託書）

　　デラウエア地区米国地方裁判所は、日本の司法当局に対し、デラウエア地区米国地方裁判所における上記表題の民事訴訟において使用する証拠を得るための国際司法共助を謹んで要請する。本裁判所は、合衆国法典28（司法および司法手続き）第1651条および1781条(b)(2)に基づき本嘱託書を提出する権限を有する。

　　本裁判所は、正義の名において必要となる国際司法共助を要請する。具体的には本裁判所は、日本の裁判所の適切かつ通常のプロセスにより、下記の第三者をして、**添付A**に要請する文書を提出させ、また**添付B**の項目に最も知識を持つ人を尋問に出席させ、宣誓下で尋問を受けさせるため、日本の適切な司法当局に支援を要請する。

扶桑化学工業株式会社
日生伏見町ビル
新館、高麗橋四丁目3番10号
大阪府大阪市中央区、〒541-0043
+81-6-6203-4771

　　　原告のCMC Materials Inc.（「CMC」）の陳情に基づき、本裁判所は、日本の司法当局

の協力により、特にCMCの米国特許番号9,499,721の有効性に関し、本書において要請する

証拠を使用できない限り、標記の民事訴訟に関し両当事者間における正義を尽くすことができ

ないと思料する。CMCは、被告のDuPont de Nemours, Inc.、Rohm and Haas Electronic

Materials CMP LLC.、Rohm and Haas Electronic Materials CMP Asia Inc.（商号Rohm and Haas

Electronic Materials CMP Asia Inc., Taiwan Branch（U.S.A.））、Rohm and Haas Electronic

Materials Asia-Pacific Co., Ltd.、ローム・アンド・ハース電子材料株式会社、およびRohm and

Haas Electronic Materials LLC（「DuPont」と総称）は、扶桑化学工業株式会社製とされるもの

を含む「コロイダルシリカの研磨粒子」を構成する化学機械平坦化スラリーの製造、使用、販

売、販売のオファーおよび/または輸入を行うことにより、特許侵害行為を行っていると主張し

ている。添付C（訴状）第16〜21項、第26〜28項　本裁判所は、特定されたコロイダルシリカ

粒子のメーカーである扶桑化学工業株式会社は、上記民事訴訟の正しい遂行に関連性の高

い重要な事実に関する、固有の文書と物、ならびに固有の知識を有し、これらは日本の司法

当局の支援なしには得られないと思料する。

**I.　　事実**

　　　本司法手続きは下記の原告によって開始された民事訴訟である。

CMC Materials Inc.
870 N. Commons Drive
Aurora, IL 60504 U.S.A.

被告は下記のとおりである。

DuPont de Nemours, Inc.
974 Centre Road, Building 730,
Wilmington, DE 19805-1269 U.S.A.

Rohm and Haas Electronic Materials CMP, LLC
451 Bellevue Road
Newark, DE 19713-3431 U.S.A.

Rohm and Haas Electronic Materials CMP Asia Inc.（商号、Rohm and Haas Electronic
Materials CMP Asia Inc., Taiwan Branch（U.S.A.））
4F., NO.6, LN. 280, Zhongshan N. Rd.
Dayuan Dist., Taoyuan City, 337017 Taiwan

Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.
6, Kesi 2nd Rd.
Chunan, Miaoli, 350401 Taiwan

ローム・アンド・ハース電子材料株式会社
山王パークタワー、2-11-1
永田町、千代田区
東京、100-0014 日本国

Rohm and Haas Electronic Materials LLC
455 Forest Street,
Marlborough, MA 01752-3001

　　　　本民事訴訟は、2020年6月1日にCMCによって提出された訴状**（添付C）**に基づくもので

あり、合衆国法典35（特許）第1条以下が適用される。CMCの訴状は、DuPontによる米国特許

番号9,499,721の侵害を訴えている。CMCは、対象製品の米国内における製造、使用、販売、

および/または販売のオファー、および/または米国への輸入を禁止する差止命令ならびに金

銭的損害賠償および衡平法上の救済を求めている。**添付C** 第16項〜第21項および「請求趣

旨申立て」対象製品は、扶桑のコロイダルシリカ粒子（同上第26項〜第28項）など、一般に、

コロイダルシリカの研磨粒子を含めて調製された化学機械平坦化組成物として特徴づけられ、

少なくも請求項1の侵害の有無はコロイダルシリカ粒子（同上第26項）の特徴に部分的に依存する。

　　　本民事訴訟は、並行して行われている米国国際貿易委員会（「ITC」）における手続きに鑑み、2020年7月6日に停止された。ITCにおける手続きが終結し、最終決定されたことから、本民事訴訟の停止は2022年5月18日に解除され、証拠開示手続きが開始された。

　　　DuPontは、扶桑からの国外証拠開示を求めている。これは扶桑が化学機械平坦化スラリーに使用されるコロイダルシリカ粒子の製造業者であるためである。CMCは、扶桑のコロイダルシリカ粒子は米国に輸入され、製品内で使用されていると主張し、CMCの米国特許9,499,721を侵害していると主張している。扶桑は米国特許番号9,499,721の例に記載されているコロイダルシリカの研磨粒子の調達元でもあった。DuPontは、扶桑はコロイダルシリカ研磨粒子に関し、*特に*米国特許番号9,499,721の少なくとも有効性に関係する、最初の販売、最初の販売のオファー、最初の公用、最初の開示、発明者要件、およびその他多くの事柄に関する固有の文書および情報を所持していると考える。

## **II**　　**要請されている証拠開示**

　　　日本の司法当局におかれては、**添付A**に記載の文書の写しを提出するよう扶桑に強制して頂きたく謹んでお願い申し上げる。日本の司法当局にはまた、扶桑をして**添付B**に記載の証言録取項目に関し最も知識を持つ人を尋問に出席させ、宣誓の上証言を提供するよう強制して頂きたく、あわせてお願い申し上げる。要請されている文書と証言録取による証言は、米国特許番号9,499,721に関する重要な証拠となる。訴状は、本嘱託書の**添付C**とする。

　　　　本裁判所は扶桑に要請する文書および証言は機密性の高いものであると理解する。本裁判所の規則26.2に基づき、保護命令が発出されるまでの間、扶桑の機密情報の開示先は、機密保持義務を負う訴訟担当弁護士に限定される。本民事訴訟において今後発出される保護命令もまた、扶桑が提出する文書と扶桑が提出する証言の機密性を保護する。

　　　　**添付A、B、**および**C**の証明付日本語翻訳を提出する。


**III.　　順守が求められる具体的な方法および手続き**

　　　　日本の適用法により許容される範囲において、本裁判所は日本の司法当局に、本書で要請されている証言録取と文書の提出に関し、以下の方法と手順に従うよう要求することを、謹んで要請する。

　　　　**添付A**に特定した文書の提出に関し、本書により要請される文書の一部または全部が、日本法において適用される非開示特権により留保される場合、扶桑は、かかる非開示特権を主張する各文書について非開示特権記録を提出し、各文書について以下の情報を提出することを要請される。

　　　1.　　文書作成日および最終変更日

　　　2.　　**文書の主題事項**

　　　3.　　**文書作成者**

　　　4.　　**文書の配布、提示、または説明を受けたすべての人**

　　　5.　　**文書の現在の管理者、**および

　　　6.　　**主張する非開示特権の性質**

　　　　さらに、**添付A**に記載される各文書を、尋問の10日前までに、省略や編集なしに、通常業務過程において保管されていたそのままの状態で、その全体をコピーし、検査のため提出または提供されたい。

　　　　証言録取に関しては、尋問官または他の適切な日本の司法官、または日本における米国大使館および/または領事館における領事官が、証人に対し日本における適用される手順に従って正式に宣誓するよう指示し、証言はDuPontの代表者が選んだ資格を持つ法廷速記者が記録しビデオ撮影者が撮影することを謹んで要請する。

　　　　日本の適用法により許容される範囲において、本裁判所は日本の司法当局に、本書で要請されている尋問と文書の提出に関し、以下の方法と手順に従うよう要求することを、謹んで要請する。

1. 扶桑は、1名以上の知識を持つ役員、取締役、経営代理人、従業員、またはその他の人を、扶桑を代表して証言するよう任命することを求められる。

2. 扶桑は、本要請に従って証言する人と、各人が証言する事柄について特定することを求められる。

3. 尋問は口頭で行う。

4. 両当事者の法定代理人またはその被指名人（当事者の弁護士など）、通訳、および裁判所速記官およびビデオ撮影者が尋問への出席を許可される。

5. 項目4で許可された個人と、かかる手続きに出席が求められる日本の裁判所の官吏または米国大使館および/または領事館のスタッフを除くすべての人は尋問から排除される。

6. 裁判所速記官およびビデオ撮影者は尋問を逐語的に記録することを許可される。

7. 裁判所速記官およびビデオ撮影者は視聴覚手段により尋問を記録することを許可される。

8. DuPontの法定代理人を務めるFinnegan, Henderson, Farabow, Garrett & Dunner, LLPの法律事務所の弁護士またはその被指名人は尋問を行うことを許可される。

**9.** 尋問を行う人は**添付B**の項目に関し尋問を行うことを許可される。

10. 通訳を必要とする各証人については尋問に10.5時間が割り当てられ、英語を話す証人の尋問には7時間が割り当てられる。

11. 証人は実施可能な限り早く尋問を受ける。また

12. 扶桑は、便宜の良い場所で行われる予定の証言録取の10営業日前までに文書を提出する。

　最後に、以下に特定する個人へ、実行可能な限り早く、署名された嘱託書のコピーを渡し、実行可能な限り早く証人尋問の時間と場所を通知することを要請する。

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
　GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
電話番号：+1-（202）408-4000
ファックス番号：+1-（202）408-4400

## III. 司法共助

デラウエア地区米国地方裁判所は、日本の裁判所に、同様の助力を提供する用意が

ある。

## IV. 費用の弁済

本嘱託書への対応に助力を提供するために費用が発生した範囲において、被告が料

金および費用を負担する。弁済の要請は被告の法律顧問に提出することができ、Eメール経

由の場合は

DuPont-Delaware@finnegan.comへ、米国郵便経由の場合は以下まで送付する。

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
電話番号：+1-（202）408-4000
ファックス番号：+1-（202）408-4400

| 要請日： | 要請当局の署名および印： |
|---|---|
| 2022年＿＿月＿＿日 | ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿<br>Maryellen Noreika判事<br>米国地方裁判所判事<br>デラウエア地区米国地方裁判所<br>Washington, D.C., United States of America |

