IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 20-738-MN |
| ) | |
| DUPONT DE NEMOURS, INC., ROHM ) | |
| AND HAAS ELECTRONIC MATERIALS ) | |
| CMP, LLC, ROHM AND HAAS ) | |
| ELECTRONIC MATERIALS CMP ASIA ) | |
| INC. (d/b/a ROHM AND HAAS ) | |
| ELECTRONIC MATERIALS CMP ASIA ) | |
| INC, TAIWAN BRANCH (U.S.A.)), ROHM ) | |
| AND HAAS ELECTRONIC MATERIALS ) | |
| ASIA-PACIFIC CO. LTD., ROHM AND ) | |
| HAAS ELECTRONIC MATERIALS K.K., ) | |
| and ROHM AND HAAS ELECTRONIC ) | |
| MATERIALS LLC, ) | |
| ) | |
| Defendants. ) | |

**CMC'S RESPONSE TO DUPONT'S MOTION (D.I. 25) FOR
THE ISSUANCE OF A LETTER ROGATORY FOR INTERNATIONAL
<u>JUDICIAL ASSISTANCE REGARDING FUSO CHEMICAL CO., LTD</u>**

For the reasons set forth below, CMC Materials, Inc. ("CMC") opposes DuPont's[1] motion for foreign discovery from Fuso, but if the Court is inclined to issue a Letter Rogatory, then CMC requests that a discovery schedule be entered unimpeded by the delays typically associated with a Letter Rogatory. CMC is most concerned that DuPont does not delay this case with the "complicated, dilatory and expensive system" of Letter Rogatory that has no fixed timeline or

---

[1] Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC are collectively referred to herein as "DuPont."

1

certain outcome.² *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S.D. Iowa*, 482 U.S. 522, 531 (1987); *see Complaint of Bankers Tr. Co.*, 752 F.2d 874, 890 (3d Cir. 1984) (noting that it is in the district court's discretion whether to issue the Letter Rogatory).

In this regard, DuPont's motion gives the false impression that the requested discovery is necessary but unattainable except from Fuso. DuPont's motion wholly ignores the substantial discovery between the parties regarding Fuso in a related ITC litigation, *Certain Chemical Mechanical Planarization Slurries and Components Thereof*, Inv. No. 337-TA-1204 (the "1204 Investigation"). Accordingly, DuPont's motion leaves several issues unexplained.

For instance, as an initial matter, the basis of DuPont's motion is that the Letter Rogatory purportedly seeks discovery that is "highly relevant to the claims and defenses *at issue in the present litigation*," but DuPont has not yet answered CMC's complaint or plead any claims or defenses. D.I. 25 at 4 (emphasis added). Therefore, while the purported basis for DuPont's motion is tentative and uncertain, the motion suggests that DuPont intends to raise the same invalidity claims regarding Fuso's particles and inventorship that it raised in the 1204 Investigation. If that is the case, which all signs indicate it is, then foreign discovery from Fuso is unnecessary and

---

² This litigation is already experiencing unnecessary delay. After demanding that the Court "confirm" the stay ended (*see* D.I. 16), which the Court did in its May 18, 2022 Oral Order (D.I. 18), DuPont has continued to drag its feet. As of the date of this filing, more than two weeks have elapsed since CMC proposed a draft scheduling order without so much as a counter proposal from DuPont. *See* Exhibit A (Emails regarding scheduling order) at 1-2; Exhibit B (Emails regarding ITC Material) at 4. DuPont has ignored CMC's request for a follow-up meet and confer. *Id.* DuPont filed a motion to dismiss the Complaint, asserting positions in that motion about indirect infringement and the activities of DuPont in infringing the asserted patent that were inconsistent with facts known to DuPont and aired publicly at the ITC. *See* D.I. 23; Exhibit C (Emails regarding extension request) at 1-2. Most recently, DuPont asked for an extension to respond to the First Amended Complaint (D.I. 23). *Id.* While CMC is not generally opposed to any reasonable scheduling accommodation, including that extension request, CMC asked for DuPont's commitment to engage in and conclude the scheduling process. DuPont appears to have rejected this request as well. *Id.*

certainly should not be used to delay this case. These defenses were the subject of extensive discovery and were fully litigated in the 1204 Investigation based on a substantial amount of evidence relating to Fuso and its particles, including both documentation and party witness testimony, that is already within the parties' possession, custody, or control, and DuPont lost on the merits on all issues.

