IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CMC MATERIALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 20-738-MN |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DUPONT DE NEMOURS, INC., et al., | ) | |
| | ) | **REDACTED - PUBLIC VERSION** |
| Defendants. | ) | |

**PLAINTIFF CMC MATERIALS, INC.'S OPENING BRIEF IN SUPPORT OF CMC'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS 3-8**

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
Joseph Ostoyich
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: July 5, 2022

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT .......................................................................................... 2

STATEMENT OF ALLEGATIONS .................................................................................... 4

ARGUMENT ................................................................................................................. 5

    I.    *Noerr-Pennington* Immunity Bars Defendants' Antitrust and
        Delaware Counterclaims Based on CMC's Successful ITC
        Suit and The Present Action ................................................................................ 6

    II.   Defendants' Antitrust Counterclaims and Delaware
        Counterclaims are Time-Barred .......................................................................... 10

    III.  Defendants' Counterclaims Lack Factual Content
        Suggesting Violations of The Sherman Act or Delaware Law ................................. 10

    IV.  Defendants' Third Counterclaim (and Eleventh Defense)
        for a Declaratory Judgment of Unenforceability Fails ........................................... 16

    V.   Defendants' Eighth Counterclaim (and Twelfth Defense)
        for Patent Misuse Fails ....................................................................................... 19

CONCLUSION ............................................................................................................. 20

i

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
    263 F.3d 239 (3d. Cir. 2001) ...........................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................3, 20

*Baraka v. McGreevey*,
    481 F.3d 187 (3d Cir. 2007) ..........................................................................................11

*Barr Labs., Inc. v. Abbott Labs.*,
    978 F.2d 98 (3d Cir. 1992) ......................................................................................11, 12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................3, 6

*Braintree Labs., Inc. v. Schwarz Pharma, Inc.*,
    568 F. Supp. 2d 487 (D. Del. 2008) ...............................................................................7

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
    77 F. Supp. 2d 606 (D.N.J. 2000) ...................................................................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
    429 U.S. 477 (1977) ......................................................................................................12

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ............................................................................................6

*CAE Inc. v. Gulfstream Aerospace Corp.*,
    203 F. Supp. 3d 447 (D. Del. 2016) ..............................................................................12

*Campbell v. Pa. Sch. Bd. Ass'n*,
    972 F.3d 213 (3d Cir. 2020) ............................................................................................8

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
    749 F.2d 154 (3d Cir. 1984) ............................................................................................8

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*,
    159 F.3d 129 (3d Cir. 1998) ..........................................................................................13

*DeGennaro v. Am. Bankers Ins. Co. of Florida*,
    737 Fed. App'x 631 .......................................................................................................15

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007) .....................................................................................15

*E. Food Servs. Inc. v. Pontifical Catholic Univ. Ass'n, Inc.*,
    357 F.3d 1 (1st Cir. 2004) ........................................................................12

*Empire Fin. Servs., Inc. v. Bank of N.Y. (Delaware)*,
    900 A.2d 92 (Del. 2006) ...........................................................................16

*Ethicon, Inc. v. U.S. Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998)..................................................................19

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)................................................15, 17, 18, 19

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
    139 S. Ct. 628 (2019)................................................................................18

*In re Flonase Antitrust Litig.*,
    795 F. Supp. 2d 300 (E.D. Pa. 2011) ..........................................................8

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010)..................................................................6, 11

*In re Lipitor Antitrust Litig.*,
    855 F.3d 126 (3d Cir. 2017)......................................................................14

*In re Lipitor Antitrust Litig.*,
    868 F.3d 231 (3d Cir. 2017)........................................................................7

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*,
    868 F. 3d 132 (3d Cir. 2017).............................................................7, 8, 10

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3rd Cir. 2012) ......................................................................3

*Menasha Corp. v. News Am. Marketing In-Store, Inc.*,
    354 F.3d 661 (7th Cir. 2004) ....................................................................11

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)......................................................................................8

*Princo Corp. v. ITC*,
    616 F.3d 1318 (Fed. Cir. 2010)..................................................................20

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993)................................................................2, 7, 8, 9, 10

*Queen City Pizza Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997)......................................................................14

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010) ................................................................................................11

*Rader v. ShareBuilder Corp.*,
  772 F. Supp. 2d 599 (D. Del. 2011) ........................................................................18, 20, 21

*Ritz Camera & Image, LLC v. SanDisk Corp.*,
  772 F. Supp. 2d 1100 (N.D. Cal. 2011) ...........................................................................14

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009) ..................................................................................13

*Therasense Inc. v. Becton, Dickinson and Co.*,
  649 F.3d 1276 (Fed. Cir. 2011) ...................................................................................17, 19

*Triton Const. Co. v. E. Shore Elec. Servs., Inc.*,
  No. 3290-VCP, 2009 WL 1387115 (Del. Ch. May 18, 2009) ...........................................16

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
  762 F.3d 1338 (Fed. Cir. 2014) .......................................................................................8, 9

*Universal Studios Inc. v. Viacom Inc.*,
  705 A.2d 579 (Del. Ch. 1997) ..........................................................................................16

