IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 20-738-MN |
| v. ) | |
| ) | |
| DUPONT DE NEMOURS, INC., et al., ) | **PUBLIC VERSION** |
| ) | |
| Defendants. ) | |

## LETTER TO THE HONORABLE MARYELLEN NORIEKA FROM DAVID E. MOORE

OF COUNSEL:

Mareesa A. Frederick
Mark Feldstein
Eric J. Fues
Anthony Hartmann
Matthew J. Hlinka
Paul Townsend
Kaitlyn Pehrson
FINNEGAN, HENDERSON, FARABOW, GARRETT
  & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Charles Lipsey
FINNEGAN, HENDERSON, FARABOW, GARRETT
  & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
Tel: (571) 203-2700

William S. Farmer
David C. Brownstein
David M. Goldstein
FARMER BROWNSTEIN JAEGER GOLDSTEIN
  KLEIN & SIEGEL LLP
235 Montgomery St., Suite 835
San Francisco, CA 94104
Tel: (415) 795-2050

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Carson R. Bartlett (#6750)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com

*Attorneys for Defendants DuPont de Nemours, Inc., Rohm and Haas Electronics Materials CMP Inc., Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia Pacific Co. Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC*

Dated: September 2, 2022    PUBLIC VERSION - Dated: September 9, 2022
10322781 / 00195.04092

Dear Judge Noreika:

Colloidal silica particles supplied by a third party, Fuso Chemical Co., Ltd ("Fuso"), are integral to the dispute before this Court between CMC and DuPont. CMC's ███████ ███████████████ regarding their particles are relevant to infringement, validity, inventorship, inequitable conduct, and CMC's anti-competitive activities. Given the particles' central importance to the ongoing litigation and the fact that ███████████████ ████████████████████████████ DuPont has proposed that this information be designated as "CONFIDENTIAL" under the proposed protective order. Far from allowing *carte blanch* access, this will make it accessible to a single DuPont "Designated In-House Counsel" supervising the litigation on behalf of DuPont, specifically DuPont's Chief Litigation Counsel, Sarah Diluzio, Esq. Ex. A, ¶¶ 1-4. CMC has rejected designating such material as "CONFIDENTIAL."

As an initial matter, CMC asserts that DuPont bears the burden of demonstrating "good cause" for, in essence, modifying the ITC protective order. D.I. 66 at 2. CMC has it backwards. CMC, "the party seeking the protective order" to designated disclosures it made to a third party as highly confidential, bears "the burden of showing good cause for its issuance." *British Telecom. PLC v. IAC/InterActiveCorp*, 330 F.R.D. 387, 390 (D. Del. 2019). The default single-tier protective order imposed by the ITC within days of institution was not negotiated or agreed to by the parties and is not precedent for or binding on this Court.

The parties agree that the proposed protective order limits the disclosure of "CONFIDENTIAL" material to "Designated In-House Counsel," defined as "one (1) identified in-house counsel who, because of their work managing, supervising, defending, or evaluating this action, require access to discovery material designated as 'CONFIDENTIAL.'" D.I. 66, Ex. A, ¶¶ 7, 9. The protective order further includes a "Competitive Decision-Maker Bar" whereby "any Designated In-House Counsel who accesses Discovery Material designated as CONFIDENTIAL shall not be involved in competitive decision making relating to the subject matter of this action." D.I. 66, Ex. A, ¶ 15. The definition further states that "Competitive decision making refers to, for example, business or strategic decisions, including marketing, financial, product development/design, procurement, and pricing decisions, on issues affecting competition. For the avoidance of doubt, no former or current officer of any party may be the 'Designated In-House Counsel' with access to Discovery Material designated as CONFIDENTIAL." *Id.*

As noted above, CMC has only objected to DuPont's proposal that "confidential information disclosed to and/or from third parties (with the exception of discovery produced by a third party during the ITC investigation)" be designated as "CONFIDENTIAL." Under CMC's proposal, information already disclosed to and/or from third parties may be designated as "HIGHLY CONFIDENTIAL" (if within one of its broad categories) and barred from disclosure to Designated In-House Counsel.

In an effort to preemptively resolve the dispute, DuPont proposed two separate compromises. The first, a temporal limitation (*i.e.* prior to June 1, 2020) on disclosures to and from third parties to be designated as "CONFIDENTIAL." D.I. 66, Ex. C at 2. This alleviates concerns regarding ongoing product development. Plaintiff CMC summarily rejected this compromise with no counter proposal. DuPont has, nevertheless, retained the temporal limitation in its proposal before this Court. DuPont's second proposed compromise would have required that only a subset of ████████████████████████████████████████████ be designated as "CONFIDENTIAL." D.I. 66, Ex. C at 2. In this same proposal, DuPont offered as a further

The Honorable Maryellen Noreika
September 2, 2022   PUBLIC VERSION September 9, 2022
Page 2

compromise that it would designate sales information relating to the Accused Products as "CONFIDENTIAL." *Id.*; *c.f.* D.I. 66 at 2 (CMC asserting that "long-standing competitors" would not share sales information). CMC, again, rejected this compromise with no counter proposal. D.I. 66, Ex. C at 1. This second compromise position remains agreeable to DuPont.

