IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-738-GBW |
| | ) |
| DUPONT DE NEMOURS, INC., ROHM AND HAAS ELECTRONIC MATERIALS CMP, LLC, ROHM AND HAAS ELECTRONIC MATERIALS CMP ASIA INC. (d/b/a ROHM AND HAAS ELECTRONIC MATERIALS CMP ASIA INC, TAIWAN BRANCH (U.S.A.)), ROHM AND HAAS ELECTRONIC MATERIALS ASIA-PACIFIC CO. LTD., ROHM AND HAAS ELECTRONIC MATERIALS K.K., and ROHM AND HAAS ELECTRONIC MATERIALS LLC, | ) |
| Defendants. | ) |

**STIPULATION**

Plaintiff CMC Materials, Inc. ("CMC" or "Plaintiff") and Defendants DuPont de Nemours, Inc.; Rohm and Haas Electronic Materials CMP, LLC; Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)); Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.; Rohm and Haas Electronic Materials K.K.; and Rohm and Haas Electronic Materials LLC (collectively, "DuPont" or "Defendants"), by and through their respective attorneys, hereby stipulate and agree as follows:

**I.      Service and Delivery of Documents**

1. The parties consent to service by email, such email constituting effective service

equivalent to hand delivery if directed to the designated email addresses:

| Party | Designated Email Address[1] |
|---|---|
| Plaintiff | DLCMCvDPDelaware@BakerBotts.com; SKCabot@shawkeller.com |
| Defendants | DuPont-Delaware@finnegan.com IPservice@potteranderson.com dbrownstein@fbjgk.com wfarmer@fbjgk.com dgoldstein@fbjgk.com |

2. The parties agree that only individuals permitted access to documents containing Confidential or Highly Confidential Information pursuant to the Protective Order or D. Del LR 26.2 (absent a Protective Order) will be included in the above email distribution addresses.

3. When the size of the file containing any such document is larger than 10 MB, and transmission by email is impractical, same day service of the documents in electronic form may be made via secure file transfer over FTP, extranet, or hand delivery of electronic media.

4. Any document delivered via email or by FTP that contains Confidential or Highly Confidential Information subject to the Protective Order shall be protected by password.

5. Discovery requests and responses sent by email on or before 5:00 PM ET shall be deemed to have been served on the day sent. Discovery requests and responses sent by email after 5:00 PM ET shall be deemed to have been served on the following day. Discovery requests and discovery responses shall be served by electronic service, in searchable PDF format. All discovery requests also shall be served in MS Word format no later than the following day.

---

[1] The designated email addresses may be modified or otherwise supplemented by notice to the other party's designated email addresses.

II. **Agreed Cross-Use**

6. The parties have agreed to the following relating to materials from ITC Investigation No. 337-TA-1204:

> All of the materials from Investigation No. 337-TA-1204 shall be deemed to have been made or produced in this action, subject to the provisions of the October 13, 2022, Protective Order, and with the understanding that there is no agreement to the admissibility of any of those materials. Consistent with the ITC protective order in Investigation No. 337-TA-1204, all discovery produced by third parties in Investigation No. 337-TA-1204 maintain their confidentiality designation, i.e., either non-confidential or highly confidential, as defined in the October 13, 2022, Protective Order.

III. **Sources Not to Be Searched**

7. Absent a showing of good cause by the requesting party, the parties agree that in addition to the categories identified in Schedule A to the Default Standard for Discovery, Including Discovery of Electronically Stored Information, the following sources need not be searched and therefore need not be preserved: automated disaster recovery backup systems and/or disaster recovery backup tapes; RAM or temporary files; temporary internet files, history, cache, cookies, and other on-line access data; data in metadata fields that are updated automatically such as last-opened dates; data remaining from systems no longer in use that is unintelligible on the systems in use; residual, fragmented, damaged, permanently deleted, slack, and unallocated data; voicemail systems; test messages; mobile devices; instant messaging logs; and social media or other web-based communications. The parties agree to use reasonable, good faith and proportional efforts to identify relevant information responsive to each other's discovery requests in sources not identified in this paragraph.

