IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CMC MATERIALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-738-GBW |
| | ) | |
| DUPONT DE NEMOURS, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO BIFURCATE AND STAY DUPONT'S ANTITRUST-RELATED
<u>COUNTERCLAIMS (COUNTS 4-7)</u>**

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
Joseph Ostoyich
Danielle Morello
William Lavery
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: July 14, 2023

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1
SUMMARY OF THE ARGUMENT ............................................................................................ 2
STATEMENT OF RELEVANT FACTS ..................................................................................... 6
ARGUMENT ................................................................................................................................. 7
    I.    Bifurcation of the antitrust-related counterclaims is warranted ................................... 8
        a.    Bifurcation will likely dispose of all of DuPont's antitrust counterclaims and conserve judicial resources ................................................................................ 8
        b.    Bifurcation would enhance juror comprehension of the issues ...................... 11
        c.    Bifurcation will reduce prejudice to CMC ...................................................... 12
    II.    A stay of the antitrust claims will conserve judicial resources and avoid unnecessary intrusive and expensive fact and expert discovery ...................................................... 13
CONCLUSION ............................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Akzona Inc. v. E.I. DuPont De Nemours & Co.*,
   607 F.Supp.227 (D. Del. 1984) ..................................................................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................................................18

*Board of Regents, the Univ. of Texas Sys. v. Boston Scientific Corp.*,
   No. 18-392-GBW, 2022 WL 17403478 (D. Del. Dec. 2, 2022) ...........................7, 8, 9, 11, 16

*CMI Inc. v. Verax Sys. Inc.*,
   5 U.S.P.Q.2d 1676 (W.D.N.Y. 1987) .......................................................................................17

*Dentsply Int'l Inc. v. New Tech. Co.*,
   No. CIV.A. 96-272 MMS, 1996 WL 756766 (D. Del. Dec. 19, 1996) ..............................13, 14

*Dsm Desotech Inc. v. 3D Sys. Corp.*,
   No. 08–CV–1531, 2008 WL 4812440 (D.Ill. Oct. 28, 2008) ...................................................18

*Eagle Pharms., Inc. v. Eli Lilly & Co.*,
   18-1121-MSG, 2018 WL 6201704 (D. Del. Nov. 27, 2018) ......................................................6

*Hydranautics v. Filmtec Corp.*,
   70 F.3d 533 (9th Cir. 1995) ......................................................................................................13

*In re Innotrol Diagnostics*,
   800 F.3d 1077 (Fed. Cir. 1986) ..................................................................................................7

*Masimo Corp. v. Philips Elecs. N. Am. Corp.*,
   No. 09-80, 2010 WL 925864 (D. Del. March 11, 2010) ...........................6, 11, 12, 15, 17, 18

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
   No. CIV. JKB-09-2657, 2011 WL 1045630 (D. Md. Mar. 17, 2011) .....................................17

*Monsanto Co. v. E.I. du Pont De Nemours & Co.*,
   No. 4:09CV00686 ERW, 2009 WL 3012584 (E.D. Mo. Sept. 16, 2009) ..........................12, 13

*Neomagic Corp. v. Trident Microsys., Inc.*,
   No. 98-699, 2001 WL 1064812 (D. Del. Sept. 7, 2001) .............................................11, 12, 17

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
   508 U.S. 49 (1993) ....................................................................................................................14

*Ricoh Co., Ltd. v. Katun Corp.*,
    No. 03-2612, 2005 WL 6965048 (D.N.J. July 14, 2005) ........................................................15

*Robert Boasch LLC v. Pylon Mfg. Corp.*,
    No. CIV.08-542-SLR, 2009 WL 2742750 (D. Del. Aug. 26, 2009) ........................................16

*United States v. E.I. Du Pont De Nemours & Co.*,
    118 F. Supp. 41 (D. Del. 1953), *aff'd*, 351 U.S. 377 (1956)...............................................5, 12

