# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CMC MATERIALS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-738-JLH |
| | ) |
| DUPONT DE NEMOURS, INC., et al. | ) |
| | ) |
| Defendants. | ) |

**REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
(LETTER ROGATORY)**

The United States District Court for the District of Delaware presents its compliments to

the Appropriate Judicial Authority of Japan, and requests international judicial assistance to obtain

evidence to be used in the above-captioned civil action before the United States District Court of

the District of Delaware. This Court has authority to submit this Letter Rogatory under 28 U.S.C.

§§ 1651 and 1781(b)(2).

This Court requests the international judicial assistance, which is necessary in the interests

of justice. Specifically, this Court requests the assistance of the Appropriate Judicial Authority of

Japan, by the proper and usual process of Japan's courts, to request the below-named third-party

to produce the documents requested in **Attachment A**:

Fuso Chemical Co., Ltd.
Nissei Fushimi-machi Bldg.
Shinkan, 3-10, Koraibashi 4-chome,
Chuo-ku, Osaka 541-0043
+81-6-6203-4771

Based on representations made by Plaintiff CMC Materials Inc. ("CMC"), this Court

believes that justice cannot be served between the parties in the above-captioned civil action unless

the evidence requested herein is made available through the Appropriate Judicial Authority of

Japan, particularly with respect to the validity of CMC's U.S. Patent No. 9,499,721. CMC asserts

that Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm

and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP

Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.,

Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC

(collectively, "DuPont") commit acts of patent infringement by making, using, selling, offering to

sell, and/or importing chemical-mechanical planarization slurries that comprise "colloidal silica

abrasive particles," including those alleged to be made by the Fuso Chemical Co., Ltd.

**Attachment B** (Complaint) at ¶¶ 16-21, 26-28. This court believes that Fuso Chemical Co., Ltd.,

as a manufacturer of identified colloidal silica particles, is in possession of unique documents

regarding material facts that are relevant for the proper prosecution of the above-referenced civil

action, and that cannot be obtained without the assistance of the Appropriate Judicial Authority of

Japan.

## I.    FACTS

This judicial proceeding is a civil action initiated by the plaintiff:

CMC Materials Inc.
870 N. Commons Drive
Aurora, IL 60504 U.S.A.

The defendants are:

DuPont de Nemours, Inc.
974 Center Road, Building 730
Wilmington, DE 19805-1269 U.S.A.

Rohm and Haas Electronic Materials CMP, LLC
451 Bellevue Road
Newark, DE 19713-3431 U.S.A.

Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic
Materials CMP Asia Inc., Taiwan Branch (U.S.A.))
4F., NO.6, LN. 280, Zhongshan N. Rd.
Dayuan Dist., Taoyuan City 337017 Taiwan

Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.
6, Kesi 2nd Rd.
Chunan, Miaoli 350401 Taiwan

Rohm and Haas Electronic Materials K.K.
Sanno Park Tower, 2-11-1
Nagata-cho, Chiyoda-ku,
Tokyo 100-0014 Japan

Rohm and Haas Electronic Materials LLC
455 Forest Street
Marlborough, MA 01752-3001 U.S.A.

This civil action is governed by the laws of the United States, 35 United States Code §§ 1

et seq., based on a Complaint filed by CMC on June 1, 2020 (**Attachment B**). CMC's Complaint

alleges infringement of U.S. Patent No. 9,499,721 by DuPont. CMC seeks an injunction barring

the making, using, selling, and/or offering for sale within the United Sates and/or importing into

the United States of Accused Products as well as monetary damages and any available equitable

relief. **Attachment B** at ¶¶ 16-21 and "Prayer for Relief." The Accused Products are characterized

generally as chemical mechanical planarization compositions formulated with colloidal silica

abrasive particles, such as Fuso's colloidal silica particles (*id*. at ¶¶ 26-28), and infringement of at

least claim 1 depends in-part on characteristics of the colloidal silica particles (*id*. at ¶ 26).

DuPont seeks foreign discovery from Fuso because it is the manufacturer of colloidal silica

particles for use in chemical-mechanical planarization slurries. CMC alleges that Fuso's colloidal

silica particles have been imported into the United States and used in products, which are alleged

to infringe their U.S. Patent No. 9,499,721. Fuso was also the source of colloidal silica abrasive

particles described in the Examples of CMC's U.S. Patent No. 9,499,721. DuPont believes Fuso

possesses unique documents and information concerning the colloidal silica abrasive particles relating to, *inter alia*, the first sale or offer for sale, first public use, first disclosure, inventorship, and numerous other issues relating to at least the validity of U.S. Patent No. 9,499,721.

## II.   DISCOVERY REQUESTED

It is respectfully requested that the Appropriate Judicial Authority of Japan request Fuso to produce copies of documents, as described in **Attachment A**, consistent with the procedures approved under MINSOHÔ (C. CIV. PRO.) including articles 186 (chosa shokutaku: a petition for a commission to conduct necessary examinations to produce information) and 226 (bunsho sofu shokutaku: a petition for a commission to deliver documents). The requested documents will provide important evidence related to U.S. Patent No. 9,499,721. The Complaint is **Attachment B** to this Letter Rogatory.

This Court understands the confidential nature of the documents requested from Fuso. Fuso may avail itself of the protections provided by the Protective Order that has been entered, as described in **Attachment C**.

Certified Japanese translations of this letter and **Attachments A, B,** and **C** are provided.

## III.   SPECIAL METHODS AND PROCEDURES REQUESTED TO BE FOLLOWED

To the extent permitted by the applicable laws of Japan, this Court respectfully requests that the Appropriate Judicial Authority of Japan ask that the following methods and procedures be followed in connection with the document production requested herein.

It is respectfully requested that each document described in **Attachment A** be produced or provided for inspection and copying in its entirety, without abbreviation or redaction, as maintained in the ordinary course of business.

4

Finally, it is requested that the individual identified below be furnished as soon as practically possible with a copy of the executed Letter Rogatory.

> Mareesa A. Frederick
> FINNEGAN, HENDERSON, FARABOW,
>  GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> Telephone: (202) 408-4000
> Facsimile: (202) 408-4400

## III.    RECIPROCITY

The United States District Court for the District of Delaware is willing to provide similar assistance to judicial tribunals of Japan.

## IV.    REIMBURSEMENT FOR COSTS

To the extent that there are expenses associated with providing assistance in response to this Letter Rogatory, the fees and costs incurred will be borne by Defendants.  Requests for reimbursement may be submitted to Defendants' counsel via email to:

DuPont-Delaware@finnegan.com or via U.S. mail to:


Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

| Date of Request: | Signature and Seal of Requesting Authority: |
|---|---|
| ____ of _____, 2024 | _____<br><br>The Honorable Jennifer L. Hall<br>United States District Judge<br>United States District Court for the Delaware<br>Wilmington, DE, United States of America |

# Attachment A

## Documents Requested from Fuso Chemical Co., Ltd

It is requested that Fuso Chemical Co., Ltd applies the following instructions and definitions in responding the specified request for production.

## INSTRUCTIONS

1.      Each request for production seeks documents within the scope of the request that are in your possession, custody, or control.

2.      Documents that respond, in whole or in part, to any portion of any request should be produced in their entirety, including all attachments and enclosures.

3.      Electronic records and computerized information should be produced in their native electronic format, together with a description of the system from which they were derived sufficient to permit rendering the records and information intelligible.

4.      If no documents exist that are responsive to a particular request, that fact should be stated in your responses to such a request.

5.      You may mark each page which you consider to contain confidential business information with the designation "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER". See **Attachment C**. If a page is not marked with such designation, it is assumed that it does not contain confidential business information.

## DEFINITIONS

1.      "Fuso," "You," and "Your" means Fuso Chemical Co., Ltd., any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of Fuso Chemical Co., Ltd.

2.      The term "CMC" means CMC Materials, Inc. (formerly known as Cabot Microelectronics Corporation), any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of CMC Materials, Inc. (formerly known as Cabot Microelectronics Corporation).

3.      The term "DuPont" means, solely for purposes of these Requests, DuPont de Nemours Inc. and Rohm and Haas Electronic Materials CMP, LLC (formerly known as Rohm and Haas Electronic Materials CMP Inc.), any employee, member, agent, representative, consultant, accountant, attorney, or any other person under the control of DuPont de Nemours Inc. or Rohm and Haas Electronic Materials CMP, LLC (formerly known as Rohm and Haas Electronic Materials CMP Inc.).

4.      "Person" means any natural person or entity, including corporations, proprietorships, partnerships, associations, joint ventures, businesses, trusts, organizations, governmental agencies, and other entities, and any combination thereof, and all predecessors in interest, successors, affiliates, subsidiaries, and related entities.

