IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CMC MATERIALS, LLC, | ) | |
| | ) | C.A. No. 20-738-JLH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUPONT DE NEMOURS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | **Redacted – Public Version** |

**PLAINTIFF'S UNOPPOSED MOTION TO SEAL AND REDACT LIMITED
PORTIONS OF THE TRANSCRIPT OF THE MARCH 18, 2024
<u>DISCOVERY DISPUTE TELECONFERENCE</u>**

OF COUNSEL:
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Erik T. Koons
Christopher Wilson
Samuel L. Kassa
Eileen Hyde
Natalie Cardenas
Daniel Ruesta
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: June 6, 2024

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

Pursuant to Local Rule 5.1.3, Plaintiff CMC Materials, LLC ("CMC" or "Plaintiff") respectfully moves to redact certain confidential information in the transcript of the discovery dispute teleconference on March 18, 2024 (D.I. 295). CMC moves to redact only a very narrow set of CMC's sensitive business information contained in the transcript relating to ████████ ████████████████████████████████████████████████████████. The proposed redactions are included in attached Exhibit 1 on the following pages:

• March 18, 2024 Discovery Dispute Teleconference Transcript (D.I. 295) (Ex. 1): pages 3 (6 words), 4 (2 words), 11 (1 word), 12 (2 words), 15 (1 word)

Counsel for Plaintiff CMC has conferred with counsel for Defendant DuPont pursuant to Local Rule 7.1.1, and DuPont does not oppose CMC's motion to seal.

## I.    **LEGAL STANDARD**

The Third Circuit has held that "the common law presumes that the public has a right of access to judicial materials," but that presumption may be overcome by showing that "the material is the kind of information that courts will protect" and "that disclosure will work a clearly defined and serious injury to the party seeking closure," such that "the interest in secrecy outweighs the presumption" of public access. *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672, 678 (3d Cir. 2019) (internal quotation marks and citations omitted).

While the Third Circuit recognizes a presumptive right to public access to judicial materials, "the common law right of access does not extend to discovery motions and supporting materials because the 'underlying discovery material *itself* is not a judicial record.'" *Golo, LLC v. Goli Nutrition Inc.*, No. CV 20-667-RGA-SRF, 2023 WL 4979987, at *1 (D. Del. June 15, 2023) (citing *Genentech, Inc. v. Amgen, Inc.*, C.A. No. 17-1407-CFC et al., 2020 WL 9432700, at *3 (D. Del. Sept. 2, 2020) (emphasis in original)); *see also Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to

1

all material filed in connection with nondiscovery pretrial motions, whether these motions are case dispositive or not, but no such right as to discovery motions and their supporting documents.").

## II.   <u>**ARGUMENT**</u>

CMC moves to redact only a very narrow set of sensitive information about confidential CMC slurries for  research and development ███████████ discussed in the transcript of the discovery dispute teleconference. Indeed, the redacted version contains all but twelve words of the entire unredacted transcript. Thus, the only content that CMC seeks to withhold from the public record is limited to those twelve redacted words, related to those specific slurries.

### A.  The information CMC seeks to seal is the kind of information courts will protect

"Trade secrets or other confidential research, development, or commercial information are the type of information that courts will protect." *Avco Corp. v. Turner*, C.A. No. 2:20-cv-04073-JDW, 2021 U.S. Dist. LEXIS 149244, at *8 (E.D. Pa. Aug. 9, 2021). Here, CMC seeks to seal only the identity and characteristics of specific confidential slurries that CMC was researching and developing ███████████████████. CMC has taken steps to protect this information, which is not publicly available ████████████████████████████. *See Leucadia v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166 (3d Cir. 1993) ("Documents containing trade secrets or other confidential business information may be protected from disclosure."); *Purdue Pharm. Prods. L.P. v. Actavis Elizabeth L.L.C.,* C.A. No. 2:12-cv-05311-JLL-JAD, D.I. 398, 2-3 (D.N.J. Apr. 17, 2015) (granting motion to redact portions of the trial transcript relating to confidential "product" and "testing data"). The information sought to be sealed includes only the identity of the confidential slurry samples (*i.e.*, ███████████ and ██████) and confidential technical information relating to those slurries, including the identity of the particles that were being used in the slurries and the type of slurry (*i.e.*, ████████████████ ████████████). CMC also seeks to seal this information because ███████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████. The proposed redactions do not

include the surrounding context, which is all that is necessary to understand the transcript.

*Compare* Unredacted Transcript (D.I. 295) with Redacted Transcript (Ex. 2). █████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████. Thus, the information CMC requests to seal is "the kind of information that courts

will protect." *In re Avandia*, 924 F.3d at 678.

### B. Disclosure of the information that CMC seeks to seal will work a clearly defined and serious injury to CMC

Disclosure of the unredacted transcript would "work a clearly defined and serious injury to

the party seeking closure." *In re Avandia Mktg.*, 924 F.3d at 672. The information represents

sensitive research and development information related to certain slurries (identified as █████

████ and █████) regarding technical and distribution information related to these slurries,

████████████████████████████████████████████. Singleton Declaration, ¶ 5.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████. *Id.* ¶ 7. ██████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████. *Id.* ¶ 8.

CMC's public disclosures do not disclose these developmental slurries or related technical

information. *Id.* ¶ 6. ████████████████████████████████████



. *Id*. ¶ 8.

For the foregoing reasons, the information CMC seeks to redact from the public transcript relating to slurries that CMC was researching and developing ████████████████████ is "confidential business information" that may be protected from public disclosure. *Leucadia*, 998 F.2d at 166; *see Kelly v. Realpage, Inc.*, C.A. No. 19-01706-JDW, 2020 U.S. Dist. LEXIS 255199, at *3 (E.D. Pa. Aug. 5, 2020) (granting motion to seal where "disclosure of the information could provide competitors with information about Defendants' business practices that the competitors could use to Defendants' detriment").

**C.  CMC's interest in secrecy outweighs the presumption of public access.**

CMC's requested redactions are very narrow in scope, including only twelve isolated words out of the entire discovery dispute teleconference transcript. Redacting the discovery dispute teleconference transcript as proposed will not interfere with the public's right of access to judicial proceedings, because the limited nature of the redactions will enable the public to fully understand the transcript. The information at issue here is not necessary to understand the transcript. *See Wickens v. Rite Aid Hdqtrs Corp.*, C.A. No. 19-02021, 2021 U.S. Dist. LEXIS 239932, at *6 (M.D. Pa. Feb. 23, 2021) (granting motion to seal, and holding that in light of "the narrow scope of the parties' request," the parties had demonstrated that their "interest in secrecy outweighs the presumption of public access").

III.    **CONCLUSION**

Accordingly, CMC respectfully requests that the Court enter the redacted version of the

transcript of the discovery dispute teleconference (Ex. 2) and maintain only the redacted version

as the public document.

/s/ Andrew E. Russell
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Plaintiff*

OF COUNSEL:
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Erik T. Koons
Christopher Wilson
Samuel L. Kassa
Eileen Hyde
Natalie Cardenas
Daniel Ruesta
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Dated: June 6, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2024, this document was served on DuPont-Delaware@finnegan.com, IPservice@potteranderson.com and on the persons listed below in the manner indicated:

### BY EMAIL

David E. Moore
Bindu A. Palapura
Andrew L. Brown
POTTER ANDERSON & CORROON, LLP
Hercules Plaza
1313 N. Market St., 6th Flr.
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700
charles.lipsey@finnegan.com

William S. Farmer
David C. Brownstein
David M. Goldstein
FARMER BROWNSTEIN JAEGER
  GOLDSTEIN KLEIN & SIEGEL LLP
235 Montgomery St., Suite 835
San Francisco, CA 94104
wfarmer@fbjgk.com
dbrownstein@fbjgk.com
dgoldstein@fbjgk.com

Mareesa A. Frederick
Eric J. Fues
Anthony A. Hartmann
Kaitlyn S. Pehrson
Hira Javed
Emily R. Gabranski
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
mareesa.frederick@finnegan.com
eric.fues@finnegan.com
anthony.hartmann@finnegan.com
kaitlyn.pehrson@finnegan.com
hira.javed@finnegan.com
emily.gabranski@finnegan.com

_/s/ Andrew E. Russell_
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
_Attorneys for Plaintiff_

# Exhibit 1

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CMC MATERIALS, INC.,          )
                              )
          Plaintiff,          )   C.A. No. 20-738 JLH
                              )
     v.                       )
                              )
DUPONT DE NEMOURS, INC.,)
et al.,                       )
                              )
          Defendants.         )

Monday, March 18, 2024
3:00 p.m.
Teleconference

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE JENNIFER L. HALL
         United States District Court Judge

APPEARANCES:

         SHAW KELLER, LLP
         BY:  ANDREW E. RUSSELL, ESQ.

         -and-

         BAKER BOTTS, LLP
         BY:  LISA M. KATTAN, ESQ.
         BY:  KATHARINE M. BURKE, ESQ.

                    Counsel for the Plaintiff

---

2

1    APPEARANCES CONTINUED:

2

3         POTTER, ANDERSON & CORROON, LLP
          BY:  ANDREW L. BROWN, ESQ.
          BY:  DAVID ELLIS MOORE, ESQ.

4

5              -and-

6         FINNEGAN, HENDERSON, FARABOW,
          GARRETT & DUNNER, LLP
          BY:  ERIC J. FUES, ESQ.

7         BY:  KYLE W. HOWARTH, ESQ.

8              Counsel for the Defendants

9

10        - - - - - - - - - - - - - - - - - - - - - - -

11

15:02:27 12
15:02:27 13        THE COURT:  Good afternoon, everyone.  This is
15:02:31 14   Jen Hall.  We're here on the line for a discovery dispute
15:02:34 15   teleconference.  This is CMC versus Dupont.  It's civil
15:02:36 16   action number 20-738.  We have a court reporter on the line
15:02:39 17   today.  Can I have appearances for plaintiff?
15:02:41 18        MR. RUSSELL:  Good afternoon, Your Honor.  This
15:02:43 19   is Andrew Russell from Shaw Keller for plaintiff CMC.  And
15:02:47 20   with me on the line are Lisa Kattan and Katharine Burke from
15:02:52 21   Baker Botts.
15:02:52 22        THE COURT:  Fantastic.  Good afternoon.  And can
15:02:56 23   I have appearances for defendants?
15:02:57 24        MR. BROWN:  Thank you, Your Honor.  Andrew Brown
15:02:59 25   from Potter Anderson.  With me today is my colleague, also

---

3

15:03:04 1    from Potter Anderson, Dave Moore.  And Eric Fues and Kyle
15:03:09 2    Howarth from Finnegan.
15:03:10 3         THE COURT:  Great.  Good afternoon.  Okay.  I've
15:03:14 4    taken a look at the letters.  I think I have a good
15:03:17 5    understanding about what the arguments are.  I'll give each
15:03:22 6    side five minutes to add anything they want to add.
15:03:25 7         This is CMC's motion, so we'll hear from CMC.
15:03:32 8         MR. RUSSELL:  Thank you, Your Honor.  This is
15:03:34 9    Andrew Russell again.  These are definitely both particles
15:03:37 10   that DuPont should have disclosed in their initial
15:03:40 11   invalidity contentions.  We wanted to point out that in
15:03:44 12   their letter they don't dispute, as to the ███ that all of
15:03:48 13   the technical requirements, that they have all of the
15:03:50 14   information they needed to assert these on a technical
15:03:54 15   basis.  They only argue about the fact they -- they claim
15:03:58 16   they didn't have enough information to make their argument
15:04:01 17   about sales, but the document they rely on, we wanted to
15:04:04 18   point out, is in ITC documents.  So they could have made
15:04:08 19   their allegation about sales, they just decided not to.
15:04:11 20        On the ███ it's very similar.  They have
15:04:15 21   one -- one technical point in their letter that they claim
15:04:19 22   they couldn't have made their allegations about the ███
15:04:23 23   And that's this zeta potential permanent positive charge
15:04:27 24   issue.  But they had information on that as well.  That's
15:04:31 25   where the ███ uses one of the ███████ particles

---

4

15:04:37 1    that they've had information about for years, the ███
15:04:41 2    particle.  And they put all kinds of stuff in the initial
15:04:42 3    invalidity contentions about that particle, including in
15:04:45 4    multiple places about its zeta potential and positive
15:04:50 5    charge.  So they could have made their technical allegations
15:04:53 6    about the ███ as well.
15:04:56 7         On the sales side, they could have made their
15:04:58 8    sales argument.  They point to one primary document that
15:05:03 9    they say was -- shows sales of this product.  It's
15:05:10 10   CMC_DEL00173226.  But we produced a document at the ITC that
15:05:15 11   has the same information.  And I can give that bates number
15:05:21 12   if the Court wants it.  It's CMC00074338.  So they could
15:05:26 13   have made those allegations too.  There was no reason for
15:05:29 14   them to hold off on making their allegations of invalidity
15:05:35 15   based on these two slurries.  They don't really explain why
15:05:41 16   they couldn't have done it beyond those minor points which
15:05:46 17   are rebutted by what they cited.
15:05:49 18        Their allegation that they were timely doesn't
15:05:51 19   make a lot of sense.  They say that the final contentions
15:05:55 20   document, the document entitled final contentions, is timely,
15:05:59 21   but really their allegations about these slurries that were
15:06:02 22   in that document were untimely.  The real issue is they
15:06:04 23   should have put these in their initial invalidity
15:06:08 24   contentions if they wanted to make these arguments, because
15:06:09 25   they had all of the information at the time of initial