 TRANSPERFECT

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

| | |
|---|---|
| File Name(s): | Exhibit 1 - Letter Rogatory - 26MAY2022 DRAFT |
| Source Language(s): | English |
| Target Language(s): | Japanese |

Authorized Signature:

Signature, Notary Public:

Name:     Shayna Himelfarb

Title:      Project Assistant

Date:      May 31, 2022

*Stamp: Notary Public*

Reason for signature: I approve the accuracy of this document content as written

添付A

## 扶桑化学工業株式会社が提出する文書と物

### 指示

1. 各提出要請について、要請の範囲の貴社が所持、保管、管理するすべての文書を提出すること。

2. 該当する文書が英語以外の言語で書かれており、かつ英語への翻訳が存在する場合、文書と翻訳の両方を提出すること。

3. 一部または全部が要請の一部に該当しているすべての文書は、すべての添付文書および同封物を含めてその全体を提出するものとする。

4. 電子記録またはコンピュータ化された情報は、そのままの電子形式で提出しなくてはならず、記録と情報を解読可能にするためにそれを生成したシステムについての十分な説明を付ける必要がある。

5. 特定の提出要請への回答として、貴社には要請に対応する能力がない、と回答する場合は、対応する能力がない理由は、その特定の項目または分野の情報はこれまで存在したことがないか、破棄されたか、喪失したか、紛失したか、盗まれたか、貴社がこれまで一度も保持、保管または管理したことがないか、または現在ではもはや所持、保管、または管理していないか、のいずれであるかについて特定し、また、その場合は、かかる情報または情報のカテゴリーを所持、保管、または管理していると貴社が知っているまたは考える人もしくは組織の名称と住所を特定しなければならない。

6. どのような場合も、本要請により要請されているいずれかの文書が破棄または廃棄されている場合、以下を述べることによりかかる文書を特定する。(i)作成者、名宛人、bcc

2

に記載されている人、（ii）文書の日付、ページ数、添付文書または付属書、（iii）文書の主題事項、（iv）破棄または廃棄の日付と破棄または廃棄の理由、（v）かかる破棄または廃棄の実行を認められた人、および（vi）当該文書のコピーが現存するか否か、存在する場合は各コピーの各保管者の氏名。

7. 特定の要請に該当する文書が存在しない場合、かかる要請への回答部分にその事実を記載する必要がある。

8. 機密のビジネス情報を含むと貴社が考える各ページについて、「機密情報 - 保護命令対象」と指定するマークを付けること。そのページに当該の指定を行うマークが付いていない場合、機密のビジネス情報は含まれていないと想定される。

9. 貴社を代表して証言を行うべく出頭させる予定の個人について、本召喚状に基づいて行われる証言録取の初日の10日前までに特定し、また、各証人が証言を準備すべき項目を特定する。

**定義**

1. 「扶桑」または「貴社」とは、扶桑化学工業株式会社、および扶桑化学工業株式会社の従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他の同社の管理下にある人、同社の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的に扶桑によって全体的または部分的に所有または支配される法人、ならびにそれらの組織の社長、取締役、役員、所有者、従業員、メンバー、代理店、代理人、コンサルタント、会計士および弁護士を意味する。

2. 「CMC」とは、CMC Materials, Inc.、およびCMC Materials, Inc.の従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他同社の支配下にある人、同社の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的にCMC Materials, Incによって全体的または部分的に所有または支配される法人、ならびにそれらの組織の社長、取締役、役員、所有者、従業員、メンバー、代理店、代理人、コンサルタント、会計士および弁護士を意味する。

3. 「DuPont」とは、本要請においてのみは、DuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLC、およびDuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLCの従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他それらの企業の支配下にある人、Dow Chemical CompanyおよびRohm and Haas Electronic Materials CMP, Inc.を含むそれらの企業の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的にDuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLCによって全体的または部分的に所有または支配される法人を意味する。

4. 「人」とは、自然人または組織を意味し、会社、個人事業、パートナーシップ、協会、ジョイントベンチャー、企業、トラスト、組織、政府機関およびその他の団体およびそれらの組み合わせ、およびすべての権利の元所有者、継承者、関連会社、子会社および関連組織を意味する。

5. 「対象特許」とは米国特許番号9,499,721を意味する。

4

6. 「コロイダルシリカの研磨粒子」とは、本要請および項目に関してのみ言えば、ゾル-ゲル法を使用して調製されたシリカ粒子を意味する。

7. 「BS」、「HL」、「PL」はそれぞれ扶桑のコロイダルシリカの研磨粒子シリーズの名称を意味し、例えばBS-3やPL-3Cなど、具体的グレード記載するすべてのものを含む。

8. 「PL-xxC」とは、例えばPL-3Cなどのアミノプロピル・トリアルコキシランを使用して処理されたPLシリーズのコロイダルシリカの研磨粒子を意味する。

9. 粒子における「ゼータ電位」とは、本要請に関してのみ言えば、日本の公開特許出願JP2016-8157Aに使用されているような、粒子を取り巻くイオンの電荷と、粒子を含むバルク溶液の電荷の間の電位差を意味する。

10.「文書」という文言には、電子的または光学的に保管された、または何らかの処理、手書き、または手製により複製された、またはその他の方法で記録されたすべての文書の同一ではないすべてのコピー、最終文書前のすべてのドラフト、任意の形態または実施形態において印刷、記録、または図示された事柄、ならびに、それらが作成、複製、または保管される媒体（要請対象の情報を含むコンピュータプログラムとファイルを含む）に関わらず、また記録方法や記載方法に関わらず、必要であれば情報を取得または変換可能なデータ編集物で扶桑の実際のまたは解釈上の監督または管理下にあるものを意味する。誤解を避けるために明記すると、「文書」という文言は、書面または電子的なコミュニケーションを含み、その他の問い合わせ、通信、相談、交渉、合意、取り決め、書状、メモ、テレグラム、広告、コンピュータメール、Eメール、およびその他の、人または組織の間における、言語による、または言語によらない対話を証明するすべての文書を含む。オリジナルの文書またはそのコピーの一部では