DuPont's failure to mention this substantial amount of evidence in its motion raises concerns that DuPont seeks the Letter Rogatory for purposes of delay. Indeed, despite CMC's repeated and continuing efforts to streamline this case, such as by proposing a schedule, a motion to have the record from the 1204 Investigation transmitted to this Court, and a discovery stipulation including a cross-use agreement regarding the discovery from the 1204 Investigation to DuPont, DuPont has not responded on any of these issues. Therefore, for the reasons set forth herein, CMC respectfully requests that the Court deny DuPont's request, but if the Court issues the Letter Rogatory, it shall not be a means for indefinitely delaying this case.

## I.   Background

DuPont's Letter Rogatory seeks discovery from Fuso regarding the properties, manufacturing process, and public disclosure of Fuso colloidal silica abrasive particles that DuPont represents is necessary and essential to its invalidity claims and defenses but is "only available from Fuso." D.I. 25 at 4, 6; *see also id.* at 5 ("Plaintiff has represented that responsive information concerning Fuso's colloidal silica abrasive particles is not within its possession, custody, or control."). This suggests that neither CMC nor DuPont is in possession of *any* responsive information regarding the discovery sought by the Letter Rogatory. But that is not true. In fact, as DuPont knows, there was extensive discovery, including numerous responsive documents and dozens of physical samples produced by both parties, witness testimony of both parties, and expert opinions of both parties on these exact issues in the 1204 Investigation.

In the 1204 Investigation, DuPont raised obviousness, inventorship, and inequitable conduct defenses based and focused heavily on Fuso and Fuso colloidal silica abrasive particles. *See* Exhibit D (Public Initial Determination) at 169 (identifying DuPont's six validity or unenforceability defenses). For example, DuPont's obviousness defenses were based on Fuso particles BS-2H, PL-2L, PL-3C, HL-2, HL-3, and another confidential particle, although DuPont ultimately dropped its obviousness contention based on Fuso HL-3 after the evidentiary hearing. *Id.* at 182. For inventorship, DuPont alleged that there was a misjoinder of inventors because "'Fuso was responsible for and contributed to at least the synthetic procedures for making colloidal silica particles on which the patent relies.'" *Id.* at 288. And the basis for DuPont's inequitable conduct defense was that CMC inventors and prosecution counsel failed to disclose the names of certain Fuso particles to the Patent Office. *Id.* at 293-94.

In furtherance of these defenses, as DuPont notes, it "attempted to obtain discovery from Fuso with a Letter Rogatory" but it had still not been "processed through U.S. Department of State before the evidentiary hearing" concluded some five months later, for reasons DuPont's motion does not explain. D.I. 25 at 6, fn. 3.

Nevertheless, foreign discovery from Fuso proved to be unnecessary in the 1204 Investigation. As discovery proceeded without Fuso, both parties discovered and produced a substantial volume of information relating to Fuso and Fuso particles, and bearing directly on DuPont's invalidity defenses, from sources within their possession, custody, or control. And based on the subset of that information that was ultimately entered into evidence, the Administrative Law Judge ("ALJ") rejected each of DuPont's contentions regarding Fuso and Fuso particles on the merits, the Commission confirmed the ALJ's findings, and DuPont did not appeal on any issue. *See* Exhibit D (Public Initial Determination) at 169-170, 182-211 (rejecting obviousness defense

4

based on Fuso particles), 287-292 (rejecting inventorship defense based on Fuso), 292-297 (rejecting inequitable conduct defense based on Fuso particles); Exhibit E (Public Commission Opinion) at 5-6.

## II. Foreign Discovery from Fuso is Unnecessary and Should Not Delay the Case

Letters rogatory are a "complicated, dilatory and expensive system" without a fixed timeline, potentially leading to indefinite delays in a case. *Societe Nationale Industrielle Aerospatiale* 482 U.S. at 531. Therefore, "[b]ecause of the system's cumbersome nature, 'where the relevancy or materiality of the testimony sought is doubtful, the court should not grant the application.'" *Route1 Inc. v. Airwatch LLC*, C.A. No. 17-331-RGA, 2018 WL 6427145 at *1 (D. Del. Dec. 7, 2018) (internal citation omitted) (denying motion for issuance of Letters Rogatory). If this Court is inclined to grant DuPont's motion, CMC respectfully submits that the Letter Rogatory is unnecessary and should not delay this case because: (A) the parties are already in possession, custody, or control of a substantial volume of responsive evidence; (B) DuPont's previously litigated and rejected defenses pertaining to Fuso do not justify indefinitely delaying the case; and (C) there are more practical and efficient means to obtain the requested discovery.