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  868 F. Supp. 2d 376, 379 (D. Del. 2012) ..........................................................................17

**Statutes**

15 U.S.C. § 15b ........................................................................................................................10

35 U.S.C. § 271(d) ...................................................................................................................21

35 U.S.C. § 282 .........................................................................................................................8

Del. Code Ann. tit. 10 § 8106 ..................................................................................................10

Del. Code Ann. tit. 6, § 2113 ...................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................2, 4, 6, 21

Fed. R. Civ. P. 9 .......................................................................................................................14

Fed. R. Civ. P. 9(b) .........................................................................................................3, 15, 17

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff CMC Materials, Inc. ("CMC") brought complaints against Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials CMP Asia Inc., Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "Defendants") in June 2020 for infringement of CMC's U.S. Patent No. 9,499,721 (the "'721 Patent") in this Court, and with the International Trade Commission ("ITC"), in *Certain Chemical Mechanical Planarization Slurries and Components Thereof*, Inv. No. 337-TA-1204 (the "1204 Investigation"). This Court stayed the case while the ITC's 1204 Investigation proceeded. *See* D.I. 14.

On July 8, 2021, after extensive fact and expert discovery and a full evidentiary hearing, an Administrative Law Judge ("ALJ") found that Defendants directly and indirectly infringed multiple claims of the '721 Patent and rejected all of Defendants' invalidity and unenforceability arguments. On December 16, 2021, after reviewing the ALJ's findings, the ITC found knowing infringement by the Defendants of the '721 Patent and issued exclusion and cease and desist orders. The ITC determined not to review, and therefore maintained, the ALJ's findings on patent validity and enforceability. Defendants did not appeal the ITC's findings, and, on May 18, 2022, this Court lifted the stay. D.I. 18. CMC filed its First Amended Complaint in this action ("FAC") on June 1, 2022, which CMC amended to include the ITC's findings of direct infringement, validity, and enforceability. D.I. 23. Defendants did not move to dismiss the FAC. Instead, on June 15, 2022, Defendants filed an Answer to the FAC and asserted the Counterclaims at issue here. D.I. 30. CMC now moves to dismiss Counts 3-8 of Defendants' Counterclaim Complaint ("CC") with prejudice.

### SUMMARY OF ARGUMENT

Despite the ITC's sweeping and resolute rejection of Defendants' defenses, and despite the abundant evidence to the contrary, Defendants assert two counterclaims requesting declaratory judgment of non-infringement and invalidity of the '721 Patent (Counts 1 and 2), two claims related to unenforceability of the patent (Counts 3 and 8), two federal antitrust claims (Counts 4 and 5), and Delaware state law claims for unfair competition (Count 6) and tortious interference (Count 7). These counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

*First*, the core of Defendants' counterclaims (and the only conduct they allege in the prior four years) is two complaints CMC filed: the successful one at the ITC finding CMC's '721 Patent was valid and infringed by Defendants, and the present case on the exact same patent. The First Amendment right to petition government and the corresponding *Noerr-Pennington* doctrine bars all of Defendants' federal and state antitrust and tortious interference claims (Counts 4-7).

Defendants cannot overcome *Noerr-Pennington* immunity as a matter of law. It is well-settled that a "a successful 'effort to influence governmental action . . . certainly cannot be characterized as a sham.'" *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) ("*PRE*"). And Defendants concede in their Answer, as they must, that CMC's ITC action was successful. By not moving to dismiss, Defendants also tacitly concede that CMC's FAC—asserting the same patent infringement claims the ITC upheld—adequately states a valid claim that Defendants infringed the '721 Patent. Thus, as a matter of law, both lawsuits maintain their constitutional protection and antitrust immunity because neither action is (1) "objectively baseless" such that "no reasonable litigant" could expect to prevail on the merits, or (2) filed by CMC with the subjective intent to injure its competitors solely by inducing government action,

with no intent to prevail on its claims.  Defendants' antitrust counterclaims are therefore precluded under *Noerr-Pennington*.

**Second**, Counterclaims 4-7 are time-barred to the extent they are based on conduct that occurred prior to June 15, 2018 (Counts 4 and 5), and June 15, 2019 (Counts 6 and 7), respectively. Here, Defendants' allegations are primarily based on ███████████████ and a 2015 patent application—conduct from seven and nine years ago.  But the claims at issue here have either three or four-year statutes of limitations.  Because the limitations periods ran well before Defendants filed their June 2022 counterclaims, Counterclaims 4-7 fail.

**Third**, even if Defendants' claims were timely and not barred by *Noerr-Pennington*, each of Counterclaims 3-8 suffer from a common defect: they employ conclusory buzzwords in an attempt to outline the bare elements of each cause of action, while wholly failing to allege sufficient factual content to state a viable claim.  In considering a motion to dismiss, courts must "disregard threadbare recitals of the elements of a cause of action, legal conclusion, and conclusory statements."  *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3rd Cir. 2012).  But that is all Defendants have alleged here: conclusory assertions, not facts.  Defendants' allegations fail to meet the basic requirements of *Twombly* and *Iqbal*, and do not even approach the heightened Rule 9(b) pleading standard required for their fraud allegations.