Notwithstanding the limited scope of "CONFIDENTIAL" information and the protections afforded by a protective order from this Court, CMC maintains that disclosure to DuPont's single Designated In-House Counsel will cause economic harm or significant competitive disadvantage to CMC, particularly with respect to ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆ D.I. 66 at 2-3. Even accepting CMC's characterization of the disputed material as commercially sensitive, this is not a basis to deny access by DuPont's Designated In-House Counsel. *See Affymetrix, Inc. v. Illumina, Inc.*, 2005 WL 1801683, at *2-*3 (D. Del. July 28, 2005) (finding that Affymetrix in-house counsel should be allowed access to "highly sensitive information" under the protective order); *British Telecom.*, 330 F.R.D. at 394 (granting in-house counsel access to "highly confidential" information under the protective order). Indeed, it is entirely consistent with practice in this District to allow a single in-house counsel access to even commercial sensitive confidential information, especially with the parties agreed-upon "Competitive Decision-Maker Bar" in place. *See, e.g., British Telecom.*, 330 F.R.D. at 391 ("In determining whether Mr. Hobbs should be allowed access to the defendants' highly confidential information, the first step is to determine whether Mr. Hobbs occupies a position of competitive decision-making with British Telecom."); *Affymetrix*, 2005 WL 1801683, at *2 ("In determining whether in-house counsel should be permitted to access confidential information under a protective order, the court should consider whether the attorneys are involved in competitive decision making of the company."); *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, 1990 WL 160666, at *2 (D. Del. Oct. 12, 1990) ("This capability on the part of each attorney to exclude himself or herself from conflicting work, avoids the possibility of conscious or unconscious abuse of confidential information.").

As noted above, Ms. Diluzio, head of litigation at DuPont, overseeing ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, will be DuPont's Designated In-House Counsel. Ex. A, ¶¶ 1,4. She is a member of the Delaware state bar and admitted to practice in this District. *Id.*, ¶ 3. She does not make ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *Id.*, ¶¶ 9-11. Nor is she a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ at DuPont. *Id.*, ¶ 2. Importantly, in the context of the dispute, Ms. Diluzio is not involved in any manner in ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *Id.*, ¶ 10. Instead, Ms. Diluzio's role in this case will be focused on managing the litigation and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ on behalf of DuPont. *Id.*, ¶ 4-6. As such, Ms. Diluzio needs access to the highly relevant Fuso information to meaningfully participate in the management of this matter and ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆. *Id.*, ¶¶ 7-8.



Ms. Diluzio's litigation role is precisely the role the courts have found appropriate for accessing protected confidential information. *See, e.g., British Telecom.*, 330 F.R.D. at 393 ("The more their roles have been limited to the conduct and settling of litigation, and the less they have been engaged in regular direct contact with the company's decisionmakers, the more likely the courts have been to find that the attorneys could have access to confidential information with undue risk of inadvertent disclosure.") (citations omitted); *Affymetrix*, 2005 WL 1801683, at *2

The Honorable Maryellen Noreika
September 2, 2022   PUBLIC VERSION September 9, 2022
Page 3

("Affymetrix has implemented numerous safeguards to protect against inadvertent disclosure and to ensure that the Litigation Unit does not assume a role in the management or competitive decision-making activities."). Indeed, "[i]n this District, the law is well-established that the risk of inadvertent disclosure is generally outweighed by in-house counsel's need for access to materials at issue in the litigation when in-house counsel's responsibilities are limited to litigation, with no competitive decision-making." *Sight Sciences, Inc. v. Ivantis, Inc.*, C.A. No. 21-1317, Oral Order at 1 (D. Del. Aug. 16, 2022) (citations omitted), Ex. B. Moreover, contrary to CMC's assertions that DuPont's Designated In-House Counsel may improperly use CMC's confidential information, "[i]n-house counsel like retained counsel are bound by the Code of Professional Responsibility and subject to sanctions." *Boehringer*, 1990 WL 160666, at *2.

Notably, it is clear that if CMC's proposal is adopted, CMC intends to designate nearly all ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as "HIGHLY CONFIDENTIAL" in order to preclude access by Designated In-House Counsel. D.I. 66 at 2-3. According to CMC, the ▮▮▮▮▮▮▮▮▮▮▮▮ are "the most highly sensitive information deserving of the highest protection available." D.I. 66 at 3. Yet many of the allegedly "highly confidential" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Regardless, this cannot be the basis for denying DuPont's Designated In-House Counsel access to information important to her role in managing litigation and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on behalf of DuPont. *See Affymetrix*, 2005 WL 1801683, at *2-*3; *see also British Telecom.*, 330 F.R.D. at 394. As litigants often do, to the extent CMC must seek approval from Fuso prior to disclosure of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it can easily do so given ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

For all the reasons discussed above, DuPont respectfully requests that the Court grant DuPont's proposed protective order, with a temporal limitation of June 1, 2020, and limited to the Fuso-related materials disclosed in DuPont's compromise set forth in D.I. 66, Ex. C at 2.

Respectfully,

/s/ David E. Moore

David E. Moore

DEM:nmt/10322781/00195.04092

cc:   Clerk of Court (via hand delivery)
      Counsel of Record (via electronic mail)