8. The parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data.

**IV.     Privileged Information**

9. Regardless of the country where documents, information and/or communications were created, occurred and/or are maintained, the parties agree that the full protections of United States privilege law apply to all aspects of this litigation, and that for purposes of applying United States privilege law, all foreign lawyers and patent agents will be considered United States lawyers and patent agents, respectively. Counsel's outside support personnel, including translators, graphics personnel, trial consultants, document collection and review personnel, and the like, are included within counsel's privilege and protective order provisions, subject to execution of Attachment A to the Protective Order, to the extent required.

10. The parties agree to the exchange of privilege logs for any documents responsive to discovery requests in this matter, whether from a new production in this matter or a prior production from Investigation No. 337-TA-1204 (i) one month after the substantial completion of document production deadline for documents produced by that deadline, and (ii) timely supplementations for any later document productions. A privilege log shall include at least the following information for any records withheld in full or in part under a claim of privilege, to the extent applicable: (a) a document identification number; (b) the persons associated with the document (e.g., author, recipient), including identification of any in-house or outside counsel; (c) the document's date or date range; (d) specification of the claimed privilege or protection (e.g., "attorney-client privilege," "attorney work product," etc.); (e) a general description of the document's subject matter, including an explanation of the basis for the claimed privilege or protection; and (f) the document type (e.g., email, Word document, etc.).

11. With respect to information generated after the filing of the amended complaint on

June 1, 2022, the parties are not required to include any such information in privilege logs.

12.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

13.     If a document or information inadvertently produced in discovery is subject to a claim of attorney-client privilege, work product, or other immunity ("privileged information"), the inadvertent production of that privileged information shall not be deemed to constitute a waiver of any applicable privileges or protections. Likewise, consistent with Federal Rule of Evidence 502(d), the inadvertent production of any privileged information is not a waiver in the pending case or in any other federal or state proceeding.

14.     When a producing party identifies privileged information that was inadvertently produced or when a receiving party identifies potentially privileged information that may have been inadvertently produced, it shall promptly notify the receiving or producing party within one business day of that identification. After a producing party receives such a notice and determines the information to be privileged information, or if the producing party discovers an inadvertent production on its own, the producing party shall, within 3 business days of receiving notice or notifying the receiving party of an inadvertent production, provide the following to any party that received the privileged information: (a) identification of the privileged information; (b) identification of the author(s) and recipient(s), including identification of any in-house or outside counsel; (c) the document's date or date range; (d) specification of the claimed privilege or protection; (e) a general description of the document's subject matter, including an explanation of the basis for the claimed privilege or protection; (f) the document type (e.g., email, Word

document, etc.). After receiving such a notice, the receiving party shall (a) within 7 days, return or destroy the specified privileged information along with any copies it has of the document or information; (b) not use, review, or disclose the document or information until the claim is resolved; and (c) within 7 days, take reasonable steps to retrieve the document or information if the person disclosed it to others before being notified and informed by the producing party of the privilege claim.

15. Such return or destruction shall not preclude the receiving party from subsequently seeking to compel production of the privileged information pursuant to the Court's discovery dispute procedures no later than 30 days of the original notice. The party that produced the document must preserve the document or information until the claim of privilege or protection is resolved.

16. The parties agree that documents that are only partially privileged will be produced, to the extent possible, with the privileged information redacted. For example, if only a portion or subset of a document or email includes privileged information, the parties agree the entire document will not be withheld as privileged when it is reasonable to redact the privileged information.

V. **Inadvertent Failure to Designate Confidential or Highly Confidential Information**

17. A party that inadvertently fails to designate information as confidential, whether Confidential or Highly Confidential, may promptly notify the other parties that such information should have been designated Confidential or Highly Confidential Information and should be treated as Confidential or Highly Confidential Information. Where appropriate, the designating

party shall provide replacement copies of such materials bearing the appropriate confidentiality designation. Upon being notified that the information was inadvertently not designated as confidential, the receiving parties shall take reasonable steps to retrieve the information from any recipients of such information who previously had been provided the confidential information and who are not authorized to access such confidential information under the Protective Order. If the receiving party has reason to believe that the information has been disseminated to persons from whom it has not been able to retrieve the information through reasonable steps, it shall inform the producing party of that fact.

      18.     No party shall argue that another party is in breach of the Protective Order for any use of confidential information during the time that the information was not designated as confidential.

## VI. Non-Confidential Versions of Certain Documents

      19.     The parties agree to exchange redacted versions of confidential pleadings, motions, or other filings for which a public version is expected within four business days of filing so the parties can provide public versions to individuals outside the Protective Order and/or timely file them.