*Virginia Panel Corp. v. Mac Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997)................................................................................................14

**OTHER AUTHORITIES**

Chief Judge Colm F. Connolly, Scheduling Order for Non-Hatch-Waxman Patent Cases in
    Which Infringement is Alleged (Apr. 18, 2022).....................................................................11

Pursuant to Rule 42(b), Plaintiff CMC Materials, Inc. ("CMC") respectfully requests the Court bifurcate and stay the antitrust-related counterclaims (Counts 4-7) brought by Defendants DuPont de Nemours, Inc., *et al.* ("DuPont") pending resolution of CMC's patent infringement claims. Bifurcation is common in cases involving patent and antitrust claims, as here, and is warranted in this case because it will conserve judicial resources, enhance juror comprehension of highly complex patent law and antitrust issues, and reduce prejudice CMC will suffer if the claims remain consolidated. In addition, a stay of DuPont's antitrust-related counterclaims pending resolution of the patent issues will indisputably avoid unnecessary fact and expert discovery, as resolution of the patent issues will likely moot all of the complex antitrust claims alleged by DuPont. Indeed, if the patent claims are resolved in CMC's favor here, as they were at the International Trade Commission ("ITC"), DuPont could not establish the required elements of its antitrust counterclaims as a matter of law, as "[t]he holder of a patent is, in accordance with the patent laws, permitted to exert monopoly control over what he has created." *United States v. E.I. Du Pont De Nemours & Co.*, 118 F. Supp. 41, 214 (D. Del. 1953), *aff'd*, 351 U.S. 377 (1956). DuPont cannot plausibly articulate any countervailing prejudice, much less prejudice sufficient to outweigh the myriad benefits of a bifurcation and stay of the antitrust-related counterclaims.

## NATURE AND STAGE OF THE PROCEEDINGS

CMC filed this action in June 2020 to enjoin, and recover damages from, DuPont's infringement of CMC's U.S. Patent No. 9,499,721 (the "'721 Patent"), and contemporaneously filed a similar complaint with the ITC. This action was stayed while the parallel ITC proceeding commenced. After extensive fact and expert discovery and a full evidentiary hearing, an ALJ found that DuPont infringed CMC's '721 Patent and rejected all of DuPont's invalidity and unenforceability defenses. The ITC confirmed those findings of infringement, validity, and

1

enforceability, and issued exclusion and cease and desist orders against DuPont on December 16, 2021. DuPont did not appeal.

On May 18, 2022, this Court lifted the stay in this action, and on June 1, 2022, CMC amended its Complaint to include the ITC's findings. D.I. 18; D.I. 23. Defendants did not move to dismiss CMC's Complaint, but rather filed an Answer and asserted eight Counterclaims largely related to new antitrust allegations. D.I. 30. CMC moved to dismiss Counterclaims 3-8. D.I. 40. Rather than opposing that motion, Defendants amended their Counterclaim Complaint. D.I. 49. Those amended claims remained deficient. CMC filed a motion to dismiss DuPont's Amended Counterclaims on August 16, 2022, and that motion is still pending. D.I. 61-62. Now, with expensive and burdensome antitrust fact and expert discovery on the immediate horizon,[1] CMC moves to bifurcate and stay DuPont's antitrust-related Counterclaims, Counts 4-7. The parties met and conferred on this issue on July 11, 2023 and are at an impasse.

## SUMMARY OF THE ARGUMENT

CMC maintains that DuPont's Counterclaims 3-8 should be dismissed under Rule 12. While CMC's Motion to Dismiss DuPont's Counterclaims remains pending and antitrust discovery remains imminent, CMC moves to bifurcate and stay DuPont's antitrust counterclaims.