5.      "Asserted Patent" means U.S. Patent No. 9,499,721.

6.      "Colloidal Silica Abrasive Particles" means, solely for the purposes of these Requests and Topics, silica particles that are prepared using any sol-gel process.

7.      "BS", "HL", and "PL" each refer to Fuso colloidal silica abrasive particle series designations, including all specific grades therein, e.g., BS-3 and PL-3C.

8.      "PL-xxC" refers to any PL-series colloidal silica abrasive particle treated with aminopropyl trialkoxysilane, e.g., PL-3C.

9.      "Zeta Potential" in the context of a particle means, solely for the purposes of these Requests, the electrical potential difference between the electrical charge of the ions surrounding

2

the particle and the electrical charge of the bulk solution containing the particle, such as used in Japanese published patent application JP2016-8157A.

## DOCUMENTS TO BE REQUESTED

1.      Documents sufficient to identify and describe each type of colloidal silica abrasive particle provided by You to CMC before June 25, 2015.

2.      For each of the colloidal silica particle with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C,         , BS-1H, BS-2H, BS-3, and         provided, sampled, sold, and/or offered for sale by You before June 25, 2015, to CMC, documents sufficient to show:

> a.      sales, offers to sell, importations into the United States, promotion, and sampling of such particles, including communications related to the same, and the manufacturing batch or lot numbers of such particles;

> b.      a general description of the manufacturing processes used by You to make such particles, including the catalysts used therein;

> c.      zeta potential values and/or measurements, including before and/or after any filtration, washing, processing, or other post-manufacturing processing;

> d.      measurements or estimations of internal nitrogen or phosphorous content of such particles; and

> e.      testing for residual catalyst content inside such particles.

3.      For any entity other than CMC to whom colloidal silica abrasive particles with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C,         BS-1H, BS-2H, BS-3, and         were provided, sampled, sold, and/or offered for sale by You before June 25, 2015, documents sufficient to show:

> a.      sales, offers to sell, importations into the United States, promotion, and sampling of such particles, including communications related to the same,

the manufacturing batch or lot numbers of such particles, the dates of the sales and the identities of customers receiving the particles;

b.    a general description of the manufacturing processes used by You to make such particles, including the catalysts used therein;

c.    zeta potential values and/or measurements, including before and/or after any filtration, washing, processing, or other post-manufacturing processing;

d.    measurements or estimations of internal nitrogen or phosphorous content of such particles; and

e.    testing for residual catalyst content inside such particles.

4.    Documents sufficient to show the entity's intended use (e.g., for use in a CMP slurry) for each particle identified as sold, offered for sale, imported into the United States, promoted, and sampled of such in response to Request No. 3(a).

5.    Documents sufficient to show Your relationship with CMC with respect to supplying or developing colloidal silica abrasive particles, including the formulations thereof, before June 25, 2015, including communications with CMC, contracts or agreements with CMC, invoices or other charges to or from CMC, and payments received from or made to CMC.

6.    Documents reflecting or constituting a pre-June 1, 2020, agreement with CMC for                                  over any type of colloidal silica abrasive particle, including documents relating to preventing any CMC competitor, including but not limited to DuPont, from acquiring such particles.

7.    Documents discussing                                  with CMC over the supply of colloidal silica abrasive particles, including colloidal silica abrasive particles with the product designations                                  before June 1, 2020.

5

8.    Documents sufficient to show zeta potential of colloidal silica abrasive particles with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C, ██ ██ BS-1H, BS-2H, BS-3, and ███████, provided to any third party before June 25, 2015.

9.    Documents sufficient to show testing of chemical mechanical polishing ("CMP") slurries containing colloidal silica abrasive particles with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C, ██████ BS-1H, BS-2H, BS-3, and ██████ according to any test method disclosed in U.S. Patent No. 9,449,721, including testing for zeta potential.

10.    Documents sufficient to show any residual catalyst compounds in colloidal silica abrasive particles with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C, ██████ BS-1H, BS-2H, BS-3, and ██████, such as one or more of the following catalysts: ammonium, ammonia, ethyloxypropylamine, tetramethyl ammonium hydroxide, and ethylenediamine.

11.    Documents sufficient to show and describe the general process, method, and technique for manufacturing Your colloidal silica abrasive particles with product designations HL-2, HL-3, PL-1, PL-2, PL-3, PL-5, PL-7, PL-2L, PL-5L, PL-3C, ██████ BS-1H, BS-2H, BS-3, and ██████, prepared before June 25, 2015, , including documents sufficient to show the catalyst(s) used in each process, method, and technique.

12.    Documents sufficient to show and describe any similarities or differences between the structure, composition, method of manufacturing, or synthesis of colloidal silica abrasive particles with the product designations BS-2H, BS-3, ██████ and PL-xxC particles.

6

13.     Documents sufficient to show and describe any similarities or differences between the structure, composition, method of manufacturing, or synthesis of HL-series particles, PL-series particles, and BS-series particles.

14.     Documents sufficient to show and describe the colloidal silica abrasive particles and the preparations described in the Examples and Comparative Examples disclosed in Your Japanese published patent application JP2016-8157A, including any unreported testing of those particles.

15.     Documents sufficient to show and describe the contributions of each person involved in the preparation of the colloidal silica abrasive particles described in the Examples and Comparative Examples disclosed in Your Japanese published patent application JP2016-8157A, including any testing of those particles, whether reported or not reported.

16.     Communications and agreements with CMC concerning any subject matter disclosed in Your Japanese published patent application JP2016-8157A, including the Examples and Comparative Examples.

17.     Communications and agreements with CMC concerning the timing of Your filing of the application that led to Your Japanese published patent application JP2016-8157A on June 25, 2014.

Attachment B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CABOT MICROELECTRONICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 20-_____ |
| DUPONT DE NEMOURS, INC., ROHM AND HAAS ELECTRONIC MATERIALS CMP INC., ROHM AND HAAS ELECTRONIC MATERIALS CMP ASIA INC. (d/b/a ROHM AND HAAS ELECTRONIC MATERIALS CMP ASIA INC, TAIWAN BRANCH (U.S.A.)), ROHM AND HAAS ELECTRONIC MATERIALS ASIA-PACIFIC CO. LTD., ROHM AND HAAS ELECTRONIC MATERIALS K.K., and ROHM AND HAAS ELECTRONIC MATERIALS LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Cabot Microelectronics Corporation ("CMC") alleges as follows against Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "Defendants"). The allegations herein are made based on personal knowledge as to CMC with respect to its own actions, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., of CMC's U.S. Patent No. 9,499,721 (the "'721 Patent"), and for such other relief as the Court deems just and proper.

2.      CMC is one of the largest suppliers of consumable materials to the semiconductor industry.  Among its many innovations, CMC has for decades been a pioneer in providing chemical mechanical planarization ("CMP") slurry products to nearly all semiconductor device manufacturers in the United States and throughout the world.  CMP slurries play a critical role in the increasingly complex production of advanced semiconductor devices.  In particular, CMP slurries, in conjunction with CMP pads, are necessary for the precise leveling and polishing of the numerous metal and dielectric layers deposited on silicon wafers in today's leading-edge devices. Modern semiconductor manufacturing processes could not be carried out without these CMP slurries, which enable the efficient production of complex, high-performance devices.

3.      CMC spends millions of dollars in research and development ("R&D") annually and has invested considerable capital, labor, expertise and ingenuity in delivering innovative CMP slurry solutions to the semiconductor industry.  As part of these extensive R&D efforts, by 2014, the inventors of the '721 Patent developed cutting-edge slurry products for dielectric CMP that improve planarity, reduce defects, speed polishing times, and lower the cost of ownership—all significant benefits to CMC's customers in addressing the increasingly precise and numerous polishing steps needed in advanced semiconductor device manufacturing.  These novel slurries, released by CMC as part of the "iDIEL" family of slurries, were praised by CMC's customers and have since enjoyed commercial success across the semiconductor industry.

4.     Unlike CMC, Defendants failed for years to develop advanced dielectric slurries that address the increasing complexity of semiconductor device manufacturing.  For example, in 2016—over two years after CMC's successful efforts culminating in the '721 Patent and certain "iDIEL" products—Defendants (and their predecessors) admitted that they had been using an old and inefficient slurry for dielectric CMP for years.  Defendants, unsuccessful in their own efforts to develop innovative dielectric slurry solutions, and unable to otherwise compete with CMC's solutions, opted then to copy CMC's solutions, and infringe the '721 Patent.  Indeed, Defendants' marketing materials tout Defendants' products with the same acidic solutions that CMC had discovered and patented years earlier.