5

15:06:10 1  contentions.  They haven't pointed to any basis for
15:06:15 2  withholding it.
15:06:16 3          I'm sorry I'm going fast here.  I'm trying to
15:06:17 4  fit in your five-minute time allocation.
        5          THE COURT:  No problem.
        6          MR. RUSSELL:  They allege we had notice from the
15:06:24 7  subpoenas.  But if you look at the subpoenas, they don't
15:06:27 8  mention these products at all.  They ask for general
15:06:31 9  information about all slurries sold by -- that they claim
15:06:36 10 were sold by CMC to Global Foundries.  They don't identify
15:06:41 11 these.  We've looked at our documents.  It appears that the
15:06:44 12 first time these slurries were named specifically in regards
15:06:47 13 to those subpoenas was on our October 16th meet and confer,
15:06:50 14 just four days before the close of fact discovery, which is
15:06:53 15 not time to do anything with that information.  So the idea
15:06:57 16 we were on notice because of these subpoenas doesn't work.
15:07:00 17         And they didn't otherwise ask discovery about
15:07:03 18 these or provide information that they intended to both
15:07:07 19 argue anticipation and obviousness based on these throughout
15:07:10 20 all of discovery.
15:07:12 21         Under rule 37, to exclude these -- based on
15:07:16 22 that, they were untimely.  They should have disclosed them.
15:07:19 23 They did not.  Under Rule 37, the only way they don't get
15:07:22 24 excluded was if the failure to disclose was substantially
15:07:25 25 justified or harmless.  They don't say anything about why

6

15:07:29 1  they think their failure to disclose was substantially
15:07:29 2  justified and it wasn't.  Nor was it harmless, because we
15:07:35 3  articulated the prejudice in our letter, but basically we
15:07:39 4  proceeded through all of discovery without knowing these
15:07:42 5  slurries, which were allegedly sold by us in a way that
15:07:46 6  could result in invalidity, were even in the case.  And we
15:07:49 7  would have pursued our case differently had we known that,
15:07:53 8  including taking different discovery and things that can't
15:07:56 9  really be cured now.
15:08:00 10         They don't even dispute in their responsive
15:08:02 11 letter that there was prejudice.  They say that the only
15:08:05 12 argument they make about prejudice is that our delay somehow
15:08:09 13 undermines their prejudice allegation.  That doesn't make
15:08:11 14 any sense to me.  The only thing it could possibly undermine
15:08:15 15 is time left to cure.  And there was no ability to cure even
15:08:20 16 if we raised this instantly the day of the contentions.  It
15:08:24 17 doesn't make sense for us to have to re-depose their
15:08:27 18 witnesses, pursue this discovery and you can't un-ring the
15:08:30 19 bell of this having not been disclosed.
15:08:33 20         We don't think there was a significant delay.
15:08:36 21 We think to the extent there was a delay it was largely
15:08:39 22 attributable to them.  When we reached out, for example, to
15:08:43 23 get their availability for a teleconference, they resisted.
15:08:46 24 They said that we hadn't adequately met and conferred on
15:08:49 25 this issue, that the parties hadn't bottomed out and it

7

15:08:52 1  wasn't developed and it shouldn't be brought to the Court.
15:08:53 2  And then finally, when they gave in and let us file our
15:08:56 3  letter, they kind of took the opposite position and said we
15:08:59 4  had delayed too long.  So to the extent there was delay, it
15:09:02 5  was largely attributable to them.
15:09:05 6          And then finally, on Pennypack factors, I think
15:09:07 7  I've covered most of them, but on importance, they still
15:09:10 8  have a number of other primary references just like in the
15:09:16 9  *TQ Delta* case we cited.  And they must not be that important
15:09:20 10 given that they withheld their contentions on them.
15:09:22 11         And finally, even if these were excluded, they
15:09:25 12 still have invalidity contentions about the underlying
15:09:28 13 particles which we're not seeking to exclude and they can
15:09:32 14 rely on those, so we don't think this is so important that
15:09:36 15 it shouldn't be struck under the Pennypack factors.
15:09:38 16         Basically their argument is largely that they
15:09:40 17 don't think they had an obligation to disclose these in
15:09:43 18 their initial contentions because there was a final
15:09:46 19 contention deadline, but it shouldn't be that someone can
15:09:50 20 just withhold something from initial contentions that they
15:09:53 21 have all of the information necessary to accuse and just
15:09:57 22 keep it from discovery and then throw it in final
15:10:01 23 contentions and have it in the case.  We think that's not
15:10:04 24 how discovery is meant to work in Delaware.
15:10:06 25         I'm not sure if that was exactly five minutes,

8

15:10:09 1  but that's what we had.
15:10:10 2          THE COURT:  That's fine.  Let me ask you.  You
15:10:12 3  said you were deprived of the opportunity to get discovery,
15:10:15 4  so you wanted to ask their witnesses about something that
15:10:22 5  has to do with your developmental slurry?  Can you flush
15:10:27 6  that out a little more for me?
15:10:29 7          MR. RUSSELL:  Right.  So we wanted to be able to
15:10:32 8  pursue information from their witnesses about industry
15:10:35 9  practices for development of these kinds of slurries and how
15:10:38 10 sales -- because DuPont develops these sorts of slurries too
15:10:43 11 and how sales are or aren't developmental or experimental
15:10:45 12 and things about, for example, the qualification process
15:10:48 13 that customers go through in developing slurries before
15:10:54 14 they're actually commercially sold.  So we think there was
15:10:54 15 information that we could have asked their witnesses about
15:10:57 16 that would have been very relevant to show that these were,
15:11:00 17 in fact, developmental slurries, not any kind of sales that
15:11:04 18 could qualify as prior art under the on-sale bar.
15:11:08 19         THE COURT:  And you also mentioned that you
15:11:09 20 would have wanted to subpoena former CMC employees.  What
15:11:14 21 was the thinking there?  What were you going to ask them?
15:11:17 22         MR. RUSSELL:  So they're alleging that we sold
15:11:21 23 these slurries in a way that would qualify under the on-sale
15:11:21 24 bar and we would want to develop the factual record about
15:11:29 25 exactly what the purpose of these sales were and why -- to

**9**

1 the extent they were sales at all, and what exactly happened
2 with them to show that they were developmental and not
3 commercial such that they could anticipate.  And some of
4 those employees have left CMC, is my understanding.
5     THE COURT:  And you have no control or ability
6 to get information from them?
7     MR. RUSSELL:  So I assume we don't.  I don't
8 have names and knowledge on that exact point, but I don't
9 think we do.
10     THE COURT:  Okay.  Understood.  And then
11 finally, you wanted to ask your witnesses questions about
12 their obviousness combinations, their fact witnesses
13 questions?
14     MR. RUSSELL:  Right.  We wanted to develop their
15 testimony about motivation to combine and why, you know,
16 there wasn't a motivation to combine these particles into a
17 slurry that would render the patent obvious, the claims
18 obvious.
19     THE COURT:  All right.  Thanks very much.  Let
20 me hear from the other side.
21     MR. FUES:  Yes.  Hello, Your Honor.  This is
22 Eric Fues.  I'll be handling the argument for DuPont.  The
23 first thing is, obviously I disagree with just about
24 everything that counsel said.
25     We did not assert an on-sale bar in the ITC

**10**

1 because we didn't think we had enough information.  He can
2 easily say oh, there was enough information, but I can
3 guarantee Your Honor that he is going to dispute and CMC's
4 going to dispute that that information is sufficient in and
5 of itself to establish an on-sale bar.  We all know that.
6 So this is kind of unsupported attorney argument here.
7     Dupont's final invalidity contentions were
8 timely.  We filed them according to D.I. 183, which is a
9 stipulation the parties agreed to.  The Pennypack factors do
10 not apply where you have timely filed contentions.
11     Now, as for the content of our contentions, in
12 our letter we identified a great deal of discovery that was
13 occurring late in the case.  CMC did not produce any
14 documents in the district court case until after our initial
15 contentions.  And our amended initial contentions were
16 served.  All the depositions in the case took place between
17 September 19th and October 24th.  And when I say all the
18 depositions, Your Honor, that was 22 depositions took place
19 in that time period, roughly split between the parties.  And
20 there were multiple CMC document productions that were made
21 during the last month of fact discovery.  As Your Honor, I'm
22 sure, appreciates, when depositions come up, there are
23 meetings with fact witnesses and sometimes additional
24 documents are identified during those meetings with the fact
25 witnesses before the times of the depositions and there are

**11**

1 last minute productions.  There are a bunch of them here,
2 there are 8 or 9 of them.
3     And I want to just point to the stipulation,
4 because the description that I just gave you is set forth
5 right in the stipulation.  It says, "Whereas the parties are
6 in the process of conducting several depositions and third
7 party depositions scheduled for occurring before October
8 23rd -- there are several other whereas clauses.  The last
9 whereas clause is, "whereas the parties anticipate
10 information obtained from ongoing discovery will be relevant
11 to the parties' invalidity, infringement, validity and
12 non-infringement contentions."  So that's CMC agreeing that
13 the information that was being produced late and the
14 depositions that were occurring late would be relevant to
15 the party's invalidity contentions.  And it's because of
16 that that several dates in the schedule moved that are set
17 forth in D.I. 183.
18     As for the notice issue, we completely agree
19 that Global Foundries was not on notice.  As Your Honor, I'm
20 sure, appreciates, we can't necessarily put a detailed
21 description like ███████ n a subpoena.  We don't know if
22 that's public information.  We're sending it to a third
23 party.  We don't know if CMC's description is public or not,
24 so we had a more general subpoena to them, certainly for
25 sales that occurred before the filing date of CMC's patent

**12**

1 and any patent attorney should have appreciated the fact
2 that that is something that we were interested in on sale,
3 slurry sales to Global Foundries, particularly so since it
4 was CMC's attorney who was representing Global Foundries.
5 It wasn't some other attorney and they just got one e-mail
6 late at night.  They were developing objections, they were
7 thinking about the subpoena, they were asking about
8 documents, they knew all about those slurries, they had full
9 notice, Your Honor.
10     And as counsel even noted, there is an e-mail
11 from trial counsel for -- there's an e-mail from trial
12 counsel for CMC that specifically identifies ███ and
13 ██████ as the slurries of interest with respect to that
14 subpoena and that discussion was also during the fact
15 discovery period, not, as they had represented to Your
16 Honor, occurring after the fact discovery period.
17     I think at bottom what they're trying to do is
18 argue that evidence can be struck from a party's final
19 contentions because documents had been produced three or
20 four months before the time of depositions and if you don't
21 update your contentions simply based upon a document
22 production, then your evidence gets struck.  It's not true
23 that all of the evidence cited in our contentions, and we
24 gave a very detailed listing of it, it's not true that that
25 evidence was all from the ITC case.

13

15:17:26  1        I would point out for Your Honor's benefit, the
15:17:30  2  interrogatory response that we received in the ITC case is
15:17:32  3  also something that was served on the last day of fact
15:17:35  4  discovery in the ITC case. So it's not like we had a large
15:17:38  5  amount of time to go push for and obtain additional
15:17:43  6  discovery from CMC about that interrogatory response, which
15:17:46  7  I think we explained was misdirected anyway.
15:17:49  8        So at bottom they're asking Your Honor to reach
15:17:52  9  into contentions that are based on something that's pleaded
15:17:56 10  and they are based upon discovery that's produced in a
15:18:00 11  district court case and say, nope, it gets struck anyway,
15:18:03 12  because we think you could have articulated on-sale bar
15:18:07 13  defenses at an earlier time.
15:18:09 14        DuPont doesn't have CMC's inventors on speed
15:18:13 15  dial. We can't understand how their Excel files work
15:18:16 16  without asking witnesses about it. And the notion that a
15:18:21 17  silent, voluminous production of discovery documents is
15:18:25 18  enough to strike someone's contentions later on in a case,
15:18:28 19  particularly under the circumstances here, is misguided.
15:18:31 20  Thank you, Your Honor.
15:18:32 21        THE COURT: All right.
15:18:34 22        MR. RUSSELL: May I respond?
15:18:36 23        THE COURT: Before we switch over, I have two
15:18:38 24  questions for DuPont. The first is when did they first let
15:18:47 25  you know, after you served your final contentions, that they

14

15:18:51  1  didn't like that you had added what they thought was a new
15:18:57  2  on-sale bar theory?
15:18:59  3        MR. FUES: I thought that that occurred, Your
15:19:03  4  Honor, and we put it in our paper, but I believe we thought
15:19:05  5  that that was on December 28th.
15:19:07  6        THE COURT: So that was two months after you
15:19:09  7  served the contentions?
15:19:11  8        MR. FUES: Yes.
15:19:11  9        THE COURT: Okay. And then the second question
15:19:13 10  I had was, can you respond to CMC's argument that had they
15:19:21 11  known you were going to raise this on-sale bar theory that
15:19:25 12  they would have subpoenaed some former CMC employees for
15:19:28 13  additional evidence?
15:19:30 14        MR. FUES: Well, you know, our position is that
15:19:34 15  they did know from the subpoena that we sent them before any
15:19:38 16  depositions took place. I would say that Mary Cavanaugh is
15:19:42 17  a deposition that took place after that subpoena. She's one
15:19:46 18  of the named inventors. I assumed they would ask her
15:19:49 19  questions. Jeffrey Dissard is a third party now. He's
15:19:53 20  another named inventor. That deposition took place after
15:19:55 21  the subpoena was sent -- two subpoenas were sent to Global
15:20:00 22  Foundries. So our position is they knew about this issue,
15:20:04 23  Your Honor. But the notion that these people that are on in
15:20:08 24  other careers have more knowledge than the people that are
15:20:11 25  just internal to CMC, I don't think that passes the straight

15

15:20:18  1  face test.
15:20:19  2        THE COURT: All right. Thank you very much.
15:20:21  3  All right. Mr. Russell.
15:20:22  4        MR. RUSSELL: So, just on that last point about
15:20:26  5  the named inventors, this is a different -- these slurries
15:20:32  6  are ▋▋▋▋▋▋polishing slurries that are different than the
15:20:37  7  dielectric slurries claimed in the patent. My understanding
15:20:39  8  is different teams worked on them. It wasn't like a
15:20:42  9  predecessor product to the product that embodies the claims
15:20:46 10  in the patent. So I don't know that the inventors would
15:20:49 11  have had any information on these anyway, and obviously,
15:20:51 12  like we said before, we didn't have notice.
15:20:54 13        Counsel for Dupont cited to the October 19th
15:20:56 14  e-mail as providing notice, but that was one day before the
15:21:00 15  close of fact discovery, so I don't think that's relevant.
15:21:03 16  He talked a lot about how they developed -- they received
15:21:06 17  productions near the close of fact discovery. I don't think
15:21:10 18  any of those are relevant to the question at issue here at
15:21:12 19  all. I think what matters is what they had at the time of
15:21:15 20  initial contentions and they still don't offer anything they
15:21:19 21  were missing at the time of initial contentions that would
15:21:22 22  have precluded them from effusing this. All the extra
15:21:27 23  documents are irrelevant really. They're just bringing up
15:21:30 24  stuff they could have disclosed at the time of initial
15:21:35 25  contentions so we could develop our case with this in mind,