ない、イニシャルやスタンプによるイニシャル、コメント、注記を含むマークの付けられた文書は、

別の文書とする。

　　11.　「それぞれ」「いくらか」および「すべて」は、「いくらか」と「すべて」の両方を、また、

「それぞれ」と「すべて」の両方を意味する。

　　12.　「および」と「または」は、いずれも「両方」と「どちらか」として解釈されるものとし、い

ずれも使用される場合に、要請される文書の範囲を限定するものとして解釈されないものとす

る。時制を表す動詞は、他のすべての時制の動詞を使用したものと解釈されるものとし、単数

形は複数形を含むものとみなし、またその逆も適用される。本要請をもっとも幅広いものとする

ため、すべての代名詞は、単数または複数の、男性形、女性形、中性形を意味すると解釈す

るものとする。

　　13.　ある事柄に「関する」文書または物が要請されている場合、その要請は、場合によ

り、要請されている事柄を構成、包含、実施化、反映、記述、分析、特定、言及、言述、証明、

議論、参照、関連、または処理、あるいはそれらの事柄に関係または何らかの形で関連して

作成されている、あらゆる文書または物の一部または全部を包含する。

　　14.　行為、事象、事例、場合、取引、会話、またはコミュニケーションに関連して使用す

る場合の「記述」という文言は、以下を意味するものとする。(1)それらの日付と場所を記述す

る、(2)個々の参加者を特定する、(3)個々の参加者別に発言または行動を要約する、および

(4)それに関連して使用または作成された各文書を特定する、またはそれらを参照する。

　　15.　文書または物の場合に「特定する」とは、判明している範囲で以下を述べることを

意味するものとする。(1)文書または物の種類(書状、通話、等)、(2)その全体的な主題事項、

（3）作成日、（4）作成者、名宛人、受領者、およびその文書または物を受領または見たすべて

の人、および（5）文書または物が審査された場所、または、もし文書または物のコピーが以前

に扶桑へ提供されたまたは扶桑に提出された場合は、そのことを述べ、また、具体的かつ個

別に以前に提供された訴訟書類番号または提出番号を特定すること。

16.　製品の場合に「特定する」とは、判明している範囲で以下を述べることを意味する。

（1）製品の名称、（2）すべての商用名、（3）開発中に使用されていた名称を含めたすべての社

内名称。（4）すべての製品番号、パーツ番号、SKU番号、（5）すべての商標、（6）かかる名称、

番号、マークを解釈するに十分なすべての文書。

17.　「日付」という文言は、確認できる場合は正確な年月日を意味し、確認できない場

合は、貴社の最善の推定による年月日を意味する。

## 提出する文書と物

1.　貴社が2015年6月25日以前にCMCまたはDuPontへ開示、提供、サンプル提供、

販売、および/または販売のオファーを行った、HL-2、HL-3、PL-xxC、BS-1H、BS-2H、および

BS-3という製品名の粒子を含むがそれに限らないコロイダルシリカの各粒子と以下を証明す

るために十分な文書と物

a.　それらに関する通信を含め、当該粒子のすべての販売、販売のオファー、米国

への輸入、プロモーション、およびサンプル提供、また当該粒子の製造バッチ番

号またはロット番号

b. 当該粒子の製造に使用する各プロセス、方法、技法、および製造プロセスをそ

れらで使用した触媒（例：アンモニウム、アンモニア、エチルオキシプロピルアミ

ン、テトラメチル水酸化アンモニウム、およびエチレンジアミン）を含めて。

c. 製品仕様および、化学機械平坦化（「CMP」）の特性または性能の測定値または

推定値、当該粒子または製剤のpH、粒子径、ゼータ電位、窒素含有量または燐

含有量

2. 貴社が2015年6月25日までに「PL」グレード、「HL」グレード、または「BS」グレード

のコロイダルシリカの研磨粒子の開示、提供、サンプル提供、販売、または販売のオファーを

行った、CMCまたはDuPont以外の組織と以下を証明する上で十分な文書と物

a. 当該粒子のすべての販売、販売のオファー、米国への輸入、プロモーション、お

よびサンプル提供とそれらに関する通信。

b. 当該粒子の製造に使用する各プロセス、方法、技法、および製造プロセスをそれ

らで使用した触媒（例：アンモニウム、アンモニア、エチルオキシプロピルアミン、

テトラメチル水酸化アンモニウム、およびエチレンジアミン）を含めて。

c. 製品仕様および、CMPの特性または性能の測定値または推定値、当該粒子また

は製剤のpH、粒子径、ゼータ電位、窒素含有量または燐含有量

3. 以下に関する貴社のCMCとの関係、合意、および通信を証明する上で十分な文

書と物

a. 製剤を含めたコロイダルシリカの研磨粒子の2015年6月25日までの供給または

開発。これにはCMCとのすべての通信、CMCとのすべての契約や合意書、

CMCとの間で交わされたすべての請求書その他の料金、およびCMCとの間で

授受されたすべての支払いが含まれる。および

b.　　コロイダルシリカの研磨粒子の製造または供給に関する独占性。これにはHL-3、

BS-2、BS-2H、またはBS-3という製品名称を持つコロイダルシリカの研磨粒子と、

DuPontを含むがこれに限らないCMCの競合他社が当該粒子を取得することに

関する制限についてのすべての文書が含まれる。

4.　　アンモニウム、アンモニア、エチルオキシプロピルアミン、テトラメチル水酸化アンモ

ニウム、およびエチレンジアミンの触媒のうち1つ以上を使用して、コロイダルシリカの研磨粒

子内の残留触媒化合物を検出するために行われたコロイダルシリカの研磨粒子のすべての

評価、推定、または試験を証明するに十分な文書と物

5.　　貴社が2015年6月25日以前にCMCまたはDuPontへ開示、提供、サンプル提供、販

売、および/または販売のオファーを行った、HL-2、HL-3、PL-xxC、BS-1H、BS-2H、BS-3、お

よび　　　　　という製品名の粒子を含むがそれに限らないコロイダルシリカの各粒子と以下を

証明するために十分な文書と物

6.　　公開された日本の特許出願JP2016-8157Aにて開示された例および比較例に記述

されるコロイダルシリカの研磨粒子および調合液を証明し記述するに十分な文書と物。これに

はこれらの粒子または製剤の未報告の試験も含む。

7.　　2014年6月25日の公開された日本の特許出願JP2016-8157Aにつながる出願を含

め、貴社による特許出願申請のタイミングに関するCMCとのすべての通信と契約、ならびに

当該出願で開示された対象の所有権に関するCMCとのすべての通信と契約

添付B

## 扶桑化学工業株式会社の証言録取の項目

### 指示

1. 貴社は、貴社が所持、保管または管理するすべての情報について慎重かつ徹底的な調査を行った後、貴社の被指名人が、以下の項目について証言を行うための十分な準備を整えることを確実にするものとする。これにはかかる情報について被指名人を教育することも含む。

2. 貴社の被指名人は、本証言録取の準備において検討し、依拠し、参照したすべての文書を、本証言録取の場に持ち込むものとする。

### 定義

1. 「扶桑」または「貴社」とは、扶桑化学工業株式会社、および扶桑化学工業株式会社の従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他の同社の管理下にある人、同社の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的に扶桑によって全体的または部分的に所有または支配される法人、ならびにそれらの組織の社長、取締役、役員、所有者、従業員、メンバー、代理店、代理人、コンサルタント、会計士および弁護士を意味する。

2. 「CMC」とは、CMC Materials, Inc.、およびCMC Materials, Inc.の従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他同社の支配下にある人、同社の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的にCMC Materials, Incによって全体的または部分的に所有または支配される法人、ならびにそれ

らの組織の社長、取締役、役員、所有者、従業員、メンバー、代理店、代理人、コンサルタント、

会計士および弁護士を意味する。

3.　「DuPont」とは、本要請においてのみは、DuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLC、およびDuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLCの従業員、メンバー、代理店、代理人、コンサルタント、会計士、弁護士、その他それらの企業の支配下にある人、Dow Chemical CompanyおよびRohm and Haas Electronic Materials CMP, Inc.を含むそれらの企業の権利の元所有者、親会社、部門、子会社、関連会社、合弁事業、その他直接的または間接的にDuPont de Nemours Inc.またはRohm and Haas Electronic Materials CMP, LLCによって全体的または部分的に所有または支配される法人を意味する。

4.　「人」とは、自然人または組織を意味し、会社、個人事業、パートナーシップ、協会、ジョイントベンチャー、企業、トラスト、組織、政府機関およびその他の団体およびそれらの組み合わせ、およびすべての権利の元所有者、継承者、関連会社、子会社および関連組織を意味する。

5.　「対象特許」とは米国特許番号9,499,721を意味する。

6.　「コロイダルシリカの研磨粒子」とは、本要請および項目に関してのみ言えば、ゾル-ゲル法を使用して調製されたシリカ粒子を意味する。

7.　「BS」、「HL」、「PL」はそれぞれ扶桑のコロイダルシリカの研磨粒子シリーズの名称を意味し、例えばBS-3やPL-3Cなど、具体的グレード記載するすべてのものを含む。

8.　「PL-xxC」とは、例えばPL-3Cなどのアミノプロピル・トリアルコキシランを使用して処理されたPLシリーズのコロイダルシリカの研磨粒子を意味する。

2

9.　粒子における「ゼータ電位」とは、本要請に関してのみ言えば、日本の公開特許出願JP2016-8157Aに使用されているような、粒子を取り巻くイオンの電荷と、粒子を含むバルク溶液の電荷の間の電位差を意味する。

10.「文書」という文言には、電子的または光学的に保管された、または何らかの処理、手書き、または手製により複製された、またはその他の方法で記録されたすべての文書の同一ではないすべてのコピー、最終文書前のすべてのドラフト、任意の形態または実施形態において印刷、記録、または図示された事柄、ならびに、それらが作成、複製、または保管される媒体（要請対象の情報を含むコンピュータプログラムとファイルを含む）に関わらず、また記録方法や記載方法に関わらず、必要であれば情報を取得または変換可能なデータ編集物で扶桑の実際のまたは解釈上の監督または管理下にあるものを意味する。誤解を避けるために明記すると、「文書」という文言は、書面または電子的なコミュニケーションを含み、その他の問い合わせ、通信、相談、交渉、合意、取り決め、書状、メモ、テレグラム、広告、コンピュータメール、Eメール、およびその他の、人または組織の間における、言語による、または言語によらない対話を証明するすべての文書を含む。オリジナルの文書またはそのコピーの一部ではない、イニシャルやスタンプによるイニシャル、コメント、注記を含むマークの付けられた文書は、別の文書とする。

11.　「それぞれ」「いくらか」および「すべて」は、「いくらか」と「すべて」の両方を、また、「それぞれ」と「すべて」の両方を意味する。

12.　「および」と「または」は、いずれも「両方」と「どちらか」として解釈されるものとし、いずれも使用される場合に、要請される文書の範囲を限定するものとして解釈されないものとす

る。時制を表す動詞は、他のすべての時制の動詞を使用したものと解釈されるものとし、単数

形は複数形を含むものとみなし、またその逆も適用される。本要請をもっとも幅広いものとする

ため、すべての代名詞は、単数または複数の、男性形、女性形、中性形を意味すると解釈す

るものとする。

13. ある事柄に「関する」文書または物が要請されている場合、その要請は、場合によ

り、要請されている事柄を構成、包含、実施化、反映、記述、分析、特定、言及、言述、証明、

議論、参照、関連、または処理、あるいはそれらの事柄に関係または何らかの形で関連して

作成されている、あらゆる文書または物の一部または全部を包含する。

14. 行為、事象、事例、場合、取引、会話、またはコミュニケーションに関連して使用す

る場合の「記述」という文言は、以下を意味するものとする。(1)それらの日付と場所を記述す

る、(2)個々の参加者を特定する、(3)個々の参加者別に発言または行動を要約する、および

(4)それに関連して使用または作成された各文書を特定する、またはそれらを参照する。

15. 文書または物の場合に「特定する」とは、判明している範囲で以下を述べることを

意味するものとする。(1)文書または物の種類(書状、通話、等)、(2)その全体的な主題事項、

(3)作成日、(4)作成者、名宛人、受領者、およびその文書または物を受領または見たすべて

の人、および(5)文書または物が審査された場所、または、もし文書または物のコピーが以前

に扶桑へ提供されたまたは扶桑に提出された場合は、そのことを述べ、また、具体的かつ個

別に以前に提供された訴訟書類番号または提出番号を特定すること。

16. 製品の場合に「特定する」とは、判明している範囲で以下を述べることを意味する。

(1)製品の名称、(2)すべての商用名、(3)開発中に使用されていた名称を含めたすべての社

4

内名称。(4)すべての製品番号、パーツ番号、SKU番号、(5)すべての商標、(6)かかる名称、番号、マークを解釈するに十分なすべての文書。

17. 「日付」という文言は、確認できる場合は正確な年月日を意味し、確認できない場合は、貴社の最善の推定による年月日を意味する。

## 証言の項目

1. 証人らの扶桑における役職、技術的経歴、嘱託書に対応して提出される文書への通暁の程度

2. HL-2、HL-3、PL-2L、PL-xxC、BS-1H、BS-2H、およびBS-3の製品名称を持つ、コロイダルシリカの研磨粒子の設計、開発、製造、試験、米国への輸入、包装、保管、出荷、流通、サンプル提供、マーケティング、販売、および/または販売のオファーに関する、貴社とCMCおよびDuPontとの関係

3. 2015年6月25日以前に、貴社がCMCまたはDuPontに提供したコロイダルシリカの研磨粒子の各タイプの特定と記述

4. 2015年6月25日以前のHL-2、HL-3、PL-2L、PL-xxC、BS-1H、BS-2HまたはBS-3の製品名称を持つ、コロイダルシリカの研磨粒子の供給に関する貴社のCMCとの契約。これにはCMCとの間で交わされるすべての通信、契約、請求書および/または料金およびCMCとの間で授受されたすべての支払いが含まれる。

5. 何らかのライプのコロイダルシリカの研磨粒子の製品の独占性に関するCMCとの話し合いまたは契約。これにはDuPontを含むがこれに限らないCMCの競合他社による当該粒子へのアクセスを制限するすべての通信が含まれる。