### A. A Letter Rogatory is Unnecessary Because the Parties are in Possession, Custody, or Control of a Substantial Volume of Responsive Evidence

DuPont's conclusory and unsupported statements that the parties are not in possession, custody, or control of the discovery sought and that the discovery sought can only be obtained from a foreign third party are insufficient. *See e.g.*, *Ingenico Inc. v. Ioengine,* LLC, C.A. No. 18-826-WCB, 2021 WL 765757 at *3, *4 (D. Del. Feb. 26, 2021) (finding that the movant's "conclusory assertion … is insufficient"); D.I. 25 at 4, 6. That is particularly true here, because DuPont's conclusory statements are demonstrably wrong. Indeed, the public record from the 1204 Investigation demonstrates that the parties are in possession, custody, or control of information

5

responsive to DuPont's Letter Rogatory, and such information can be expeditiously obtained from the ITC and/or directly from the parties under the Federal Rules of Civil Procedure.

For example, CMC's and DuPont's final exhibit lists from the 1204 Investigation—just a small subset of documents produced during the discovery—identify dozens of documents relating to Fuso's colloidal silica abrasive particles that are already within the parties' possession, custody, or control. Just counting the exhibits with "Fuso" appearing in the exhibit description, the parties introduced into evidence over thirty responsive documents from their possession. *See* Exhibit F (DuPont's Final Exhibit List) (identifying nineteen "Fuso" documents); Exhibit G (CMC's Final Exhibit List) (identifying six "Fuso" documents); Exhibit H (Joint Final Exhibit List) (identifying seven "Fuso" documents). And there are many more. *See e.g.*, Exhibit F (DuPont's Final Exhibit List) at 3 (identifying RX-0058 as relating to Fuso particles "PL-5C & PL-3C"), 25 (identifying five additional exhibits as relating to Fuso particle "HL-3"); Exhibit D (Public Initial Determination) at 13, fn. 5 (listing ten additional documents pertaining to importation/sale of Fuso BS-3 particles, and responsive witness testimony), 23 (identifying two additional agreements relevant to DuPont's relationship with Fuso), 184-88 (identifying numerous additional responsive documents, such as CX-0257C, CX-0254C, JX-0111C, JX-0130C, CX-0269C, CX-0253C, RX-0032C, RX-0059C, CX-0270C, CX-0271C, JX-339C, and responsive fact witness and expert testimony), 291-92 (same, identifying at least CX-0219C, CX-0220C, CX-0211C, CX-0216C, CX-0217C, CX-0213C, CX-0214C, CX-0212C, CX-0190C, CX-0221C, CX-0210C, CX-0215C). Moreover, parties produced samples of these particles for testing and examination during expert discovery in the 1204 Investigation.

All said, the parties entered into evidence over fifty responsive documents pertaining to DuPont's claims and defenses based on Fuso in the 1204 Investigation, and many more documents

and physical samples were produced during discovery.  DuPont's motion is completely silent on this readily available, substantial body of evidence that is responsive to its Letter Rogatory and relevant to its claims and defenses.  As such, DuPont fails to explain why the readily available evidence is insufficient or why additional discovery from Fuso would be relevant, material, and non-cumulative.  Therefore, because the parties are already in possession, custody, or control of a substantial amount of information responsive to DuPont's Letter Rogatory, and that evidence is readily available within the United States, indefinitely delaying this case for foreign discovery is unnecessary.

   B. <u>DuPont's Previously Litigated and Rejected Claims and Defenses Do Not Justify Indefinitely Delaying the Case for a Letter Rogatory</u>

Dupont's conclusory assertions that the requested discovery is necessary and essential to DuPont's claims and defenses is insufficient.  *Ingenico*, 2021 WL 765757 at *3, *4.  As an initial matter, DuPont has not answered CMC's First Amended Complaint and therefore has not yet plead any defenses, making its request for Letter Rogatory even more illusory.  Nevertheless, DuPont's motion suggests that it will raise the same invalidity defenses regarding Fuso's particles and inventorship that it raised in the 1204 Investigation, and DuPont has not indicated otherwise.  In that case, additional discovery from Fuso would be irrelevant and immaterial in view of DuPont's prior admissions and failed theories.

For example, despite representing that the requested discovery regarding Fuso's colloidal silica abrasive particles is "essential" to its invalidity defenses here, DuPont "ha[s] [already] admitted that the Fuso particles do not disclose each and every element, and thus do not anticipate the claims."  Exhibit D (Public Initial Determination) at 295.  More problematic is that "none of the BS-2H, PL-3C, [REDACTED] and HL-2 particles are prior art," as the evidence already within the parties' possession shows and the ALJ found in the 1204 Investigation.  *Id.* at 183; *see also id.*

at 183-88.  Similarly, despite seeking discovery from Fuso regarding the BS-3 particle in its proposed Letter Rogatory, DuPont already "concede[d] that BS-3 particles … were not even introduced until 2015," and thus are also not prior art.  *Id.* at 143; *see also id.* at 280 ("Each of the asserted and DI claims are entitled to an effective filing date of June 25, 2014, the filing date of the Provisional Application No. 62/017,100").  DuPont's unexplained search for additional discovery regarding these non-prior art particles is irrelevant and should not delay this case.