**Finally**, Counterclaims 3 and 8 should be dismissed under Rule 12(b)(6) for failure to plead unenforceability (count 3) with the particularity required per Rule 9(b), and for failure to allege any relevant facts for patent misuse (count 8).  Defendants' allegations flatly contradict the thoroughly assessed facts of record established during the 1204 Investigation.  Defendants' over 150 "information and belief" allegations for these counterclaims verge on blatant fabrications, and are insufficient under Rule 9(b) as a matter of law.

## STATEMENT OF ALLEGATIONS

**I.    Defendants admit the ITC found they infringed the '721 Patent and explicitly rejected their invalidity and unenforceability allegations here**

In June 2020, CMC brought this action and a suit in the ITC against each of the Defendants for infringement of the '721 Patent.  D.I. 23 ¶ 7; D.I. 30 (CC) ¶¶ 1, 8.  The ITC conducted an extensive investigation, which covered the same issues, and the *exact same* invalidity and unenforceability arguments Defendants allege in this action, including full fact and expert discovery and an evidentiary hearing with all Defendants represented by counsel.  The ITC found in favor of CMC on all issues, flatly rejecting the same assertions Defendants include in their counterclaims here and *expressly rejecting* each of Defendants' invalidity and enforceability arguments.  D.I. 23, Ex. C; *id.*, Ex. B at 169-297.  Specifically, the ITC found, using the same burden of proof applicable in this action, that "CMC proved that [Defendants'] accused products infringe the asserted claims of the '721 patent and that [Defendants] failed to show that the asserted claims are invalid," and that Defendants "violated section 337 in the importation of completed slurry that directly infringes the asserted composition claims of the '721 patent" and "violated section 337 in the importation of the BS-3 particles."  *Id.* at 5, 21.  The ALJ determined that "each" Defendant here "knew of the '721 patent" and "knew" that the composition of Defendants' CMP slurries was "patented" long before CMC filed this suit and the ITC action.  D.I. 30 (CC) ¶ 11.  As a result of Defendants' infringement of the '721 Patent, and their failure to establish any of their invalidity and enforceability arguments, the ITC issued an exclusion order and cease and desist orders that prohibit Defendants from importing any infringing product.  D.I. 23, Ex. C at 55-56.

Defendants admit in their Answer that the ALJ and ITC found they infringed CMC's '721 Patent, acknowledge those findings "speak for themselves," and admit that they did not appeal any of the ITC's findings.  D.I. 30 (Answer) ¶¶ 8-9, 11-13; D.I. 30 (CC) ¶¶ 8, 11, 12, 16, 38, 56, 61.

Defendants further admit that this suit alleges the *same* claims as the 1204 Investigation.  Indeed, in their Motion to Stay the current action, Defendants represented to this Court that the ITC action was a "parallel proceeding" that "involve[d] the same issues" as the current action.  D.I. 13 at 1-2. Defendants did not Move to Dismiss the FAC.  Instead, Defendants answered that complaint, admitting many of CMC's allegations and including counterclaims against CMC.  D.I. 30.

## II.  The only conduct Defendants allege occurred within the last four years for Counterclaims 4-7 is CMC's filing of this lawsuit and the ITC action

For Defendants' antitrust claims, the only conduct that Defendants allege occurred within the past four years is CMC's patent infringement actions—the successful ITC claim, where the ITC found that Defendants infringed the '721 Patent, and the present action.  D.I. 30 (CC) ¶ 76. The remaining bases for Defendants' claims are: (1) that CMC allegedly "fraudulently obtained" its '721 Patent through active concealment and affirmative misrepresentations, despite Defendants' acknowledgement that the patent was filed in 2015 and despite the ITC's express finding that Defendants "*have not shown* that the '721 patent is unenforceable due to a pattern of active concealment and affirmative misrepresentations," and (2) that ████████████ ████████████████████████████████████████ despite Defendants' admission that they were able to purchase other particles and were not excluded from the market.  *Id.* ¶¶ 17, 36, 44, 135; D.I. 23, Ex. B at 293.  The CC concedes this conduct occurred seven and nine years ago, and does not allege any facts explaining why Defendants failed to bring suit at that time.

## ARGUMENT

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss an action when it fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, Defendants must allege facts sufficient "to raise a right to relief above the speculative level" which requires pleading "more than labels and conclusions, and a formulaic

recitation of elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (affirming Rule 12(b)(6) dismissal and "reject[ing] bare statements" and conclusory allegations in considering a motion to dismiss). The test is whether the complaint alleges enough "'enough fact[s] to state a claim to relief that is plausible on its face,' which is to say, 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity].'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010) (internal citations omitted). That principle is especially important where, as here, "proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 558. Indeed, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id*.