## VII. Depositions

      20.     The parties agree that a party scheduling a deposition of any third-party will use best efforts to include the other parties when scheduling the deposition and must notify the other parties at least 5 business days before any deposition takes place. The parties also agree not to object to any third-party witnesses appearing at a deposition being questioned by all parties to this litigation, except that the parties will make reasonable efforts not to duplicate other parties'

questioning.

**VIII.   Documents Received in Response to a Subpoena**

21.     Any party who receives documents from a third party pursuant to a subpoena shall reproduce those documents to the other parties within 3 business days of receipt. Where reproduction of the documents within 3 business days is not feasible, the party who received the documents shall provide prompt notice to the other parties. Re-production of materials received from a third party pursuant to a subpoena is not necessary under this paragraph when it is apparent (such as on a production cover letter) that the third party has already produced the materials to the other parties.

**IX.    Form of Electronically Stored Information ("ESI") Production**

22.     The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a) of the Default Standard for Discovery, Including Discovery of Electronically Stored Information.

23.     If the producing party elects to use search terms to locate potentially responsive emails, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search for each custodian. If a search term for a given custodian includes product and/or company names, then the parties will work to further limit that search term if more than 5000 search hits (including family members) are identified.

24.     Unless otherwise agreed between the parties, all documents, including any ESI, shall be produced in native-file format or as TIFF images as follows, subject to the technical

capabilities of the producing party or its vendor:

    a.    All documents shall be produced in TIFF or JPEG format, in single-page images, at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and either IPRO (LFP file or Opticon (OPT file) format, including document breaks and page counts. Parties will produce all documents in color (JPEG format) if the native was in color. Only documents where the native was in black and white shall be produced in TIFF format.

    b.    Document level extracted text files with a .txt extension will be provided for all produced documents. The text file name will correspond to the beginning production number of the image or native file. A field will be included in the DAT with the path to the corresponding text file. Where extracted text is unavailable, Optical character recognition ("OCR") data shall be included as part of the document-level TXT file. Such OCR data shall match the pagination of the corresponding TIFF images. To the extent a producing party provides OCR data, the receiving party accepts the data "as is," and the producing party accepts no liability as to the accuracy of searches conducted using the OCR data.

    c.    Images shall be produced using a unique file name that will be the production number of that page (e.g., XYZ000001.TIFF). The production number shall appear on the on the bottom right corner of face of the image

of each produced page with any confidentiality designation in the bottom left corner. For documents that are produced as native files, the producing party will include in the set of TIFF images a one-page slipsheet that reads "FILE PRODUCED NATIVELY" where the native file would otherwise have been produced. The one-page slipsheet will include the production number of the corresponding native file and the confidentiality designation. In addition, native files shall be produced using a name that bears the production number, for example: ABC000002.xls. The producing party shall also include any confidentiality designation in the produced filename where possible and reasonable, for example: ABC000002_CONFIDENTIAL.xls. The DAT file shall also include a path to the native file.

d.  Parent-child relationships (association between an attachment and its parent document) shall be preserved to the extent such relationships are maintained in the normal course of business in the source repository. The attachment(s) shall be produced adjacent to the parent document in terms of production numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Any parent-child relationship will be reflected in the DAT file.

e.  Productions that contain foreign language characters shall be Unicode

compliant.

f. To the extent possible, the unitization of a produced electronically stored document and any attachments or affixed notes shall be maintained as it existed in the original file or computer. Scanned/paper documents should be logically unitized (i.e., to preserve page breaks between documents and otherwise allow separate documents to be identified).

g. If unitization cannot be maintained, the original unitization shall be documented in the associated load file or otherwise electronically tracked if possible.

h. Each party will use reasonable efforts to filter out common system files and application executable files.

i. A party is required to produce only a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) across custodians. Metadata for any deduplicated files shall reflect each custodian from whom the document was collected and processed. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

j. A producing party shall respond to reasonable requests that spreadsheets and other documents produced in TIFF format that are unintelligible or not readily usable be produced in another format, such as native format.

k. The parties are not required to preserve metadata fields that are frequently updated in the ordinary course of business, such as last-opened dates.