Rule 42(b) allows the Court broad discretion to bifurcate claims. And "it is common practice for courts to stay an antitrust case until after resolution of a related patent case." *Eagle Pharms., Inc. v. Eli Lilly & Co.*, 18-1121-MSG, 2018 WL 6201704, at *2 N.3 (D. Del. Nov. 27, 2018) (staying accused infringer's antitrust claims pending conclusion of the trial in the related patent action); *see also Masimo Corp. v. Philips Elecs. N. Am. Corp.*, No. 09-80, 2010 WL 925864, at *1 (D. Del. March 11, 2010) ("Bifurcation of patent and antitrust claims is not mandatory, but

---

[1] The fact discovery deadline under the Scheduling Order is October 20, 2023, and initial expert reports are due on March 20, 2024. D.I. 93.

it is common."). Indeed, "[s]o many cases have granted motions to bifurcate patent-related antitrust claims from infringement claims, that even the Federal Circuit has commented that granting bifurcation is 'now-standard practice.'" 6 ANPATDIG § 39:100 (June 2023 Update) (quoting *In re Innotrol Diagnostics*, 800 F.3d 1077, 1084 (Fed. Cir. 1986)).

Courts in this District, including this Court, commonly bifurcate claims where there will be a conservation of judicial resources, an enhancement of juror comprehension of the issues, and a reduction in potential prejudice to a party. *See Board of Regents, the Univ. of Texas Sys. v. Boston Scientific Corp.*, No. 18-392-GBW, 2022 WL 17403478, at *2-3 (D. Del. Dec. 2, 2022) (granting motion "because bifurcation could conserve judicial economy and will enhance juror comprehension" and cause a "reduction in prejudice"). In this case, an analysis of each of these issues supports bifurcation of CMC's patent claims and DuPont's antitrust-related counterclaims.

First, bifurcation of the antitrust claims will conserve judicial resources and promote efficiency. DuPont's antitrust counterclaims rely on a finding of invalidity and, further, fraud—in direct contradiction of the ITC's findings, which DuPont did not appeal—to maintain its claims. And DuPont's counterclaims necessarily assume that CMC had no right to assert its patent. In the event that DuPont is found to have infringed CMC's valid patent, as was determined by the ALJ and ITC after a full evidentiary hearing, DuPont's antitrust counterclaims would likely be entirely eliminated. Based on CMC's current understanding of the expected issues at trial, this would likely eliminate multiple days of trial, multiple expert witnesses, and hundreds of exhibits related primarily or exclusively to the antitrust claims.

Second, bifurcation will enhance juror comprehension of the issues, as antitrust claims are necessarily complex and require adjudication of numerous issues (in addition to the underlying patent claims) as well as extensive additional evidence, experts, and legal theories. For example,

3

the antitrust claims here will require DuPont to satisfy highly complicated legal and economic elements of its claims—wholly irrelevant to the patent claims—including relevant antitrust product and geographic markets, CMC's alleged market power in those relevant markets, whether there was "substantial foreclosure" of competition, whether CMC's alleged conduct caused market-wide injury to consumers, and damages.  The patent issues in this action are technical and complex on their own, as illustrated by the numerous additional claim terms for which DuPont seeks construction and the thousands of obviousness combinations DuPont proposes in its invalidity contentions—even after full adjudication of these issues at the ITC.  Separating the patent and antitrust claims will undeniably permit the jury to fully focus on one subset of highly technical issues in the first instance, and separate—and likely eliminate—the need for the jury to comprehend the intricate antitrust issues.

Third, bifurcation will reduce prejudice to CMC.  DuPont already lost *twice* on the very same patent issues before the Court—once before an ALJ and again before the ITC.  Faced with CMC's patent infringement lawsuit here asserting the exact infringement claims CMC twice prevailed on, DuPont reflexively manufactured antitrust counterclaims in a desperate attempt to muddy the waters and CMC's reputation through claims of purported anticompetitive conduct. DuPont has already demonstrated through discovery and arguments before this Court that it is using its antitrust allegations to improperly influence CMC's separate and distinct patent infringement claims, such as by coloring this action as a "sham litigation" despite CMC prevailing on the same claims at the ITC.  DuPont's arguments to a lay jury that CMC engaged in anticompetitive conduct will likely significantly and unfairly impact the jury's neutral evaluation of the purely technical question of whether DuPont infringed CMC's '721 Patent.  As in *Board of Regents* where this Court found in favor of bifurcation, it is highly likely that if the claims remain

4

consolidated, DuPont's antitrust allegations "could encourage a jury" to make determinations on the patent infringement issues "unrelated to a comparison of the Accused Products to the Asserted Claims." *Board of Regents*, 2022 WL 17403478, at *5.