5.     Defendants have infringed, and continue to infringe CMC's '721 Patent by making, using, selling, and/or offering for sale within the United States and/or importing into the United States products that are covered by the '721 Patent, including at least the Optiplane 1000 and 2000 series and product models 1600, 1601, 2118, 2300, and 2600 (collectively, the "Accused Products").

6.     CMC contacted Defendants 7 weeks ago detailing their infringement and attempting to resolve this matter without litigation.  Defendants, however, have elected to continue their unauthorized use of the '721 Patent.

**THE PARTIES**

7.     Plaintiff CMC is a publicly traded Delaware corporation with its principal place of business at 870 North Commons Drive, Aurora, IL 60504.

8.     Defendant DuPont de Nemours, Inc. is a Delaware corporation with its principal place of business at 974 Centre Road, Building 730, Wilmington, DE 19805.

-3-

9. Defendant Rohm and Haas Electronic Materials CMP Inc., a subsidiary of DuPont de Nemours, Inc., is a Delaware corporation with its principal place of business at 451 Bellevue Road, Newark, DE 19713.

10. Defendant Rohm and Haas Electronic Materials CMP Asia Inc., a subsidiary of DuPont de Nemours, Inc., which also does business as Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.), is a Delaware corporation with its principal place of business at 4F., NO.6, LN. 280, Zhongshan N. Rd., Dayuan Dist., Taoyuan City, 337017 Taiwan.

11. Defendant Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., a subsidiary of DuPont de Nemours, Inc., is a Taiwan corporation with its principal place of business at 6, Kesi 2nd Rd., Chunan, Miaoli, 350401 Taiwan.

12. Defendant Rohm and Haas Electronic Materials K.K., a subsidiary of DuPont de Nemours, Inc., is a Japanese corporation with its principal place of business at Sanno Park Tower, 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo 100-0014 Japan.

13. Defendant Rohm and Haas Electronic Materials LLC, a subsidiary of DuPont de Nemours, Inc., is a Delaware company with its principal place of business at 455 Forest Street, Marlborough, MA 01752.

## JURISDICTION AND VENUE

14. CMC incorporates by reference paragraphs 1-13.

15. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, including 35 U.S.C. § 271.

16. This Court has personal jurisdiction over Defendant DuPont de Nemours, Inc. because DuPont de Nemours, Inc., directly or through affiliates, has committed and is continuing

-4-

to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over DuPont de Nemours, Inc. because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including having its principal place of business in the state.

17. This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials CMP Inc. because Rohm and Haas Electronic Materials CMP Inc., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials CMP Inc. because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including having its principal place of business in the state.

18. This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials CMP Asia Inc. because Rohm and Haas Electronic Materials CMP Asia Inc., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials CMP Asia Inc. because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

19. This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. because Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. because it has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

20. This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials K.K. because Rohm and Haas Electronic Materials K.K., directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials K.K. because it has purposefully availed itself of the benefits and protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

21. This Court has personal jurisdiction over Defendant Rohm and Haas Electronic Materials LLC because Rohm and Haas Electronic Materials LLC, directly or through affiliates, has committed and is continuing to commit acts of patent infringement in Delaware, including manufacture, use, sale, offering to sell, and/or importing the Accused Products in Delaware. Personal jurisdiction also exists over Rohm and Haas Electronic Materials LLC because it is an entity organized under the laws of Delaware and has purposefully availed itself of the benefits and

-6-

protections of Delaware state law by transacting substantial business in Delaware, including establishing substantial, systematic, and continuous contacts and engaging in concerted actions with the other Defendants that are based in Delaware.

22. Venue properly lies in this District under 28 U.S.C. §§ 1391 and 1400(b) because Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and Haas Electronic Materials CMP Asia Inc., and Rohm and Haas Electronic Materials LLC are Delaware companies and therefore reside in this judicial district, and Defendants Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd. and Rohm and Haas Electronic Materials K.K. are foreign entities who may be sued in any judicial district, including Delaware.

<u>**COUNT I — INFRINGEMENT OF U.S. PATENT NO. 9,499,721**</u>

23. CMC incorporates by reference the allegations of paragraphs 1-22.

24. CMC is the owner and sole assignee of the '721 Patent and has full right to enforce and license the '721 Patent. The United States Patent Office duly and legally issued the '721 Patent on November 22, 2016. A true, correct, and certified copy of the '721 Patent is attached hereto as Exhibit A.

25. Defendants have infringed, and continue to infringe, one or more claims of the '721 Patent, including at least claim 1, either literally or under the doctrine of equivalents, by making, using, selling and/or offering for sale within the United States and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

26. For example, Defendants have infringed and continue to infringe, as least claim 1 of the '721 Patent:

> 1.  A chemical mechanical polishing composition comprising:
>
> a water based liquid carrier;
>
> colloidal silica abrasive particles dispersed in the liquid carrier;
>
> a chemical species incorporated in the colloidal silica abrasive particles internal to an outer surface thereof, wherein the chemical species is a nitrogen containing compound or a phosphorus containing compound;
>
> a pH in a range from about 3.5 to about 6;
>
> wherein the colloidal silica abrasive particles have a permanent positive charge of at least 15 mV; and
>
> wherein the chemical species is not an aminosilane or a phosphonium silane.

27.     The Accused Products are used for CMP processes in semiconductor device fabrication.

28.     The Accused Products comprise "a water based liquid carrier" with colloidal silica particles (such as colloidal silica particles supplied from Fuso Chemical Co., Ltd.) dispersed therein.

29.     The Accused Products comprise cationic silica particles that have a chemical species, a nitrogen containing compound, incorporated in the colloidal silica abrasive particles internal to an outer surface thereof.

30.     The Accused Products also have a pH of between approximately 3.5-6.

31.     The colloidal silica abrasive particles in the Accused Products have a permanent positive charge of at least 15 mV.  The Accused Products are advertised as having positively charged colloidal silica particles to improve polishing performance with, for example, a Zeta potential of +26 mV at point of use pH.

32.     In the Accused Products, the chemical species (such as ethyloxypropylamine) is not an aminosilane or a phosphonium silane.

33.     Defendants have also infringed, and continue to infringe at least claims 3–6, 10–11, 13–14, 18–20, 24, 26–29, 31, 35–37, and 39–44 of the '721 Patent, either literally or under the doctrine of equivalents by making, using, selling and/or offering for sale within the United States and/or importing into the United States the Accused Products in violation of 35 U.S.C. § 271(a).

34.     In addition to directly infringing the '721 Patent, Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the '721 Patent.  Defendants were notified of their infringement of the '721 Patent on April 13, 2020, when CMC provided Defendants a claim chart comparing the '721 Patent to the Accused Products.  Defendants have also had knowledge of the '721 Patent at least since September 28, 2017, when Defendants' affiliate, in the application leading to U.S. Patent No. 10,508,221, specifically cited and described the '721 Patent and admitted knowledge of the features of the asserted '721 Patent claims.

35.     In violation of 35 U.S.C. § 271(b), each of the Defendants has actively induced and continues to actively induce others (such as customers of the Accused Products) to directly infringe the '721 Patent, including at least claim 1 by engaging in and actively acting in concert with each other relating to: (a) the marketing, distribution, and/or sale of the Accused Products to customers (including on Defendants' websites); and (b) the instruction and encouragement of customers (such as by Defendants' sales and marketing team) to use the Accused Products in an infringing manner with knowledge that these actions would infringe the '721 Patent.

36.     In violation of 35 U.S.C. § 271(c), each of the Defendants has also contributed to and is continuing to contribute to infringement of the '721 Patent by others (such as customers of the Accused Products) by making, selling and/or offering for sell within the United States and/or importing into the United States Accused Products or components thereof, that are especially made

and/or adapted for infringing the '721 Patent and are not staple articles of commerce suitable for substantial non-infringing use.

37.    Defendants' infringement of the '721 Patent is deliberate and willful, justifying enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.  Despite being on notice of their infringement of the '721 Patent, each of the Defendants has continued to make use, sell, offer to sell, and/or import the Accused Products knowing and intending to infringe the '721 Patent.

38.    Defendants' infringement has caused and is continuing to cause damage and irreparable injury to CMC, and CMC will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.  By this action, CMC seeks to stop Defendants' willful, unauthorized, and improper use of the '721 Patent, and to obtain damages for the significant harm caused to CMC by Defendants' willful infringement to date.