16

15:21:36  1  the idea that they were going to argue that we, CMC, sold
15:21:40  2  these products and not some other company.
15:21:44  3        And finally, the idea that we should have
15:21:47  4  anticipated what they were going to argue, they offered in
15:21:50  5  their final contentions brand new, specific obviousness
15:21:54  6  combinations and anticipation analyses about these products.
15:21:58  7  He says any good patent attorney would have known that it
15:22:01  8  was coming. I think that's unsupportable because we can't
15:22:04  9  take from the fact that they're asking generally about sales
15:22:08 10  of slurries that they're going to make these specific
15:22:11 11  allegations about these specific slurries. I especially
15:22:14 12  think it's true when most of the discussions -- I
15:22:17 13  represented Global Foundries, my co-counsel did not. A lot
15:22:24 14  of the initial discussions were just with me and at that
15:22:24 15  time I didn't know, you know, any of the issues in the case
15:22:27 16  really, so I don't think that that shows that this was
15:22:30 17  disclosed timely.
15:22:32 18        THE COURT: All right. Thanks very much.
15:22:35 19        MR. FUES: Your Honor --
15:22:38 20        THE COURT: No. That's all right. I've heard
15:22:39 21  enough argument. That's fine.
15:22:40 22        I'm ready to rule on this dispute.
15:22:42 23        Again, this is a motion by CMC to strike
15:22:45 24  invalidity contentions.
15:22:47 25        On this record I find that DuPont's final

17

1   invalidity contentions were timely, having reviewed all of
2   the exhibits.  I have considered CMC's argument that DuPont
3   knew about the new theories in its final invalidity
4   contentions long before they added those on to the
5   contentions.  On this record I can't find that that's the
6   case.
7           But what I can find on this record is that CMC
8   wasn't diligent in bringing to the Court its argument that
9   DuPont wasn't diligent.
10          So I think for all of those reasons, CMC's
11  motion will be denied and that will conclude the
12  teleconference.  Thanks very much, everyone.
13          MR. FUES:  Thank you, Your Honor.
14          MR. RUSSELL:  Thank you, Your Honor.
15          (Teleconference concluded at 3:23 p.m.)
16
17
            ---------------------------------
18

19
            I hereby certify the foregoing is a true and
20  accurate transcript from my stenographic notes in the
    proceedings.
21

22          /s/ Stacy M. Ingram, RPR
            Official Court Reporter
23              U.S. District Court
24
25

## /

**/s** [1] - 17:22

## 1

**16th** [1] - 5:13
**18** [1] - 1:10
**183** [2] - 10:8, 11:17
**19th** [2] - 10:17, 15:13

## 2

**20-738** [2] - 1:4, 2:16
**2024** [1] - 1:10
**22** [1] - 10:18
**23rd** [1] - 11:8
**24th** [1] - 10:17
**28th** [1] - 14:5

## 3

**37** [2] - 5:21, 5:23
**3:00** [1] - 1:10
**3:23** [1] - 17:15

## 7

[3] - 3:20, 3:25, 4:6
[1] - 3:22

## 8

**8** [1] - 11:2
**844** [1] - 1:12
[1] - 3:12

## 9

**9** [1] - 11:2

## A

**ability** [2] - 6:15, 9:5
**able** [1] - 8:7
**according** [1] - 10:8
**accurate** [1] - 17:20
**accuse** [1] - 7:21
**action** [1] - 2:16
**add** [1] - 3:6
**added** [2] - 14:1, 17:4
**additional** [3] - 10:23,

13:5, 14:13
**adequately** [1] - 6:24
**afternoon** [4] - 2:13,
2:18, 2:22, 3:3
**agree** [1] - 11:18
**agreed** [1] - 10:9
**agreeing** [1] - 11:12
**al** [1] - 1:7
**allegation** [3] - 3:19,
4:18, 6:13
**allegations** [6] - 3:22,
4:5, 4:13, 4:14,
4:21, 16:11
**allege** [1] - 5:6
**allegedly** [1] - 6:5
**alleging** [1] - 8:22
**allocation** [1] - 5:4
**amended** [1] - 10:15
**amount** [1] - 13:5
**analyses** [1] - 16:6
**ANDERSON** [1] - 2:2
**Anderson** [2] - 2:25,
3:1
**ANDREW** [2] - 1:21,
2:3
**Andrew** [3] - 2:19,
2:24, 3:9
**anticipate** [2] - 9:3,
11:9
**anticipated** [1] - 16:4
**anticipation** [2] -
5:19, 16:6
**anyway** [2] - 13:7,
13:11, 15:11
**appearances** [2] -
2:17, 2:23
**APPEARANCES** -
1:19, 2:1
**apply** [1] - 10:10
**appreciated** [1] - 12:1
**appreciates** [2] -
10:22, 11:20
**argue** [2] - 3:15, 5:19,
12:18, 16:1, 16:4
**argument** [10] - 3:16,
4:8, 6:12, 7:16,
9:22, 10:6, 14:10,
16:21, 17:2, 17:8
**arguments** [2] - 3:5,
4:24
**art** [1] - 8:18
**articulated** [2] - 6:3,
13:12
**assert** [2] - 3:14, 9:25
**assume** [1] - 9:7
**assumed** [1] - 14:18
**attorney** [5] - 10:6,
12:1, 12:4, 12:5,

13:5, 14:13

## B

**attributable** [2] - 6:22,
7:5
**availability** [1] - 6:23

**Baker** [1] - 2:21
**BAKER** [1] - 1:23
**bar** [7] - 8:18, 8:24,
9:25, 10:5, 13:12,
14:2, 14:11
**based** [6] - 4:15, 5:19,
5:21, 12:21, 13:9,
13:10
**basis** [2] - 3:15, 5:1
**bates** [1] - 4:11
**BEFORE** [1] - 1:15
**bell** [1] - 6:19
**benefit** [1] - 7:7
**between** [2] - 10:16,
10:19
**beyond** [1] - 4:16
**bottom** [2] - 12:17,
13:8
**bottomed** [1] - 6:25
**BOTTS** [1] - 1:23
**Botts** [1] - 2:21
**brand** [1] - 16:5
**bringing** [2] - 15:23,
17:8
**brought** [1] - 7:1
**BROWN** [2] - 2:3, 2:24
**Brown** [1] - 2:24
[1] - 4:1
**bunch** [1] - 11:1
**BURKE** [1] - 1:24
**Burke** [1] - 2:20
**BY** [6] - 1:21, 1:23,
1:24, 2:3, 2:6, 2:7

## C

**C.A** [1] - 1:4
**careers** [1] - 14:24
**case** [15] - 6:6, 6:7,
7:9, 7:23, 10:13,
10:14, 10:16, 12:25,
13:2, 13:4, 13:11,
13:18, 15:25, 16:15,
17:6
**Cavanaugh** [1] -
14:16
**certainly** [1] - 11:24
**certify** [1] - 17:19
**charge** [2] - 3:23, 4:5
**circumstances** [1] -

**cited** [4] - 4:17, 7:9,
12:23, 15:13
**civil** [1] - 2:15
**claim** [3] - 3:15, 3:21,
5:9
**claimed** [1] - 15:7
**claims** [2] - 9:17, 15:9
**clause** [1] - 11:9
**clauses** [1] - 11:8
**close** [3] - 5:14,
15:15, 15:17
**CMC** [17] - 1:3, 2:15,
2:19, 3:7, 5:10,
8:20, 9:4, 10:13,
10:20, 11:12, 12:12,
13:6, 14:12, 14:25,
16:1, 16:23, 17:7
**CMC 's** [9] - 3:7, 10:3,
11:23, 11:25, 12:4,
13:14, 14:10, 17:2,
17:10
**CMC 00074338** -
4:12
**CMC _DEL 00173226**
- 4:10
**co** [1] - 16:13
**co-counsel** [1] - 16:13
**colleague** [1] - 2:25
**combinations** [2] -
9:12, 16:6
**combine** [2] - 9:15,
9:16
**coming** [1] - 16:8
**commercial** [1] - 9:3
**commercially** [1] -
8:14
**company** [1] - 16:2
**completely** [1] - 11:18
**conclude** [1] - 17:11
**concluded** [1] - 17:15
**conducting** [1] - 11:6
**confer** [1] - 5:13
**conferred** [1] - 6:24
**considered** [1] - 17:2
**content** [1] - 10:11
**contention** [1] - 7:19
**contentions** [34] -
3:11, 4:3, 4:19,
4:20, 4:24, 5:1,
6:16, 7:10, 7:12,
7:18, 7:20, 7:23,
10:7, 10:10, 10:11,
10:15, 11:12, 11:15,
12:19, 12:21, 12:23,
13:9, 13:18, 13:25,
14:7, 15:20, 15:21,
15:25, 16:5, 16:24,

**13:19**
**cited** [4] - 4:17, 7:9,
**17:1**, 17:4, 17:5
**CONTINUED** [1] - 2:1
**control** [1] - 9:5
**CORROON** [1] - 2:2
**counsel** [9] - 9:24,
12:10, 12:11, 12:12,
15:13, 16:13
**Counsel** [1] - 1:25,
2:8
**court** [3] - 2:16, 10:14,
13:11
**COURT** [17] - 1:1,
2:13, 2:22, 3:3, 5:5,
8:2, 8:19, 9:5, 9:10,
9:19, 13:21, 13:23,
14:6, 14:9, 15:2,
16:18, 16:20
**Court** [6] - 1:16, 4:12,
7:1, 17:8, 17:22,
17:23
**covered** [1] - 7:7
**cure** [1] - 6:15
**cured** [1] - 6:9
**customers** [1] - 8:13

## D

**D.I** [2] - 10:8, 11:17
**date** [1] - 11:25
**dates** [1] - 11:16
**Dave** [1] - 3:1
**DAVID** [1] - 2:3
**days** [1] - 5:14
**DE** [1] - 1:6
**deadline** [1] - 7:19
**deal** [1] - 10:12
**December** [1] - 14:5
**decided** [1] - 3:19
**defendants** [1] - 2:23
**Defendants** [2] - 1:8,
2:8
**defenses** [1] - 13:13
**definitely** [1] - 3:9
**DELAWARE** [1] - 1:1
**Delaware** [1] - 1:13,
7:24
**delay** [4] - 6:12, 6:20,
6:21, 7:4
**delayed** [1] - 7:4
**Delta** [1] - 7:9
**denied** [1] - 17:11
**depose** [1] - 6:17
**deposition** [2] -
14:17, 14:20
**depositions** [10] -
10:16, 10:18, 10:22,
10:25, 11:6, 11:7,
11:14, 12:20, 14:16

**deprived** [1] - 8:3
**description** [1] - 11:4,
11:21, 11:23
**detailed** [2] - 11:20,
12:24
**develop** [3] - 8:24,
9:14, 15:25
**developed** [2] - 7:1,
15:16
**developing** [2] - 8:13,
12:6
**development** [1] - 8:9
**developmental** [5] -
3:25, 8:5, 8:11,
8:17, 9:2
**develops** [1] - 8:10
**dial** [1] - 13:15
**dielectric** [1] - 15:7
**different** [4] - 6:8,
15:5, 15:6, 15:8
**differently** [1] - 6:7
**diligent** [2] - 17:8,
17:9
**disagree** [1] - 9:23
**disclose** [3] - 5:24,
6:1, 7:17
**disclosed** [5] - 3:10,
5:22, 6:19, 15:24,
16:17
**discovery** [21] - 2:14,
5:14, 5:17, 5:20,
6:4, 6:8, 6:18, 7:22,
7:24, 8:3, 10:12,
10:21, 11:10, 12:15,
12:16, 13:4, 13:6,
13:10, 13:17, 15:15,
15:17
**discussion** [1] - 12:14
**discussions** [2] -
16:12, 16:14
**dispute** [6] - 2:14,
3:12, 6:10, 10:3,
10:4, 16:22
**Dissard** [1] - 14:19
**district** [2] - 10:14,
13:11
**DISTRICT** [2] - 1:1,
1:1
**District** [2] - 1:16,
17:23
**document** [8] - 3:17,
4:8, 4:10, 4:20,
4:22, 10:20, 12:21
**documents** [8] - 3:18,
5:11, 10:14, 10:24,
12:8, 12:19, 13:17,
15:23
**done** [1] - 4:16

**DUNNER** [1] - 2:6
**DUPONT** [1] - 1:6
**Dupont** [9] - 2:15,
3:10, 8:10, 9:22,
13:14, 13:24, 15:13,
17:2, 17:9
**Dupont 's** [2] - 10:7,
16:25
**during** [3] - 10:21,
10:24, 12:14

### E

**e-mail** [4] - 12:5,
12:10, 12:11, 15:14
**easily** [1] - 10:2
**effusing** [1] - 15:22
**ELLIS** [1] - 2:3
**embodies** [1] - 15:9
**employees** [3] - 8:20,
9:4, 14:12
**entitled** [1] - 4:20
**ERIC** [1] - 2:6
**Eric** [2] - 3:1, 9:22
**especially** [1] - 16:11
**ESQ** [7] - 1:21, 1:23,
1:24, 2:3, 2:3, 2:6,
2:7
**establish** [1] - 10:5
**et** [1] - 1:7
**evidence** [5] - 12:18,
12:22, 12:23, 12:25,
14:13
**exact** [1] - 9:8
**exactly** [3] - 7:25,
8:25, 9:1
**example** [2] - 6:22,
8:12
**Excel** [1] - 13:15
**exclude** [2] - 5:21,
7:13
**excluded** [2] - 5:24,
7:11
**exhibits** [1] - 17:2
**experimental** [1] -
8:11
**explain** [1] - 4:15
**explained** [1] - 13:7
**extent** [3] - 6:21, 7:4,
9:1
**extra** [1] - 15:22