6.　2015年6月25日以前に調製された、HL-2、HL-3、PL-2L、PL-xxC、BS-1H、BS-2H、

BS-3、および　　　　　の製品名称を持つ、コロイダルシリカの研磨粒子について、

- a.　それらの過程で使用した触媒（例：アンモニウム、アンモニア、エチルオキシプロ

  ピルアミン、テトラメチル水酸化アンモニウム、およびエチレンジアミン）を含め、

  当該粒子の製造に使用するプロセス、方法、技法、および製造プロセス。

- b.　製品仕様および、化学機械平坦化（「CMP」）の特性または性能の測定値または

  推定値、当該粒子または製剤のpH、粒子径、ゼータ電位、窒素含有量または燐

  含有量

- c.　当該各粒子が顧客へ最初にオファーされた日付と、最初に利用可能とされた日

  付

- d.　当該各粒子が顧客へ最初に販売または販売のオファーがされた日付

- e.　当該各粒子が米国へ最初に輸入された日付

6.　米国特許番号9,449,721にて開示された試験方法に従ったコロイダルシリカ粒子を

含むCMPスラリーの、ゼータ電位試験を含む試験

7.　公開された日本の特許出願JP2016-8157により公開された例と比較例ならびに本

特許出願に関する開示されていない試験方法

8.　2014年6月25日の公開された日本の特許出願JP2016-8157Aにつながる出願を含

め、貴社による特許出願申請のタイミングに関するCMCとのすべての通信と契約、ならびに

当該出願で開示された対象の所有権に関するCMCとのすべての通信と契約

 TRANSPERFECT

# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name(s):          Attachments A  B for Letter Rogatory (MJF 5-26) - revised

Source Language(s):    English

Target Language(s):    Japanese

Authorized Signature:                          Signature, Notary Public:

*Name:*    *Shayna Himelfarb*

*Title:*    *Project Assistant*

*Date:*    *May 31, 2022*

*Stamp: Notary Public*

Reason for signature: I approve the accuracy of this document content as written

添付C

コロンビア地方米国地方裁判所

| | |
|---|---|
| CMC Materials Inc. | ） |
| | ） |
| | |
| | ） |
| 原告 | ） |
| | ） |
| 対 | ）民事訴訟番号：20-738-MN |
| | ） |
| | ）**陪審裁判を請求** |
| | ） |
| DuPont de Nemours, Inc.、Rohm and | ） |
| Haas Electronic Materials CMP LLC、 | ） |
| Rohm and Haas Electronic Materials | ） |
| CMP Asia Inc.（商号Rohm and Haas | ） |
| Electronic Materials CMP Asia Inc.、 | ） |
| Taiwan Branch（U.S.A.））、Rohm and | ） |
| Haas Electronic Materials Asia-Pacific | ） |
| Co. Ltd.、ローム・アンド・ハース電子材料株 | ） |
| 式会社、およびRohm and Haas Electronic | ） |
| Materials LLC | ） |
| | ） |
| 被告 | ） |

## 第一修正訴状

原告、CMC Materials, Inc.[1]（「CMC」）は、被告ら、DuPont de Nemours, Inc.、Rohm

and Haas Electronic Materials CMP Inc.、Rohm and Haas Electronic Materials CMP Asia

LLC（商号Rohm and Haas Electronic Materials CMP Asia Inc.、Taiwan Branch（U.S.A.））、

Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.、ローム・アンド・ハース電子材

---

[1] 元の原告、Cabot Microelectronics Corporationは、本訴訟が停止されている期間中にその社名をCMC Materials, Inc.へと変更した。両当事者はこの変更に正式な効力を持たせるために訴訟上の合意書を作成している。民事訴訟法第7.1条に基づく原告の開示陳述書は依然、正確である。

-1-

料株式会社、およびRohm and Haas Electronic Materials LLC（「被告」と総称）に対し、以下
を主張する。

## 訴訟の性質

1.　　本件は、合衆国法典35（特許）第1条 以 下に基づく、CMCの米国特許番号
9,499,721（「'721特許」）への特許侵害と、裁判所が正当かつ適切とみなすその他の救済につ
いての民事訴訟である。

2.　　CMCは、半導体業界向けの消耗材料の大手サプライヤーである。CMCの多く
のイノベーションの中でも特に同社は、米国および世界中のほとんどすべての半導体メーカー
に対する化学機械平坦化（「CMP」）スラリー製品の提供において、数十年間にわたり先導的地
位を占めてきた。

3.　　CMPスラリーは、高度な半導体デバイスの一層複雑化する生産において不可
欠な役割を果たしている。CMPスラリーは、CMPパッドとともに使用され、化学反応と機械的研
磨の組み合わせにより、半導体デバイス製造の多くのステップの中で堆積する余分な素材を取
り除くとともに、半導体デバイスのさまざまな層の表面を平坦化し、デバイス表面に残る残留物
と不良を最小限にする。CMPは半導体メーカーが、より小さく、速く、より複雑で、より高いトラン
ジスタ密度の半導体デバイスを製造することを可能にする。このような最先端デバイスをより低
い欠陥率、より高い生産スループット、より低いコストで、製造するという、拡大し続ける需要を
満たすため、CMPスラリーにおけるイノベーションは定常的に必要とされている。

4.　　CMCは、研究開発（「研究開発」）に毎年多くの金額を費やし、半導体業界に革
新的なCMPスラリー・ソリューションを提供するために、多くの資本、労働力、専門知識および

アイデアを投じてきた。'721特許以前は、誘電体用のCMPスラリーは、高pH環境における高濃度のシリカ研磨粒子を必要とする従来型製品によって占められていた。これは誘電体の高い除去率を達成したが、コストが高く、欠陥率も高い設計である。

　　　　5.　　　CMCによる大規模な研究開発努力のひとつして、2014年までに'721特許の発明者は、工学処理されたコロイダルシリカの研磨粒子に基づき、誘電体用の低pHスラリー製品を開発した。固体含有量が低いにも関わらず、これらのCMPスラリーは平面性を改善し、欠陥率を低下し、研磨速度を上げ、所有コストを削減する。これらはすべて、高度な半導体デバイスの製造において求められる、一層の正確さと多数の研磨ステップへの対応において、CMCの顧客に著しいメリットを提供する。D922xスラリーファミリーの一部としてCMCによって発売されたこの新しいスラリーは、CMCの顧客によって称賛され、それ以降、半導体業界全体で商業上の成功を収めてきた。

　　　　6.　　　「コロイダルシリカの化学機械研磨用組成物」という名称の'721特許は、2016年11月22日に、発明者、Steven Grumbine、Jeffrey Dysard、Ernest Shen、およびMary Cavanaughに対し正式かつ法的に発行された。証拠物件A*参照*。 '721特許となる出願は、2015年6月25日に提出され、2014年6月25日に提出された仮出願に対し優先権を主張する。*同上を参照*。'721特許の真正かつ正確な謄本を証拠物件Aとしてここに添付する。

　　　　7.　　　被告はそれぞれ、少なくともOptiplane 2300および2600製品ファミリーおよび同様の成分と特徴を持つその他の製品（「対象製品」）を含む'721特許の1つ以上の請求項（すくなくても組成物に関する請求項3、4、6、10、11、13、14、17、18、19、20、24、26、27、28、29、31、35、36、37および方法に関する請求項39、40、41、42、43、44、および46、総称して

「対象請求項」)の対象となる製品の米国内における製造、使用、販売、販売のオファーを行い、

または米国内へ輸入することにより、何年もの間、CMCの'721特許を直接的および/または間

接的に侵害してきた。

    8.   実際、国際貿易委員会(「ITC」)は*特定の化学機械平坦化(CMP)スラリーおよ*

*びその構成要素*、調査 番号No. 337-TA-1204 (「1204調査」)は、被告による対象製品の輸入

と販売に基づき、すべての被告について'721特許の意図的な侵害をすでに判定している。

    9.   1204調査では、広範囲な事実および専門家による証拠開示手続きとすべての

被告弁護士出席の上での全面的な証拠審問を行った後、行政法審判官(ALJ)(「行政法審判

官」)は、本件において名前の挙げられている各被告は'721特許の1つ以上の対象請求項を直

接的または間接的に侵害していると判定した。証拠物件B (2021年7月8日、仮決定、公開版)

段落87〜144 行政法審判官は'721特許に関する無効性および執行不能性についての被告の

主張をすべて却下もしている。*同上、段落169〜297を参照。同上*段落169(被告による6つの

無効性および執行不能性についての主張を要約)。

    10.   訴訟前の段階で'721特許と侵害について完全な知識を有している、各被告によ

る侵害、勧誘、および/または侵害の助長は、過去および現在において継続する意図的なもの

であり'721特許におけるCMCの知的財産権を明らかに無視している。

    11.   実際、行政法審判官は、「各被申立人」(本訴訟では各被告)は、「'721特許を

知っており」またCMCが2020年6月に訴訟を提起する前から、被告のCMPスラリーの組成物

は「特許登録されていること」を「知っていた」と判定している。*同上の*段落142〜143 具体的に

は、「時系列で事象を見ると、[被告]は対象製品を開発中に'721特許について知ったことが示さ

れて」おり、また、「'721特許前に[被告]が行っていた開発は成功に至らず、放棄された」という

事実を示す証拠がある。*同上*の段落134、211

12.　　被告における侵害の知識とひどい意図的な侵害は、「CMCの特許について知

った1か月後」、各被告のまた別の関連会社である、Rohm and Haas Electronic Materials

CMP Holdings, Inc.が申請した2017特許出願が、以下の通り、'721特許とほぼ同一の文言で

出願されているという事実により、さらに確認することができる。*同上*の段落210～211を参照

（米国特許10,557,060を引用）

| CMC の'721 特許、11:4～13<br>（2015 年 12 月 31 日公開） | DuPontの'060特許、7:28～38<br>（2016年3月1日出願） |
|---|---|
| 永久正電荷とは、シリカ粒子上の研磨用の当初からの正電荷を持つシリカ粒子の内部にコロイダルシリカ粒子の正電荷があるため、例えば洗い流しや希釈、濾過などにより簡単に可逆性を持たないことを意味する。永久正電荷は粒子内に正電荷種を組み込んだ結果である可能性がある。永久正電荷はさらに粒子と正電荷種間の共有結合性相互作用によってもたらされ、これは、例えば粒子と正電荷種間の静電相互作用の結果である可逆的な正電荷と対比される。 | 本書で使用する、表面の永久正電荷とは、シリカ粒子上の正電荷を意味し、これは容易な可逆性を持たない。つまりシリカ粒子上の正電荷は、洗い流しや希釈、濾過により可逆性を持たない。永久正電荷は例えば、カチオン種とコロイダルシリカ粒子の間の共有結合によってもたらされる場合がある。永久正電荷を持つコロイダルシリカは、カチオン種とコロイダルシリカの間の静電相互作用がもたらすことのある可逆的正電荷を持つコロイダルシリカとは対照的である。 |