Nor is lengthy and uncertain foreign discovery from Fuso necessary or essential to DuPont's purported inventorship defense.  Rather, the "actual evidence" already within the parties' possession, custody, or control "shows that Fuso did not contribute to any claim limitation and that the four named inventors [of the Asserted Patent] were exclusively responsible for conception." *Id.* at 289, 290 (finding that the evidence shows "Fuso did not have the capability of conceiving the claimed invention"), 292 (finding that "the evidence shows that CMC also designed and conceived of the particles disclosed in the '721 patent and the methods for making them"). Notably, DuPont's inventorship defense hinges on an improper product-by-process claim construction argument that was correctly rejected by the ALJ because the "claims are not limited by a particular synthesis method or manufacturing process to make the structures claimed."  *Id.* at 292.  Thus, there is no "close relevance" between the Fuso particles and the Asserted Patent's claims as DuPont contends, and DuPont's unexplained search for additional discovery that pertains only to its improper claim construction is irrelevant and should not delay this case. D.I. 25 at 5.

Accordingly, additional discovery from Fuso is not necessary to adjudicate each of DuPont's purported invalidity defenses on the merits because they are flawed for independent reasons, as the ALJ concluded in the 1204 Investigation.  *See e.g.,* Exhibit D (Public Initial Determination) at 289, 295.  As these same defenses appear to be at issue in this case, they can

8

also be independently rejected based on the evidence in the parties' possession, making the discovery sought immaterial and irrelevant.

        C.      There Are More Practical and Efficient Means to Obtain the Requested Discovery

DuPont has not "already exhausted all other means available to it to obtain the information sought by the Letter Rogatory" as it claims. D.I. 25 at 6. In fact, there are far more efficient and expeditious means for obtaining responsive information because it is already in the parties' possession, custody, or control, as the parties' exhibit lists and the ALJ's Final Initial Determination from the 1204 Investigation demonstrate. *See supra* Sections II.A, II.B. For example, the record from the 1204 Investigation could be transferred to this Court pursuant to 28 U.S.C. § 1659(b) and the parties could stipulate to a cross-use agreement that the discovery and record from the 1204 Investigation be deemed produced in this case.[3] However, counter to exhausting all other means to obtain information sought by the Letter Rogatory, DuPont has effectively ignored them. CMC has proposed to DuPont that both steps be taken to facilitate and streamline discovery this case, but despite repeated and continuing follow-ups, DuPont has been silent on these issues.

## III. Conclusion

In this situation, where the substantial evidence within the parties' possession is sufficient to adjudicate DuPont's previously litigated invalidity defenses, there is no reason to delay the case for foreign discovery. Thus, under these circumstances, CMC respectfully requests that DuPont's request be denied, but that if the Court is inclined to grant DuPont's motion, any Letter Rogatory to seek discovery from Fuso should not be relied upon as means to delay this case, and that a discovery schedule be entered unimpeded by any Letter Rogatory.

---

[3] DuPont appears to be refusing to address either of these issues until a protective order is entered. *See* Exhibit B (Emails regarding ITC material).

|  |  |
|---|---|
| | Respectfully submitted, |
| | /s/ *John W. Shaw* |
| | John W. Shaw (No. 3362) |
| | Karen E. Keller (No. 4489) |
| OF COUNSEL: | SHAW KELLER LLP |
| Robert C. Scheinfeld | I.M. Pei Building |
| Robert L. Maier | 1105 North Market Street, 12th Floor |
| Margaret M. Welsh | Wilmington, DE 19801 |
| Frank Zhu | (302) 298-0700 |
| BAKER BOTTS L.L.P. | jshaw@shawkeller.com |
| 30 Rockefeller Plaza | kkeller@shawkeller.com |
| New York, NY 10112 | *Attorneys for Plaintiff* |
| (212) 408 2500 | |
| | |
| Lisa M. Kattan | |
| Katharine M. Burke | |
| Thomas C. Martin | |
| Samuel L. Kassa | |
| BAKER BOTTS L.L.P. | |
| 700 K Street, N.W. | |
| Washington, D.C. 20001 | |
| (202) 639-7700 | |

Dated: June 10, 2022