## I.   *Noerr-Pennington* Immunity Bars Defendants' Antitrust and Delaware Counterclaims Based on CMC's Successful ITC Suit and The Present Action

Defendants' federal antitrust and Delaware state counterclaims (Counterclaims 4-7) are barred by the *Noerr-Pennington* doctrine. Defendants' claims are based on the allegation that CMC engaged in "bad faith enforcement of its fraudulently obtained '721 patent" by bringing the ITC case and this present infringement action. D.I. 30 (CC) ¶¶ 87, 135, 150. But the *Noerr-Pennington* doctrine immunizes a party from antitrust liability for petitioning the government for redress, in light of the First Amendment right to petition to government. *See, e.g.*, *PRE*, 508 U.S. at 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability."); *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250-51 (3d Cir. 2001) (noting "*Noerr-Pennington* immunity applies to actions which might otherwise violate the Sherman Act because the federal antitrust laws do not regulate the conduct of private individuals in seeking anticompetitive action from the government.") (internal quotations marks and citation omitted). Immunity applies to prosecuting patents before the Patent Office, enforcing them in

court, and before the ITC.  *See In re Lipitor Antitrust Litig.*, 868 F.3d 231, 273 (3d Cir. 2017) ("Petitions to administrative agencies are . . . immune from antitrust liability."); *id*. at 272 ("Filing a lawsuit essentially petitions the government for redress and is therefore generally protected from antitrust liability").[1]  As the Third Circuit has observed, a "plaintiff claiming that a lawsuit is, by its very existence, anticompetitive and unlawful faces an uphill battle."  *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F. 3d 132, 147 (3d Cir. 2017).

The only exception to *Noerr-Pennington* relevant here is for so-called "sham" litigation. *PRE*, 508 U.S. at 60-61.[2]  The "sham" exception has two prongs: (1) the lawsuit must be objectively baseless, and (2) the plaintiff's subjective intent must have been to injure its competitor simply by inducing government action, but not to prevail on its claim.  *In re Wellbutrin*, 868 F. 3d at 148.  Courts have narrowly defined what constitutes an "objectively baseless" lawsuit: it "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."  *PRE*, 508 U.S. at 50.  And a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham."  *Id*. at 60 n.5; *see Columbia Pictures Indus., Inc. v. Redd Horne, Inc.,* 749 F.2d 154, 161 (3d Cir. 1984) (holding that success on the merits demonstrates clearly that it would be "impossible" to prove "bad faith" necessary for antitrust claim of "sham" litigation).  The burden is not on CMC to prove that it had an objectively reasonable basis to sue; rather, Defendants have the burden to prove or plead that *no reasonable*

---

[1] *Noerr-Pennington* also applies to Defendants' state law unfair competition and tortious interference counterclaims.  *See, e.g., Braintree Labs., Inc. v. Schwarz Pharma, Inc.*, 568 F. Supp. 2d 487, 499 (D. Del. 2008) (holding that "[b]ecause its suit was not objectively baseless," Braintree was "immune" from "Sherman Act and tortious interference counterclaims under the *Noerr–Pennington* doctrine").

[2] As noted below, Defendants' CC fails on its face to state a valid claim for *Walker Process* antitrust liability based on the alleged "knowing assertion" of a patent "procured by fraud on the PTO."  *See infra* at 13-15.

*litigant* could have expected success on the merits, and that in fact CMC *did not* intend to succeed on the merits. *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 311 (E.D. Pa. 2011) ("the burden falls on the party invoking the sham exception . . . to show that the conduct at issue constitutes a sham").

Moreover, when it comes to *Noerr-Pennington* immunity, "patents raise a special set of concerns." *Campbell v. Pa. Sch. Bd. Ass'n*, 972 F.3d 213, 222 (3d Cir. 2020). Indeed, courts must "presume" that all patents are "valid," 35 U.S.C. § 282, and challengers (outside IPR) must prove a patent's invalidity "by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). This is why "courts have afforded suits to enforce patents a presumption of good faith," including at the pleading stage. *Campbell*, 972 F.3d at 222. "Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation." *Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014). Defendants do not come close to meeting this burden.

### A.    CMC has an "objective basis" to sue for infringement.

Here, Defendants' Answer concedes that CMC's ITC action resulted in an infringement finding and imposed exclusion and cease and desist orders. D.I. 30 (Answer) ¶ 8; *Id.* (CC) ¶¶ 52, 61, 88, 92. Defendants also concede, as they must, the ALJ found in CMC's favor and rejected *all* of Defendants' invalidity and unenforceability defenses with respect to the '721 Patent—using the same standard applicable in this Court. The ITC determined not to review, and therefore maintained, all of these findings. This alone is sufficient to show that CMC's patent infringement actions in the ITC and this Court were well-founded, as a "winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." *PRE*, 508 U.S. at 60 n.5

8

In addition, Defendants' decision to file an Answer in the present case, rather than move to dismiss the FAC, reinforces the conclusion that CMC had an objective basis to sue for infringement. Defendants simply have not met the first prong of the "sham" exception required to defeat *Noerr-Pennington* immunity, and Defendants' counterclaims based on allegations of "bad faith" litigation must be dismissed as a matter of law.

### B.  CMC's patent infringement claims were "subjectively" motivated by a desire to win on the merits.

Courts do not consider the second prong of the sham litigation exception as a matter of law unless the party invoking the exception satisfies the first prong. *See PRE*, 508 U.S. at 50 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). Given Defendants' concessions that the ITC found infringement of the '721 Patent—and the fact that Defendants did not even move to dismiss CMC's instant Complaint— the Court need not reach this prong. CMC's "lawsuits" and "enforcement" of its '721 Patent are immunized from antitrust liability under *Noerr-Pennington*, and its subjective motivations are irrelevant.