l. No party shall be required to create any metadata for production (e.g., hash value or other metadata not associated with ESI in the ordinary course of business) except that the parties will create a field to indicate whether or not a document has been marked confidential pursuant to the protective order (see below list of metadata fields). However, a receiving party may not rely solely on this field to identify information and documents that it is required to treat as confidential. Any document produced with a confidentiality banner on the produced image is to be afforded confidential treatment under the Protective Order regardless of whether there is an entry in this field.

m. A party producing documents pursuant to this paragraph will provide a delimited load file (DAT) with compatible encoding and with at least the following metadata fields for at least the following file types:

| Field Name | Field Description | File Type |
|---|---|---|
| BegBates | Beginning production number for a given file/document | All |
| EndBates | Ending production number for a given file/document | All |
| BegAttach | Bates number for the first page of first attachment | All |
| EndAttach | Bates number for the last page of last attachment | All |
| Pgcount | Total number of pages in the document | All |
| Title | The Title property of a file (subject line for emails, file name for non-email) | Electronic documents |

| | | |
|---|---|---|
| All Custodians | Identify all custodians where document was de-duped | Electronic documents |
| All Filepaths | Identify all filepaths where documented was de-duped | Electronic documents |
| Author | The Author property of an efile document | Electronic documents |
| FileExtension | The file extension | Electronic documents |
| DateCreated | Document date created | Electronic documents |
| Last Modified | Date Document was last modified | Electronic documents |
| Confidentiality | Confidentiality designation | All |
| TextLink | Contains path to .TXT files | All |
| NativeLink | Contains path to native files | Electronic documents |
| Redact | Indicates whether there are any redactions assigned by the producing party to the document (yes/no field) | All |
| From | Sender | Email |
| To | Recipient(s) | Email |
| CC | Carbon copy recipient(s) | Email |
| BCC | Blind carbon copy recipient(s) | Email |
| Subject | Subject line of the email | Email |
| Date Sent* | MM/DD/YYYY | Email |
| Time Sent* | HH:MM:SS | Email |
| Parent Document ID | Populated only for email attachments, this field will display the image tag field value for the attachment's parent email | Email |

13

| | |
|---|---|
| */s/ Andrew E. Russell* | */s/ Bindu A. Palapura* |
| John W. Shaw (No. 3362) | David E. Moore (No. 3983) |
| Karen E. Keller (No. 4489) | Bindu A. Palapura (No. 5370) |
| Andrew E. Russell (No. 5382) | POTTER ANDERSON & CORROON LLP |
| SHAW KELLER LLP | Hercules Plaza, 6th Floor |
| I.M. Pei Building | 1313 N. Market Street |
| 1105 North Market Street, 12th Floor | Wilmington, DE 19801 |
| Wilmington, DE 19801 | (302) 984-600 |
| (302) 298-0700 | dmoore@potteranderson.com |
| jshaw@shawkeller.com | bpalapura@potteranderson.com |
| kkeller@shawkeller.com | *Attorneys for Defendants* |
| arussell@shawkeller.com | |
| *Attorneys for Plaintiff* | OF COUNSEL: |
| | Mareesa A. Frederick |
| Robert C. Scheinfeld | Mark Feldstein |
| Robert L. Maier | Eric J. Fues |
| Margaret M. Welsh | Anthony A. Hartmann |
| Frank Zhu | Matthew J. Hlinka |
| BAKER BOTTS L.L.P. | Paul Townsend |
| 30 Rockefeller Plaza | Kaitlyn Pehrson |
| New York, NY 10112 | FINNEGAN, HENDERSON, FARABOW, GARRETT |
| (212) 408 2500 | & DUNNER, LLP |
| | 901 New York Avenue, NW |
| Lisa M. Kattan | Washington, DC 20001-4413 |
| Katharine M. Burke | (202) 408-4000 |
| Thomas C. Martin | |
| Samuel L. Kassa | Charles Lipsey |
| Joseph Ostoyich | FINNEGAN, HENDERSON, FARABOW, GARRETT |
| Danielle Morello | & DUNNER, LLP |
| William Lavery | 1875 Explorer Street, Suite 800 |
| BAKER BOTTS L.L.P. | Reston, VA 20190 |
| 700 K Street, N.W. | (571) 203-2700 |
| Washington, D.C. 20001 | |
| (202) 639-7700 | |

Dated: December 1, 2022

  SO ORDERED this _____ day of _____, 2022.

                 _____
                 United States District Judge