Finally, in addition to bifurcation, a stay of the antitrust-related counterclaims pending resolution of the patent claims is warranted, as DuPont likely cannot maintain its counterclaims if this Court finds that it infringed CMC's valid patent. DuPont's antitrust counterclaims necessarily require this Court to come to a decision diametrically opposed to the ALJ's and ITC's findings—which DuPont did not appeal—assessing the same foundational evidence available in that ITC proceedings, for claims that DuPont did not even move to dismiss.[2]

Antitrust discovery, particularly expert discovery, will be burdensome and expensive, and will at the very least involve issues of market definition and power, industry practices related to exclusivity, market foreclosure, CMC's business justifications, antitrust causation, and antitrust-related damages. Even if some minor portion of evidence may overlap between the patent and antitrust claims, extensive and specific antitrust discovery will still need to be taken; to the extent the same fact witnesses may testify about both patent and antitrust issues, those issues are largely independent. A stay of DuPont's antitrust counterclaims pending resolution of the patent issues would likely moot those counterclaims, saving the Court from the inefficiency of hearing unnecessary issues and saving the parties from the exorbitant high cost and burden of engaging in antitrust fact and expert discovery.

---

[2] In the unlikely event that a jury comes to a decision fundamentally counter to the ITC decision, DuPont still cannot maintain its antitrust counterclaims, in part because they are barred by the statute of limitations and *Noerr-Pennington* doctrine, and because DuPont failed to adequately allege fraud. CMC's briefing on its Motion to Dismiss DuPont's Amended Counterclaims describes in detail why these claims fail, even if CMC does not prevail on its underlying patent claims. D.I. 62.

**STATEMENT OF RELEVANT FACTS**

Because CMC's ITC action against DuPont was a "parallel proceeding" that "involve[d] the same issues" presented here, the Court stayed this case pending resolution of the ITC investigation. D.I. 14. After extensive fact and expert discovery and a full evidentiary hearing, an ALJ found that DuPont infringed CMC's '721 Patent and rejected all of DuPont's invalidity and unenforceability defenses. The ITC confirmed the ALJ's findings of infringement, validity, and enforceability and issued exclusion and cease and desist orders against DuPont. Defendants did not appeal.

DuPont's antitrust counterclaims here include a Sherman Act Section 1 claim (count four), a Sherman Act Section 2 *Walker Process* fraud claim based on alleged bad faith prosecution of this suit and the related ITC action (which CMC won) (count five), a state law unfair competition claim (count six), and a state law tortious interference with prospective business relations claim (claim seven). *Id.* The counterclaims rely on allegations that CMC "fraudulently obtained" its '721 Patent in 2015 and that this action and the ITC case—a case CMC won—are sham litigation. *Id.* The counterclaims assert a "pattern" of anticompetitive conduct based on a mishmash of allegations, including CMC's purported "fraud" in procuring and asserting the patent as well as CMC's entrance into a short-term exclusivity agreement with a supplier, Fuso, a decade ago. *Id.* To be sure, each counterclaim necessarily relies not just on a finding of patent invalidity contrary to the findings of the ALJ and ITC, but also a finding of fraud in procuring and asserting that patent—along with each of the traditional elements of antitrust claims, including market definition and power, antitrust causation, and antitrust-related damages, and related issues such as industry practices related to exclusivity, market foreclosure, and CMC's business justifications.