## PRAYER FOR RELIEF

WHEREFORE, CMC prays for relief as follows:

a.    That Defendants have infringed and continue to infringe the '721 Patent, either directly or indirectly;

b.    That Defendants' infringement of the '721 Patent has been and continues to be willful;

c.    In accordance with 35 U.S.C. § 284, that Defendants be ordered to pay to CMC all monetary damages to which CMC is entitled (together with pre and post judgment interest), including increased damages for willful infringement;

d.    That this case be declared exceptional in accordance with 35 U.S.C. § 285 and that CMC be awarded and Defendants pay CMC's attorneys' fees;

e.     An injunction prohibiting further infringement of the '721 Patent; and

f.     Such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

A jury trial is demanded on all claims and issues so triable.

*/s John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Margaret M. Welsh
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: June 1, 2020

Attachment C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-738-GBW |
| | ) |
| DUPONT DE NEMOURS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

**PROTECTIVE ORDER**

WHEREAS, documents and information may be sought, produced or exhibited by and among the parties to the above captioned proceeding, which materials relate to trade secrets or other confidential research, development or commercial information;

WHEREAS, the parties recognize that confidential information is being produced only for use in this civil action;

IT IS HEREBY ORDERED THAT the following provisions of this Order shall govern the confidential information produced by a party to any other party or by a third party to any party in the course of this civil action:

## I.    **DEFINITIONS**

1. Confidential information is information which has not been made public and which concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the production, sales, shipments, purchases, transfers, identification of customers, inventories, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or other organization, the disclosure of which information is likely to have the effect of causing substantial harm to the competitive position of the person, firm, partnership,

corporation, or other organization from which the information was obtained ("Discovery Material").

2.  As used herein, "Producing Party" shall refer to any party to this Action and to any non-party who produces Discovery Material, and "Receiving Party" shall refer to any individual who properly receives, is shown, or is exposed to Discovery Material.

3.  As used herein, CONFIDENTIAL Discovery Material refers to business or commercial information defined in paragraph 1 that the Producing Party believes in good faith is (i) confidential, sensitive, competitive, or potentially invasive of an individual's privacy interests; (ii) not generally known to others in the context or form as known by the Producing party; (iii) not normally revealed to the public or third parties or, if disclosed to third parties, is such that the Producing Party would require such third parties to maintain the information in confidence; and (iv) information (regardless of how generated, stored, or maintained) or tangible things that qualify for protection under standards developed under Fed. R. Civ. P. 26(c).

4.  As used herein, HIGHLY CONFIDENTIAL Discovery Material refers to business or commercial information defined in paragraph 1 that a Producing Party claims to be extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party. This HIGHLY CONFIDENTIAL information also includes, but is not limited to, (i) highly sensitive technical information, such as product formulations of the Producing Party's products; (ii) highly sensitive information pertaining to research and development of the Producing Party's products; (iii) financial or business reports and forecasts including plans, strategies, market analyses, costs, customer accounts, and pricing information; and (iv) pending or abandoned patent, trademark, and copyright applications, foreign or domestic,

2

unless published or otherwise publicly available.

### Limited Exceptions for Designated In-House Counsel

(a) CMC agrees that certain HIGHLY CONFIDENTIAL information disclosed to and/or from third party Fuso Chemical, Co. ("Fuso") can be disclosed to DuPont in-house attorney Sarah Diluzio if that information is dated before June 1, 2020 and is cited in DuPont's Amended Counterclaim, contentions, briefing, or expert reports, and/or is used at depositions or hearings in this matter. This agreement is contingent on Ms. Diluzio complying with all other terms in this Protective Order related to the disclosure of HIGHLY CONFIDENTIAL information, including the Prosecution Bar of paragraph 14.

(b) Before reviewing the information in identified in subparagraphs 4(a), Ms. Diluzio must provide a prior written representation and agreement that she:

(i) does not render advice or participate in business or strategic decisions or have any other involvement regarding pricing, sales, marketing, financial, product development/design, marketing strategy, forecasts, suppliers, procurement, or other related business activities related to the subject matter of this action, including related to chemical mechanical polishing products, and will not be involved in such activities for a period of three years after final disposition of this matter; and

(ii) does not negotiate, draft, review, or oversee in any way proposed contracts or agreements with third parties relating to the subject matter of this action, including relating to chemical mechanical polishing products, and will not be involved in such activities for a period of three years after final disposition of this matter.

## II.   DESIGNATION OF "CONFIDENTIAL" OR "HIGHLY CONFIDENTIAL INFORMATION"

### A.   Procedure for Designating Discovery Material

5.  (a) Any Producing Party may designate Discovery Material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" provided that it meets the requirements for such designation as provided for herein. Any Producing Party may designate Discovery Material as CONFIDENTIAL in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains CONFIDENTIAL information as defined in Paragraph 3. Any Producing Party may designate Discovery Material as HIGHLY CONFIDENTIAL in accordance with this Protective Order if such party in good faith believes that such Discovery Material contains HIGHLY CONFIDENTIAL information as defined in Paragraph 4. The burden of establishing that Discovery Material is CONFIDENTIAL or HIGHLY CONFIDENTIAL as defined herein shall be on the Producing Party. The designation of any Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall be deemed effective unless and until the Court orders otherwise or the Producing Party withdraws the designation.

(b) Information to be treated under this Protective Order as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall include but not be limited to:

i) Information set forth in responses to discovery requests made under Fed. R. Civ. P. 31, 33, or 36, or in documents and things produced under Fed. R. Civ. P. 33(d) or 34, provided that, prior to delivery to the Receiving Party, the responses or copies of documents and things are marked by the Producing Party with the following legends or their substantial equivalents: "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL." Documents, things and/or information may be made available for inspection without designation and designated subsequently at the time of production.

4

ii) Information revealed by inspection of documents, things and premises under Fed. R. Civ. P. 34, provided that, prior to or at any time up to fifteen (15) calendar days after the inspection, the party permitting inspection specifically identifies in writing the CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material that will be or that was disclosed by the inspection. To ensure that the Producing Party has the full fifteen (15) calendar days to make appropriate designations, all information gleaned from inspection of documents, things and premises will be automatically treated as HIGHLY CONFIDENTIAL Discovery Material for fifteen (15) calendar days after the day of inspection. There will be no waiver of confidentiality by the inspection of CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material before it is copied and marked pursuant to this Order. Inspection of Discovery Material by any party shall be conducted by persons eligible under Paragraph 6 below.

iii) Information revealed during a deposition under oral or written examination under Fed. R. Civ. P. 30 and 31, provided that, prior to or at any time up to ten (10) calendar days following receipt of the final transcript by counsel for a Party, counsel for a Party notifies counsel for the other Party in writing that CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material is set forth in the transcript and specifies in writing the portions of the transcript that disclose CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material, or during the deposition, counsel for a Party or counsel for a third party designates the transcript or portions thereof to be CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material. To ensure that the Producing Party has the full ten (10) calendar days to make appropriate designations, all Information revealed during a deposition under oral or written examination under Fed. R.

Civ. P. 30 and 31 will be automatically treated as HIGHLY CONFIDENTIAL Discovery Material for ten (10) calendar days after the day of inspection. The legends described in Paragraph 3(d)(i) shall be placed on the front of any deposition transcript (and, if videotaped, any copies of the videotape) containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information.

## B.   Disclosure of HIGHLY CONFIDENTIAL Discovery Material

6.  In the absence of written permission from the Producing Party or an order by the Court, any HIGHLY CONFIDENTIAL information designated in accordance with the provisions of paragraph 4 above shall not be disclosed to any person other than: (i) outside counsel of record for parties to this litigation, including necessary secretarial and support personnel assisting such counsel; (ii) qualified persons taking testimony involving such documents or information and necessary stenographic and clerical personnel thereof; (iii) experts and their staff who are employed for the purposes of this litigation (unless they are otherwise employed by, consultants to, or otherwise affiliated with a non-governmental party, or are employees of any domestic or foreign manufacturer, wholesaler, retailer, or distributor of certain chemical mechanical planarization slurries and components thereof, which are the subject of this litigation), subject to paragraph 8 below; (iv) the Court and its staff.  HIGHLY CONFIDENTIAL Discovery Material shall not be made available to any person designated in this paragraph unless he or she shall have first read this order and shall have agreed in writing in the form of agreement included as Attachment A hereto: (i) to be bound by the terms thereof; (ii) not to reveal such confidential information to anyone other than another person designated in this paragraph; and (iii) to utilize such confidential information solely for purposes of this Action.