### F

**face** [1] - 15:1
**fact** [14] - 3:15, 5:14,
8:17, 9:12, 10:21,

10:23, 10:24, 12:1,
12:14, 12:16, 13:3,
15:15, 15:17, 16:9
**factors** [3] - 7:6, 7:15,
10:9
**factual** [1] - 8:24
**failure** [2] - 5:24, 6:1
**fantastic** [1] - 2:22
**FARABOW** [1] - 2:5
**fast** [1] - 5:3
**file** [1] - 7:2
**filed** [2] - 10:8, 10:10
**files** [1] - 13:15
**filing** [1] - 11:25
**final** [10] - 4:19, 4:20,
7:18, 7:22, 10:7,
12:18, 13:25, 16:5,
16:25, 17:3
**finally** [5] - 7:2, 7:6,
7:11, 9:11, 16:3
**fine** [2] - 8:2, 16:21
**FINNEGAN** [1] - 2:5
**Finnegan** [1] - 3:2
**first** [4] - 5:12, 9:23,
13:24
**fit** [1] - 5:4
**five** [3] - 3:6, 5:4, 7:25
**five-minute** [1] - 5:4
**flush** [1] - 8:5
**FOR** [1] - 1:1
**foregoing** [1] - 17:19
**former** [2] - 8:20,
14:12
**forth** [2] - 11:4, 11:17
**Foundries** [6] - 5:10,
11:19, 12:3, 12:4,
14:22, 16:13
**four** [2] - 5:14, 12:20
**FUES** [7] - 2:6, 9:21,
14:3, 14:8, 14:14,
16:19, 17:13
**Fues** [3] - 3:1, 9:22
**full** [1] - 12:8
█████████ [1] - 3:25

### G

**GARRETT** [1] - 2:6
**general** [2] - 5:8,
11:24
**generally** [1] - 16:9
**given** [1] - 7:10
**Global** [5] - 5:10,
11:19, 12:3, 12:4,
14:21, 16:13
**great** [2] - 3:3, 10:12
**guarantee** [1] - 10:3

### H

**HALL** [1] - 1:15
**Hall** [1] - 2:14
**handling** [1] - 9:22
**harmless** [2] - 5:25,
6:2
**hear** [2] - 3:7, 9:20
**heard** [1] - 16:20
**Hello** [1] - 9:21
**HENDERSON** [1] - 2:5
**hereby** [1] - 17:19
**hold** [1] - 4:14
**Honor** [21] - 2:18,
2:24, 3:8, 9:21,
10:3, 10:18, 10:21,
11:19, 12:9, 12:16,
13:8, 13:20, 14:4,
14:23, 16:19, 17:13,
17:14
**Honor 's** [1] - 13:1
**HONORABLE** [1] -
1:15
**HOWARTH** [1] - 2:7
**Howarth** [1] - 3:2

### I

**idea** [3] - 5:15, 16:1,
16:3
**identified** [2] - 10:12,
10:24
**identifies** [1] - 12:12
**identify** [1] - 5:10
**importance** [1] - 7:7
**important** [2] - 7:9,
7:14
**IN** [1] - 1:1
**INC** [2] - 1:3, 1:6
**including** [2] - 4:3, 6:8
**industry** [1] - 8:8
**information** [20] -
3:14, 3:16, 3:24,
4:1, 4:11, 4:25, 5:9,
5:15, 5:18, 7:21,
8:8, 8:15, 9:6, 10:1,
10:2, 10:4, 11:10,
11:13, 11:22, 15:11
**infringement** [2] -
11:11, 11:12
**Ingram** [1] - 17:22
**initial** [12] - 3:10, 4:2,
4:23, 4:25, 7:18,
7:20, 10:14, 10:15,
15:20, 15:21, 15:24,
16:14
**instantly** [1] - 6:16

**intended** [1] - 5:18
**interest** [1] - 12:13
**interested** [1] - 12:2
**internal** [1] - 14:25
**interrogatory** [2] -
13:2, 13:6
**invalidity** [12] - 3:11,
4:3, 4:14, 4:23, 6:6,
7:12, 10:7, 11:11,
11:15, 16:24, 17:1,
17:3
**inventor** [1] - 14:20
**inventors** [4] - 13:14,
14:18, 15:5, 15:10
**irrelevant** [1] - 15:23
**issue** [6] - 3:24, 4:22,
6:25, 11:18, 14:22,
15:18
**issues** [1] - 16:15
**ITC** [6] - 3:18, 4:10,
9:25, 12:25, 13:2,
13:4
**itself** [1] - 10:5

### J

**Jeffrey** [1] - 14:19
**Jen** [1] - 2:14
**JENNIFER** [1] - 1:15
**JLH** [1] - 1:4
**Judge** [1] - 1:16
**justified** [2] - 5:25, 6:2

### K

**Katharine** [1] - 2:20
**KATHARINE** [1] - 1:24
**Kattan** [1] - 2:20
**KATTAN** [1] - 1:23
**keep** [1] - 7:22
**KELLER** [1] - 1:20
**Keller** [1] - 2:19
**kind** [3] - 7:3, 8:17,
10:6
**kinds** [2] - 4:2, 8:9
**King** [1] - 1:12
**knowing** [1] - 6:4
**knowledge** [2] - 9:8,
14:24
**known** [3] - 6:7,
14:11, 16:7
**KYLE** [1] - 2:7
**Kyle** [1] - 3:1

## L

**large** [1] - 13:4
**largely** [3] - 6:21, 7:5, 7:16
**last** [5] - 10:21, 11:1, 11:8, 13:3, 15:4
**late** [5] - 10:13, 11:13, 11:14, 12:6
**left** [2] - 6:15, 9:4
**letter** [6] - 3:12, 3:21, 6:3, 6:11, 7:3, 10:12
**letters** [1] - 3:4
**line** [3] - 2:14, 2:16, 2:20
**LISA** [1] - 1:23
**Lisa** [1] - 2:20
**listing** [1] - 12:24
**LLP** [4] - 1:20, 1:23, 2:2, 2:6
**look** [2] - 3:4, 5:7
**looked** [1] - 5:11

## M

**mail** [4] - 12:5, 12:10, 12:11, 15:14
**March** [1] - 1:10
**Mary** [1] - 14:16
**MATERIALS** [1] - 1:3
**matters** [1] - 15:19
**meant** [1] - 7:24
**meet** [1] - 5:13
**meetings** [2] - 10:23, 10:24
**mention** [1] - 5:8
**mentioned** [1] - 8:19
**met** [1] - 6:24
**mind** [1] - 15:25
**minor** [1] - 4:16
**minute** [2] - 5:4, 11:1
**minutes** [2] - 3:6, 7:25
**misdirected** [1] - 13:7
**misguided** [1] - 13:19
**miss ing** [1] - 15:21
**Monday** [1] - 1:10
**month** [1] - 10:21
**months** [2] - 12:20, 14:6
**MOORE** [1] - 2:3
**Moore** [1] - 3:1
**most** [2] - 7:7, 16:12
**motion** [3] - 3:7, 16:23, 17:11
**motivation** [1] - 9:15, 9:16
**moved** [1] - 11:16

**MR** [17] - 2:18, 2:24, 3:8, 5:6, 8:7, 8:22, 9:7, 9:14, 9:21, 13:22, 14:3, 14:8, 14:14, 15:4, 16:19, 17:13, 17:14
**multiple** [1] - 4:4, 10:20
**must** [1] - 7:9

## N

**named** [4] - 5:12, 14:18, 14:20, 15:5
**names** [1] - 9:8
**near** [1] - 15:17
**necessarily** [1] - 11:20
**necessary** [1] - 7:21
**needed** [1] - 3:14
**NEMOURS** [1] - 1:6
**new** [3] - 14:1, 16:5, 17:3
**night** [1] - 12:6
**non** [1] - 11:12
**non -infringement** [1] - 11:12
**noted** [1] - 12:10
**notes** [1] - 17:20
**notice** [5] - 5:6, 5:16, 11:18, 11:19, 12:9, 15:12, 15:14
**notion** [2] - 13:16, 14:23
**number** [3] - 2:16, 4:11, 7:8

## O

**objections** [1] - 12:6
**obligation** [1] - 7:17
**obtain** [1] - 13:5
**obtained** [1] - 11:10
**obvious** [2] - 9:17, 9:18
**obviously** [2] - 9:23, 15:11
**obviousness** [3] - 5:19, 9:12, 16:5
**occurred** [2] - 11:25, 14:3
**occurring** [4] - 10:13, 11:7, 11:14, 12:16
**October** [4] - 5:13, 10:17, 11:7, 15:13
**OF** [1] - 1:1
**offer** [1] - 15:20

**offered** [1] - 16:4
**Official** [1] - 17:22
**on-sale** [7] - 8:18, 8:23, 9:25, 10:5, 13:12, 14:2, 14:11
**one** [7] - 3:21, 3:25, 4:8, 12:5, 14:17, 15:14
**ongoing** [1] - 11:10
**opportunity** [1] - 9:3
**opposite** [1] - 7:3
**otherwise** [1] - 5:17

## P

**p.m** [2] - 1:10, 17:15
**paper** [1] - 14:4
**particle** [2] - 4:2, 4:3
**particles** [4] - 3:9, 3:25, 7:13, 9:16
**particularly** [2] - 12:3, 13:19
**parties** [5] - 6:25, 10:9, 10:19, 11:5, 11:9
**parties '** [1] - 11:11
**party** [3] - 11:7, 11:23, 14:19
**party 's** [2] - 11:15, 12:18
**passes** [1] - 14:25
**patent** [6] - 9:17, 11:25, 12:1, 15:7, 15:10, 16:7
**Pennypack** [2] - 7:6, 7:15, 10:9
**people** [2] - 14:23, 14:24
**period** [3] - 10:19, 12:15, 12:16
**permanent** [1] - 3:23
**place** [5] - 10:16, 10:18, 14:16, 14:17, 14:20
**places** [1] - 4:4
**Plaintiff** [2] - 1:4, 1:25
**plaintiff** [2] - 2:17, 2:19
**pleaded** [1] - 13:9
**point** [8] - 3:11, 3:18, 3:21, 4:8, 9:8, 11:3, 13:1, 15:4
**pointed** [1] - 5:1
**points** [1] - 4:16
**polishing** [1] - 15:6
**position** [3] - 7:3, 14:14, 14:22
**positive** [2] - 3:23, 4:4

**possibly** [1] - 6:14
**potential** [2] - 3:23, 4:4
**Potter** [2] - 2:25, 3:1
**POTTER** [1] - 2:2
**practices** [1] - 8:9
**precluded** [1] - 15:22
**predecessor** [1] - 15:9
**prejudice** [4] - 6:3, 6:11, 6:12, 6:13
**primary** [2] - 4:8, 7:8
**problem** [1] - 5:5
**proceeded** [1] - 6:4
**proceedings** [1] - 17:20
**process** [2] - 8:12, 11:6
**produce** [1] - 10:13
**produced** [4] - 4:10, 11:13, 12:19, 13:10
**product** [2] - 4:9, 15:9
**production** [2] - 12:22, 13:17
**productions** [3] - 10:20, 11:1, 15:17
**products** [3] - 5:8, 16:2, 16:6
**provide** [1] - 5:18
**providing** [1] - 15:14
**public** [2] - 11:22, 11:23
**purpose** [1] - 8:25
**pursue** [2] - 6:18, 8:8
**pursued** [1] - 6:7
**push** [1] - 13:5
**put** [4] - 4:2, 4:23, 11:20, 14:4

## Q

**qualification** [1] - 8:12
**qualify** [2] - 8:18, 8:23
**questions** [4] - 9:11, 9:13, 13:24, 14:19

## R

**raise** [1] - 14:11
**raised** [1] - 6:16
**re** [1] - 6:17
**re-depose** [1] - 6:17
**reach** [1] - 13:8
**reached** [1] - 6:22
**ready** [1] - 16:22
**real** [1] - 4:22

**really** [5] - 4:15, 4:21, 6:9, 15:23, 16:16
**reason** [1] - 4:13
**reasons** [1] - 17:10
**rebutted** [1] - 4:17
**received** [2] - 13:2, 15:16
**record** [4] - 8:24, 16:25, 17:5, 17:7
**references** [1] - 7:8
**regards** [1] - 5:12
**relevant** [5] - 8:16, 11:10, 11:14, 15:15, 15:18
**rely** [2] - 3:17, 7:14
**render** [1] - 9:17
**Reporter** [1] - 17:22
**reporter** [1] - 2:16
**represented** [2] - 12:15, 16:13
**representing** [1] - 12:4
**requirements** [1] - 3:13
**resisted** [1] - 6:23
**respect** [1] - 12:13
**respond** [2] - 13:22, 14:10
**response** [2] - 13:2, 13:6
**responsive** [1] - 6:10
**result** [1] - 6:6
**reviewed** [1] - 17:1
**ring** [1] - 6:18
**roughly** [1] - 10:19
**RPR** [1] - 17:22
**rule** [2] - 5:21, 16:22
**Rule** [1] - 5:23
**Russell** [3] - 2:19, 3:9, 15:3
**RUSSELL** [11] - 1:21, 2:18, 3:8, 5:6, 8:7, 8:22, 9:7, 9:14, 13:22, 15:4, 17:14

## S

**sale** [8] - 8:18, 8:23, 9:25, 10:5, 12:2, 13:12, 14:2, 14:11
**sales** [13] - 3:17, 3:19, 4:7, 4:8, 4:9, 8:10, 8:11, 8:17, 8:25, 9:1, 11:25, 12:3, 16:9
**schedule** [1] - 11:16
**scheduled** [1] - 11:7
**second** [1] - 14:9