13.　　さらに、すべての被告は、CMCが侵害について詳述した請求項チャートを被告

DuPont de Nemours, Inc.、Rohm and Haas Electronic Materials CMP, LLC、およびRohm

and Haas Electronic Materials LLCへ送付した.2020年4月13日には遅くとも'721特許の侵害

について直接的知識を持っていたと考えられる。*同上*の134

14.　　情報と見解に基づく限り、各被告は、対象製品の製造、使用、販売、販売のオ

ファーおよび国内製造した対象製品の輸入に関しては被告DuPont de Nemours, Inc.の指示

と管理の下に他の被告と連携して行っており、したがって、各被告は遅くとも2020年4月13日に

は'721特許の直接的および/または間接的侵害について気づいていた。

15. ITCが全面的に再審理した行政法審判官の判定は、すべての点においてCMC

が勝訴し、2021年12月16日に被告に対し排除命令と停止命令が発せられた。証拠物件C（委

員会意見）を*参照*。ITCは、直接的および間接的侵害について行政法審判官の決定を特に支

持した。*例として同上の段落*14*を参照*。（「委員会は、組成物に関する請求項についての判定

を支持し、Optiplane™ スラリーの輸入は、関税法第337条（a）（1）（B）（i）の意味において「侵

害する物品」の輸入を構成するため、第337条への違反であると認めている」。）段落19（「よっ

て委員会は、IDに記載される理由により『被申立人は、Rohm and Haas Electronic Materials

CMP LLCによる、方法に関する請求項の直接的侵害を助長した』というIDの見解を支持す

る。」）ITCは再審理を行わないことを決定したため、行政法審判官の判定が有効性を維持す

る。*同上*段落6

16. 被告はITCのいずれの決定にも上訴していない。したがって、ITCの決定は最

終的なものとなり、本裁判所は、2022年5月18日に本件の停止を解除した。D.I. 18. CMCは現

在、3倍の損害賠償金、意図的な侵害であるという判決、'721特許の残りの有効期間において

被告による侵害を停止するために必要となる追加の差止命令を含め、被告による侵害に対す

る損害賠償金を求めており、その権利を与えられている。

## 当事者

17. 原告であるCMCは、870 North Commons Drive, Aurora, IL 60504に主たる

事業所を有するデラウエア州の上場企業である。

18. 被告であるDuPont de Nemours, Inc.は、974 Centre Road, Building 730,

Wilmington, DE, 19805に主たる事業所を有するデラウエア州企業である。被告である DuPont de Nemours, Inc.は、他の被告の究極の親会社であり、対象製品の販売、販売のオ ファーを行い、他の被告による対象製品の製造、使用、および輸入を管理している。

19. 被告である、Rohm and Haas Electronic Materials CMP LLC.は、DuPont de Nemours, Inc.の子会社であり、451 Bellevue Road Newark, DE 19713に主たる事業所を有 するデラウエア州企業である。被告、Rohm and Haas Electronic Materials CMP LLCは、対 象製品の製造、使用、販売、販売のオファー、輸入を行っている。

20. 被告であるRohm and Haas Electronic Materials CMP Asia Inc.は、DuPont de Nemours, Inc.の子会社であり、Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)という商号で事業を行い、4F., NO.6, LN. 280, Zhongshan N. Rd., Dayuan Dist., Taoyuan City, 337017 Taiwanに主な事業所を有する、デラウエア州企業であ る。incorporated to segment 11 被告である、Rohm and Haas Electronic Materials CMP Asia Inc.は、対象製品の輸入を行い、および/または対象製品の製造、使用、販売、販売のオ ファー、輸入の勧誘を行っている。

21. 被告であるRohm and Haas Electronic Materials Asia-Pacific Co., Ltd.は、 DuPont de Nemours, Inc.の子会社であり、6, Kesi 2nd Rd., Chunan, Miaoli, 350401 Taiwanに主たる事業所を有する、台湾企業である。被告である、Rohm and Haas Electronic Materials Asia- Pacific Co., Ltd.は、対象製品を輸入し、また対象製品の製造、使用、販売、 販売のオファー、輸入を勧誘している。

22. 被告であるローム・アンド・ハース電子材料株式会社は、DuPont de Nemours,

Inc.の子会社であり、日本国〒100-0014東京都千代田区永田町2-11-1 山王パークタワーに主たる事業所を有する、日本企業である。被告であるローム・アンド・ハース電子材料株式会社は、対象製品および/またはその構成要素の輸入を行い、および/または対象製品の製造、使用、販売、販売のオファー、輸入を勧誘している。

23. 被告であるRohm and Haas Electronic Materials LLCは、DuPont de Nemours, Inc.の子会社であり、455 Forest Street, Marlborough, MA 01752に主な事業所を有するデラウエア州企業である。被告であるRohm and Haas Electronic Materials LLCは、対象製品の輸入、販売、および/または販売のオファーを行い、および/または対象製品の製造、使用、販売、販売のオファー、輸入を勧誘している。

## 管轄権と裁判籍

24. CMCは段落1～23を参照により組み込む。

25. 本訴訟は、合衆国法典35（特許）第271条を含む米国特許法に基づき提起されているため、本裁判所は、合衆国法典28（司法および司法手続き）第1331条および第1338条(a)に基づき、本訴訟に関する事物管轄権を有する。

26. DuPont de Nemours, Inc.は、直接的にまたは関連会社を通して、デラウエア州における対象製品の製造、使用、販売、販売のオファーおよび/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は被告DuPont de Nemours, Inc.に対し対人管轄権を有する。DuPont de Nemours, Inc.がデラウエア州法の下で組織された企業であること、また主たる事業所を州内に有することを含めデラウエア州内で実質的な取引を行うことによりデラウエア州法の便宜と保護を意図的に利用してい

ることも、同社に対する対人管轄権の根拠となる。

27. Rohm and Haas Electronic Materials CMP LLCは、直接的にまたは関連会社を通して、デラウエア州における対象製品の製造、使用、販売、販売のオファーおよび/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は、被告Rohm and Haas Electronic Materials CMP LLCに対する対人管轄権を有する。Rohm and Haas Electronic Materials CMP LLCがデラウエア州法の下で組織された企業であること、また主たる事業所を州内に有することを含めデラウエア州内で実質的な取引を行うことによりデラウエア州法の便宜と保護を意図的に利用していることも、同社に対する対人管轄権の根拠となる。

28. Rohm and Haas Electronic Materials CMP Asia Inc.は、直接的にまたは関連会社を通して、デラウエア州における対象製品の製造、使用、販売、販売のオファーおよび/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は、被告Rohm and Haas Electronic Materials CMP Asia Inc.に対する対人管轄権を有する。Rohm and Haas Electronic Materials CMP Asia Inc.がデラウエア州法の下で組織された企業であること、また実質的、体系的、かつ継続的な連絡係を設置することを含め、デラウエア州内で実質的な事業取引を行うことにより、またデラウエア州内に本拠を置く他の被告と協調活動を行うことにより、デラウエア州法の便宜と保護を意図的に利用していることも、同社に対する対人管轄権の根拠となる。

29. Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.は、直接的にまたは関連会社を通して、デラウエア州における対象製品の製造、使用、販売、販売のオファー

および/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は、被告Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.に対する対人管轄権を有する。Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.が、実質的、体系的、かつ継続的な連絡係を設置することを含め、デラウエア州内で実質的な事業取引を行うことにより、またデラウエア州内に本拠を置く他の被告と協調活動を行うことにより、デラウエア州法の便宜と保護を意図的に利用していることも、同社に対する対人管轄権の根拠となる。

30. ローム・アンド・ハース電子材料株式会社は、直接的にまたは関連会社を通して、デラウエア州における対象製品および/またはその構成要素の製造、使用、販売、販売のオファーおよび/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は、被告ローム・アンド・ハース電子材料株式会社に対する対人管轄権を有する。ローム・アンド・ハース電子材料株式会社が、実質的、体系的、かつ継続的な連絡係を設置することを含め、デラウエア州内で実質的な事業取引を行うことにより、またデラウエア州内に本拠を置く他の被告と協調活動を行うことにより、デラウエア州法の便宜と保護を意図的に利用していることも、同社に対する対人管轄権の根拠となる。

31. Rohm and Haas Electronic Materials LLCは、直接的にまたは関連会社を通して、デラウエア州における対象製品の製造、使用、販売、販売のオファーおよび/または輸入を含め、デラウエア州における特許侵害行為を過去および現在において行い続けているため、本裁判所は、被告Rohm and Haas Electronic Materials LLCに対する対人管轄権を有する。Rohm and Haas Electronic Materials LLCが、デラウエア州法の下で組織された企業である