But even if this Court were to examine the second prong, the CC lacks any factual content suggesting that CMC filed its patent infringement cases for the subjective purpose of "interfer[ing] directly with the business relationships" of Defendants "through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *PRE*, 508 U.S. at 60-61; *see also, In re Wellbutrin*, 868 F.3d at 148. By definition, CMC's patent infringement action in the ITC was successful. A successful lawsuit is not a sham, *PRE*, 508 U.S. at 58, and tellingly, Defendants do not even allege that CMC lacked a subjective belief that it would prevail again here.

## II.        Defendants' Antitrust Counterclaims and Delaware Counterclaims are Time-Barred

Defendants' alleged violations of Sherman Act § 1 and 2, and of Delaware common law

unfair competition and state law tortious interference with prospective business relations, are also

all time-barred to the extent they are based on conduct that allegedly occurred in 2013 and 2015.

The statute of limitations for Sherman Act claims is four years, 15 U.S.C. § 15b, and the statute of

limitations for Delaware state law claims is three years.  Del. Code Ann. tit. 10 § 8106.  Here,

Defendants filed their counterclaims on June 15, 2022.  Thus, any claims that arose before June

15, 2018, or 2019, respectively, do not fall within the limitations period.

Counterclaims 4-7 here are based on conclusory assertions of alleged "fraudulent

procurement" of the '721 Patent in mid-2015 (and the alleged "bad faith enforcement" of that

patent in this case and the ITC proceeding before it), and ███████████████████████

███████████████  D.I. 30 (CC) ¶¶14, 24-34, 36-37.  Defendants do not plead any reason

for failing to bring their claims within the statutes of limitations, nor do they allege any facts

sufficient to toll the running of the statutes of limitations.  The CC does not allege fraudulent

concealment, nor does it allege a "continuing violation" accompanied by a "new and independent"

"injurious act" during the last four (or three) years.  Counterclaims 4-7 must be dismissed as time-

barred, as the statutes of limitations for each of their claims ran long before they filed their CC.

## III.       Defendants' Counterclaims Lack Factual Content Suggesting Violations of The
##            Sherman Act or Delaware Law

Even if, *arguendo*, Defendants' antitrust and Delaware counterclaims were both timely and

cognizable, they fail to adequately allege "enough fact to state a claim to relief that is plausible on

its face, which is to say, enough fact to raise a reasonable expectation that discovery will reveal

evidence of illegality."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 319 (internal quotations

marks and citations omitted).  Courts do not accept as true "unsupported conclusions and

10

unwarranted inferences" or "legal conclusion couched as factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).  But Defendants' counterclaims only offer simple conclusions; the CC is devoid of facts sufficient to support *any* of these claims.

## A. Defendants fail to adequately plead an illegal agreement under Sherman Act § 1.

Competition to be an exclusive supplier constitutes "a vital form of rivalry, and often the most powerful one, which the antitrust laws encourage rather than suppress." *Menasha Corp. v. News Am. Marketing In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004).  Courts generally uphold exclusive supply contracts when challenged on antitrust grounds, and only prohibit exclusive contracts in narrow circumstances where a company with monopoly power enters into long-term exclusivity with a large enough body of key suppliers or customers that it effectively forecloses its smaller rivals from the market.  *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 76 (3d Cir. 2010) (holding "exclusive dealing contracts are not disfavored by antitrust laws and ordinarily pose threat to competition only in very discrete circumstances"); *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 111 (3d Cir. 1992) (recognizing business justifications for upholding exclusive dealing contracts).  The Third Circuit is clear that these narrow circumstances exist where the exclusive contracts "foreclose so large a percentage of the available supply or outlets that entry into the concentrated market is unreasonably constricted" and no feasible alternative exists.  *E. Food Servs. Inc. v. Pontifical Catholic Univ. Ass'n, Inc.*, 357 F.3d 1, 8 (1st Cir. 2004). And a party must allege that it suffered antitrust injury, *i.e.*, "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful" as a result of the anticompetitive agreement to maintain a Section 1 claim.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

None of that is alleged here.  Instead, stripping the CC of its conclusory allegations leaves only ███████████████████████████████████████████████████████████████ ████████████████████████████████████  But, again, this is insufficient under Third Circuit law, which is clear that ██████████████████████ are "generally permissible and presumptively legal."  *CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 454 (D. Del. 2016) (internal quotation marks and citations omitted).  Defendants also acknowledge that they have a feasible alternative outside of the product that was subject to ████████████████████ Defendants admit that ███████████████████████████████████ after ████████████ ██████████ at issue was in place and allege that ██████████████ is made using the "same or very similar" manufacturing process as BS-2H.  D.I. 30 (CC) ¶¶ 34, 57, 171.  Indeed, it is not clear how Defendants claim any antitrust injury causation at all, given that they apparently survive in the market today.  CMC's ██████████████ clearly did not exclude Defendants from the market. Defendants' Section 1 claim (Counterclaim 4) must be dismissed.