6

## ARGUMENT

This Court commonly bifurcates claims in patent cases, through an assessment of whether bifurcation will conserve judicial resources, enhance juror comprehension of complex issues, and reduce potential prejudice. *See Board of Regents,* 2022 WL 17403478 at *2-3 (granting motion "because bifurcation could conserve judicial economy and will enhance juror comprehension" and cause a "reduction in prejudice"). Indeed, courts in this District commonly employ bifurcation in the patent context; Chief Judge Connolly recently incorporated a standing presumption of bifurcation of certain issues into his model form scheduling order for patent cases, stating: "[u]nless otherwise agreed to by the parties and the Court, the trial will be phased such that the issues of willful infringement and damages will be tried only if there is a finding of infringement." Chief Judge Colm F. Connolly, Scheduling Order for Non-Hatch-Waxman Patent Cases in Which Infringement is Alleged, at * 27 (Apr. 18, 2022).[3] And courts in this District frequently stay antitrust counterclaims when doing so would conserve judicial resources and avoid potentially unnecessary and burdensome discovery. *See, e.g.*, *Masimo Corp.* 2010 WL 925864, at *3; *Neomagic Corp. v. Trident Microsys., Inc.*, No. 98-699, 2001 WL 1064812, at *1-2 (D. Del. Sept. 7, 2001) (explaining reasoning for stay of antitrust counterclaims, "to avoid a potential waste of resources for the parties and the court" because "the continuing viability of the antitrust claim was dependent on the outcome of the patent infringement claims").

The court's decision in *Masimo Corp.* is particularly instructive here. In that case, Masimo filed a patent infringement action against defendant Philips, which in turn filed antitrust-related counterclaims. *Masimo Corp.* 2010 WL 925864, at *1. In granting Masimo's motion to bifurcate

---

[3] Available at
https://www.ded.uscourts.gov/sites/ded/files/chambers/Form%20Scheduling%20Order%20for%20Non-Hax%20Waxman%20Patent%20Cases%20in%20Which%20Infringement%20is%20Alleged.pdf

7

and stay those antitrust counterclaims, the court recognized that "antitrust litigation is often enormously time-consuming" and that granting the motion was warranted in part because "there is a possibility that a trial on Masimo's patent claims will simplify some of Philips' antitrust counterclaims." *Id.* at *2. Consistent with the reasoning in *Masimo*, if the jury concludes, consistent with the ALJ and ITC, that CMC's patent is not invalid, DuPont's antitrust counterclaims will fall like a house of cards. Bifurcation and a stay of those claims will ultimately save the Court from hearing, and the parties from litigating, those claims at all.

> I. **Bifurcation of the antitrust-related counterclaims is warranted**

Bifurcation is warranted in this case based on each element examined by Courts in this circuit: it will conserve judicial resources, it will benefit jury comprehension of complex issues, and it will reduce prejudice to CMC at no cost. Moreover, DuPont cannot allege any plausible prejudice that it would incur from bifurcation or stay, or that any alleged prejudice outweighs the benefits of bifurcation and stay.

> a. **Bifurcation will likely dispose of all of DuPont's antitrust counterclaims and conserve judicial resources**

This Court should bifurcate the antitrust counterclaims from the underlying patent claims because a finding that DuPont infringed CMC's patent will significantly impact, and likely eliminate, DuPont's ability to maintain its antitrust counterclaims. *See, e.g., Neomagic Cor. V. Trident Microsys., Inc.*, No. 98-699, 2001 WL 1064812, at *1 (D. Del. Sept. 7, 2001) (separating antitrust claims where "the continuing viability of the antitrust claim was dependent on the outcome of the patent infringement claims"); *Monsanto Co. v. E.I. du Pont De Nemours & Co.*, No. 4:09CV00686 ERW, 2009 WL 3012584, at *5 (E.D. Mo. Sept. 16, 2009) (bifurcating patent and antitrust claims in part because of the possibility that trial of the patent claims would simplify some of the antitrust counterclaims); *Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 536 (9th Cir.