6

### C.    Disclosure of CONFIDENTIAL Discovery Material

7.  In the absence of written permission from the Producing Party or an order by the Court, any CONFIDENTIAL information designated in accordance with the provisions of paragraph 3 above shall not be disclosed to any person other than: (i) persons entitled to receive HIGHLY CONFIDENTIAL information as defined in paragraph 6 above; (ii) one (1) identified in-house counsel who, because of their work managing, supervising, defending, or evaluating this action, require access to discovery material designated as "CONFIDENTIAL" ("Designated In-House Counsel"), subject to paragraph 9 below. No current or former officer of any party may be the "Designated In-House Counsel." CONFIDENTIAL Discovery Material shall not be made available to any person designated in this paragraph unless he or she shall have first read this order and shall have agreed in writing in the form of agreement included as Attachment A hereto: (i) to be bound by the terms thereof; (ii) not to reveal such confidential information to anyone other than another person designated in this paragraph; and (iii) to utilize such confidential information solely for purposes of this Action.

### D.    Procedure for Designating Persons for Disclosure of CONFIDENTIAL or HIGHLY CONFIDENTIAL Discovery Material

#### 1.    Experts

8.  CONFIDENTIAL or HIGHLY CONFIDENTIAL information designated in accordance with the provisions of paragraph 3 or 4 above shall not be made available to persons designated in paragraph 6(iii) unless he or she has read this order, agreed in writing in the form of agreement included as Attachment A hereto, and has been disclosed with no remaining objections in accordance with the following procedure:

(a) No less than 10 days (or any other period of time designated by the Court) prior to the initial disclosure to a proposed expert of any CONFIDENTIAL or HIGHLY CONFIDENTIAL

information designated in accordance with paragraph 3 or 4, the party proposing to disclose information to such expert shall submit in writing the name of such proposed expert , their current curriculum vitae, including a list of case testimony, consulting activities, and employment for the past 4 years, educational and employment history, and a disclosure of any current or prior relationships with the receiving party.

(b) If the Producing Party objects to the disclosure of such CONFIDENTIAL or HIGHLY CONFIDENTIAL information to such proposed expert, as inconsistent with the language or intent of this order or on other grounds, it shall notify the Receiving Party in writing of its objection within ten (10) days of receiving notice of the proposed expert and the grounds therefor prior to the initial disclosure.

(c) If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the Producing Party shall bring a dispute under the Court's protective order dispute procedures. The submission of CONFIDENTIAL or HIGHLY CONFIDENTIAL information to such proposed expert shall be withheld pending the ruling of the Court.

## 2. <u>Designated In-House Counsel</u>

9. CONFIDENTIAL information designated in accordance with the provisions of paragraph 3 above shall not be made available to persons designated in paragraph 7(ii) unless he or she has read this order, agreed in writing in the form of agreement included as Attachment A hereto, and has been disclosed with no remaining objections in accordance with the following procedure:

(a) No less than 10 days (or any other period of time designated by the Court) prior to the initial disclosure to a designated in-house counsel of any CONFIDENTIAL information designated in accordance with paragraph 3, the party proposing to disclose information to such

designated in-house counsel shall submit in writing the name of such designated in-house counsel, and their current and former positions and/or titles at the Receiving Party, to the Producing Party.

(b) If the Producing Party objects to the disclosure of such CONFIDENTIAL information to such designated in-house counsel, as inconsistent with the language or intent of this order or on other grounds, it shall notify the Receiving Party in writing of its objection within ten (10) days of receiving notice of the proposed designated in-house counsel and the grounds therefor prior to the initial disclosure.

(c) If the dispute is not resolved on an informal basis within ten days of receipt of such notice of objections, the Producing Party shall bring a dispute under the Court's protective order dispute procedures. The submission of CONFIDENTIAL information to such designated in-house counsel shall be withheld pending the ruling of the Court.

### E. Disclosure of HIGHLY CONFIDENTIAL or CONFIDENTIAL Discovery Materials to Other Persons

10. If the Court orders, or if the Producing Party and all parties to the litigation agree, that access to, or dissemination of information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL information shall be made to persons not included in paragraphs 6 or 7 above, such information shall only be accessible to, or disseminated to, such persons based upon the conditions pertaining to, and obligations arising from this order, and such persons shall be considered subject to it, unless the Court finds that the information is not CONFIDENTIAL or HIGHLY CONFIDENTIAL information as defined in paragraphs 1, 3, or 4 hereof.

11. If any CONFIDENTIAL or HIGHLY CONFIDENTIAL information which is supplied in accordance with paragraph 5 above is supplied by a nonparty to this litigation, such a nonparty shall be considered a "Producing Party" as that term is used in the context of this order.

12. Each nonparty Producing Party shall be provided a copy of this order by the party

seeking information from said Producing Party.

### F.   Confidentiality Designations for ITC Material

13. The parties may agree on mechanisms for using Discovery Material from the related ITC action in this action ("ITC Material") through a separate agreement. All ITC Materials designated as containing CONFIDENTIAL BUSINESS INFORMATION shall be treated as containing HIGHLY CONFIDENTIAL Discovery Material in accordance with paragraph 4 above and may be disclosed to persons designated in paragraph 6 above.

### III.   PROSECUTION BAR

14.   Absent written consent from the Producing Party, any individual who accesses Discovery Material designated as HIGHLY CONFIDENTIAL shall not be involved in the prosecution of patents or patent applications relating to the subject matter of this action ("Prosecution Bar"). For purposes of this paragraph, "prosecution" includes drafting or amending patent claims. The foregoing restrictions of this paragraph shall apply only to individuals, and not to the firms or organizations by which they are employed, nor to individuals who received access to HIGHLY CONFIDENTIAL information solely in their capacity as clerical staff. Nothing in this section shall prevent any person from sending non-confidential prior art, without additional input or consultation, to an attorney involved in patent prosecution for purposes of ensuring that such prior art is submitted to the USPTO (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor. Nothing in these provisions is intended to preclude counsel from participating in activities directly for the purpose of settling litigations. This Prosecution Bar shall begin when access to Discovery Material designated as HIGHLY

CONFIDENTIAL is first received by the individual and shall end one (1) year after final termination of this action.

**IV.     COMPETITIVE DECISION-MAKER BAR**

15.     Absent written consent from the Producing Party, any Designated In-House Counsel who accesses Discovery Material designated as CONFIDENTIAL shall not be involved in competitive decision making relating to the subject matter of this action ("Competitive Decision-Maker Bar"). Competitive decision making refers to, for example, business or strategic decisions, including marketing, financial, product development/design, procurement, and pricing decisions, on issues affecting competition.  For the avoidance of doubt, no former or current officer of any party may be the "Designated In-House Counsel" with access to Discovery Material designated as CONFIDENTIAL. The foregoing restrictions of this paragraph shall apply only to individuals, and not to the organizations by which they are employed. Nothing in these provisions is intended to preclude Designated In-House Counsel from participating in activities directly for the purpose of settling litigations. This Competitive Decision-Maker Bar shall begin when access to Discovery Material designated as CONFIDENTIAL is first received by the Designated In-House Counsel and shall end one (1) year after final termination of this action.

**V.     ADDITIONAL PROCEDURES REGARDING DISCOVERY MATERIAL**

**A.     Discovery Material Submitted to the Court or Used in Depositions**

16.     Any HIGHLY CONFIDENTIAL or CONFIDENTIAL information submitted to the Court in connection with a motion or other proceeding within the scope of this litigation shall be submitted under seal pursuant to the procedures of the United States District Court for the District of Delaware. When any confidential information designated in accordance with paragraph

3 or 4 above is included in an authorized transcript of a deposition or exhibits thereto, the transcript will be designated HIGHLY CONFIDENTIAL, unless the parties agree otherwise.

### B. Discovery Material Was Publicly Known

17. The restrictions upon, and obligations accruing to, persons who become subject to this order shall not apply to any information designated in accordance with paragraphs 3 or 4 above to which the person asserting the confidential status thereof agrees in writing, or the Court rules, after an opportunity for hearing, was publicly known at the time it was supplied to the Receiving Party or has since become publicly known through no fault of the Receiving Party.

### C. Process for Objecting to Confidentiality Designations

18. If while this litigation is pending, a party to this order who is to be a recipient of any information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL and designated in accordance with paragraph 3 or 4, disagrees with respect to such a designation, in full or in part, it shall notify the Producing Party in writing, and they will thereupon confer as to the status of the subject information proffered within the context of this order. If prior to, or at the time of such a conference, the Producing Party withdraws its designation of such information as being subject to this order, but nonetheless submits such information for purposes of the litigation, such Producing Party shall express the withdrawal, in writing, and serve such withdrawal upon all parties. If the Receiving Party and Producing Party are unable to concur upon the status of the subject information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL information within ten days from the date of notification of such disagreement, any party to this order may raise the issue of the designation of such a status through the Court's protective order dispute procedures. The Court may *sua sponte* question the designation of the confidential status of any information and, after opportunity for hearing, may remove the confidentiality designation.