**seeking** [1] - 7:13
**sending** [1] - 11:22
**sense** [3] - 4:19, 6:14, 6:17
**sent** [3] - 14:15, 14:21
**September** [1] - 10:17
**served** [4] - 10:16, 13:3, 13:25, 14:7
**set** [2] - 11:4, 11:16
**several** [3] - 11:6, 11:8, 11:16
**SHAW** [1] - 1:20
**Shaw** [1] - 2:19
**show** [2] - 8:16, 9:2
**shows** [2] - 4:9, 16:16
**side** [3] - 3:6, 4:7, 9:20
**significant** [1] - 6:20
**silent** [1] - 13:17
**similar** [1] - 3:20
**simply** [1] - 12:21
**slurries** [17] - 4:15, 4:21, 5:9, 5:12, 6:5, 8:9, 8:10, 8:13, 8:17, 8:23, 12:8, 12:13, 15:5, 15:6, 15:7, 16:10, 16:11
**slurry** [3] - 8:5, 9:17, 12:3
**sold** [6] - 5:9, 5:10, 6:5, 8:14, 8:22, 16:1
**someone** [1] - 7:19
**sometimes** [1] - 10:23
**sorry** [1] - 5:3
**sorts** [1] - 8:10
**specific** [3] - 16:5, 16:10, 16:11
**specifically** [2] - 5:12, 12:12
**speed** [1] - 13:14
**split** [1] - 10:19
**Stacy** [1] - 17:22
**STATES** [1] - 1:1
**States** [1] - 1:16
**stenographic** [1] - 17:20
**still** [3] - 7:7, 7:12, 15:20
**stipulation** [3] - 10:9, 11:3, 11:5
**straight** [1] - 14:25
**Street** [1] - 1:12
**strike** [2] - 13:18, 16:23
**struck** [4] - 7:15, 12:18, 12:22, 13:11
**stuff** [2] - 4:2, 15:24
**subpoena** [8] - 8:20,

11:21, 11:24, 12:7, 12:14, 14:15, 14:17, 14:21
**subpoenaed** [1] - 14:12
**subpoenas** [5] - 5:7, 5:13, 5:16, 14:21
**substantially** [2] - 5:24, 6:1
**sufficient** [1] - 10:4
**switch** [1] - 13:23

## T

**teams** [1] - 15:8
**technical** [4] - 3:13, 3:14, 3:21, 4:5
**teleconference** [3] - 2:15, 6:23, 17:12
**Teleconference** [2] - 1:11, 17:15
**test** [1] - 15:1
**testimony** [1] - 9:15
**THE** [19] - 1:1, 1:1, 1:15, 2:13, 2:22, 3:3, 5:5, 8:2, 8:19, 9:5, 9:10, 9:19, 13:21, 13:23, 14:6, 14:9, 15:2, 16:18, 16:20
**theories** [1] - 17:3
**theory** [2] - 14:2, 14:11
**they've** [1] - 4:1
**thinking** [2] - 8:21, 12:7
**third** [3] - 11:6, 11:22, 14:19
**three** [1] - 12:19
**throughout** [1] - 5:19
**throw** [1] - 7:22
**timely** [6] - 4:18, 4:20, 10:8, 10:10, 16:17, 17:1
**today** [2] - 2:17, 2:25
**took** [6] - 7:3, 10:16, 10:18, 14:16, 14:17, 14:20
**TQ** [1] - 7:9
**transcript** [1] - 17:20
**trial** [2] - 12:11
**true** [4] - 12:22, 12:24, 16:12, 17:19
**trying** [2] - 5:3, 12:17
**■■■■** [1] - 15:6
**two** [4] - 4:15, 13:23, 14:6, 14:21

## U

**U.S** [1] - 17:23
**un-ring** [1] - 6:18
**under** [6] - 5:21, 5:23, 7:15, 8:18, 8:23, 13:19
**underlying** [1] - 7:12
**undermine** [1] - 6:14
**undermines** [1] - 6:13
**understood** [1] - 9:10
**UNITED** [1] - 1:1
**United** [1] - 1:16
**unsupportable** [1] - 16:8
**unsupported** [1] - 10:6
**untimely** [2] - 4:22, 5:22
**up** [2] - 10:22, 15:23
**update** [1] - 12:21
**uses** [1] - 3:25

## V

**validity** [1] - 11:11
**versus** [1] - 2:15
**voluminous** [1] - 13:17

## W

**■■■■** [1] - 11:21
**■■■■** [1] - 12:13
**■■■■** [1] - 12:12
**wants** [1] - 4:12
**Whereas** [1] - 11:5
**whereas** [3] - 11:8, 11:9
**Wilmington** [1] - 1:13
**withheld** [1] - 7:10
**withhold** [1] - 7:20
**withholding** [1] - 5:2
**witnesses** [9] - 6:18, 8:4, 8:8, 8:15, 9:11, 9:12, 10:23, 10:25, 13:16

## Y

**years** [1] - 4:1

## Z

**zeta** [2] - 3:23, 4:4

Exhibit 2

1

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


CMC MATERIALS, INC.,      )
                          )
          Plaintiff,      )  C.A. No. 20-738 JLH
                          )
v.                        )
                          )
DUPONT DE NEMOURS, INC.,  )
et al.,                   )
                          )
          Defendants.     )


                          Monday, March 18, 2024
                          3:00 p.m.
                          Teleconference


                          844 King Street
                          Wilmington, Delaware


BEFORE:  THE HONORABLE JENNIFER L. HALL
         United States District Court Judge


APPEARANCES:


         SHAW KELLER, LLP
         BY:  ANDREW E. RUSSELL, ESQ.

         -and-

         BAKER BOTTS, LLP
         BY:  LISA M. KATTAN, ESQ.
         BY:  KATHARINE M. BURKE, ESQ.

                       Counsel for the Plaintiff
```

2

```
 1   APPEARANCES CONTINUED:

 2

 3        POTTER, ANDERSON & CORROON, LLP
          BY:  ANDREW L. BROWN, ESQ.
          BY:  DAVID ELLIS MOORE, ESQ.

 4

          -and-

 5

     FINNEGAN, HENDERSON, FARABOW,
 6   GARRETT & DUNNER, LLP
          BY:  ERIC J. FUES, ESQ.
 7        BY:  KYLE W. HOWARTH, ESQ.

 8             Counsel for the Defendants

 9

10        ---------------------------

11

12        THE COURT:  Good afternoon, everyone.  This is
13   Jen Hall.  We're here on the line for a discovery dispute
14   teleconference.  This is CMC versus Dupont.  It's civil
15   action number 20-738.  We have a court reporter on the line
16   today.  Can I have appearances for plaintiff?
17        MR. RUSSELL:  Good afternoon, Your Honor.  This
18   is Andrew Russell from Shaw Keller for plaintiff CMC.  And
19   with me on the line are Lisa Kattan and Katharine Burke from
20   Baker Botts.
21        THE COURT:  Fantastic.  Good afternoon.  And can
22   I have appearances for defendants?
23        MR. BROWN:  Thank you, Your Honor.  Andrew Brown
24   from Potter Anderson.  With me today is my colleague, also
```

3

```
 1   from Potter Anderson, Dave Moore.  And Eric Fues and Kyle
 2   Howarth from Finnegan.
 3        THE COURT:  Great.  Good afternoon.  Okay.  I've
 4   taken a look at the letters.  I think I have a good
 5   understanding about what the arguments are.  I'll give each
 6   side five minutes to add anything they want to add.
 7        This is CMC's motion, so we'll hear from CMC.
 8        MR. RUSSELL:  Thank you, Your Honor.  This is
 9   Andrew Russell again.  These are definitely both particles
10   that DuPont should have disclosed in their initial
11   invalidity contentions.  We wanted to point out that in
12   their letter they don't dispute, as to the ██████, that all of
13   the technical requirements, that they have all of the
14   information they needed to assert these on a technical
15   basis.  They only argue about the fact they -- they claim
16   they didn't have enough information to make their argument
17   about sales, but the document they rely on, we wanted to
18   point out, is in ITC documents.  So they could have made
19   their allegation about sales, they just decided not to.
20        On the ██████, it's very similar.  They have
21   one -- one technical point in their letter that they claim
22   they couldn't have made their allegations about the ██████.
23   And that's this zeta potential permanent positive charge
24   issue.  But they had information on that as well.  That's
25   where the ██████ uses one of the ████████ particles
```

4