-10-

こと、また実質的、体系的、かつ継続的な連絡係を設置することを含め、デラウエア州内で実質

的な事業取引を行うことにより、またデラウエア州内に本拠を置く他の被告と協調活動を行うこ

とにより、デラウエア州法の便宜と保護を意図的に利用していることも、同社に対する対人管轄

権の根拠となる。

32.　　以下の段落34〜62で述べる情報に基づくものを含め、情報と見解に基づく限り、

本件において名前が挙げられている6社の被告は、国内で製造した対象製品の製造、使用、販

売、販売のオファーおよび輸入に関し被告DuPont de Nemours, Inc.の指示と管理の下に他

の被告と連携して行っている。例えば、行政法審判官およびITCが確認しているように、被告

DuPont de Nemours, Inc.は、その指示と管理を通して子会社である他の被告による侵害を誘

導し助長している。

33.　　被告であるDuPont de Nemours, Inc.、Rohm and Haas Electronic Materials

CMP Inc.、Rohm and Haas Electronic Materials CMP Asia Inc.、およびRohm and Haas

Electronic Materials LLCはデラウエア企業であり、本司法管轄区に所在することから、また被

告Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.とローム・アンド・ハース電子

材料株式会社は外国籍企業であり、デラウエア州を含む任意の司法管轄区で訴えることがで

きることから、合衆国法典28第1391条および1400条(b)に基づき、本地区に正当な裁判籍が

ある。

### 訴因I:米国特許番号 9,499,721の侵害

34.　　CMCは段落1〜33の主張を参照により組み込む。

35.　　CMCは'721特許の所有者であり単独の譲受人であり、'721特許を執行し許諾

-11-

する全面的な権利を有する。

36.　　対象製品は、'721特許の少なくとも請求項1のあらゆる限定を満たしている。

【請求項1】　以下で構成される化学機械研磨組成物：水ベース

の液体担体、

液体担体内に分散するコロイダルシリカの研磨粒子、

コロイダルシリカの研磨粒子の外側表面の内側に組み込まれた化学種。
ここで化学種は含窒素化合物または含燐化合物である。

pHは約3.5から約6の範囲となる。

ここでコロイダルシリカの研磨粒子は15mV以上の永久正電荷を有し、
また

ここで化学種は、アミノシランまたはホスホニウムシランではない。

37.　　対象製品は少なくとも本請求項1を直接的および間接的に侵害している。実際、

1204調査において行政法審判官は侵害の圧倒的な証拠を認めている。証拠物件B 87～144

を*参照*。またITCは被告による直接的および間接的侵害を確認している。証拠物件Cを*参照*。

38.　　具体的には、「対象製品は、化学機械平坦化に使用される化学機械研磨用組

成物であり」これは被告自身の「対象製品のマーケティング資料および安全性データシート」に

記載されている。例として証拠物件Bの92を*参照。*

39.　　さらに行政法審判官が判定したように「対象製品は、水ベースの液体担体を含

む」。*同上*の93 被告自身の「処方および技術文書」がこの限定は満たされていることを証明す

る。*同上*

40.　　対象製品はまたコロイダルシリカの研磨粒子を含む。*同上*の93～94 行政法審

判官が判定したように、被告自身の「文書が、対象製品にはコロイダルシリカ研磨粒子が液体

-12-

担体内に分散していると説明している。」*同上*

41. 対象製品の構成は、行政法審判官も判定したように、「コロイダルシリカの研磨粒子の外側表面の内側に化学種が組み込まれている。ここで化学種は含窒素化合物または含燐化合物である。」*同上*の95～96 実際、ITCでは、被告は「この限定が満たされている点について反論していない。」*同上*の95 さらに、1204調査におけるCMC側の専門家による対象製品の試験により、この限定が満たされていることが確認されている。*同上*

42. 対象製品はまた、約3.5～6の間のpHを持つ。*同上*の97 対象製品のpHはCMC側の専門家により証明されたが、その値は「[被告の]技術文書と一致するものであった。」*同上*

43. 対象製品内のコロイダルシリカの研磨粒子は15mV以上の永久正電荷を有する。行政法審判官が判定したように「[CMCの専門家]が指示、監督し、2か所の独立した民間試験所で行われた（中略）広範囲な試験から侵害は明らかである。」*同上*の97「対象製品は、'721特許の試験手順に従って測定された。」*同上*の98「特許を侵害する永久正電荷の値を複数の装置で測定したが」「非常に一貫性が高かった。」*同上*行政法審判官は「最終的に」「すべての対象製品の永久正電荷の値は請求項に記載された範囲に収まっている」と結論している。*同上*の99

44. 最後に行政法審判官は、対象製品では「化学種（エチルオキシプロピルアミンなど）は、アミノシランでもホスホニウムシランでもない」と判定している。*同上*の106 実際、「その粒子はアミノシランもホスホニウムシランも含まない。」*同上*

45. 上記すべての理由から、対象製品は請求項1を実施している。これはCMCが裁

判を提起する前に実質的に被告に伝えたことであり、行政法審判官がそのように判定したこと

であり、ITCが既に確認した内容である。*同上*の106

46. 組成物に関する請求項1に加え、行政法審判官も判定したように、組成物に関

する請求項3、4、6、10、11、13、14、17、18、19、20、24、26、27、28、29、31、35、36、37お

よび方法に関する請求項39、40、41、42、43、44、および46を含む数多くの請求項の侵害が

行われている。*同上*の107～124

47. 各被告は対象製品の米国内における製造、使用、販売、および/または販売の

オファー、および/または米国への輸入を行うことにより、文言または均等論に基づき、合衆国

法典35（特許）第271条（a）に違反して、これらの請求項を直接的および/または間接的に侵害

している。

48. 例えば被告「Rohm and Haas Electronic Materials CMP LLCは対象製品の

製造、使用、販売、試験」を米国内で行うことにより、'721特許の組成物および方法に関する請

求項のすべてを直接的に侵害している。証拠物件Bの140、*以下も参照*証拠物件Cの19

（「Rohm and Haas Electronic Materialsは（中略）特許を侵害するスラリーを米国内で製造し、

それにより、主張されている組成物に関する請求項を直接的に侵害している」）。具体的には、

「Rohm and Haas Electronic Materials CMP LLCは（中略）同粒子を対象製品の他の構成要

素と組み合わせ」米国内で対象製品を製造している。証拠物件Bの140「Rohm and Haas

Electronic Materials CMP LLCは完成したスラリーを方法に関する請求項でクレームされてい

るプロセスを使用して試験しており、それにより直接的に主張されている方法に関する請求項

を侵害している。」証拠物件Cの19 *以下も参照*証拠物件E（DuPont公共の利益の陳述）の2

（「2000年以来、DuPontはデラウェア州のニューワークに最先端の製造施設を所有、運営し、そこでOptiplane™ CMPスラリーを製造している。そのためDuPontのOptiplane™ CMPスラリーは国内製造品である。」）

49. さらに被告DuPont de Nemours, Inc.は、米国内で対象製品の販売のオファーと販売を行っている。例えば、DuPontは、「対象製品を製造、使用するために輸入した粒子を使用した後、被申立人は対象製品のサンプルを米国内の顧客その他へ販売している」と認めている。証拠物件Bの129 対象製品は被告DuPont de Nemours, Inc.のウェブサイト上で広告され、米国内で販売のオファーが行われている。*参照*証拠物件D（DuPontのウェブサイト）、*以下も参照*証拠物件E（DuPontの公共の利益の陳述）の3（「複数の半導体企業が、（中略）DuPontのOptiplane™ CMPスラリーを使用している。」）、証拠物件F（DuPontの公共の利益の陳述）の1（「DuPontはCMPスラリー市場におけるグローバルリーダーであり、その国内製造スラリーを、米国内および海外における半導体チップ製造業界における大手企業へ供給している。」）

50. 最後に、被告人であるRohm and Haas Electronic Materials CMP Asia Inc.（商号はRohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch（U.S.A.））、Rohm and Haas Electronic Materials CMP Asia Inc.、（商号はRohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch（U.S.A.）、Rohm and Haas Electronic Materials Asia-Pacific Co. Ltd.、およびローム・アンド・ハース電子材料株式会社は、対象製品もしくはその部品、またはその両方を米国内に輸入しており、Rohm and Haas Electronic Materials LLCは、米国内において対象製品の輸入、販売、および販売の申し入れのいずれか、または

-15-

複数を行っている。

51. 被告は、'721特許を直接侵害したほか、'721特許の1つ以上の請求項を間接的に侵害し、現在も間接的侵害を継続している。

52. 第1項から第51項に記載したとおり、各被告は、本件訴状が提出されるかなり前から、'721特許及びその各侵害を認識している。さらに、被告は申立て対象の各請求項をすべて侵害しているとの判決を1年近く前に受け、現在も故意に侵害を続けている。

53. さらに、各被告は、35 U.S.C. §271(b)に違反する形で、以下の事項のいずれか、または複数を自ら行い、またこれらに関して互いに積極的に連携して、'721特許を直接侵害するよう他者（他の被告、対象の顧客、およびその他の第三者を含む）をこれまで積極的に誘導しており、積極的に誘導し続けている。(a) 他の被告、顧客、およびその他の第三者のいずれか、または複数が、米国において、侵害するような方法で対象製品もしくはその部品またはその両方を使用することを想定した上で、これらを供給したこと。(b) 国内で製造された対象製品を国内外の顧客に対しマーケティング、流通、および販売のいずれか、または複数を行うこと（被告のウェブサイトで行うことを含む）。(c) 侵害するような方法で対象製品を使用するよう顧客に指示・推奨し、しかもその行為が'721特許を侵害すると認識していたこと。*参照資料*附属書Bの139（「上記に照らして、被申立人は、具体的な意図をもって故意に'721特許の侵害を誘導している。その手段に含まれるものとしては、侵害製品の組み立てもしくは製造、またはその両方のために米国内で部品を提供したり、これらの製品を米国内で使用するものとして米国の顧客に販売したり、その他の方法で意図的に直接的侵害を引き起こすなどである」）