### B.    Defendants fail to plead attempted monopolization under Sherman Act § 2.

To establish attempted monopolization under Section 2 of the Sherman Act, a plaintiff must allege "the defendant (1) had specific intent to monopolize the relevant market, (2) engaged in anti-competitive or exclusionary conduct, and (3) possessed sufficient market power to come dangerously close to success."  *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 403 (D. Del. 2009).  In order to survive a motion to dismiss, a party "must sufficiently allege the relevant market, the 'outer boundaries' of which 'are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'"  *Id.* (internal citation omitted).  The Third Circuit has further explained that Section 2 claims demand more than "[a]lleging market share alone. . . Monopolization or threatened monopolization requires something more, which may include the strength of

competition, probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct, and the elasticity of consumer demand." *Crossroads Cogeneration Corp. v. Orange & Rockland Utils.*, 159 F.3d 129, 141 (3d Cir. 1998).

Defendants fail to plead facts sufficient to show a Section 2 attempt violation and rely solely on conclusory statements and bare recitations of the cause of action.  For example, Defendants simply assert the "relevant antitrust market" (and that CMC had "market power" in this purported market) in conclusory statements, D.I. 30 (CC) ¶ 82 ("high-performing dielectric CMP slurry components and compositions to polish silicon oxygen containing materials, *such as* tetraethyl orthosilicate (TEOS) films, during semiconductor manufacturing"), *id.* ¶ 85 ("CMC currently controls a significant portion of this market and has market power in the relevant market"), with no factual assertion as to the basis for that alleged market, or CMC's alleged market power in it.  And they similarly assert that ███████████████████ foreclosed competition, but no factual content explains how ████████████████████████████ injured the competitive process.  Defendants do not point to any actual facts suggesting that CMC possessed sufficient power within the market to come dangerously close to monopolization, or any allegations regarding "the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Queen City Pizza Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).  Defendants' Section 2 counterclaim (Counterclaim 5) must be dismissed for failure to state a claim.

### C.   Defendants' *Walker Process* fraud claims fail to meet the Rule 9 heightened pleading standard and fail as a matter of law.

As part of their Sherman Act Section 2 claim (Counterclaim 5), Defendants also assert "*Walker Process* fraud"—or fraud on the PTO in obtaining the '721 Patent.  A *Walker Process* fraud claim requires that a party allege facts sufficient to establish, with heightened particularity,

13

"that: (1) the patent at issue was procured by knowing or willful fraud on the USPTO; (2) the defendant was aware of the fraud when enforcing the patent; (3) there is independent evidence of a clear intent to deceive the examiner; (4) there is unambiguous evidence of reliance, *i.e.,* that the patent would not have issued but for the misrepresentation or omission; and (5) the necessary additional elements of an underlying violation of the antitrust laws are present." *Ritz Camera & Image, LLC v. SanDisk Corp.*, 772 F. Supp. 2d 1100, 1106 (N.D. Cal. 2011), *aff'd* 700 F.3d 503 (Fed. Cir. 2012); s*ee also, In re Lipitor Antitrust Litig.*, 855 F.3d 126, 145 (3d Cir. 2017) (holding *Walker Process* "requires a plaintiff to show, among other things, that the patentee committed fraud before the PTO, that the fraud caused the patent to issue, and that the patentee enforced the fraudulently procured patent."). Like all fraud allegations, *Walker Process* claims are also held to a heightened pleading standard; Defendants "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *DeGennaro v. Am. Bankers Ins. Co. of Florida*, 737 Fed. App'x 631. 635 (3d Cir. 2018); *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (holding Rule 9(b)'s heightened pleading standard for fraud requires "identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."). Defendants' allegations do not come close to meeting this standard.

Although Defendants alleged that CMC obtained its '721 by committing fraud on the PTO and enforced that fraud through the present and ITC actions, that conclusory assertion is flatly contradicted by the ITC's determination that Defendants did "not show[] that the '721 patent is unenforceable due to a pattern of active concealment and affirmative misrepresentations" and that CMC took "efforts to correct the disclosure to the PTO, not to deceive the PTO." D.I. 23, Ex. B. at 297. That, by itself, should doom the Section 2 *Walker Process* claim. But, as described in

Section IV, Defendants also fail to allege a specific intent by a specific individual at a specific time and place to take specific acts to commit fraud on the PTO—the "who, what, when, where, and how" that Defendants are required to allege with particularity—or any specific false fact or omission made to the PTO.  *Exergen*, 575 F.3d at 1327.  As described below, Defendants do not allege–and certainly not with the specificity required by Rule 9(b)–that any statement or omission was deliberate, made with deceptive intent, relied on by the examiner, or the but-for cause of patent issuance.  *See, e.g., Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1347 (Fed. Cir. 2007).  Because Defendants do not sufficiently plead facts to establish the underlying elements of their Sherman Act claims, let alone meet the heightened standard required to establish *Walker Process* fraud, Defendants' *Walker Process* fraud claim (Counterclaim 5) fails.