8

1995) ("If the plaintiff wins the patent infringement suit, then the antitrust counterclaim may ordinarily be disposed of expeditiously on motion, instead of by a time consuming and expensive trial.").

Likely all of DuPont's antitrust counterclaims cannot survive as a matter of law in the face of a finding that CMC's patent is valid and enforceable, and that CMC could thus legally exclude DuPont from infringing the patent. As recognized in *Dentsply*, bifurcation should be granted where "[t]here is a possibility that all aspects of the antitrust counterclaim . . . could be resolved by a first trial on patent infringement." *Dentsply Int'l Inc. v. New Tech. Co.*, No. CIV.A. 96-272 MMS, 1996 WL 756766, at *3 (D. Del. Dec. 19, 1996). Importantly, the Court recognized that "[a] patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years. Accordingly, a patent confers upon its owner the ability to bring monopolistic characteristics to the marketplace-the very antithesis of a prime purpose of antitrust legislation." *Id.* The ALJ and ITC already found that CMC's '721 Patent is not invalid, is not unenforceable, and that DuPont infringed. The likelihood that examination of the same claims here will return the same result, mooting DuPont's antitrust counterclaims, weighs strongly in favor of bifurcation. Put simply, DuPont would no longer be able maintain its allegations that CMC committed fraud in procuring and enforcing a patent if the Court found that patent to be valid and enforceable.[4]

For example, if CMC's patent stands valid, DuPont cannot establish multiple critical elements of its *Walker Process* fraud claim. *See Akzona Inc. v. E.I. DuPont De Nemours & Co.*, 607 F.Supp.227, 234 (D. Del. 1984) ("Under *Walker,* if [the patent holder] prevails on the issue of patent validity, [the] antitrust claim based on fraud on the United States Patent Office would have

---

[4] CMC's Opening Brief in Support of its Motion to Dismiss DuPont's Counterclaims expounds at length on the fatal flaws inherent in DuPont's counterclaims and discusses how those claims cannot be maintained if the ITC findings are echoed in this action. D.I. 62.

9

to be dismissed. Thus, at least to this extent, resolution of the issues in the first trial could be dispositive of some of the issues in the second trial.").

Similarly, CMC's right to enforce its valid '721 Patent would eliminate DuPont's ability to maintain any state law tortious interference with prospective business relations or unfair competition claim. CMC has the absolute right to enforce its valid '721 Patent against DuPont's infringement, and to exclude others from selling any products that are covered by that patent. *See Dentsply*, 1996 WL 756766, at *3 ("A patent gives a patent owner the right to exclude others from the marketplace for a statutory number of years."); *Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d 860, 873 (Fed. Cir. 1997) ("[A] patentee may lawfully police a market that is effectively defined by its patent.").

Likewise, CMC's litigation related to the '721 Patent could not be "sham" litigation by definition, as it is objectively and subjectively reasonable for CMC to bring litigation to protect against infringement of a valid and enforceable patent. The success of the ITC litigation alone demonstrates that the lawsuits are not a sham, but a finding here that CMC's valid and enforceable patent was infringed would further cause DuPont's claim of sham litigation to fail as a matter of law. *See Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 58 (1993) (holding "a successful effort to influence governmental action . . . cannot be characterized as a sham").

Any overlap in issues between the patent claims and antitrust counterclaims are relatively minor, and easily separated from the broader antitrust issues. For example, while the element of fraud underlying DuPont's antitrust counterclaims may overlap with its defenses to CMC's patent claims—*i.e.* the required element of DuPont's *Walker Process* fraud counterclaim and DuPont's potential invalidity defense that CMC committed fraud on the Patent Office—the antitrust

counterclaims also require DuPont to prove that each additional element of an underlying violation of the Sherman Act is present, which are wholly unrelated to the required element of fraud. Since the resolution of CMC's underlying patent claims will ultimately determine the viability of DuPont's antitrust counterclaims, bifurcating the patent and antitrust claims will undeniably promote efficiency and conserve judicial resources. If CMC is successful on its underlying patent claims—as it was before both the ALJ and ITC—the Court, CMC, and other parties would be saved from burdensome and unnecessary antitrust litigation.