12

**D.**      **Improper Disclosure of Designated Discovery Material**

19. If CONFIDENTIAL or HIGHLY CONFIDENTIAL information designated in accordance with paragraph 3 or 4 is disclosed to any person other than in the manner authorized by this protective order, the party responsible for the disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the Producing Party and, without prejudice to other rights and remedies of the Producing Party, make every effort to prevent further disclosure by it or by the person who was the Receiving Party of such information.

**E.**      **Inadvertent Failure to Designate Discovery Material**

20. The inadvertent failure by a party to designate Discovery Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall not be a waiver of such designation provided that the party who fails to make such a designation informs the Receiving Party that such Discovery Material is confidential promptly but not more than five (5) days from when the failure to designate became known to the Producing Party. The inadvertent failure by any party to designate discovery material as CONFIDENTIAL or HIGHLY CONFIDENTIAL shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the proprietary thereof. The party receiving the Discovery Material that the Producing Party failed to designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL information shall not be in breach of this Order for any use made of such discovery material before the Receiving Party is informed of the inadvertent failure to designate. Once the Receiving Party has been informed of the inadvertent failure to designate pursuant to this Paragraph, the Receiving party shall take reasonable steps to, at the Producing Party's option, either ensure that all copies of any such discovery material are returned promptly to the Producing Party or ensure that all copies of any such discovery material are marked with the proper designation and distributed only as permitted

under this Protective Order.

### F.     Right to Seek Judicial Review

21. Nothing in this order shall abridge the right of any person to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Court concerning the issue of the status of CONFIDENTIAL or HIGHLY CONFIDENTIAL information.

### G.     Handling of Discovery Material Upon Termination of Litigation

22. Upon final termination of this litigation, each party that is subject to this order shall assemble and return to the Producing Party all items containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information designated in accordance with paragraphs 3 or 4 above, including all copies of such matter which may have been made. Alternatively, the parties subject to this order may, with the written consent of the Producing Party, destroy all items containing CONFIDENTIAL or HIGHLY CONFIDENTIAL information and certify to the Producing Party (or his counsel) that such destruction has taken place. This paragraph shall not apply to the Court or its staff.

## VI.     OTHER PROCEEDINGS

23. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated in accordance with paragraph 3 or 4 of this order, including information designated CONFIDENTIAL or HIGHLY CONFIDENTIAL pursuant to this order, shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Robert C. Scheinfeld
Robert L. Maier
Frank Zhu
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Samuel L. Kassa
Joseph Ostoyich
Danielle Morello
William Lavery
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: October 12, 2022

*/s/ Carson R. Bartlett*
David E. Moore (No. 3983)
Bindu A. Palapura (No. 5370)
Carson R. Bartlett (No. 6750)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-600
dmoore@potteranderson.com
bpalapura@potteranderson.com
cbartlett@potteranderson.com
*Attorneys for Defendants*

OF COUNSEL:
Mark Feldstein
Eric J. Fues
Anthony Hartmann
Paul Townsend
Kaitlyn Pehrson
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel: (202) 408-4000

Charles Lipsey
FINNEGAN, HENDERSON, FARABOW, GARRETT
& DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (571) 203-2777

SO ORDERED this _____ day of _____, 2022.

_____
United States Judge

**ATTACHMENT A**

**NONDISCLOSURE AGREEMENT**

I, _____, do solemnly swear or affirm that I will not divulge any information communicated to me in any confidential portion of the litigation or hearing in *CMC Materials, Inc. v. Dupont De Nemours, Inc.*, C.A. No. 20-738-MN (D. Del.), except as permitted in the protective order issued in this case. I will not directly or indirectly use or allow the use of such information for any purpose other than that directly associated with my official duties in this case.

Further, I will not by direct action, discussion, recommendation, or suggestion to any person reveal the nature or content of any information communicated during any confidential portion of the litigation or hearing in this case.

Signed _____

Dated _____

Affiliation _____

# EXHIBIT 2

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

BEFORE THE HONORABLE DAVID P. SHAW
ADMINISTRATIVE LAW JUDGE

| | |
|---|---|
| In the Matter of:<br><br>CERTAIN CHEMICAL MECHANICAL<br>PLANARIZATION SLURRIES AND<br>COMPONENTS THEREOF | Investigation No. 337-TA-1204 |

NONPARTY PMP FERMENTATION PRODUCTS, INC.'S RESPONSES
AND OBJECTIONS TO SUBPOENA *DUCES TECUM* AND *AD TESTIFICANDUM*

Nonparty PMP Fermentation Products, Inc.'s ("PMP") hereby submits its responses and objections to the Subpoena *Duces Tecum* and *Ad Testificandum* issued in the above-captioned matter.

### GENERAL OBJECTIONS TO REQUESTS FOR PRODUCTION

1.      PMP objects to all requests for production as overly broad and unduly burdensome on the grounds that PMP has no information, documents, or tangible things responsive to any request, and directs counsel to the Declaration attached as Exhibit 1 hereto.

2.      PMP objects to the definition of "PMP," "You," and "Your" to the extent it seeks to impose an obligation on PMP to seek documents from its attorneys, former employees, members, agents, representatives, consultants, accountants, predecessors-in-interest, divisions, subsidiaries, affiliates, joint ventures or any other legal entities that wholly or partially owned or controlled by PMP, either directly or indirectly, as well as the principals, directors, officers, owners, employees, members, agents, representatives, consultants, accountants, and attorneys of

these entities, to the extent such documents and information are not within PMP's possession, custody, or control.

3.     PMP objects to any request for production to the extent it seeks documents protected by any applicable privilege.

4.     PMP objects to the instructions to the extent they seek to impose a duty on PMP to log information related to destroyed or discarded documents beyond the duty imposed under the Federal Rules of Civil Procedure, or other applicable law.

5.     PMP objects to each request for production as overly broad and unduly burdensome to the extent it seeks to impose a disproportionate burden on PMP to search for and produce each and every conceivably responsive document regardless of relevance or duplicativeness.

6.     All responses herein are subject to and incorporate the foregoing objections.

## RESPONSES TO REQUESTS FOR DOCUMENTS AND THINGS TO BE PRODUCED

1.     Documents and things sufficient to show Your and/or Fuso's sale, offer to sale, importation into the U.S., manufacture, possession, testing, development, purchase, or promotion of colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

2.     Documents and things sufficient to show Your and/or Fuso's relationship with Cabot with respect to colloidal silica abrasive particles, including all communications with Cabot,

2

all contracts or agreements with Cabot, all invoices or other charges to or from Cabot, all payments received from or made to Cabot, all sales of colloidal silica abrasive particles to Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.


3.    All presentations and testing provided by You and/or Fuso to Cabot concerning colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.


4.    Documents and things sufficient to show Your relationship with Fuso with respect to colloidal silica abrasive particles, including all communications with Fuso, including all contracts or agreements with Fuso, concerning colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the

General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

     5.    Documents and things sufficient to show all colloidal silica abrasive particles that have been imported into the United States by or on behalf of You or Fuso or any customer of you or Fuso.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

     6.    Documents and things sufficient to identify and describe of each type of colloidal silica abrasive particle provided by You and/or Fuso to Cabot before June 25, 2015.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

     7.    Documents and things sufficient to identify the earliest date when You and/or Fuso provided each type of colloidal silica abrasive particle to Cabot.

4

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

8.    Documents and things sufficient to show any colloidal silica abrasive particles known to You and/or Fuso that incorporate a nitrogen containing compound.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

9.    Documents and things sufficient to show all colloidal silica abrasive particles known to You and/or Fuso that incorporate a nitrogen containing compound and have been imported into the United States by or on behalf of Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

5

10. Documents and things sufficient to show any colloidal silica abrasive particles known to You and/or Fuso that incorporate a phosphorous containing compound.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

11. Documents and things sufficient to show all colloidal silica abrasive particles known to You and/or Fuso that incorporate a phosphorous containing compound and have been imported into the United States by or on behalf of Cabot.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

12. Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine the nitrogen or phosphorous content of colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used and the results of the testing, analysis, or evaluation.

6

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

13.     Documents and things sufficient to show the full range of zeta potentials and Permanent Positive Charges that have been obtained by or are known to You and/or Fuso for colloidal silica abrasive particles, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

14.     Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine a zeta potential and Permanent Positive Charge of colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used, protocol(s) applied, and the results of the testing, analysis, or evaluation.