```
 1   that they've had information about for years, the ██████
 2   particle.  And they put all kinds of stuff in the initial
 3   invalidity contentions about that particle, including in
 4   multiple places about its zeta potential and positive
 5   charge.  So they could have made their technical allegations
 6   about the ██████ as well.
 7        On the sales side, they could have made their
 8   sales argument.  They point to one primary document that
 9   they say was -- shows sales of this product.  It's
10   CMC_DEL00173226.  But we produced a document at the ITC that
11   has the same information.  And I can give that bates number
12   if the Court wants it.  It's CMC00074338.  So they could
13   have made those allegations too.  There was no reason for
14   them to hold off on making their allegations of invalidity
15   based on these two slurries.  They don't really explain why
16   they couldn't have done it beyond those minor points which
17   are rebutted by what they cited.
18        Their allegation that they were timely doesn't
19   make a lot of sense.  They say that the final contentions
20   document, the document entitled final contentions, is timely,
21   but really their allegations about these slurries that were
22   in that document were untimely.  The real issue is they
23   should have put these in their initial invalidity
24   contentions if they wanted to make these arguments, because
25   they had all of the information at the time of initial
```

5

15:06:10 1  contentions. They haven't pointed to any basis for
15:06:15 2  withholding it.
15:06:16 3      I'm sorry I'm going fast here. I'm trying to
15:06:17 4  fit in your five-minute time allocation.
5  THE COURT: No problem.
6  MR. RUSSELL: They allege we had notice from the
15:06:24 7  subpoenas. But if you look at the subpoenas, they don't
15:06:27 8  mention these products at all. They ask for general
15:06:31 9  information about all slurries sold by -- that they claim
15:06:36 10  were sold by CMC to Global Foundries. They don't identify
15:06:41 11  these. We've looked at our documents. It appears that the
15:06:44 12  first time these slurries were named specifically in regards
15:06:47 13  to those subpoenas was on our October 16th meet and confer,
15:06:50 14  just four days before the close of fact discovery, which is
15:06:53 15  not time to do anything with that information. So the idea
15:06:57 16  we were on notice because of these subpoenas doesn't work.
15:07:00 17      And they didn't otherwise ask discovery about
15:07:03 18  these or provide information that they intended to both
15:07:07 19  argue anticipation and obviousness based on these throughout
15:07:07 20  all of discovery.
15:07:12 21      Under rule 37, to exclude these -- based on
15:07:16 22  that, they were untimely. They should have disclosed them.
15:07:19 23  They did not. Under Rule 37, the only way they don't get
15:07:22 24  excluded was if the failure to disclose was substantially
15:07:25 25  justified or harmless. They don't say anything about why

6

15:07:29 1  they think their failure to disclose was substantially
15:07:29 2  justified and it wasn't. Nor was it harmless, because we
15:07:35 3  articulated the prejudice in our letter, but basically we
15:07:39 4  proceeded through all of discovery without knowing these
15:07:42 5  slurries, which were allegedly sold by us in a way that
15:07:46 6  could result in invalidity, were even in the case. And we
15:07:49 7  would have pursued our case differently had we known that,
15:07:53 8  including taking different discovery and things that can't
15:07:56 9  really be cured now.
15:08:00 10      They don't even dispute in their responsive
15:08:02 11  letter that there was prejudice. They say that the only
15:08:05 12  argument they make about prejudice is that our delay somehow
15:08:09 13  undermines their prejudice allegation. That doesn't make
15:08:11 14  any sense to me. The only thing it could possibly undermine
15:08:15 15  is time left to cure. And there was no ability to cure even
15:08:20 16  if we raised this instantly the day of the contentions. It
15:08:24 17  doesn't make sense for us to have to re-depose their
15:08:27 18  witnesses, pursue this discovery and you can't un-ring the
15:08:30 19  bell of this having not been disclosed.
15:08:33 20      We don't think there was a significant delay.
15:08:36 21  We think to the extent there was a delay it was largely
15:08:39 22  attributable to them. When we reached out, for example, to
15:08:43 23  get their availability for a teleconference, they resisted.
15:08:46 24  They said that we hadn't adequately met and conferred on
15:08:49 25  this issue, that the parties hadn't bottomed out and it

7

15:08:52 1  wasn't developed and it shouldn't be brought to the Court.
15:08:53 2  And then finally, when they gave in and let us file our
15:08:56 3  letter, they kind of took the opposite position and said we
15:08:59 4  had delayed too long. So to the extent there was delay, it
15:09:02 5  was largely attributable to them.
15:09:04 6      And then finally, on Pennypack factors, I think
15:09:07 7  I've covered most of them, but on importance, they still
15:09:10 8  have a number of other primary references just like in the
15:09:16 9  *TO Delta* case we cited. And they must not be that important
15:09:20 10  given that they withheld their contentions on them.
15:09:22 11      And finally, even if these were excluded, they
15:09:25 12  still have invalidity contentions about the underlying
15:09:28 13  particles which we're not seeking to exclude and they can
15:09:32 14  rely on those, so we don't think this is so important that
15:09:36 15  it shouldn't be struck under the Pennypack factors.
15:09:38 16      Basically their argument is largely that they
15:09:40 17  don't think they had an obligation to disclose these in
15:09:43 18  their initial contentions because there was a final
15:09:46 19  contention deadline, but it shouldn't be that someone can
15:09:50 20  just withhold something from initial contentions that they
15:09:53 21  have all of the information necessary to accuse and just
15:09:57 22  keep it from discovery and then throw it in final
15:10:01 23  contentions and have it in the case. We think that's not
15:10:04 24  how discovery is meant to work in Delaware.
15:10:06 25      I'm not sure if that was exactly five minutes,

8

15:10:09 1  but that's what we had.
15:10:10 2      THE COURT: That's fine. Let me ask you. You
15:10:12 3  said you were deprived of the opportunity to get discovery,
15:10:15 4  so you wanted to ask their witnesses about something that
15:10:22 5  has to do with your developmental slurry? Can you flush
15:10:27 6  that out a little more for me?
15:10:29 7      MR. RUSSELL: Right. So we wanted to be able to
15:10:32 8  pursue information from their witnesses about industry
15:10:35 9  practices for development of these kinds of slurries and how
15:10:38 10  sales -- because DuPont develops these sorts of slurries too
15:10:43 11  and how sales are or aren't developmental or experimental
15:10:45 12  and things about, for example, the qualification process
15:10:48 13  that customers go through in developing slurries before
15:10:50 14  they're actually commercially sold. So we think there was
15:10:54 15  information that we could have asked their witnesses about
15:10:57 16  that would have been very relevant to show that these were,
15:11:00 17  in fact, developmental slurries, not any kind of sales that
15:11:04 18  could qualify as prior art under the on-sale bar.
15:11:08 19      THE COURT: And you also mentioned that you
15:11:09 20  would have wanted to subpoena former CMC employees. What
15:11:14 21  was the thinking there? What were you going to ask them?
15:11:17 22      MR. RUSSELL: So they're alleging that we sold
15:11:21 23  these slurries in a way that would qualify under the on-sale
15:11:21 24  bar and we would want to develop the factual record about
15:11:29 25  exactly what the purpose of these sales were and why -- to

**9**

15:11:33 1  the extent they were sales at all, and what exactly happened
15:11:37 2  with them to show that they were developmental and not
15:11:40 3  commercial such that they could anticipate. And some of
15:11:44 4  those employees have left CMC, is my understanding.
15:11:48 5      THE COURT: And you have no control or ability
15:11:50 6  to get information from them?
15:11:51 7      MR. RUSSELL: So I assume we don't. I don't
15:11:54 8  have names and knowledge on that exact point, but I don't
15:11:57 9  think we do.
15:11:58 10     THE COURT: Okay. Understood. And then
15:12:00 11 finally, you wanted to ask their witnesses questions about
15:12:06 12 their obviousness combinations, their fact witnesses
15:12:11 13 questions?
15:12:11 14     MR. RUSSELL: Right. We wanted to develop their
15:12:13 15 testimony about motivation to combine and why, you know,
15:12:17 16 there wasn't a motivation to combine these particles into a
15:12:21 17 slurry that would render the patent obvious, the claims
15:12:27 18 obvious.
15:12:27 19     THE COURT: All right. Thanks very much. Let
15:12:30 20 me hear from the other side.
15:12:32 21     MR. FUES: Yes. Hello, Your Honor. This is
15:12:32 22 Eric Fues. I'll be handling the argument for DuPont. The
15:12:36 23 first thing is, obviously I disagree with just about
15:12:39 24 everything that counsel said.
15:12:40 25     We did not assert an on-sale bar in the ITC

**10**

15:12:44 1  because we didn't think we had enough information. He can
15:12:47 2  easily say oh, there was enough information, but I can
15:12:50 3  guarantee Your Honor that he is going to dispute and CMC's
15:12:54 4  going to dispute that that information is sufficient in and
15:12:58 5  of itself to establish an on-sale bar. We all know that.
15:13:01 6  So this is kind of unsupported attorney argument here.
15:13:05 7      Dupont's final invalidity contentions were
15:13:07 8  timely. We filed them according to D.I. 183, which is a
15:13:12 9  stipulation the parties agreed to. The Pennypack factors do
15:13:16 10 not apply where you have timely filed contentions.
15:13:19 11     Now, as for the content of our contentions, in
15:13:23 12 our letter we identified a great deal of discovery that was
15:13:27 13 occurring late late in the case. CMC did not produce any
15:13:32 14 documents in the district court case until after our initial
15:13:35 15 contentions. And our amended initial contentions were
15:13:39 16 served. All the depositions in the case took place between
15:13:43 17 September 19th and October 24th. And when I say all the
15:13:48 18 depositions, Your Honor, that was 22 depositions took place
15:13:51 19 in that time period, roughly split between the parties. And
15:13:55 20 there were multiple CMC document productions that were made
15:14:00 21 during the last month of fact discovery. As Your Honor, I'm
15:14:04 22 sure, appreciates, when depositions come up, there are
15:14:08 23 meetings with fact witnesses and sometimes additional
15:14:12 24 documents are identified during those meetings with the fact
15:14:15 25 witnesses before the times of the depositions and there are

**11**

15:14:19 1  last minute productions. There are a bunch of them here,
15:14:22 2  there are 8 or 9 of them.
15:14:24 3      And I want to just point to the stipulation,
15:14:27 4  because the description that I just gave you is set forth
15:14:31 5  right in the stipulation. It says, "Whereas the parties are
15:14:35 6  in the process of conducting several depositions and third
15:14:38 7  party depositions scheduled for occurring before October
15:14:43 8  23rd -- there are several other whereas clauses. The last
15:14:47 9  whereas clause is, "whereas the parties anticipate
15:14:50 10 information obtained from ongoing discovery will be relevant
15:14:53 11 to the parties' invalidity, infringement, validity and
15:14:58 12 non-infringement contentions." So that's CMC agreeing that
15:15:01 13 the information that was being produced late and the
15:15:04 14 depositions that were occurring late would be relevant to
15:15:07 15 the party's invalidity contentions. And it's because of
15:15:11 16 that several dates in the schedule moved that are set
15:15:15 17 forth in D.I. 183.
15:15:17 18     As for the notice issue, we completely agree
15:15:22 19 that Global Foundries was not on notice. As Your Honor, I'm
15:15:26 20 sure, appreciates, we can't necessarily put a detailed
15:15:29 21 description like ███████ in a subpoena. We don't know if
15:15:35 22 that's public information. We're sending it to a third
15:15:38 23 party. We don't know if CMC's description is public or not,
15:15:42 24 so we had a more general subpoena to them, certainly for
15:15:46 25 sales that occurred before the filing date of CMC's patent

**12**

15:15:51 1  and any patent attorney should have appreciated the fact
15:15:54 2  that that is something that we were interested in on sale,
15:15:58 3  slurry sales to Global Foundries, particularly so since it
15:16:02 4  was CMC's attorney who was representing Global Foundries.
15:16:06 5  It wasn't some other attorney and they just got one e-mail
15:16:09 6  late at night. They were developing objections, they were