54. 例えば、ITCが判断したように、「被告たるDuPont de Nemours, Inc.およびロ

-16-

ーム・アンド・ハース電子材料株式会社は、他の被申立人の子会社（少なくともデラウェア州の

Rohm and Haas Electronic Materials CMPを含む）が'721特許を侵害するよう積極的に誘導

した」。附属書Cの17を参照。「具体的には、DuPont de Nemours, Inc.およびその子会社であ

る日本のローム・アンド・ハース電子材料株式会社の従業員はBS-3コロイダルシリカを日本で

購入し、Rohm and Haas Electronic Materials CMP LLCがこれを米国内で使用して侵害品で

あるCMPスラリーを製造することを想定した上で、これを米国内に輸入させていた。その後

Rohm and Haas Electronic Materials CMP、その顧客、および第三者の研究所が、侵害する

ような方法でCCMPスラリーを米国内で使用した。」*同上*

  55.  同様に、少なくとも、被告であるRohm and Haas Electronic Materials CMP

Asia Inc.（商号は Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch

（U.S.A.））および Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. は、'721特許

を侵害するよう積極的に他の被告（少なくともRohm and Haas Electronic Materials CMP

LLCを含む）を誘導していた。被告であるRohm and Haas Electronic Materials CMP Asia

Inc.（商号は Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch

（U.S.A.））およびRohm and Haas Electronic Materials Asia-Pacific Co., Ltd.は、顧客に対

する対象製品のマーケティング、販売、および販売の申し入れのいずれか、または複数に従事

しており、米国内でのこういった活動を促進するために、Rohm and Haas Electronic

Materials CMP LLCに対象製品の製造、使用、および試験を行わせ、これによって、'721特許

を直接的に侵害することとなった。

  56.  さらに、ALJが判断したように「被申立人の顧客による直接的な侵害があり、被

申立人は、対象製品を顧客に供給し、クレームを侵害する方法で使用するように指示すること

により、この侵害を誘導している。附属書Bの138を参照。例えば、少なくとも被告である

DuPont de Nemours, Inc.、Rohm and Haas Electronic Materials CMP LLC、およびRohm

and Haas LLCは、対象製品を供給し、'721特許の主張されている組成物と方法クレームの両

方を侵害する方法で使用するように指示することにより、米国の顧客が'721特許を侵害するよ

うに誘導している。この点に関して、被告は「顧客が対象製品を使用する方法について精通し

ている」ことを証拠が示しており、そのような使用は、直接的に'721特許を侵害する。附属書B

の138を参照。

57.  35 U.S.C. § 271(c)の違反で、各被告は、対象製品および／または対象製品

の成分を米国内で販売する、および／または販売を申し出るか、米国に輸入することによって、

(他の被告および顧客のような)他人による'721特許の侵害にも寄与しており、寄与を継続して

いる。この対象製品は、特に「721特許」を侵害するために製造または改造されたものであり、

実質的に侵害のない使用のために適した汎用商品ではない。

58.  例えば、「DuPont de Nemours, Inc.および子会社のRohm and Haas

Electronic Materials CMP LLCおよびRohm and Haas Electronic Materials K.K. of Japan

を含む」被告は、対象製品の … 粒子成分を米国 … に輸入させている。附属書Bの140を参照。

Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic

Materials CMP Asia Inc.、Taiwan Branch (U.S.A.) and Rohm and Haas Electronic

Materials Asia-Pacific Co., Ltd.、およびRohm and Haas Electronic Materials K.K.といった、

「外国の被申立人による粒子の輸入と供給」は、「Rohm and Haas Electronic Materials CMP

-18-

LLCによる直接的な侵害に寄与している。」附属書Cの18～19を参照。「Rohm and Haas Electronic Materials CMP LLCは［輸入され、かつ］供給された粒子を使用して、米国で特許侵害のスラリーを製造し、主張されている組成物のクレームを直接的に侵害している。」*同上*の19を参照。さらに、'721特許の方法クレームについて「Rohm and Haas Electronic Materials CMP LLCは、方法クレームにおいてクレーム対象となっているプロセスを使って、完成したスラリーをテストしているので、主張されている方法クレームを直接的に侵害している。」*同上*の19を参照。

59. 供給される粒子は「対象製品を製造する目的で［被告が］管理する成分」であるので、実質的に侵害のない使用ではなく、汎用商品ではない。附属書Bの136参照。*同上*の141も参照（「対象製品も輸入された … 粒子も、実質的に侵害のない使用ではない。… 被申立人は、… 被申立人の対象製品での使用に合わせて、被申立人のために特別に設計および製造されたコロイドシリカ粒子を輸入している … ［輸入コロイドシリカ粒子は］市販の商品ではない。」）*同上*の142を参照（「実際、被申立人は対象製品を製造する目的以外で、他の用途にその…粒子を指定していない。また、対象製品は'721特許で説明されているCMP以外の用途はない … 少なくともこれらの理由により、… 粒子は、'721特許の侵害のために特別に製造されており、汎用品ではない。」）

60. さらに、ALJが判断したように、「すべての被申立人」、すなわち本件のすべての被告人が、米国で対象製品の利用や試験を行う「被申立人の米国顧客」およびその他の第三者「の侵害に寄与」している。附属書Bの142を参照。

61. 被告人による'721特許の侵害は計画的で故意になされたものであり、合衆国法典第35編第284条に基づく追加の損害賠償の正当な根拠となるとともに、合衆国法典第35

-19-

編285条に基づく本訴訟の提起にあたり生じた弁護士報酬および費用の裁定の正当な根拠となる。ALJが判断したように、「被申立人はCMCの発明を模範にしたと思われ」、被告人による「対象製品の開発中、'721特許ははっきりと認識されていた。」附属書Bの134を参照。上述のとおり、各被告人は'721特許について把握しており、CMCが2020年6月に提訴する以前から対象製品の構成が特許を取得していることを承知していた。それにもかかわらず、'721特許の侵害通知を受け、さらには、すべての争点について提訴が完全に認められ、ITCによりCMCに有利な決定がなされた後でも、各被告人は、'721特許を直接または間接的に侵害している事実を知り、それを意図しながら、自身の侵害行為を継続した。

62.　　被告人の侵害により、CMCに対する損害と回復不能な権利侵害が引き起こされ、それが現在に至るまで続いており、本裁判所で侵害が禁じられない限り、CMCは損害と回復不能な権利侵害を被り続けることになる。本手続をもって、CMCは、被告人による'721特許の故意、不正、かつ不当な使用を中止させるとともに、被告人の故意の侵害によってCMCが被った著しい損害に対する重大な損害賠償などといった金銭的救済を得ることを求める。

### 救済の嘆願

ゆえに、CMCは、以下のとおり救済を嘆願する。

a.　　過去から現在にわたり、各被告人が直接または間接的に'721特許を侵害していること。

b.　　過去から現在にわたり、各被告人による'721特許の侵害が故意に行われていること。

c.　　合衆国法典第35編第284条に従い、各被告人に対し、故意の侵害に対

-20-

する追加の損害賠償を含め、CMCが権利を有するすべての金銭的損害賠償を（判決前後の

利息と併せて）CMCに支払うように命じること。

     d.    本件を合衆国法典第35編第285条に基づく例外的事件として宣言する

とともに、CMCへの裁定を認め、被告人がCMCの弁護士報酬を支払うこと。

     e.    '721特許のこれ以上の侵害を禁じる差止命令。

     f.    本裁判所が公正かつ公平とみなすその他のさらなる救済措置。

## 陪審審理の請求

対象となり得るすべての請求と係争で陪審審理を請求する。

/s/ John W. Shaw

John W. Shaw（No. 3362）
Karen E. Keller（No. 4489）
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th
Floor Wilmington, DE 19801
（302）298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*原告側弁護人*

弁護士：
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
（212）408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
（202）639-7700

日付：2022年6月1日

-21-



# CERTIFICATION

TransPerfect is globally certified under the standards ISO 9001:2015, ISO 17100:2015, and ISO 18587:2017. This Translation Certificate confirms the included documents have been completed in conformance with the Quality Management System documented in its ISO process maps and are, to the best knowledge and belief of all TransPerfect employees engaged on the project, full and accurate translations of the source material.

File Name(s):                Pages from 2022-06-1 [D-023] First Amended Complaint w. Exhs. A-F

Source Language(s):      English

Target Language(s):      Japanese

Authorized Signature:                         Signature, Notary Public:

Name:     Jacqueline Yorke

Title:      Project Manager

Date:     June 3, 2022



*Stamp: Notary Public*

Reason for signature: I approve the accuracy of this document content as written

# EXHIBIT 3

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

BEFORE THE HONORABLE DAVID P. SHAW
ADMINISTRATIVE LAW JUDGE

In the Matter of:

CERTAIN CHEMICAL MECHANICAL
PLANARIZATION SLURRIES AND          Investigation No. 337-TA-1204
COMPONENTS THEREOF

NONPARTY PMP FERMENTATION PRODUCTS, INC.'S RESPONSES
AND OBJECTIONS TO SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

Nonparty PMP Fermentation Products, Inc.'s ("PMP") hereby submits its responses and

objections to the Subpoena *Duces Tecum* and *Ad Testificandum* issued in the above-captioned

matter.

GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION

1.      PMP objects to all requests for production as overly broad and unduly burdensome

on the grounds that PMP has no information, documents, or tangible things responsive to any

request, and directs counsel to the Declaration attached as Exhibit 1 hereto.

2.      PMP objects to the definition of "PMP," "You," and "Your" to the extent it seeks

to impose an obligation on PMP to seek documents from its attorneys, former employees,

members, agents, representatives, consultants, accountants, predecessors-in-interest, divisions,

subsidiaries, affiliates, joint ventures or any other legal entities that wholly or partially owned or

controlled by PMP, either directly or indirectly, as well as the principals, directors, officers,

owners, employees, members, agents, representatives, consultants, accountants, and attorneys of

these entities, to the extent such documents and information are not within PMP's possession, custody, or control.

3.     PMP objects to any request for production to the extent it seeks documents protected by any applicable privilege.

4.     PMP objects to the instructions to the extent they seek to impose a duty on PMP to log information related to destroyed or discarded documents beyond the duty imposed under the Federal Rules of Civil Procedure, or other applicable law.

5.     PMP objects to each request for production as overly broad and unduly burdensome to the extent it seeks to impose a disproportionate burden on PMP to search for and produce each and every conceivably responsive document regardless of relevance or duplicativeness.

6.     All responses herein are subject to and incorporate the foregoing objections.

## RESPONSES TO REQUESTS FOR DOCUMENTS AND THINGS TO BE PRODUCED

1.     Documents and things sufficient to show Your and/or Fuso's sale, offer to sale, importation into the U.S., manufacture, possession, testing, development, purchase, or promotion of colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

2.     Documents and things sufficient to show Your and/or Fuso's relationship with Cabot with respect to colloidal silica abrasive particles, including all communications with Cabot,

2

all contracts or agreements with Cabot, all invoices or other charges to or from Cabot, all payments received from or made to Cabot, all sales of colloidal silica abrasive particles to Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

3. All presentations and testing provided by You and/or Fuso to Cabot concerning colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

4. Documents and things sufficient to show Your relationship with Fuso with respect to colloidal silica abrasive particles, including all communications with Fuso, including all contracts or agreements with Fuso, concerning colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the

3

General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

5. Documents and things sufficient to show all colloidal silica abrasive particles that have been imported into the United States by or on behalf of You or Fuso or any customer of you or Fuso.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

6. Documents and things sufficient to identify and describe of each type of colloidal silica abrasive particle provided by You and/or Fuso to Cabot before June 25, 2015.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

7. Documents and things sufficient to identify the earliest date when You and/or Fuso provided each type of colloidal silica abrasive particle to Cabot.