### D.     Defendants' Delaware unfair competition claim fails.

Defendants' Delaware state common law unfair competition claim fails for the same reasons as the federal claims.  Delaware's statutory provisions require deference to the federal precedent in applying state antitrust law to practices also subject to federal law.  Defendants' state law unfair competition claim is subject to statutory harmonization that requires the application of, and deference to, federal antitrust precedent.  *See* Del. Code Ann. tit. 6, § 2113; *Universal Studios Inc. v. Viacom Inc.*, 705 A.2d 579, 597 (Del. Ch. 1997).  Because Defendants' federal claims are deficient, the same is true for their Delaware unfair competition claim.

### E.     Defendants' Delaware tortious interference claim fails as a matter of law.

A claim for tortious interference with prospective business relations must allege: "(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *Empire Fin. Servs., Inc. v. Bank of N.Y. (Delaware)*, 900 A.2d 92, 98 n.19 (Del. 2006).

But none of these elements is properly alleged here.  Notably, Defendants fail to proffer any factual allegations concerning two of the required elements–causation and damages stemming from CMC's alleged interference–and allege boilerplate conclusions for the other required elements.

Defendants' assertion is entirely generic—the CC identifies no specific business relation that CMC interfered with, let alone tortious interference by CMC.  To the extent Defendants point to ███████████████████, it is not only time-barred, but the ITC's infringement finding and exclusion orders underscore the pleading defect because a tortious interference allegation "must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner."  *Triton Const. Co. v. E. Shore Elec. Servs., Inc.*, No. 3290-VCP, 2009 WL 1387115, at *17 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010).  Obviously, CMC was entitled to enforce its '721 Patent and the fact that it did so successfully should disprove the generic tortious interference claim.  Defendants' Delaware state law claims must be dismissed.

## IV.    Defendants' Third Counterclaim (and Eleventh Defense) for a Declaratory Judgment of Unenforceability Fails

For inequitable conduct, a claimant must plead an omission or misrepresentation that is but-for material to patentability and that the omission or misrepresentation was made with the specific intent to deceive the PTO.  *Therasense Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011); *XpertUniverse, Inc. v. Cisco Sys.*, Inc., 868 F. Supp. 2d 376, 379 (D. Del. 2012).  The claim sounds in fraud and must be pled with particularity under Rule 9(b), as described above.  "Pleading on 'information and belief' is permitted under Rule 9(b)" only "when essential information lies uniquely within another party's control."  *Exergen*, 575 F.3d at 1330.

Here, Defendants allege—entirely on "information and belief"—that each of the four inventors and two prosecution agents and counsel on CMC's asserted patent had a specific "intent

16

to deceive" the PTO by purportedly withholding information concerning ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ and by failing to name ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, D.I. 30 (CC) ¶¶ 116, 128. Defendants' thin and slapdash assertions are insufficient to meet the *Exergen* requirements.

*First*, regarding the alleged withholding of ▮▮▮▮▮▮▮▮▮▮▮ Defendants' allegations fail even to allege "what" or "why" any alleged ▮▮▮▮▮▮▮▮▮▮ are prior art, let alone why they are material to the claim. *Exergen*, 575 F.3d at 1327. Defendants simply make the bald, general assertion, on information and belief, that *one or more* of a series of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ were "prior art developed by and available from Fuso"—without any factual allegations as to why the ▮▮▮▮▮▮▮▮▮▮ constituted prior art, let alone were non-confidential, on sale, or in public use. *Id.* ¶ 121 (emphasis added); *see also id.* ¶ 48 (alleging, on information and belief, that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ without specifying which ones, when, or whether the purchases constituted prior art sales); *id.* ¶¶ 53, 116, 117 (same); *cf. Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 630 (2019) (for a "sale" to be "prior art," it must be "the subject of a commercial offer for sale" and "ready for patenting."). Such a bald legal conclusion regarding the prior art status of a series of non-specific ▮▮▮▮▮▮▮▮▮▮▮▮ is insufficient under *Exergen*. *See Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 603 (D. Del. 2011) (a court is not obligated to accept as true "bald assertions" on a motion to dismiss).

Even assuming Defendants had identified specific prior art ▮▮▮▮▮▮▮▮▮ Defendants also fail to allege "why" such information would have been material, or "how" it would have impacted the examiner's assessment of patentability. Defendants make *no* allegation why the ▮▮▮▮▮▮▮ alone would have been relevant to any claim, instead *implying* relevance by

17

mischaracterizing claim 1 as "*only*" requiring two elements—a "water based liquid carrier" at a certain pH and "colloidal silica particles" with an internal chemical species—while making no assertions whatsoever regarding the full scope of the claimed *composition* in which particles are "dispersed in the liquid carrier" and have a specific "permanent positive charge."  D.I. 30 (CC) ¶ 119; D.I. 23, Ex. A at Cl. 1. Defendants' reliance on the "Fu reference" already considered in prosecution fails to close the materiality gap, as Defendants make no allegation as to why the ███ ███████ are relevant to or combinable with that reference.  D.I. 30 (CC) ¶¶ 42, 125.

*Second*, Defendants' assertion that the inventors intentionally withheld information about ████████████████████ likewise fails to identify the "who" (*e.g.*, any particular ███ employee who made any inventive contribution) or the "what" (*e.g.*, any particular claim limitation that the unnamed employee invented).  To the contrary, Defendants allege only that unnamed ███ employees ████████████████████████████████ ████████████—acts that, even if true, have nothing to do with conception and could have been done to assist the actual CMC inventors after their conception of the claimed structure.  *Id.* ¶ 127; *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("[O]ne does not qualify as a joint inventor by merely assisting the actual inventor after conception….").  Nor can Defendants allege any "intent to deceive" the PTO or dupe a rightful ████ co-inventor out of an ownership claim when Defendants concede that ████████████████████████████████ ██████████████████████████ *Id.*  Defendants simply do not allege that inventorship resulted in some unfair benefit to the inventors or CMC.  *Therasense*, 649 F.3d at 1292 ("[A]s a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim.").

*Finally*, and more fundamentally, Defendants' claim should be rejected because the

18

thoroughly assessed facts of record *contradict* their pleading.   Indeed, far from relevant information being outside of Defendants' "control," as required for a proper pleading on "information and belief," *Exergen*, 575 F.3d at 1330, Defendants know full well, as the ALJ at the ITC found after extensive discovery and a hearing with live testimony, that the Fuso particles were "not prior art," "were confidential," "were not relevant to prosecution," and "were similar to those particles 'used in failed designs.'"   D.I. 23, Ex. C at 294.   Likewise, Defendants know that the ALJ rejected the exact argument it makes now, finding no "'but for' materiality" because Defendants have "admitted that the Fuso particles do not disclose each and every element" of any claim and does "not allege that those particles are combinable with the Fu reference applied by the examiner or any other prior art of record."   *Id.* at 295.   Defendants are also well aware that "Fuso did not have the capability of conceiving the claimed invention," that Fuso's development of "procedures for making" particles "do not relate" to the claim limitations, and that "the actual evidence shows that Fuso did not contribute to any claim limitation and that the four named inventors were exclusively responsible for conception."   *Id.* at 288-292.   And Defendants know, after multiple opportunities to depose and cross examine the inventors, that the ALJ found no "intent to deceive the PTO."   *Id.* at 293-294.   Defendants concede this determination "speaks for itself" (D.I. 30 (Answer) ¶ 9), yet it goes entirely unaddressed in Defendants' claim.   In view of these well-established facts found by ALJ after thorough discovery and an opportunity for Defendants to be heard, the contradictory allegations in Defendants' claim amount to "unwarranted inferences" requiring no weight.   *Rader*, 772 F. Supp. 2d at 603.

## V.     Defendants' Eighth Counterclaim (and Twelfth Defense) for Patent Misuse Fails

Patent misuse has a "narrow scope" and is limited to "the patentee's act of impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect." *Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010).   Defendants recite ***no*** allegations

relating to "broaden[ing]" the physical or temporal scope of the patent-in-suit or any other intelligible claim of patent misuse that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants' flawed claim is instead a mix of (a) the same failed theories of unenforceability and anticompetitive conduct addressed above and (b) unfounded complaints that various aspects of CMC's infringement claim are "false[]."  D.I. 30 (CC) ¶¶ 193-98.  As to the regurgitated unenforceability and anticompetitive claims, they are irrelevant to patent misuse and, regardless, fail for the reasons already explained.  As to the allegedly "false[]" assertions, Defendants' "information and belief" allegations verge on blatant fabrications.  Indeed, Defendants go so far as to claim CMC "knowingly falsely argued" facts that were ***expressly*** found by the ALJ—such as that the particles at issue are "especially made for infringement of the '721 patent and are not a staple article." *Compare* D.I. 23, Ex. C at 142, *with* D.I. 30 (CC) ¶ 196.  Defendants' allegations are thus "unwarranted inferences" deserving no weight, and the patent misuse claim should be dismissed for that reason alone. *Rader*, 772 F. Supp. 2d at 603.  At the very least, the claim simply reflects Defendants' disagreement with patentee's legitimate patent enforcement actions—actions protected by statutory safe harbor provisions against patent misuse claims. 35 U.S.C. § 271 (d) ("No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be . . . deemed guilty of misuse . . . by reason of his having done one or more of the following: . . . (3) sought to enforce his patent rights against infringement or contributory infringement").

## CONCLUSION

CMC respectfully requests that the Court dismiss Defendants' Counterclaims 3-8 for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
Joseph Ostoyich
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: July 5, 2022

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on July 5, 2022, this document was served on the persons listed below in the manner indicated:

**BY EMAIL**

David E. Moore
Bindu A. Palapura
Carson R. Bartlett
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700 charles.lipsey@finnegan.com

Mark J. Feldstein
Mareesa A. Frederick
Eric J. Fues
Anthony A. Hartmann
Paul W. Townsend
Kaitlyn S. Pehrson
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
mark.feldstein@finnegan.com
mareesa.frederick@finnegan.com
eric.fues@finnegan.com
anthony.hartmann@finnegan.com
paul.townsend@finnegan.com
kaitlyn.pehrson@finnegan.com

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*