### b. Bifurcation would enhance juror comprehension of the issues

Courts in this circuit recognize the benefits of bifurcating antitrust claims because adding complicated antitrust issues to an already technically complex patent case "would pose a difficult task for even the most astute of juries." *Masimo Corp.*, 2010 WL 925864, at *2 (quoting *Ricoh Co., Ltd. v. Katun Corp.*, No. 03-2612, 2005 WL 6965048 (D.N.J. July 14, 2005) (bifurcating antitrust claims and staying related discovery)). DuPont's counterclaims raise multiple complex issues that do not need to be addressed in ruling on the underlying patent claims, including legal, factual, and economic issues relating to relevant product and geographic market definitions, monopoly power, alleged market foreclosure, market-wide consumer impact, the terms of CMC's former agreement with Fuso and the competitive effects of that agreement, and CMC's pro-competitive business justifications thereof; these complex issues are the same as the issues identified as weighing in favor of bifurcation of antitrust claims in other patent cases. *Id.* (noting that antitrust claims would require the jury to consider the alleged relevant markets before and after the alleged anticompetitive behavior, actual and potential shares in those markets, barriers to entry in those markets, the terms of the party's contracts and whether those contracts violated antitrust laws, antitrust damages, and other antitrust considerations). All or virtually all of these issues will require expert economic opinion (from both DuPont and CMC) which are specific only

11

to the antitrust counterclaims; they thus involve separate evidence, testimony, and legal theories that would not play any role in a trial of the patent infringement case. *Id.* (explaining that antitrust counterclaims require "intricate factual and economic analyses" on each issue).

If the antitrust counterclaims are bifurcated, the jury would be able to focus first on the underlying complex patent issue, as "[t]he jury must first decide whether the Accused Products infringe the Asserted Claims." *Board of Regents*, 2022 WL 17403478, at *3. And "a focus only on technical issues in the first phase, such as what the parties argue that the prior art teaches, will help jurors comprehend evidence of invalidity and infringement." *Id.* at *2. Moreover, as discussed above, the complex antitrust counterclaims claims will likely be eliminated by the findings on the questions of validity and infringement; it is possible the jury may never need to reach these complex questions. The benefits to juror comprehension weigh in favor of bifurcation of the antitrust counterclaims.

### c. Bifurcation will reduce prejudice to CMC

As this Court recently recognized in *Board of Regents*, "reduction of prejudice" supports bifurcation where a potentially infringing party is likely to "tell a story" about alleged negative acts that may improperly impact the infringement claims. 2022 WL 17403478, at *2 (discussing prejudice as a reason to grant bifurcation). Courts in this District thus bifurcate "intrusive and inflammatory" issues from patent infringement claims. *See Robert Boasch LLC v. Pylon Mfg. Corp.*, No. CIV.08-542-SLR, 2009 WL 2742750, at *1 (D. Del. Aug. 26, 2009) (granting bifurcation). Bifurcating the patent claims and antitrust counterclaims will avoid prejudicial and unfounded allegations that CMC acted anticompetitively. For example, DuPont is likely to paint CMC out as an evil monopolist intent of excluding DuPont from "the market" – however DuPont may seek to define it. In addition to lacking merit, these allegations are highly prejudicial and likely to improperly influence a jury's analysis of infringement, as a jury exposed to inflammatory

12

argument "may be less objective in deciding the issue of infringement." *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. CIV. JKB-09-2657, 2011 WL 1045630, at *3 (D. Md. Mar. 17, 2011).

Simply put, DuPont's expected focus on allegations of CMC's wrongdoing would improperly influence the jury's neutral evaluation of the patent claims and prejudice CMC. This prejudice warrants bifurcation of the antitrust counterclaims, to allow the jury to properly and fairly assess the infringement claims on their own.

## II.   A stay of the antitrust claims will conserve judicial resources and avoid unnecessary intrusive and expensive fact and expert discovery

CMC respectfully submits that the Court should also stay DuPont's counterclaims pending resolution of the underlying infringement claims. Courts frequently stay antitrust claims, including discovery, in the "interest of economy and convenience" until after trial of the issues of validity and infringement. *CMI Inc. v. Verax Sys. Inc.*, 5 U.S.P.Q.2d 1676, 1677 (W.D.N.Y. 1987). This Court is no exception, and frequently stays antitrust counterclaims when doing so would conserve judicial resources and avoid potentially unnecessary and burdensome discovery. *See, e.g.*, *Masimo Corp.* 2010 WL 925864, at *3; *Neomagic Corp. v. Trident Microsys., Inc.*, No. 98-699, 2001 WL 1064812, at *1-2 (D. Del. Sept. 7, 2001) (explaining reasoning for stay of antitrust counterclaims, "to avoid a potential waste of resources for the parties and the court" because "the continuing viability of the antitrust claim was dependent on the outcome of the patent infringement claims").

The Court should stay the antitrust counterclaims primarily because there is a very high probability that the antitrust counterclaims will never need to be tried. The ALJ and ITC already found that DuPont infringed CMC's valid and enforceable patent and issued exclusion and cease and desist orders against DuPont. Tellingly, DuPont did not appeal. And though it had the opportunity, DuPont did not move to dismiss CMC's infringement claims in this action. If this

13

Court finds, as the ALJ and ITC did, that DuPont infringed CMC's valid and enforceable patent, DuPont's antitrust counterclaims are unlikely to survive as a matter of law.

Additionally, as explained above, issues central to the antitrust claims are separate and distinct from the issues in the patent infringement claims. Bifurcation and a stay of the antitrust counterclaims would save the parties, and any antitrust-related non-parties, from expensive and burdensome fact and expert discovery courts regularly recognize is a standard feature of antitrust cases. *See Masimo*, 2010 WL 925864, at *2 n.9 ("As the Supreme Court, the Seventh Circuit, and this court have all recognized, discovery in any antitrust case can quickly become enormously expensive and burdensome to defendants." (*quoting Dsm Desotech Inc. v. 3D Sys. Corp.*, No. 08–CV–1531, 2008 WL 4812440, at *2 (D.Ill. Oct. 28, 2008) (collecting cases))); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (cautioning not to "forget that proceeding to antitrust discovery can be expensive"). Should CMC succeed on its patent claims and DuPont's counterclaims be eliminated, significant issues central to the antitrust counterclaims—but entirely absent from the patent claims—including relevant antitrust product and geographic markets, CMC's alleged market power in those relevant markets, whether there was substantial foreclosure of competition, whether CMC's alleged conduct caused market-wide injury to consumers, and related damages, would not need to be litigated at all if the Court issues a stay. In the unlikely event that CMC's '721 Patent is ultimately found to be invalid, the parties can then focus on antitrust discovery and litigation of those claims in the most efficient way possible, and then try the case in front of a jury that is solely focused on those complex issues.

## CONCLUSION

For all of the foregoing reasons, CMC respectfully requests that the Court order:

1) Bifurcation of CMC's patent invalidity claims and DuPont's antitrust counterclaims, Counts 4-7; and

2) A stay of DuPont's antitrust counterclaims, Counts 4-7, pending resolution of CMC's patent infringement claims.

          Respectfully submitted,

          */s/ Karen E. Keller*
          John W. Shaw (No. 3362)
          Karen E. Keller (No. 4489)
          Andrew E. Russell (No. 5382)

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
Joseph Ostoyich
Danielle Morello
William Lavery
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

Dated: July 14, 2023

15