7

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

15. Documents and things sufficient to show and describe all testing, analysis, or evaluation to determine a zeta potential and Permanent Positive Charge of slurries containing colloidal silica abrasive particles known to You and/or Fuso, including documents and things sufficient to show the instrument or equipment used, protocol(s) applied, and the results of the testing, analysis, or evaluation.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

16. Documents and things sufficient to show and describe each process, method, and technique for manufacturing Your and/or Fuso's colloidal silica abrasive particles, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, and any colloidal silica abrasive particles prepared

specifically for or offered to any third party, including documents and things sufficient to show any catalysts used in each process, method, and technique.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.


17.   Documents and things sufficient to show and describe the structural and compositional differences between BS-2, BS-2H, and BS-3 particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.


18.   Documents and things sufficient to show and describe the structural and compositional differences between HL particles, PL particles, and BS particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.   Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

19.     Documents and things sufficient to show and describe all research and development of colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 and any colloidal silica abrasive particles prepared specifically for or offered to any third party.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

20.     Documents and things sufficient to show and describe any changes, alterations, or modifications to any colloidal silica abrasive particle structure or composition, or process for making the same, manufactured by You and/or Fuso, including documents and things sufficient to show when each change, alteration, or modification was made and the result of each change, alteration, or modification.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

10

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

21.     Documents and things sufficient to show and describe all sales, offers for sale, disclosures, and importations into the United States prior to June 25, 2015, of colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, and any colloidal silica abrasive particles prepared specifically for or offered to any third party.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents and things not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

22.     A one (I) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control.  Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

23. A one (1) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 that was in public use, sold, offered for sale, or otherwise available to customers before June 25, 2015.

**RESPONSE:** MP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

24. A one ( l) kg sample of each type of colloidal silica abrasive particle with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3 that was in public use, sold, offered for sale, or otherwise available to customers before June 25, 2014.

**RESPONSE:** MP objects to this Request as overly broad and unduly burdensome to the extent it requests production of material not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no material responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

25. Manufacturing and product specifications for each sample provided in response to Request Nos. 22-24.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its

12

possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

26.     Documentation evidencing sales, offers for sale, and shipments from You and/or Fuso to customers and potential customers for each sample provided in response to Request No. 22-24.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

27.     All documents concerning the particles and the preparations described in the Examples and Comparative Examples disclosed in Japanese published patent application JP2016-8157A, including any unreported testing of those particles.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control.    Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

#18138855v1

28. All communications and agreements with Cabot concerning the invention disclosed in Japanese published patent application JP2016-8157A, including the Examples and Comparative Examples.

**RESPONSE:** PMP objects to this Request as overly broad and unduly burdensome to the extent it is not restricted in time, and to the extent it requests documents not in PMP's possession, custody, or control. Subject to and without waiving the foregoing objections or the General Objections, PMP states that it has no documents or things responsive to this Request in its possession, custody, or control, and directs counsel to the Declaration attached hereto as Exhibit 1.

14

## GENERAL OBJECTIONS TO TOPICS FOR TESTIMONY

1.      PMP objects to Topics as overly broad and unduly burdensome on the grounds that PMP has no information, documents, or tangible things responsive to any Topic, and directs counsel to the Declaration attached as Exhibit 1 hereto.

2.      PMP objects to any Topic to the extent the Topic is inconsistent with the Federal Rules of Civil Procedure, or otherwise attempts to impose discovery response obligations beyond that required under the Federal Rules of Civil Procedure, or any other obligation under any other applicable law.

3.      PMP objects to each Topic to the extent the Topic seeks any information that is subject to any attorney/client privilege, any work product doctrine or any additional applicable privilege, immunity, or rule of confidentiality.

4.      PMP objects to each Topic to the extent the Topic is overly broad, unduly burdensome, oppressive, irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or not proportional to the needs of this lawsuit.

5.      PMP objects to each Topic to the extent the Topic seeks disclosure of matters or materials not within the possession of PMP, matters or materials which are unreasonably cumulative or duplicative, or matters or materials which are obtainable from some other source that is more convenient, less burdensome, or less expensive.

6.      PMP objects to each Topic to the extent the Topic might be based upon a conclusion of law or facts unknown to PMP, or based upon assumptions of law or facts as to which PMP disagrees or does not accept.

7.      PMP objects to each Topic to the extent the Topic seeks information or documents which are in the possession or control of an entity other than PMP; in addition, PMP objects to

each Topic to the extent the Topic seeks information or documents which are already within the parties' knowledge, possession and/or control, as such, the Topic is overly broad, unduly burdensome and oppressive.

8.     No objection or testimony to any Topic shall be construed as an admission by PMP of the relevancy, reasonableness, discoverability, or admissibility of the matters or materials disclosed, or the truth or accuracy of any characterization contained in the Topics.

## **RESPONSES TO TOPICS FOR TESTIMONY**

1.     Your relationship with Fuso with respect to supply, design, development, manufacture, testing, importation into the U.S., packaging, storing, shipping, distributing, marketing, selling, and/or offering to sell colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

2.     Your relationship with Cabot with respect to supply, design, development, manufacture, testing; importation into the U.S., packaging, storing, shipping, distributing, marketing, selling, and/or offering to sell colloidal silica abrasive particles.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

       3.       Identification and description of each type of colloidal silica abrasive particle provided by You and/or Fuso to Cabot before June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

       4.       The earliest date when the colloidal silica abrasive particles of Topic 3 were provided to Cabot.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

       5.       Cabot's participation in the research and development of colloidal silica abrasive particles of Topic 3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

17

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

6.      Zeta potential and Permanent Positive Charge testing of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used, protocol(s) applied, and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

7.      Zeta potential and Permanent Positive Charge testing for or on behalf of Cabot of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used, protocol(s) applied, and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

8.      Zeta potential and Permanent Positive Charge testing of slurries containing colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

9.      Zeta potential and Permanent Positive Charge testing for or on behalf of Cabot of slurries containing colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

10.     Nitrogen and Phosphorus level testing of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

11.     Nitrogen and Phosphorus level testing for or on behalf of Cabot of colloidal silica abrasive particles conducted by You and/or Fuso, including the equipment or instrument used and the result of any testing.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

12.     The research and development of colloidal silica abrasive particles manufactured by You and/or Fuso including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

13.     The research and development for or on behalf of Cabot of colloidal silica abrasive particles manufactured by You and/or Fuso including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

14.     The dates each colloidal silica abrasive particle manufactured by You and/or Fuso became available to customers including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

15.     The dates each colloidal silica abrasive particle manufactured by You and/or Fuso became available to Cabot including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

16.     Importation of colloidal silica abrasive particles into the U.S., including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, before June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

17. Any changes, alterations, or modifications to each colloidal silica abrasive particle manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

18. The method(s) or process(es) of manufacturing for each colloidal silica abrasive particle manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections,

22

PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

19.    Any changes, alterations, or modifications to the manufacturing method(s) or process(es) for each colloidal silica abrasive particles manufactured by You and/or Fuso, including, but not limited to, colloidal silica abrasive particles with the tradename HL-2, HL-3, HL-4, PL-2L, PL-3, PL-3C, BS-2, BS-2H, and BS-3, up to the present.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

20.    The samples produced in response to this subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

21.    The product specifications for each sample produced in response to this subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

#18138855v1

PMP states it has no information responsive to this Topic because it has samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

22.     Whether the samples produced in response to the subpoena are representative of product used, sold, m: offered to sale prior to June 25, 2015.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

23.     Whether the samples produced in response to the subpoena are representative of product used, sold, or offered to sale prior to June 25, 2014.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1

24.     The use, sale, or offer for sale prior to June 25, 2015 of products represented by the samples produced in response to the subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought.  Subject to and without waiving the foregoing objections or the General Objections,

24

PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

25.     The use, sale, or offer for sale prior to June 25, 2014 of products represented by the samples produced in response to the subpoena.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because it has no samples responsive to this subpoena, and directs counsel to the Declaration attached hereto as Exhibit 1.

29.     Documents and things produced in response to this subpoena, including, but not limited to, the collection and substance of those documents and things.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic because has no knowledge or information relevant to the subject matter of this dispute, and directs counsel to the Declaration attached hereto as Exhibit 1.

30.     Documentation identifying and describing sales, offers for sale, and shipments from You and/or Fuso to customers and potential customers for each sample provided in response to Request No. 18-20.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

31.     The Examples and Comparative Examples disclosed in Japanese published patent application JP2016-8157A.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

32.     Communications with Cabot concerning the invention disclosed in Japanese published patent application JP2016-8157A, including the Examples and Comparative Examples.

**RESPONSE:** PMP objects to this Topic as vague, ambiguous, overly broad, unduly burdensome, and failing to identify with reasonable particularity the topic on which testimony is sought. Subject to and without waiving the foregoing objections or the General Objections, PMP states it has no information responsive to this Topic, and directs counsel to the Declaration attached hereto as Exhibit 1.

26

Dated: September 18, 2020     As to objections only,

**BARNES & THORNBURG LLP**


By*: / s/ Jonathan P. Froemel___*

Jonathan P. Froemel (Illinois Bar No. 6237103)
Barnes & Thornburg LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
Phone: (312) 357-1313
Fax: (312) 759-5646
jonathan.froemel@btlaw.com

***Attorney for PMP Fermentation Products, Inc.***

27

# EXHIBIT 3

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**BEFORE THE HONORABLE DAVID P. SHAW**
**ADMINISTRATIVE LAW JUDGE**

In the Matter of:

CERTAIN CHEMICAL MECHANICAL
PLANARIZATION SLURRIES AND          Investigation No. 337-TA-1204
COMPONENTS THEREOF

**DECLARATION OF JAMES H. ZINKHON, JR.**

I, James H. Zinkhon, Jr., hereby declare the following:

1.      I am older than eighteen years of age, I am competent to make this Declaration, and
I will testify to the matters set forth herein if called upon to do so.

2.      I am the President of PMP Fermentation Products, Inc.'s ("PMP"). I have held this
position for 2 years.

3.      By virtue of my position at PMP, I have personal knowledge of the facts set forth
in this Declaration.

4.      PMP is a Delaware corporation headquartered in Illinois which specializes in the
fermentation of safe, natural products for food safety and preservation, and as a source for
environmentally friendly chemicals.

5.      Although PMP is a subsidiary of Fuso Chemical Co., Ltd. ("Fuso"), PMP is a
separate and distinct entity from Fuso.

6.      PMP has no knowledge of or information regarding Fuso's production,
manufacture, supply, distribution or use of colloidal silica abrasive particles, if any.

1

7.     PMP is not now, and never has been, in the business of producing, manufacturing, supplying, or distributing colloidal silica abrasive particles.

8.     PMP has no knowledge of or information regarding the subject matter of U.S. Patent No. 9,499,721.

9.     I have reviewed the Attachment A to the Subpoena *Duces Tecum* and *Ad Testificandum* in its entirety.

10.     PMP has no knowledge, information, documents, or tangible things responsive to this Subpoena *Duces Tecum* and *Ad Testificandum*.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 9/15/2020

James H. Zinkhon, Jr.

2

# EXHIBIT 4



*Embassy of the United States of America*

DATE:       October 27, 2023

TO:         Department of State (L/CA/POG/GC)/Mr. Dustin Gant

FROM:       Consular Section, AmEmbassy Tokyo

SUBJECT:    Judicial Assistance: Transmitting Letters Rogatory in the matter of CMC
            Materials, Inc. v. Dupont De Nemours, Inc, et al.

TAGS:       CJAN

REF:        L/CA/POG/GC Memorandum of 12/16/22


The Ministry of Foreign Affairs notified us that the letters rogatory request made for the above-
mentioned case was rejected for the following reasons (English summary of the attachment):

1. The letter rogatory requests the Japanese authority to compel Fuso Chemical Co., Ltd. the
   production of documents. Mandatory submission of documents does not exist in U.S.-
   Japan Consular Convention and the bilateral agreement. It also does not exist in Japanese
   law as a course of legal process. The Japanese court may be able to conduct
   "examination of the evidence" as defined by the Japanese law, so please reconsider the
   request.


2. You also requested to compel the examination under oath through the person most
   knowledgeable about the topics in attachment B. The U.S.-Japan Consular Convention
   and the bilateral agreement does not define a compelled deposition. It is also not defined
   in the Japanese law. The Japanese court may be able to conduct a "examination of
   witness", so please reconsider the request.

本件証拠調べ嘱託について

アメリカ合衆国からの本件嘱託（口上書 No. 0335）については、以下の理由により受理することができません。

１．文書提出命令に関する嘱託について

　　貴国裁判所からの嘱託書には、嘱託内容として、Fuso Chemical Co., Ltd.に対し、強制力を伴う文書提出命令が含まれています。日米領事条約及び二国間共助取決めに文書の提出命令を認める合意は存在しません。また、日本の国内法上も、裁判の準備手続として、強制力を伴う文書提出命令を認める規定は存在しません。

　　したがって、本件については、貴国裁判所からの依頼によって日本の裁判所が文書提出命令を出すことはできません。

　　なお、文書提出命令という方法ではなく、強制力を伴わない調査嘱託等であれば実施できる可能性はありますので、ご検討ください。

２．宣誓証言録取に関する嘱託について

　　貴国裁判所からの嘱託書には、嘱託内容として、添付 B の項目に最も知識を持つ人に対する尋問と強制力を伴う宣誓証言録取が含まれています。日米領

事条約及び二国間共助取決めに強制力を伴う宣誓証言録取を認める合意は存在しません。また、日本の国内法上も、裁判の準備手続として、強制力を伴う宣誓証言録取を認める規定は存在しません。

　したがって、本件については、貴国裁判所からの依頼によって日本の裁判所が宣誓証言録取を実施することはできません。

　なお、強制力を伴う宣誓証言録取という方法ではなく、裁判所が実施する証人尋問であれば実施できる可能性がありますので、ご検討ください。


以上

MINISTRY OF FOREIGN AFFAIRS
TOKYO, JAPAN

<u>Translation</u>

No. 1337/C-PO

NOTE VERBALE

The Ministry of Foreign Affairs presents its
compliments to the Embassy of the United States of America
and, with reference to the latter's Note Verbale No. 0335
of 8 June, 2023, requesting the Ministry's assistance in
taking evidence regarding Fuso Chemical Co., Ltd., has the
honour to inform the Embassy that the documents were unable
to be accepted for the reasons stated in the enclosed note
and to return herewith the relevant documents to the
Embassy.

The Ministry of Foreign Affairs avails itself of this
opportunity to renew to the Embassy of the United States of
America the assurances of its highest consideration.

Tokyo, August 24, 2023.

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CMC MATERIALS, INC.,                    )
                                        )
              Plaintiff,            )
                                        )
        v.                        )        C.A. No. 20-738-GBW
                                        )
DUPONT DE NEMOURS,                      )
INC., et al.,                           )
                                        )
             Defendants.          )

## DECLARATION OF TAKETO NASU
## IN SUPPORT OF DEFENDANTS' MOTION FOR THE ISSUANCE
## OF A REVISED LETTER ROGATORY FOR INTERNATIONAL JUDICIAL
## ASSISTANCE REGARDING FUSO CHEMICAL CO., LTD

I, Taketo Nasu, declare as follows:

1.     I have personal knowledge of the matters stated in this declaration, and if called as a witness I would testify to the same.

2.     I am a partner with Blakemore & Mitsuki of Tokyo, Japan. I am admitted to practice as an attorney before the bars of Japan and New York state. I practice in the areas of corporate law and intellectual property law.

3.     I am familiar with the attempts by Defendants DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "DuPont") to seek discovery from Fuso Chemical Co., Ltd. ("Fuso") via a Letter Rogatory.

4.     I had previously communicated with Japanese counsel for Fuso about an October 28, 2022, Letter Rogatory issued by the United States District Court for the District of Delaware. Japanese counsel for Fuso indicated that because Fuso is not a party of the U.S. litigation, it is not in a position to directly provide the requested documents and things to DuPont. However, Fuso would follow and correspond to the Japanese court's instructions under the Letter Rogatory.

5.     I am familiar with the decision of the Ministry of Foreign Affairs for Japan to return the October 28, 2022 Letter Rogatory. The Ministry concluded that the Letter Rogatory was improper for requesting a mandatory submission of documents and a compelled deposition; however, they noted that examination of the evidence is permissible under Japanese law. I

understand the Ministry's decision to return the Letter Rogatory to focus upon the mandatory/compelled nature of the original requests.

6.   While document production cannot be compelled under Japanese law, discovery of documents through the courts is permitted. DuPont's revised Letter Rogatory removes the offending demand to "compel" production, making the demand a "request." Such requests are consistent with the procedures for document discovery in Japan pursuant to MINSOHÔ (C. CIV. PRO.) arts. 186 (chosa shokutaku: a petition for a commission to conduct necessary examinations to produce information) and 226 (bunsho sofu shokutaku: a petition for a commission to deliver documents).

7.   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 11, 2024

By: _____

Taketo Nasu
Blakemore & Mitsuki

2