15:16:12 7  thinking about the subpoena, they were asking about
15:16:14 8  documents, they knew all about those slurries, they had full
15:16:18 9  notice, Your Honor.
15:16:20 10     And as counsel even noted, there is an e-mail
15:16:25 11 from trial counsel for -- there's an e-mail from trial
15:16:29 12 counsel for CMC that specifically identifies ███ and
15:16:34 13 ████████ as the slurries of interest with respect to that
15:16:40 14 subpoena and that discussion was also during the fact
15:16:43 15 discovery period, not, as they had represented to Your
15:16:46 16 Honor, occurring after the fact discovery period.
15:16:51 17     I think at bottom what they're trying to do is
15:16:54 18 argue that evidence can be struck from a party's final
15:16:59 19 contentions because documents had been produced three or
15:17:05 20 four months before the time of depositions and if you don't
15:17:09 21 update your contentions simply based upon a document
15:17:13 22 production, then your evidence gets struck. It's not true
15:17:18 23 that all of the evidence cited in our contentions, and we
15:17:18 24 gave a very detailed listing of it, it's not true that that
15:17:24 25 evidence was all from the ITC case.

**13**

1    I would point out for Your Honor's benefit, the
2 interrogatory response that we received in the ITC case is
3 also something that was served on the last day of fact
4 discovery in the ITC case. So it's not like we had a large
5 amount of time to go push for and obtain additional
6 discovery from CMC about that interrogatory response, which
7 I think we explained was misdirected anyway.
8    So at bottom they're asking Your Honor to reach
9 into contentions that are based on something that's pleaded
10 and they are based upon discovery that's produced in a
11 district court case and say, nope, it gets struck anyway,
12 because we think you could have articulated on-sale bar
13 defenses at an earlier time.
14    DuPont doesn't have CMC's inventors on speed
15 dial. We can't understand how their Excel files work
16 without asking witnesses about it. And the notion that a
17 silent, voluminous production of discovery documents is
18 enough to strike someone's contentions later on in a case,
19 particularly under the circumstances here, is misguided.
20 Thank you, Your Honor.
21    THE COURT: All right.
22    MR. RUSSELL: May I respond?
23    THE COURT: Before we switch over, I have two
24 questions for DuPont. The first is when did they first let
25 you know, after you served your final contentions, that they

**14**

1 didn't like that you had added what they thought was a new
2 on-sale bar theory?
3    MR. FUES: I thought that that occurred, Your
4 Honor, and we put it in our paper, but I believe we thought
5 that that was on December 28th.
6    THE COURT: So that was two months after you
7 served the contentions?
8    MR. FUES: Yes.
9    THE COURT: Okay. And then the second question
10 I had was, can you respond to CMC's argument that had they
11 known you were going to raise this on-sale bar theory that
12 they would have subpoenaed some former CMC employees for
13 additional evidence?
14    MR. FUES: Well, you know, our position is that
15 they did know from the subpoena that we sent them before any
16 depositions took place. I would say that Mary Cavanaugh is
17 a deposition that took place after that subpoena. She's one
18 of the named inventors. I assumed they would ask her
19 questions. Jeffrey Dissard is a third party now. He's
20 another named inventor. That deposition took place after
21 the subpoena was sent -- two subpoenas were sent to Global
22 Foundries. So our position is they knew about this issue,
23 Your Honor. But the notion that these people that are on in
24 other careers have more knowledge than the people that are
25 just internal to CMC, I don't think that passes the straight

**15**

1 face test.
2    THE COURT: All right. Thank you very much.
3 All right. Mr. Russell.
4    MR. RUSSELL: So, just on that last point about
5 the named inventors, this is a different -- these slurries
6 are ████████ polishing slurries that are different than the
7 dielectric slurries claimed in the patent. My understanding
8 is different teams worked on them. It wasn't like a
9 predecessor product to the product that embodies the claims
10 in the patent. So I don't know that the inventors would
11 have had any information on these anyway and, obviously,
12 like we said before, we didn't have notice.
13    Counsel for Dupont cited to the October 19th
14 e-mail as providing notice, but that was one day before the
15 close of fact discovery, so I don't think that's relevant.
16 He talked a lot about how they developed -- they received
17 productions near the close of fact discovery. I don't think
18 any of those are relevant to the question at issue here at
19 all. I think what matters is what they had at the time of
20 initial contentions and they still don't offer anything they
21 were missing at the time of initial contentions that would
22 have precluded them from effusing this. All the extra
23 documents are irrelevant really. They're just bringing up
24 stuff they could have disclosed at the time of initial
25 contentions so we could develop our case with this in mind,

**16**

1 the idea that they were going to argue that we, CMC, sold
2 these products and not some other company.
3    And finally, the idea that we should have
4 anticipated what they were going to argue, they offered in
5 their final contentions brand new, specific obviousness
6 combinations and anticipation analyses about these products.
7 He says any good patent attorney would have known that it
8 was coming. I think that's unsupportable because we can't
9 take from the fact that they're asking generally about sales
10 of slurries that they're going to make these specific
11 allegations about these specific slurries. I especially
12 think it's true when most of the discussions -- I
13 represented Global Foundries, my co-counsel did not. A lot
14 of the initial discussions were just with me and at that
15 time I didn't know, you know, any of the issues in the case
16 really, so I don't think that that shows that this was
17 disclosed timely.
18    THE COURT: All right. Thanks very much.
19    MR. FUES: Your Honor --
20    THE COURT: No. That's all right. I've heard
21 enough argument. That's fine.
22    I'm ready to rule on this dispute.
23    Again, this is a motion by CMC to strike
24 invalidity contentions.
25    On this record I find that DuPont's final

17

| | | |
|---|---|---|
| 15:22:52 | 1 | invalidity contentions were timely, having reviewed all of |
| 15:22:56 | 2 | the exhibits. I have considered CMC's argument that DuPont |
| 15:23:01 | 3 | knew about the new theories in its final invalidity |
| 15:23:07 | 4 | contentions long before they added those on to the |
| 15:23:10 | 5 | contentions. On this record I can't find that that's the |
| 15:23:13 | 6 | case. |
| 15:23:15 | 7 | But what I can find on this record is that CMC |
| 15:23:19 | 8 | wasn't diligent in bringing to the Court its argument that |
| 15:23:22 | 9 | DuPont wasn't diligent. |
| 15:23:24 | 10 | So I think for all of those reasons, CMC's |
| 15:23:28 | 11 | motion will be denied and that will conclude the |
| 15:23:30 | 12 | teleconference. Thanks very much, everyone. |
| 15:23:34 | 13 | MR. FUES: Thank you, Your Honor. |
| 15:23:38 | 14 | MR. RUSSELL: Thank you, Your Honor. |
| | 15 | (Teleconference concluded at 3:23 p.m.) |
| | 16 | |
| | 17 | |
| | | --------------------------------- |
| | 18 | |
| | 19 | |
| | 20 | I hereby certify the foregoing is a true and accurate transcript from my stenographic notes in the |
| | 21 | proceedings. |
| | 22 | /s/ Stacy M. Ingram, RPR |
| | | Official Court Reporter |
| | 23 | U.S. District Court |
| | 24 | |
| | 25 | |

## /

**/s** [1] - 17:22

## 1

**16th** [1] - 5:13
**18** [1] - 1:10
**183** [2] - 10:8, 11:17
**19th** [2] - 10:17, 15:13

## 2

**20-738** [2] - 1:4, 2:16
**2024** [1] - 1:10
**22** [1] - 10:18
**23rd** [1] - 11:8
**24th** [1] - 10:17
**28th** [1] - 14:5

## 3

**37** [2] - 5:21, 5:23
**3:00** [1] - 1:10
**3:23** [1] - 17:15

## 7

[3] - 3:20, 3:25, 4:6
[1] - 3:22

## 8

**8** [1] - 11:2
**844** [1] - 1:12
[1] - 3:12

## 9

**9** [1] - 11:2

## A

**ability** [2] - 6:15, 9:5
**able** [1] - 8:7
**according** [1] - 10:8
**accurate** [1] - 17:20
**accuse** [1] - 7:21
**action** [2] - 2:16
**add** [2] - 3:6
**added** [2] - 14:1, 17:4
**additional** [3] - 10:23,

13:5, 14:13
**adequately** [1] - 6:24
**afternoon** [4] - 2:13, 2:18, 2:22, 3:3
**agree** [1] - 11:18
**agreed** [1] - 10:9
**agreeing** [1] - 11:12
**al** [1] - 1:7
**allegation** [3] - 3:19, 4:18, 6:13
**allegations** [6] - 3:22, 4:5, 4:13, 4:14, 4:21, 16:11
**allege** [1] - 5:6
**allegedly** [1] - 6:5
**alleging** [1] - 8:22
**allocation** [1] - 5:4
**amended** [1] - 10:15
**amount** [1] - 13:5
**analyses** [1] - 16:6
**ANDERSON** [1] - 2:2
**Anderson** [2] - 2:25, 3:1
**ANDREW** [2] - 1:21, 2:3
**Andrew** [3] - 2:19, 2:24, 3:9
**anticipate** [2] - 9:3, 11:9
**anticipated** [1] - 16:4
**anticipation** [2] - 5:19, 16:6
**anyway** [3] - 13:7, 13:11, 15:11
**appearances** [2] - 2:17, 2:23
**APPEARANCES** [2] - 1:19, 2:1
**apply** [1] - 10:10
**appreciated** [1] - 12:1
**appreciates** [1] - 10:22, 11:20
**argue** [5] - 3:15, 5:19, 12:18, 16:1, 16:4
**argument** [10] - 3:16, 4:8, 6:12, 7:16, 9:22, 10:6, 14:10, 16:21, 17:2, 17:8
**arguments** [2] - 3:5, 4:24
**art** [1] - 8:18
**articulated** [2] - 6:3, 13:12
**assert** [2] - 3:14, 9:25
**assume** [1] - 9:7
**assumed** [1] - 14:18
**attorney** [5] - 10:6, 12:1, 12:4, 12:5,

16:7
**attributable** [2] - 6:22, 7:5
**availability** [1] - 6:23

## B

**Baker** [1] - 2:21
**BAKER** [1] - 1:23
**bar** [7] - 8:18, 8:24, 9:25, 10:5, 13:12, 14:2, 14:11
**based** [6] - 4:15, 5:19, 5:21, 12:21, 13:9, 13:10
**basis** [2] - 3:15, 5:1
**bates** [1] - 4:11
**BEFORE** [1] - 1:15
**bell** [1] - 6:19
**benefit** [1] - 6:24
**between** [2] - 10:16, 10:19
**beyond** [1] - 4:16
**bottom** [2] - 12:17, 13:8
**bottomed** [1] - 6:25
**BOTTS** [1] - 1:23
**Botts** [1] - 2:21
**brand** [1] - 16:5
**bringing** [2] - 15:23, 17:8
**brought** [1] - 7:1
**BROWN** [2] - 2:3, 2:24
**Brown** [1] - 2:24
[1] - 4:1
**bunch** [1] - 11:1
**BURKE** [1] - 1:24
**Burke** [1] - 2:20
**BY** [6] - 1:21, 1:23, 1:24, 2:3, 2:6, 2:7

## C

**C.A** [1] - 1:4
**careers** [1] - 14:24
**case** [15] - 6:6, 6:7, 7:9, 7:23, 10:13, 10:14, 10:16, 12:25, 13:2, 13:4, 13:11, 13:18, 15:25, 16:15, 17:6
**Cavanaugh** [1] - 14:16
**certainly** [1] - 11:24
**certify** [1] - 17:19
**charge** [2] - 3:23, 4:5
**circumstances** [1] -

13:19
**cited** [4] - 4:17, 7:9, 12:23, 15:13
**civil** [1] - 2:15
**claim** [3] - 3:15, 3:21, 5:9
**claimed** [1] - 15:7
**claims** [2] - 9:17, 15:9
**clause** [1] - 11:9
**clauses** [1] - 11:8
**close** [3] - 5:14, 15:15, 15:17
**CMC** [17] - 1:3, 2:15, 2:19, 3:7, 5:10, 8:20, 9:4, 10:13, 10:20, 11:12, 12:12, 13:6, 14:12, 14:25, 16:1, 16:23, 17:7
**CMC 's** [9] - 3:7, 10:3, 11:23, 11:25, 12:4, 13:14, 14:10, 17:2, 17:10
**CMC 00074338** [1] - 4:12
**CMC _DEL 00173226** [1] - 4:10
**co** [1] - 16:13
**co-counsel** [1] - 16:13
**colleague** [1] - 2:25
**combinations** [2] - 9:12, 16:6
**combine** [2] - 9:15, 9:16
**coming** [1] - 16:8
**commercial** [1] - 9:3
**commercially** [1] - 8:14
**company** [1] - 16:2
**completely** [1] - 11:18
**conclude** [1] - 17:11
**concluded** [1] - 17:15
**conducting** [1] - 11:6
**confer** [1] - 5:13
**conferred** [1] - 6:24
**considered** [1] - 17:2
**content** [1] - 10:11
**contention** [1] - 7:19
**contentions** [34] - 3:11, 4:3, 4:19, 4:20, 4:24, 5:1, 6:16, 7:10, 7:12, 7:18, 7:20, 7:23, 10:7, 10:10, 10:11, 10:15, 11:12, 11:15, 12:19, 12:21, 12:23, 13:9, 13:18, 13:25, 14:7, 15:20, 15:21, 15:25, 16:5, 16:24,

17:1, 17:4, 17:5
**CONTINUED** [1] - 2:1
**control** [1] - 9:5
**CORROON** [1] - 2:2
**counsel** [6] - 9:24, 12:10, 12:11, 12:12, 15:13, 16:13
**Counsel** [1] - 1:25, 2:8
**court** [3] - 2:16, 10:14, 13:11
**COURT** [17] - 1:1, 2:13, 2:22, 3:3, 5:5, 8:2, 8:19, 9:5, 9:10, 9:19, 13:21, 13:23, 14:6, 14:9, 15:2, 16:18, 16:20
**Court** [6] - 1:16, 4:12, 7:1, 17:8, 17:22, 17:23
**covered** [1] - 7:7
**cure** [1] - 6:15
**cured** [1] - 6:9
**customers** [1] - 8:13

## D

**D.I** [2] - 10:8, 11:17
**date** [1] - 11:25
**dates** [1] - 11:16
**Dave** [1] - 3:1
**DAVID** [1] - 2:3
**days** [1] - 5:14
**DE** [1] - 1:6
**deadline** [1] - 7:19
**deal** [1] - 10:12
**December** [1] - 14:5
**decided** [1] - 3:19
**defendants** [1] - 2:23
**Defendants** [2] - 1:8, 2:8
**defenses** [1] - 13:13
**definitely** [1] - 3:9
**DELAWARE** [1] - 1:1
**Delaware** [2] - 1:13, 7:24
**delay** [4] - 6:12, 6:20, 6:21, 7:4
**delayed** [1] - 7:4
**Delta** [1] - 7:9
**denied** [1] - 17:11
**depose** [1] - 6:17
**deposition** [2] - 14:17, 14:20
**depositions** [10] - 10:16, 10:18, 10:22, 10:25, 11:6, 11:7, 11:14, 12:20, 14:16

**deprived** [1] - 8:3
**description** [3] - 11:4, 11:21, 11:23
**detailed** [2] - 11:20, 12:24
**develop** [3] - 8:24, 9:14, 15:25
**developed** [2] - 7:1, 15:16
**developing** [2] - 8:13, 12:6
**development** [1] - 8:9
**developmental** [5] - 3:25, 8:5, 8:11, 8:17, 9:2
**develops** [1] - 8:10
**dial** [1] - 13:15
**dielectric** [1] - 15:7
**different** [4] - 6:8, 15:5, 15:6, 15:8
**differently** [1] - 6:7
**diligent** [2] - 17:8, 17:9
**disagree** [1] - 9:23
**disclose** [3] - 5:24, 6:1, 7:17
**disclosed** [5] - 3:10, 5:22, 6:19, 15:24, 16:17
**discovery** [21] - 2:14, 5:14, 5:17, 5:20, 6:4, 6:8, 6:18, 7:22, 7:24, 8:3, 10:12, 10:21, 11:10, 12:15, 12:16, 13:4, 13:6, 13:10, 13:17, 15:15, 15:17
**discussion** [1] - 12:14
**discussions** [2] - 16:12, 16:14
**dispute** [6] - 2:14, 3:12, 6:10, 10:3, 10:4, 16:22
**Dissard** [1] - 14:19
**district** [2] - 10:14, 13:11
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 1:16, 17:23
**document** [8] - 3:17, 4:8, 4:10, 4:20, 4:22, 10:20, 12:21
**documents** [8] - 3:18, 5:11, 10:14, 10:24, 12:8, 12:19, 13:17, 15:23
**done** [1] - 4:16

**DUNNER** [1] - 2:6
**DUPONT** [1] - 1:6
**Dupont** [9] - 2:15, 3:10, 8:10, 9:22, 13:14, 13:24, 15:13, 17:2, 17:9
**Dupont 's** [2] - 10:7, 16:25
**during** [3] - 10:21, 10:24, 12:14

## E

**e-mail** [4] - 12:5, 12:10, 12:11, 15:14
**easily** [1] - 10:2
**effusing** [1] - 15:22
**ELLIS** [1] - 2:3
**embodies** [1] - 15:9
**employees** [3] - 8:20, 9:4, 14:12
**entitled** [1] - 4:20
**ERIC** [1] - 2:6
**Eric** [2] - 3:1, 9:22
**especially** [1] - 16:11
**ESQ** [7] - 1:21, 1:23, 1:24, 2:3, 2:3, 2:6, 2:7
**establish** [1] - 10:5
**et** [1] - 1:7
**evidence** [5] - 12:18, 12:22, 12:23, 12:25, 14:13
**exact** [1] - 9:8
**exactly** [3] - 7:25, 8:25, 9:1
**example** [2] - 6:22, 8:12
**Excel** [1] - 13:15
**exclude** [2] - 5:21, 7:13
**excluded** [2] - 5:24, 7:11
**exhibits** [1] - 17:2
**experimental** [1] - 8:11
**explain** [1] - 4:15
**explained** [1] - 13:7
**extent** [3] - 6:21, 7:4, 9:1
**extra** [1] - 15:22

## F

**face** [1] - 15:1
**fact** [14] - 3:15, 5:14, 8:17, 9:12, 10:21,

10:23, 10:24, 12:1, 12:14, 12:16, 13:3, 15:15, 15:17, 16:9
**factors** [3] - 7:6, 7:15, 10:9
**factual** [1] - 8:24
**failure** [2] - 5:24, 6:1
**fantastic** [1] - 2:22
**FARABOW** [1] - 2:5
**fast** [1] - 5:3
**file** [1] - 7:2
**filed** [2] - 10:8, 10:10
**files** [1] - 13:15
**filing** [1] - 11:25
**final** [10] - 4:19, 4:20, 7:18, 7:22, 10:7, 12:18, 13:25, 16:5, 16:25, 17:3
**finally** [5] - 7:2, 7:6, 7:11, 9:11, 16:3
**fine** [2] - 8:2, 16:21
**FINNEGAN** [1] - 2:5
**Finnegan** [1] - 3:2
**first** [4] - 5:12, 9:23, 13:24
**fit** [1] - 5:4
**five** [3] - 3:6, 5:4, 7:25
**five-minute** [1] - 5:4
**flush** [1] - 8:5
**FOR** [1] - 1:1
**foregoing** [1] - 17:19
**former** [2] - 8:20, 14:12
**forth** [2] - 11:4, 11:17
**Foundries** [6] - 5:10, 11:19, 12:3, 12:4, 14:22, 16:13
**four** [2] - 5:14, 12:20
**FUES** [7] - 2:6, 9:21, 14:3, 14:8, 14:14, 16:19, 17:13
**Fues** [2] - 3:1, 9:22
**full** [1] - 12:8
█ [1] - 3:25

## G

**GARRETT** [1] - 2:6
**general** [2] - 5:8, 11:24
**generally** [1] - 16:9
**given** [1] - 7:10
**Global** [6] - 5:10, 11:19, 12:3, 12:4, 14:21, 16:13
**great** [2] - 3:3, 10:12
**guarantee** [1] - 10:3

## H

**HALL** [1] - 1:15
**Hall** [1] - 2:14
**handling** [1] - 9:22
**harmless** [2] - 5:25, 6:2
**hear** [2] - 3:7, 9:20
**heard** [1] - 16:20
**Hello** [1] - 9:21
**HENDERSON** [1] - 2:5
**hereby** [1] - 17:19
**hold** [1] - 4:14
**Honor** [17] - 2:18, 2:24, 3:8, 9:21, 10:3, 10:18, 10:21, 11:19, 12:9, 12:16, 13:8, 13:20, 14:4, 14:23, 16:19, 17:13, 17:14
**Honor 's** [1] - 13:1
**HONORABLE** [1] - 1:15
**HOWARTH** [1] - 2:7
**Howarth** [1] - 3:2

## I

**idea** [3] - 5:15, 16:1, 16:3
**identified** [2] - 10:12, 10:24
**identifies** [1] - 12:12
**identify** [1] - 5:10
**importance** [1] - 7:7
**important** [2] - 7:9, 7:14
**IN** [1] - 1:1
**INC** [2] - 1:3, 1:6
**including** [2] - 4:3, 6:8
**industry** [1] - 8:8
**information** [20] - 3:14, 3:16, 3:24, 4:1, 4:11, 4:25, 5:9, 5:15, 5:18, 7:21, 8:8, 8:15, 9:6, 10:1, 10:2, 10:4, 11:10, 11:13, 11:22, 15:11
**infringement** [2] - 11:11, 11:12
**Ingram** [1] - 17:22
**initial** [12] - 3:10, 4:2, 4:23, 4:25, 7:18, 7:20, 10:14, 10:15, 15:20, 15:21, 15:24, 16:14
**instantly** [1] - 6:16

**intended** [1] - 5:18
**interest** [1] - 12:13
**interested** [1] - 12:2
**internal** [1] - 14:25
**interrogatory** [2] - 13:2, 13:6
**invalidity** [12] - 3:11, 4:3, 4:14, 4:23, 6:6, 7:12, 10:7, 11:11, 11:15, 16:24, 17:1, 17:3
**inventor** [1] - 14:20
**inventors** [5] - 13:14, 14:18, 15:5, 15:10
**irrelevant** [1] - 15:23
**issue** [9] - 3:24, 4:22, 6:25, 11:18, 14:22, 15:18
**issues** [1] - 16:15
**ITC** [6] - 3:18, 4:10, 9:25, 12:25, 13:2, 13:4
**itself** [1] - 10:5

## J

**Jeffrey** [1] - 14:19
**Jen** [1] - 2:14
**JENNIFER** [1] - 1:15
**JLH** [1] - 1:4
**Judge** [1] - 1:16
**justified** [2] - 5:25, 6:2

## K

**Katharine** [1] - 2:20
**KATHARINE** [1] - 1:24
**Kattan** [1] - 2:20
**KATTAN** [1] - 1:23
**keep** [1] - 7:22
**KELLER** [1] - 1:20
**Keller** [1] - 2:19
**kind** [3] - 7:3, 8:17, 10:6
**kinds** [2] - 4:2, 8:9
**King** [1] - 1:12
**knowing** [1] - 6:4
**knowledge** [2] - 9:8, 14:24
**known** [3] - 6:7, 14:11, 16:7
**KYLE** [1] - 2:7
**Kyle** [1] - 3:1

## L

**large** [1] - 13:4
**largely** [3] - 6:21, 7:5, 7:16
**last** [5] - 10:21, 11:1, 11:8, 13:3, 15:4
**late** [5] - 10:13, 11:13, 11:14, 12:6
**left** [2] - 6:15, 9:4
**letter** [6] - 3:12, 3:21, 6:3, 6:11, 7:3, 10:12
**letters** [1] - 3:4
**line** [3] - 2:14, 2:16, 2:20
**LISA** [1] - 1:23
**Lisa** [1] - 2:20
**listing** [1] - 12:24
**LLP** [4] - 1:20, 1:23, 2:2, 2:6
**look** [2] - 3:4, 5:7
**looked** [1] - 5:11

## M

**mail** [4] - 12:5, 12:10, 12:11, 15:14
**March** [1] - 1:10
**Mary** [1] - 14:16
**MATERIALS** [1] - 1:3
**matters** [1] - 15:19
**meant** [1] - 7:24
**meet** [1] - 5:13
**meetings** [2] - 10:23, 10:24
**mention** [1] - 5:8
**mentioned** [1] - 8:19
**met** [1] - 6:24
**mind** [1] - 15:25
**minor** [1] - 4:16
**minute** [2] - 5:4, 11:1
**minutes** [2] - 3:6, 7:25
**misdirected** [1] - 13:7
**misguided** [1] - 13:19
**missing** [1] - 15:21
**Monday** [1] - 1:10
**month** [1] - 10:21
**months** [2] - 12:20, 14:6
**MOORE** [1] - 2:3
**Moore** [1] - 3:1
**most** [2] - 7:7, 16:12
**motion** [3] - 3:7, 16:23, 17:11
**motivation** [2] - 9:15, 9:16
**moved** [1] - 11:16

**MR** [17] - 2:18, 2:24, 3:8, 5:6, 8:7, 8:22, 9:7, 9:14, 9:21, 13:22, 14:3, 14:8, 14:14, 15:4, 16:19, 17:13, 17:14
**multiple** [2] - 4:4, 10:20
**must** [1] - 7:9

## N

**named** [4] - 5:12, 14:18, 14:20, 15:5
**names** [1] - 9:8
**near** [1] - 15:17
**necessarily** [1] - 11:20
**necessary** [1] - 7:21
**needed** [1] - 3:14
**NEMOURS** [1] - 1:6
**new** [3] - 14:1, 16:5, 17:3
**night** [1] - 12:6
**non** [1] - 11:12
**non-infringement** [1] - 11:12
**noted** [1] - 12:10
**notes** [1] - 17:20
**notice** [7] - 5:6, 5:16, 11:18, 11:19, 12:9, 15:12, 15:14
**notion** [2] - 13:16, 14:23
**number** [3] - 2:16, 4:11, 7:8

## O

**objections** [1] - 12:6
**obligation** [1] - 7:17
**obtain** [1] - 13:5
**obtained** [1] - 11:10
**obvious** [2] - 9:17, 9:18
**obviously** [2] - 9:23, 15:11
**obviousness** [3] - 5:19, 9:12, 16:5
**occurred** [2] - 11:25, 14:3
**occurring** [4] - 10:13, 11:7, 11:14, 12:16
**October** [4] - 5:13, 10:17, 11:7, 15:13
**OF** [1] - 1:1
**offer** [1] - 15:20

**offered** [1] - 16:4
**Official** [1] - 17:22
**on-sale** [7] - 8:18, 8:23, 9:25, 10:5, 13:12, 14:2, 14:11
**one** [7] - 3:21, 3:25, 4:8, 12:5, 14:17, 15:14
**ongoing** [1] - 11:10
**opportunity** [1] - 8:3
**opposite** [1] - 7:3
**otherwise** [1] - 5:17

## P

**p.m** [2] - 1:10, 17:15
**paper** [1] - 14:4
**particle** [2] - 4:2, 4:3
**particles** [4] - 3:9, 3:25, 7:13, 9:16
**particularly** [2] - 12:3, 13:19
**parties** [5] - 6:25, 10:9, 10:19, 11:5, 11:9
**parties'** [1] - 11:11
**party** [3] - 11:7, 11:23, 14:19
**party's** [2] - 11:15, 12:18
**passes** [1] - 14:25
**patent** [6] - 9:17, 11:25, 12:1, 15:7, 15:10, 16:7
**Pennypack** [3] - 7:6, 7:15, 10:9
**people** [2] - 14:23, 14:24
**period** [3] - 10:19, 12:15, 12:16
**permanent** [1] - 3:23
**place** [5] - 10:16, 10:18, 14:16, 14:17, 14:20
**places** [1] - 4:4
**Plaintiff** [2] - 1:4, 1:25
**plaintiff** [2] - 2:17, 2:19
**pleaded** [1] - 13:9
**point** [8] - 3:11, 3:18, 3:21, 4:8, 9:8, 11:3, 13:1, 15:4
**pointed** [1] - 5:1
**points** [1] - 4:16
**polishing** [1] - 15:6
**position** [3] - 7:3, 14:14, 14:22
**positive** [2] - 3:23, 4:4

**possibly** [1] - 6:14
**potential** [2] - 3:23, 4:4
**Potter** [2] - 2:25, 3:1
**POTTER** [1] - 2:2
**practices** [1] - 8:9
**precluded** [1] - 15:22
**predecessor** [1] - 15:9
**prejudice** [4] - 6:3, 6:11, 6:12, 6:13
**primary** [2] - 4:8, 7:8
**problem** [1] - 5:5
**proceeded** [1] - 6:4
**proceedings** [1] - 17:20
**process** [2] - 8:12, 11:6
**produce** [1] - 10:13
**produced** [4] - 4:10, 11:13, 12:19, 13:10
**product** [2] - 4:9, 15:9
**production** [2] - 12:22, 13:17
**productions** [3] - 10:20, 11:1, 15:17
**products** [3] - 5:8, 16:2, 16:6
**provide** [1] - 5:18
**providing** [1] - 15:14
**public** [2] - 11:22, 11:23
**purpose** [1] - 8:25
**pursue** [2] - 6:18, 8:8
**pursued** [1] - 6:7
**push** [1] - 13:5
**put** [4] - 4:2, 4:23, 11:20, 14:4

## Q

**qualification** [1] - 8:12
**qualify** [2] - 8:18, 8:23
**questions** [4] - 9:11, 9:13, 13:24, 14:19

## R

**raise** [1] - 14:11
**raised** [1] - 6:16
**re** [1] - 6:17
**re-depose** [1] - 6:17
**reach** [1] - 13:8
**reached** [1] - 6:22
**ready** [1] - 16:22
**real** [1] - 4:22

**really** [5] - 4:15, 4:21, 6:9, 15:23, 16:16
**reason** [1] - 4:13
**reasons** [1] - 17:10
**rebutted** [1] - 4:17
**received** [2] - 13:2, 15:16
**record** [4] - 8:24, 16:25, 17:5, 17:7
**references** [1] - 7:8
**regards** [1] - 5:12
**relevant** [5] - 8:16, 11:10, 11:14, 15:15, 15:18
**rely** [2] - 3:17, 7:14
**render** [1] - 9:17
**Reporter** [1] - 17:22
**reporter** [1] - 2:16
**represented** [2] - 12:15, 16:13
**representing** [1] - 12:4
**requirements** [1] - 3:13
**resisted** [1] - 6:23
**respect** [1] - 12:13
**respond** [2] - 13:22, 14:10
**response** [2] - 13:2, 13:6
**responsive** [1] - 6:10
**result** [1] - 6:6
**reviewed** [1] - 17:1
**ring** [1] - 6:18
**roughly** [1] - 10:19
**RPR** [1] - 17:22
**rule** [2] - 5:21, 16:22
**Rule** [1] - 5:23
**Russell** [3] - 2:19, 3:9, 15:3
**RUSSELL** [11] - 1:21, 2:18, 3:8, 5:6, 8:7, 8:22, 9:7, 9:14, 13:22, 15:4, 17:14

## S

**sale** [8] - 8:18, 8:23, 9:25, 10:5, 12:2, 13:12, 14:2, 14:11
**sales** [13] - 3:17, 3:19, 4:7, 4:8, 4:9, 8:10, 8:11, 8:17, 8:25, 9:1, 11:25, 12:3, 16:9
**schedule** [1] - 11:16
**scheduled** [1] - 11:7
**second** [1] - 14:9

**seeking** [1] - 7:13
**sending** [1] - 11:22
**sense** [3] - 4:19, 6:14, 6:17
**sent** [3] - 14:15, 14:21
**September** [1] - 10:17
**served** [4] - 10:16, 13:3, 13:25, 14:7
**set** [2] - 11:4, 11:16
**several** [3] - 11:6, 11:8, 11:16
**SHAW** [1] - 1:20
**Shaw** [1] - 2:19
**show** [2] - 8:16, 9:2
**shows** [2] - 4:9, 16:16
**side** [3] - 3:6, 4:7, 9:20
**significant** [1] - 6:20
**silent** [1] - 13:17
**similar** [1] - 3:20
**simply** [1] - 12:21
**slurries** [17] - 4:15, 4:21, 5:9, 5:12, 6:5, 8:9, 8:10, 8:13, 8:17, 8:23, 12:8, 12:13, 15:5, 15:6, 15:7, 16:10, 16:11
**slurry** [3] - 8:5, 9:17, 12:3
**sold** [6] - 5:9, 5:10, 6:5, 8:14, 8:22, 16:1
**someone** [1] - 7:19
**sometimes** [1] - 10:23
**sorry** [1] - 5:3
**sorts** [1] - 8:10
**specific** [3] - 16:5, 16:10, 16:11
**specifically** [2] - 5:12, 12:12
**speed** [1] - 13:14
**split** [1] - 10:19
**Stacy** [1] - 17:22
**STATES** [1] - 1:1
**States** [1] - 1:16
**stenographic** [1] - 17:20
**still** [3] - 7:7, 7:12, 15:20
**stipulation** [3] - 10:9, 11:3, 11:5
**straight** [1] - 14:25
**Street** [1] - 1:12
**strike** [2] - 13:18, 16:23
**struck** [4] - 7:15, 12:18, 12:22, 13:11
**stuff** [2] - 4:2, 15:24
**subpoena** [8] - 8:20,

11:21, 11:24, 12:7, 12:14, 14:15, 14:17, 14:21
**subpoenaed** [1] - 14:12
**subpoenas** [5] - 5:7, 5:13, 5:16, 14:21
**substantially** [2] - 5:24, 6:1
**sufficient** [1] - 10:4
**switch** [1] - 13:23

**T**

**teams** [1] - 15:8
**technical** [4] - 3:13, 3:14, 3:21, 4:5
**teleconference** [3] - 2:15, 6:23, 17:12
**Teleconference** [2] - 1:11, 17:15
**test** [1] - 15:1
**testimony** [1] - 9:15
**THE** [19] - 1:1, 1:1, 1:15, 2:13, 2:22, 3:3, 5:5, 8:2, 8:19, 9:5, 9:10, 9:19, 13:21, 13:23, 14:6, 14:9, 15:2, 16:18, 16:20
**theories** [1] - 17:3
**theory** [2] - 14:2, 14:11
**they 've** [1] - 4:1
**thinking** [2] - 8:21, 12:7
**third** [3] - 11:6, 11:22, 14:19
**three** [1] - 12:19
**throughout** [1] - 5:19
**throw** [1] - 7:22
**timely** [6] - 4:18, 4:20, 10:8, 10:10, 16:17, 17:1
**today** [2] - 2:17, 2:25
**took** [6] - 7:3, 10:16, 10:18, 14:16, 14:17, 14:20
**TQ** [1] - 7:9
**transcript** [1] - 17:20
**trial** [2] - 12:11
**true** [4] - 12:22, 12:24, 16:12, 17:19
**trying** [2] - 5:3, 12:17
**▮▮▮▮** [1] - 15:6
**two** [4] - 4:15, 13:23, 14:6, 14:21

**U**

**U.S** [1] - 17:23
**un-ring** [1] - 6:18
**under** [6] - 5:21, 5:23, 7:15, 8:18, 8:23, 13:19
**underlying** [1] - 7:12
**undermine** [1] - 6:14
**undermines** [1] - 6:13
**understood** [1] - 9:10
**UNITED** [1] - 1:1
**United** [1] - 1:16
**unsupportable** [1] - 16:8
**unsupported** [1] - 10:6
**untimely** [2] - 4:22, 5:22
**up** [2] - 10:22, 15:23
**update** [1] - 12:21
**uses** [1] - 3:25

**V**

**validity** [1] - 11:11
**versus** [1] - 2:15
**voluminous** [1] - 13:17

**W**

**▮▮▮▮▮▮** [1] - 11:21
**▮▮▮▮▮▮** [1] - 12:13
**▮▮▮▮** [1] - 12:12
**wants** [1] - 4:12
**Whereas** [1] - 11:5
**whereas** [3] - 11:8, 11:9
**Wilmington** [1] - 1:13
**withheld** [1] - 7:10
**withhold** [1] - 7:20
**withholding** [1] - 5:2
**witnesses** [9] - 6:18, 8:4, 8:8, 8:15, 9:11, 9:12, 10:23, 10:25, 13:16

**Y**

**years** [1] - 4:1

**Z**

**zeta** [2] - 3:23, 4:4