4

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

8. Documents and things sufficient to show any colloidal silica abrasive particles known to You and/or Fuso that incorporate a nitrogen containing compound.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

9. Documents and things sufficient to show all colloidal silica abrasive particles known to You and/or Fuso that incorporate a nitrogen containing compound and have been imported into the United States by or on behalf of Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

5

10.     Documents and things sufficient to show any colloidal silica abrasive particles known to You and/or Fuso that incorporate a phosphorous containing compound.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

11.     Documents and things sufficient to show all colloidal silica abrasive particles known to You and/or Fuso that incorporate a phosphorous containing compound and have been imported into the United States by or on behalf of Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

12.     Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine the nitrogen or phosphorous content of colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used and the results of the testing, analysis, or evaluation.

6

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

13. Documents and things sufficient to show the full range of zeta potentials and Permanent Positive Charges that have been obtained by or are known to You and/or Fuso for colloidal silica abrasive particles, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

14. Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine a zeta potential and Permanent Positive Charge of colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used, protocol(s) applied, and the results of the testing, analysis, or evaluation.

7

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

15.    Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine a zeta potential and Permanent Positive Charge of slurries containing colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used, protocol(s) applied, and the results of the testing, analysis, or evaluation.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

16.    Documents and things sufficient to show and describe each process, method, and technique for manufacturing Your and/or Fuso's colloidal silica abrasive particles, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, and any colloidal silica abrasive particles prepared

8

specifically for or offered to any third party, including documents and things sufficient to show any catalysts used in each process, method, and technique.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

17. Documents and things sufficient to show and describe the structural and compositional differences between BS-2, BS-2H, and BS-3 particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

18. Documents and things sufficient to show and describe the structural and compositional differences between HL particles, PL particles, and BS particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

#18138855v1

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

19. Documents and things sufficient to show and describe all research and development of colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 and any colloidal silica abrasive particles prepared specifically for or offered to any third party.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

20. Documents and things sufficient to show and describe any changes, alterations, or modifications to any colloidal silica abrasive particle structure or composition, or process for making the same, manufactured by You and/or Fuso, including documents and things sufficient to show when each change, alteration, or modification was made and the result of each change, alteration, or modification.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

10

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

21.     Documents and things sufficient to show and describe all sales, offers for sale, disclosures, and importations into the United States prior to June 25, 2015, of colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, and any colloidal silica abrasive particles prepared specifically for or offered to any third party.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

22.     A one (I) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control.  Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

23.    A one (1) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 that was in public use, sold, offered for sale, or otherwise available to customers before June 25, 2015.

**RESPONSE:** MP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

24.    A one ( l) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 that was in public use, sold, offered for sale, or otherwise available to customers before June 25, 2014.

**RESPONSE:** MP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

25.    Manufacturing and product specifications for each sample provided in response to Request Nos. 22-24.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

12

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

26.     Documentation evidencing sales, offers for sale, and shipments from You and/or Fuso to customers and potential customers for each sample provided in response to Request No. 22-24.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control.     Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

27.     All documents concerning the particles and the preparations described in the Examples and Comparative Examples disclosed in Japanese published patent application JP2016-8157A, including any unreported testing of those particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control.     Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

28. All communications and agreements with Cabot concerning the invention disclosed in Japanese published patent application JP2016-8157A, including the Examples and Comparative Examples.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

## GENERAL OBJECTIONS TO TOPICS FOR TESTIMONY

1.      PMP objects to Topics as overly broad and unduly burdensome on the grounds that PMP has no information, documents, or tangible things responsive to any Topic, and directs counsel to the Declaration attached as Exhibit 1 hereto.

2.      PMP objects to any Topic to the extent the Topic is inconsistent with the Federal Rules of Civil Procedure, or otherwise attempts to impose discovery response obligations beyond that required under the Federal Rules of Civil Procedure, or any other obligation under any other applicable law.

3.      PMP objects to each Topic to the extent the Topic seeks any information that is subject to any attorney/client privilege, any work product doctrine or any additional applicable privilege, immunity, or rule of confidentiality.

4.      PMP objects to each Topic to the extent the Topic is overly broad, unduly burdensome, oppressive, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or not proportional to the needs of this lawsuit.

5.      PMP objects to each Topic to the extent the Topic seeks disclosure of matters or materials not within the possession of PMP, matters or materials which are unreasonably cumulative or duplicative, or matters or materials which are obtainable from some other source that is more convenient, less burdensome, or less expensive.

6.      PMP objects to each Topic to the extent the Topic might be based upon a conclusion of law or facts unknown to PMP, or based upon assumptions of law or facts as to which PMP disagrees or does not accept.

7.      PMP objects to each Topic to the extent the Topic seeks information or documents which are in the possession or control of an entity other than PMP; in addition, PMP objects to

each Topic to the extent the Topic seeks information or documents which are already within the parties' knowledge, possession and/or control, as such, the Topic is overly broad, unduly burdensome and oppressive.

8.      No objection or testimony to any Topic shall be construed as an admission by PMP of the relevancy, reasonableness, discoverability, or admissibility of the matters or materials disclosed, or the truth or accuracy of any characterization contained in the Topics.

## RESPONSES TO TOPICS FOR TESTIMONY

1.      Your relationship with Fuso with respect to supply, design, development, manufacture, testing, importation into the U.S., packaging, storing, shipping, distributing, marketing, selling, and/or offering to sell colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

2.      Your relationship with Cabot with respect to supply, design, development, manufacture, testing; importation into the U.S., packaging, storing, shipping, distributing, marketing, selling, and/or offering to sell colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

16

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

3.    Identification and description of each type of colloidal silica abrasive particle provided by You and/or Fuso to Cabot before June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

4.    The earliest date when the colloidal silica abrasive particles of Topic 3 were provided to Cabot.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

5.    Cabot's participation in the research and development of colloidal silica abrasive particles of Topic 3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

6.     Zeta potential and Permanent Positive Charge testing of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used, protocol(s) applied, and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

7.     Zeta potential and Permanent Positive Charge testing for or on behalf of Cabot of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used, protocol(s) applied, and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

8.     Zeta potential and Permanent Positive Charge testing of slurries containing colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

#18138855v1

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

9.      Zeta potential and Permanent Positive Charge testing for or on behalf of Cabot of slurries containing colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

10.     Nitrogen and Phosphorus level testing of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

11.     Nitrogen and Phosphorus level testing for or on behalf of Cabot of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

12.     The research and development of colloidal silica abrasive particles manufactured by You and/or Fuso including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

13.     The research and development for or on behalf of Cabot of colloidal silica abrasive particles manufactured by You and/or Fuso including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

20

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

14.     The dates each colloidal silica abrasive particle manufactured by You and/or Fuso became available to customers including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

15.     The dates each colloidal silica abrasive particle manufactured by You and/or Fuso became available to Cabot including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

16.     Importation of colloidal silica abrasive particles into the U.S., including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, before June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

17.    Any changes, alterations, or modifications to each colloidal silica abrasive particle manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

18.    The method(s) or process(es) of manufacturing for each colloidal silica abrasive particle manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

19.     Any changes, alterations, or modifications to the manufacturing method(s) or process(es) for each colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

20.     The samples produced in response to this subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

21.     The product specifications for each sample produced in response to this subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

23

PMP states it has no information responsive to this Topic because it has samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

22.     Whether the samples produced in response to the subpoena are representative of product used, sold, m: offered to sale prior to June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

23.     Whether the samples produced in response to the subpoena are representative of product used, sold, or offered to sale prior to June 25, 2014.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1

24.     The use, sale, or offer for sale prior to June 25, 2015 of products represented by the samples produced in response to the subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

24

PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

25.     The use, sale, or offer for sale prior to June 25, 2014 of products represented by the samples produced in response to the subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

29.     Documents and things produced in response to this subpoena, including, but not limited to, the collection and substance of those documents and things.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because has no knowledge or information relevant to the subject matter of this dispute, and directs counsel to the Declaration attached hereto as Exhibit 1.

30.     Documentation identifying and describing sales, offers for sale, and shipments from You and/or Fuso to customers and potential customers for each sample provided in response to Request No. 18-20.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

31. The Examples and Comparative Examples disclosed in Japanese published patent application JP2016-8157A.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

32. Communications with Cabot concerning the invention disclosed in Japanese published patent application JP2016-8157A, including the Examples and Comparative Examples.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

Dated: September 18, 2020       As to objections only,

**BARNES & THORNBURG LLP**

By*: / s/ Jonathan P. Froemel*___

Jonathan P. Froemel (Illinois Bar No. 6237103)
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Fax: (312) 759-5646
jonathan.froemel@btlaw.com

***Attorney for PMP Fermentation Products, Inc.***

27

# EXHIBIT 4

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

## BEFORE THE HONORABLE DAVID P. SHAW
## ADMINISTRATIVE LAW JUDGE

In the Matter of:

CERTAIN CHEMICAL MECHANICAL
PLANARIZATION SLURRIES AND          Investigation No. 337-TA-1204
COMPONENTS THEREOF

## DECLARATION OF JAMES H. ZINKHON, JR.

I, James H. Zinkhon, Jr., hereby declare the following:

1.     I am older than eighteen years of age, I am competent to make this Declaration, and I will testify to the matters set forth herein if called upon to do so.

2.     I am the President of PMP Fermentation Products, Inc.'s ("PMP"). I have held this position for 2 years.

3.     By virtue of my position at PMP, I have personal knowledge of the facts set forth in this Declaration.

4.     PMP is a Delaware corporation headquartered in Illinois which specializes in the fermentation of safe, natural products for food safety and preservation, and as a source for environmentally friendly chemicals.

5.     Although PMP is a subsidiary of Fuso Chemical Co., Ltd. ("Fuso"), PMP is a separate and distinct entity from Fuso.

6.     PMP has no knowledge of or information regarding Fuso's production, manufacture, supply, distribution or use of colloidal silica abrasive particles, if any.

1

7. PMP is not now, and never has been, in the business of producing, manufacturing, supplying, or distributing colloidal silica abrasive particles.

8. PMP has no knowledge of or information regarding the subject matter of U.S. Patent No. 9,499,721.

9. I have reviewed the Attachment A to the Subpoena *Duces Tecum* and *Ad Testificandum* in its entirety.

10. PMP has no knowledge, information, documents, or tangible things responsive to this Subpoena *Duces Tecum* and *Ad Testificandum*.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/15/2020

James H. Zinkhon, Jr.

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY