IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CMC MATERIALS, LLC,                     )
                                        )
                    Plaintiff,          )      **Redacted - Public Version**
                                        )
         v.                             )      C.A. No. 20-738-JLH
                                        )
DUPONT DE NEMOURS, INC., et al.,        )      ████████████████████
                                        )
                    Defendants.         )


## PLAINTIFF CMC'S OPPOSITION TO DUPONT'S MOTION TO CONTINUE TRIAL DATE TO COMPLETE PENDING FOREIGN DISCOVERY

OF COUNSEL:
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408 2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Erik T. Koons
Christopher Wilson
Samuel L. Kassa
Eileen Hyde
Natalie Cardenas
Daniel Ruesta
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

Mark Speegle
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, TX 78704
(512) 332- 2500


Dated: September 25, 2024

## **<u>TABLE OF CONTENTS</u>**

I.    Nature and Stage of the Proceedings ................................................................. 1

  A.    First Letters Rogatory During ITC Dispute ................................................ 2

  B.    Scheduling Conference and Second Letters Rogatory.................................. 2

  C.    Third Letters Rogatory and Motions for Summary Judgment....................... 3

II.    Summary of Argument ...................................................................................... 4

III.    Argument .......................................................................................................... 5

  A.    Defendants Cannot Show That a Stay Is Warranted Under the Stay Factors .................... 5

    1.    Waiting for the Letters Rogatory will not simplify any issues ....................... 5

    2.    A stay at this late stage is unwarranted........................................................ 8

    3.    CMC would be prejudiced by a stay............................................................ 9

  B.    Defendants Have Not Shown Good Cause ................................................... 10

IV.    Conclusion ........................................................................................................ 11

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Atl. Thermoplastics Co. v. Faytex Corp.*,
  970 F.2d 834 (Fed. Cir. 1992)....................................................................................................6

*B.E. Tech., L.L.C. v. Twitter, Inc.*,
  C.A. No. 20-621-GBW, 2023 WL 3478567 (D. Del. May 16, 2023) ..................................4, 9

*Chancellor v. Pottsgrove Sch. Dist.*,
  501 F. Supp. 2d 695 (E.D. Pa. 2007) ......................................................................................10

*Faiella v. Sunbelt Rentals, Inc.*,
  341 F.R.D. 553 (D.N.J. 2022) ..................................................................................................10

*MacQueen v. Union Carbide Corp.*,
  No. CV 13-831-SLR-CJB, 2015 WL 167674 (D. Del. Jan. 8, 2015) ......................................11

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
  614 F.3d 57 (3d Cir. 2010)........................................................................................................4

*Snow Covered Cap., LLC v. Fonfa*,
  No. 2:22-CV-01181-CDS-VCF, 2023 WL 205774 (D. Nev. Jan. 17, 2023) ...........................9

*St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*,
  774 F. Supp. 2d 596 (D. Del. 2011)..........................................................................................4

*TOT Power Control, S.L. v. Apple Inc.*,
  No. 21-1302-MN, 2024 WL 1759152 (D. Del. Apr. 23, 2024)............................................8, 9

*Williams Serv. Grp., Inc. v. O.B. Cannon & Son, Inc.*,
  No. CIV. A. 90-7732, 1994 WL 13850 (E.D. Pa. Jan. 19, 1994) .............................................6

**TABLE OF EXHIBITS**[1]

| Exhibit | Description |
|---|---|
| 1 | DuPont de Nemours, Inc., et al., v. Cabot Microelectronics Corp., C.A. No. 1:20-MC-00091-KBJ, D.I. 1 (D.D.C. Sept. 24, 2020) (excerpts) |
| 2 | DuPont de Nemours, Inc., et al., v. Cabot Microelectronics Corp., C.A. No. 1:20-MC-00091-KBJ, D.I. 3 (D.D.C. Oct. 8, 2020) |
| 3 | Respondents' Petition for Review of the Final Initial Determination (July 29, 2021) (highlighted, excerpts) |
| 4 | Commission Opinion (December 16, 2021) (highlighted, excerpts) |
| 5 | April 22, 2022, email chain between Dustin Grant (U.S. Department of State) and Anthony Hartmann (Counsel for Defendants) |
| 6 | Sept. 16, 2024, CMC Proposed Exhibit List (highlighted, excerpts) |
| 7 | Sept. 20, 2024, DuPont Proposed Exhibit List (highlighted, excerpts) |
| 8 | March 27, 2024, Expert Report of Matthew Lynde with Appendices (highlighted, excerpts) |

---

[1] Numbered Exhibits are attached to CMC's Opposition. Citations are to the page number of the original exhibit.

The relief Defendants seek under the heading of a Motion to Continue the Trial Date is extreme: Defendants want the Court to stay this case indefinitely, right before trial, with no guarantee that any additional discovery will ever be produced. There is no genuine need for any additional discovery in this case—to the contrary, three months ago Defendants told the Court they believed there were no issues of disputed fact on Fuso's alleged inventorship (D.I. 322) and the prior art status of Fuso's particles (D.I. 324).[2]  Nor have Defendants diligently sought this discovery. It is unreasonable for Defendants to now ask the Court to defer resolution of this long-running dispute indefinitely, while a Japanese court considers whether to request unnecessary and likely inadmissible discovery from Fuso. And Defendants' argument that delay causes no harm to CMC ignores both the practical harm from delaying CMC's presentation of evidence as the memories of witnesses fade, as well as the additional antitrust damages Defendants are seeking for time they remain off the market. Defendants cite no cases granting such broad relief tied to an uncertain Letters Rogatory process. The Court should deny this unprecedented delay tactic.

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This case was filed on June 1, 2020, over four years ago. D.I. 1. After a two year stay during the ITC litigation, trial is now set for October 28. Despite over four years of litigation on the same alleged prior art at both the ITC and in this Court, Defendants have never identified a *need* for foreign discovery to satisfy their proofs, nor have they been diligent in requesting such discovery.

---

[2] CMC disagrees with the merits of Defendants' Motions for Summary Judgments for the reasons set forth in CMC's Opposition. D.I. 356 at 18–23 (CMC opposition on inventorship) and 23–33 (CMC opposition on prior art).

### A. First Letters Rogatory During ITC Dispute

As Defendants note: "[i]n June 2020, CMC sued [Defendants] in this court and at the International Trade Commission ('ITC')." Mot. at 2. Because this case was stayed during the parties' litigation at the ITC, Defendants moved in the District for the District of Columbia for the issuance of a Letters Rogatory to Fuso. Ex. 1. In October 2020, the D.C. Court issued the Letters Rogatory. Ex. 2. The ITC investigation proceeded without waiting for the Letters Rogatory process, and, in that forum, Defendants presented invalidity arguments based on Fuso particles. *See* Ex. 3 at 73-77. The ITC rejected these invalidity arguments on their merits—not because of any supposed deficiency in the record, and Defendants raised no such deficiency with the ITC during its review of the decision. *See id.*; *see also* Ex. 4 at 55-56 (issuing an exclusion order on all claims); *contra* Mot. at 2.

In 2022, after the ITC ruled in CMC's favor, the State Department contacted counsel for Defendants and asked how Defendants wanted to proceed given that the D.C. case had been closed after issuance of the Letters Rogatory. Ex. 5 at 2. Even though there was still an active dispute between the Defendants and CMC in this Court, Defendants requested that the State Department return the materials. Defendants did not inquire about options for maintaining the requested Letters Rogatory. *Id.* at 1.

### B. Scheduling Conference and Second Letters Rogatory

After withdrawing its first Letters Rogatory, Defendants moved this Court for a second Letters Rogatory to Fuso in 2022. CMC initially opposed because Defendants had not shown that the information requested from Fuso was necessary for Defendants to prove their case. However, in connection with negotiating a case schedule, CMC later withdrew its opposition to Defendants motion. D.I. 85 at 1. The Court shortly thereafter granted Defendants' motion and issued the requested Letters Rogatory in October 2022. D.I. 91. Defendants' counsel then communicated with

Fuso, who confirmed it would not produce material voluntarily, stating that "it is not in a position to directly provide the requested documents and things to DuPont," but it "would follow and correspond to the Japanese court's instructions[.]" D.I. 233-5 ¶ 4.

### C.  Third Letters Rogatory and Motions for Summary Judgment

The relevant Japanese authorities found Defendants' second Letters Rogatory deficient because (according to Defendants) the "request 'to compel' the production of documents or testimony was improper under Japanese law." D.I. 233 at 6. As a result, Defendants had to start the process over for a third time in 2024. And, instead of seeking "to compel" discovery, Defendants' third Letters Rogatory asked that the Japanese authority "request Fuso to produce" certain documents. D.I. 233 Ex. 1 at p. 4. CMC opposed this third Letters Rogatory because no information from Fuso was needed to evaluate the claims and defenses at issue, and because Defendants' late restart of this foreign discovery was too close to trial. D.I. 241 at 1, 5. The Court granted Defendants' motion for a third Letters Rogatory on March 13, 2024. D.I. 259.

While Defendants' third Letters Rogatory has been pending, this litigation proceeded. The parties completed discovery, and each moved for summary judgment on certain issues, including on all the issues that Defendants now claim to need discovery from Fuso to address. Notably, **Defendants** moved for summary judgment on two of the three issues: incorrect inventorship (D.I. 322) and the availability of Fuso particles as prior art (D.I. 324). *See* Mot. at 1. And CMC moved for summary judgment on the other issue, Defendants' antitrust counterclaims. D.I. 233 at 1-2. Defendants could have filed a Rule 56(d) declaration to defer resolution of this summary judgment motion until additional necessary discovery could be obtained. Fed. R. Civ. P 56(d) (Court may deny motion or allow time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."). They did not, and instead Defendants opposed CMC's motion on the existing record.  *See* D.I. 350 at 7-19.

## II.    SUMMARY OF ARGUMENT

1.    An initial issue is whether Defendants' motion really requests a stay, rather than a mere modification of the schedule, as Defendants have argued. Here, Defendants seek a *de facto* stay—an indefinite delay of trial, after all fact and expert discovery is complete, and dispositive motions have been filed. Defendants cannot shortcut the stay analysis by simply labeling their relief a "continuance." *See St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, 774 F. Supp. 2d 596, 599 (D. Del. 2011) ("Finding that granting the motion for continuance would be tantamount to granting the motion to stay […] the Court denied the motion for continuance.").

2.    When considered, each of the traditional stay factors weigh against Defendants' request: (1) no simplification is likely because Defendants may never receive discovery from Fuso, and any discovery they do receive from Fuso would likely be duplicative of the existing record, or inadmissible; (2) trial is set in just four weeks and discovery is otherwise complete; and (3) CMC would be prejudiced if its patent infringement claim is put on hold indefinitely. *B.E. Tech., L.L.C. v. Twitter, Inc.*, C.A. No. 20-621-GBW, 2023 WL 3478567, at *2 (D. Del. May 16, 2023) (describing stay factors).

3.    Alternatively, even under the Rule 16 standard that Defendants cite, their motion fails because there is no good cause and no diligence. "[A] schedule set forth in a scheduling order may be modified only for good cause and with the judge's consent," a standard that focuses on the moving party's diligence. *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010). Defendants identify no *need* for the discovery from Fuso, instead largely hinging their request for indefinite delay on their unfounded concern that CMC and the inventors will testify based on hearsay and speculation. Nor have Defendants been diligent. They voluntarily withdrew their first Letters Rogatory that they filed during the parties' litigation at the ITC, and then failed to conform their second Letters Rogatory to Japanese law. This mistake forced Defendants to

restart the time-consuming process again, in 2024. Defendants have no one but themselves to blame for the lost time and slow progress on their Letters Rogatory.

## III.    ARGUMENT

### A.    Defendants Cannot Show That a Stay Is Warranted Under the Stay Factors

Because this case is on the eve of trial, with all other discovery and dispositive motion briefing complete, continuing trial indefinitely would be tantamount to staying this case. As such, Defendants' request to delay trial indefinitely should be evaluated under the traditional three-factor framework for a stay. Under this framework, Defendants' Motion fails on the merits because none of the three traditional factors support a stay.

####        *1.    Waiting for the Letters Rogatory will not simplify any issues*

Discovery from Fuso will not simplify this case. This is a critical issue that Defendants shortcut by ignoring the traditional stay factors. Simplification is not the same as relevance, and it is not enough for Defendants to argue that they need discovery from Fuso to help their case. Bolstering Defendants' case is not a simplification, and it is not a basis for a stay.

In any event, Defendants cannot show that such discovery is *needed*. Defendants themselves moved months ago for summary judgment on the issues of improper inventorship and prior art. *See* D.I. 322 (MSJ on inventorship), and D.I. 324 (MSJ on the availability of Fuso particles as prior art). Thus, far from saying that critical factual issues hang on Fuso discovery, by filing these motions, Defendants represented to this Court that there were no genuine issues of material fact related to Fuso. Indeed, Defendants' Letters Rogatory do not even ask about Fuso's alleged contributions to the '721 Patent, much less ████████████████ and ██████ ████, the two Fuso employees who Defendants allege should have been named as inventors on the '721 Patent. D.I. 233 Ex. 1, Attach. A. Moreover, when CMC moved for summary judgment on Defendants' antitrust counterclaims, Defendants did not file a Rule 56(d) declaration to

postpone a ruling pending discovery from Fuso, and instead cited extensive discovery in opposition. *Compare* Mot. at 1 *with* D.I. 350 at 18–19 (citing extensive discovery in this case).

Defendants also provide no showing as to why they believe that any discovery from Fuso would be non-cumulative of the extensive information already available to Defendants. Defendants wrongly cite *Atl. Thermoplastics Co. v. Faytex Corp.* to argue that Fuso's subjective perspective is "what matters" for the alleged on-sale bar (Mot. at 11), but that case actually says the court should consider "the offeror's *objective* intent," along with "the totality of the circumstances." 970 F.2d 834, 836–37 (Fed. Cir. 1992) (emphasis added); *see also Williams Serv. Grp., Inc. v. O.B. Cannon & Son, Inc.*, No. CIV. A. 90-7732, 1994 WL 13850, at *33 (E.D. Pa. Jan. 19, 1994) ("[A]n inventor's or customer's subjective belief that a particular use was 'experimental' is not dispositive, and must be weighed against objective evidence to the contrary."). Voluminous documents showing Fuso's *objective* intent are already in the record. The exhibit lists from the prior ITC litigation shows that there was no shortage of Fuso-related documents available in that proceeding. *See* D.I. 241 at - Exhibit A (Defendants' Final Exhibit List, identifying nineteen "Fuso" documents); Exhibit B (CMC's Final Exhibit List, identifying six "Fuso" documents); Exhibit C (Joint Final Exhibit List, identifying seven "Fuso" documents). The parties' proposed exhibit lists in this case also contain numerous references to Fuso. Ex. 6 (Excerpts to CMC Exhibit List, highlighting added); Ex. 7 (Excerpts to Defendants' Exhibit List, highlighting added).

Defendants are also wrong that CMC has pointed to Fuso for relevant discovery. Mot. at 1, 8. In the handful of requests for admission that Defendants cites—out of the dozens of discovery requests that CMC answered—CMC objected to the scope of the requests, but still responded

substantively by admitting the pertinent information in each of the requests Defendants cites.[3]   D.I. 338-7 at RFAs 131 and 133. Defendants' complaint about supposedly missing purchase orders is also misdirected. Mot. at 6. CMC produced thousands of pages of documents regarding purchase orders, specifications, original certificates of analysis, and communications with Fuso regarding the particles. *See* D.I. 208 (explaining extent of CMC efforts to produce Fuso documents), 230 (same).

Rather than show any need for foreign discovery to litigate the merits of their claims and defenses, the thrust of Defendants' argument is that this case should be put on hold to see if Fuso will produce discovery to rebut what Defendants wrongly describe as speculation and hearsay testimony from CMC. Mot. at 4. Defendants' concern is unwarranted. Regardless of any discovery from Fuso, CMC will abide by the Federal Rules of Evidence and this Court's evidentiary rulings. Moreover, discovery from Fuso will not prevent or simplify evidentiary issues. To the contrary, having additional documents from an international third party would likely only *increase* the number of hearsay and authenticity disputes at trial, particularly when Defendants' Letters do not seek any testimony from Fuso to authenticate such documents.[4]

More fundamentally, there is also no guarantee that Fuso will ever produce documents in response to the Letters Rogatory. Defendants concede that, when their Japanese counsel contacted

---

[3] Defendants' substantive arguments about whether any Fuso particles are allegedly prior art are irrelevant to this Motion. *See* Mot. at 4–6. At trial, CMC will show why these Fuso particles do not invalidate the '721 patent—just as CMC showed at the ITC.

[4] Defendants complain that CMC has not agreed to "stipulate to the authenticity and non-hearsay status of Fuso emails, presentations and other documents" that CMC has already produced. Defendants omit important context. Defendants did *not* identify any specific Fuso documents in their proposal and instead asked that the parties agree to waive hearsay objections to *all* documents produced in the case. CMC was not willing to agree to Defendants' blanket proposal, but will consider individual documents Defendants identify, and the parties are still negotiating a potential compromise.

Fuso about discovery, Fuso made clear it will not produce material voluntarily, stating that "it is not in a position to directly provide the requested documents and things to DuPont," but it "would follow and correspond to the Japanese court's instructions[.]" D.I. 233-5 ¶ 4. Defendants' Letters Rogatory, however, are crafted such that compliance by Fuso is entirely voluntary. Indeed, the Japanese government required Defendants to restart their Letters Rogatory process in 2024 to reframe the Letters as a "request" for Fuso to produce documents, rather than an order compelling Fuso to do so, which a Japanese district court cannot do. *See* D.I. 233 at 6, 233 Ex 4 p. 1. And Defendants' Letters do not even seek any testimony from Fuso. *See* D.I. 258 at 4 (requesting only documents).

Even assuming that Fuso would voluntarily produce documents, the timing of such voluntary compliance is entirely speculative. Defendants' third Letters Rogatory were submitted to the Japanese Supreme Court six months ago and have not even been assigned a case number, which is required for the Letters to be delegated to the appropriate Japanese district court for administration. D.I. 449 Ex 5 pp. 1, 4. Defendants simply provide no indication why they believe Fuso will imminently and voluntarily comply with their pending "request" when Fuso has not done so for over four years and the process is not even near completion.

### 2. *A stay at this late stage is unwarranted*

This case is far from its early stages: trial starts in one month and all other discovery has been completed. This factor therefore weighs firmly against a stay.

While Defendants suggest that *TOT Power Control, S.L. v. Apple Inc.,* supports "[a]mending the schedule for the limited purpose of obtaining third-party discovery," the relief in that case is not comparable to what Defendants are seeking here. Mot. at 9 (citing C.A. No. 21-1302-MN, 2024 WL 1759152, at *1 (D. Del. Apr. 23, 2024)). In *TOT Power Control*, the Defendant sought an extension of the fact discovery deadline for just six weeks, to take one third-

party deposition, which was already scheduled. 2024 WL 1759152, at *1. Because the extension was modest, and substantial time remained before expert reports were due, the Court concluded the extension was "unlikely to disrupt the balance of the scheduling order." *Id*. at *2. There is a world of difference between extending fact discovery for a few weeks, versus delaying trial for an uncertain number of months or even years.

### 3.   *CMC would be prejudiced by a stay*

Defendants are wrong to assert that CMC would face no prejudice because of the present ITC ruling. Mot. at 10. Even without active competition, it is prejudicial to delay enforcement of a patent. *B.E. Tech.*, 2023 WL 3478567, at *3 ("While the parties agree that they are not competitors, continuing the stay […] would cause Plaintiff some real prejudice. For a Plaintiff who filed this suit over three years ago […] that is a long time to be asked to continue to wait." (internal citations omitted)). As the saying goes, justice delayed is justice denied. *See Snow Covered Cap., LLC v. Fonfa*, No. 2:22-CV-01181-CDS-VCF, 2023 WL 205774, at *2 (D. Nev. Jan. 17, 2023).

The potential for prejudice is worse when the stay "subjects the party opposing the stay to an open-ended period of delay, rather than a time-limited period, as in the case of a stay pending an IPR proceeding." *B.E. Tech.*, 2023 WL 3478567, at *3. CMC filed its cases against Defendants in 2020 and with every passing year, memories fade and witnesses change jobs, or otherwise become unavailable. If trial in this case is tied to the uncertain timeline of a Letters Rogatory, then there is no telling whether trial would be held in 2025, or 2026, or even later. Such a delay creates unfair burdens and risks on CMC's presentation of evidence.

Lastly, Defendants ignore a key source of potential harm to CMC: Defendants are potentially accruing treble damages against CMC every day, under Defendants' antitrust counterclaims. Of course, CMC does not believe Defendants' antitrust theories have merit. *See* D.I. 233 at 1 (CMC Motion for Summary Judgment on Defendants' Antitrust Claims). But, at least

until those counterclaims are resolved, every day that Defendants' claims remain pending against CMC potentially increases CMC's exposure. Ex. 8 at 55–58 (calculating future damages based on time of Defendants' reentry to market). In this regard, the trebling of antitrust damages creates a financial incentive for Defendant to delay trial on those claims for as long as possible.

**B. Defendants Have Not Shown Good Cause**

Even applying the Rule 16 standard instead of the traditional stay factors, Defendants' Motion should be denied.

First, Defendants' careless mistakes in its first two Letters Rogatory undercut their assertion now that they have been diligent in seeking discovery from Fuso. *Contra* Mot. at 8; *see Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701–02 (E.D. Pa. 2007) ("Carelessness, or attorney error, which might constitute 'excusable neglect' under Rule 6(b), is insufficient to constitute 'good cause' under Rule 16(b)."); *Faiella v. Sunbelt Rentals, Inc*., 341 F.R.D. 553, 561 (D.N.J. 2022) ("However, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). Both their first Letters Rogatory, which Defendants abandoned in 2020, and their second Letters Rogatory from 2022 had requests that were incompatible with controlling Japanese law. As Defendants' own Japanese attorney declarant explained in connection with its request for their third Letters Rogatory, "document production cannot be compelled under Japanese law[.]" D.I. 233-5 at ¶ 6. Nor can a Letters Rogatory compel a deposition. D.I. 233-4 at ¶ 2. Nonetheless, Defendants still pursued *multiple* Letters Rogatory asking for compelled document production and a compelled deposition. Defendants' failure to appropriately research foreign discovery procedure is carelessness, not diligence. Trial in this matter was set two years ago, and Defendants essentially wasted the first year and half of that window because they did not diligently research the applicable rules for Japanese discovery.

10

Second, as explained in the section above, Defendants arguments about the potential impact of the Letters Rogatory are flawed in multiple ways. *See MacQueen v. Union Carbide Corp.*, No. CV 13-831-SLR-CJB, 2015 WL 167674, at *7 (D. Del. Jan. 8, 2015) (denying motion to modify schedule because of flawed explanation for why additional discovery was needed). Defendants' summary judgment briefing confirms that Defendants do not need additional evidence from Fuso to present their case. Even if there were a need, Defendants do not establish any reasonable likelihood of production. Fuso has not voluntarily complied with Defendants' discovery requests for years, Fuso will not be compelled to produce anything in Japan, and anything Fuso voluntarily produces will likely be duplicative of the existing record regarding Fuso and its particles, assuming it is admissible. The low chance that Fuso produces non-cumulative evidence, when it has already refused to do so voluntarily, shows that no good cause exists for a continuance.

## IV.    CONCLUSION

This case should proceed as scheduled for trial on October 28. A stay at this late stage is not warranted because there is no reason to believe that waiting indefinitely for a response to Defendants' third Letters Rogatory will result in meaningful new evidence. And Defendants' assertion of diligence is unsupported. Thus, for all the foregoing reasons, CMC respectfully requests that the Court deny Defendants' Motion for a Continuance.

OF COUNSEL:
Robert L. Maier
Margaret M. Welsh
Frank Zhu
David K. Bailey
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
(212) 408-2500

Lisa M. Kattan
Katharine M. Burke
Thomas C. Martin
Erik T. Koons
Christopher Wilson
Samuel L. Kassa
Eileen Hyde
Natalie Cardenas
Daniel Ruesta
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700

Mark Speegle
BAKER BOTTS LLP
401 South 1st Street, Suite 1300
Austin, TX 78704
(512) 332- 2500
Dated: September 25, 2024

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2024, this document was served on DuPont-Delaware@finnegan.com, IPservice@potteranderson.com and on the persons listed below in the manner indicated:

### <u>BY EMAIL</u>

David E. Moore
Bindu A. Palapura
Andrew L. Brown
POTTER ANDERSON & CORROON, LLP
Hercules Plaza
1313 N. Market St., 6th Flr.
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

Charles E. Lipsey
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700
charles.lipsey@finnegan.com

William S. Farmer
David C. Brownstein
David M. Goldstein
FARMER BROWNSTEIN JAEGER
 GOLDSTEIN KLEIN & SIEGEL LLP
235 Montgomery St., Suite 835
San Francisco, CA 94104
wfarmer@fbjgk.com
dbrownstein@fbjgk.com
dgoldstein@fbjgk.com

Mareesa A. Frederick
Eric J. Fues
Anthony A. Hartmann
Kaitlyn S. Pehrson
Hira Javed
Emily R. Gabranski
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
mareesa.frederick@finnegan.com
eric.fues@finnegan.com
anthony.hartmann@finnegan.com
kaitlyn.pehrson@finnegan.com
hira.javed@finnegan.com
emily.gabranski@finnegan.com

_/s/ Andrew E. Russell_
John W. Shaw (No. 3362)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
arussell@shawkeller.com
_Attorneys for Plaintiff_

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DuPont de Nemours, Inc., Rohm and Haas Electronic
Materials CMP Inc., Rohm and Haas Electronic
Materials CMP Asia Inc. (d/b/a Rohm and Haas
Electronic Materials CMP Asia Inc., Taiwan Branch
(U.S.A.)), Rohm and Haas Electronic Materials Asia-
Pacific Co., Ltd., Rohm and Haas Electronic Materials
K.K., and Rohm and Haas Electronic Materials LLC

    Plaintiffs (ITC Respondents),

v.

Cabot Microelectronics Corp.

    Defendants (ITC Complainant).

**Civil Action No. Misc.**

## PLAINTIFFS' MOTION FOR THE ISSUANCE OF
## A LETTER ROGATORY FOR INTERNATIONAL
## JUDICIAL ASSISTANCE REGARDING FUSO CHEMICAL CO., LTD.

DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and

Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia

Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.,

Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC

(collectively, "DuPont"), Respondents in Certain Chemical Mechanical Planarization Slurries

And Components Thereof, Investigation No. 337-TA-1204 (the "Investigation") before the U.S.

International Trade Commission ("ITC"), hereby move for the Court to issue, under its seal and

signature, the attached Letter Rogatory on behalf of DuPont to obtain documents, samples, and

deposition testimony from the following foreign third party:

Fuso Chemical Co., Ltd.
Nissei Fushimi-machi Bldg.

Shinkan, 3-10, Koraibashi 4-chome,
Chuo-ku, Osaka 541-0043
+81-6-6203-4771

DuPont moved in the ITC for Administrative Law Judge David P. Shaw to recommend that
this Court issue a Letter Rogatory on behalf of DuPont to obtain discovery from Fuso Chemical Co.,
Ltd. of Japan on September 1, 2020. ITC Complainant Cabot Microelectronics Corp. did not oppose
that motion. The Administrative Law Judge Shaw, based on his knowledge of the facts in the
Investigation, issued an order on September 16, 2020, recommending that this Court issue the attached
Letter Rogatory on behalf of DuPont. *See* Exhibit 1 (Order No. 6).

The Letter Rogatory seeks assistance from the Appropriate Judicial Authority of Japan in
obtaining documents, samples, and testimony that will be used by DuPont to prove at least its claims
that U.S. Patent No. 9,499,721 is invalid. *See* Exhibit 1; *see also*, Exhibit 4 (Letter Rogatory)..

For the reasons set forth more fully in the accompanying memorandum, DuPont
respectfully requests that the Court assign a Judge to this matter and expedite the issuance of the
attached Letter of Request to Fuso Chemical Co., Ltd.

Date: September 24, 2020                    Respectfully submitted,

Laura Masurovsky (D.C. Bar No. 385081)
Mareesa A. Frederick
Mark Feldstein
Anthony Hartmann
Andrew Renison
Olivia Martzahn
Paul Townsend
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

2

Charles Lipsey
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
1875 Explorer Street
Suite 800
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (571) 203-2777

*Counsel for the Plaintiffs DuPont de Nemours,
Inc., Rohm and Haas Electronic Materials CMP
Inc., Rohm and Haas Electronic Materials CMP
Asia Inc. (d/b/a Rohm and Haas Electronic
Materials CMP Asia Inc., Taiwan Branch
(U.S.A.)), Rohm and Haas Electronic Materials
Asia-Pacific Co., Ltd., Rohm and Haas
Electronic Materials K.K., and Rohm and Haas
Electronic Materials LLC.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DuPont de Nemours, Inc., Rohm and Haas Electronic
Materials CMP Inc., Rohm and Haas Electronic
Materials CMP Asia Inc. (d/b/a Rohm and Haas
Electronic Materials CMP Asia Inc., Taiwan Branch
(U.S.A.)), Rohm and Haas Electronic Materials Asia-
Pacific Co., Ltd., Rohm and Haas Electronic Materials
K.K., and Rohm and Haas Electronic Materials LLC

          Plaintiffs (ITC Respondents),

v.

Cabot Microelectronics Corp.

          Defendants (ITC Complainant).

**Civil Action No. Misc. ____**

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR THE ISSUANCE OF A LETTER ROGATORY FOR INTERNATIONAL JUDICIAL ASSISTANCE REGARDING FUSO CHEMICAL CO., LTD.

DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and

Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia

Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.,

Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC

(collectively, "DuPont"), Respondents in Certain Chemical Mechanical Planarization Slurries

And Components Thereof, Investigation No. 337-TA-1204 (the "Investigation") before the U.S.

International Trade Commission ("ITC"),[1] hereby submit this memorandum of law in support of

their motion requesting this Court to issue, under its seal and signature, the attached Letter

---

[1] A copending district court litigation in the U.S. District Court for the District of Delaware, Cabot Microelectronics Corporation v. Dupont De Nemours, Inc. et al., C.A. No. 20-738-MN, has been stayed pending final resolution of the Investigation before the ITC.

Rogatory on behalf of DuPont to the Appropriate Judicial Authority of Japan to obtain documents, samples, and deposition testimony from the following foreign third party:

> Fuso Chemical Co., Ltd.
> Nissei Fushimi-machi Bldg.
> Shinkan, 3-10, Koraibashi 4-chome,
> Chuo-ku, Osaka 541-0043
> +81-6-6203-4771

On September 1, 2020, DuPont moved in the ITC for Administrative Law Judge David P. Shaw to recommend that this Court issue a Letter Rogatory on behalf of DuPont to obtain discovery from Fuso Chemical Co., Ltd. of Japan. The Administrative Law Judge Shaw, based on his knowledge of the facts in the Investigation, issued an order on September 16, 2020, recommending that this Court issue the attached Letter Rogatory on behalf of DuPont. *See* Exhibit 1 (Order No. 6).

The Letter Rogatory to Fuso Chemical Co., Ltd. ("Fuso") (attached as Exhibit 4), along with the required certified Japanese translation (attached as Exhibit 5) solicits the assistance of the Appropriate Judicial Authority of Japan to obtain certain documents, samples, and deposition testimony that are relevant to Investigation No. 337-TA-1204. This information cannot be obtained through other means. DuPont respectfully requests that the Court issue the attached Letter Rogatory.

The following documents are attached to this Memorandum:

Exhibit 1: Order No. 6 from Investigation No. 337-TA-1204, Granting DuPont's Motion Seeking Recommendation to the United States District Court for the District of Columbia to Issue a Letter of Request For International Judicial Assistance (September 16, 2020), signed by Administrative Law Judge David P. Shaw.

Exhibit 2: Non-party PMP Fermentation Products, Inc.'s Responses and Objections to Subpoena *Duce Tecum* and *Ad Testificandum* from Investigation No. 337-TA-1204, dated September 18, 2020.

Exhibit 3: Declaration of James H. Zinkhon, Jr. from Investigation No. 337-TA-1204, dated September 15, 2020.

Exhibit 4: Request for International Judicial Assistance (Letter Rogatory) by the U.S. District Court for the District of Columbia on behalf of DuPont.

     Attachment A: Documents and Samples to be Produced by Fuso.

     Attachment B: Topics for the Deposition of Fuso.

     Attachment C: Protective Order.

     Attachment D: ITC Complaint.

Exhibit 5: Certified Japanese Translation of Request for International Judicial Assistance (Letter Rogatory) by the U.S. District Court for the District of Columbia on behalf of DuPont, including Attachments A to D.

In support of this Motion, DuPont respectfully states as follows:

## I. The United States District Court for the District of Columbia has the Authority to Issue the Letter Rogatory

DuPont's request for use of a Letter Rogatory is an appropriate method of obtaining discovery from Fuso because Japan is not a signatory to the Hague Evidence Convention. *See* U.S. Department of State, Judicial Assistance Country Information for Japan, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Japan. html. As the State Department explains, "[r]equests to obtain evidence in Japan in civil and commercial matters are governed by the U.S. – Japan bilateral Consular Convention of 1963, customary international law and the practice of nations, applicable U.S. and local Japanese law

3

and regulations, and the Vienna Convention on Consular Relations (regarding transmittal of letters rogatory.)" *See id.* Under Article 5(j) of the Vienna Convention on Consular Relations, the use of Letters Rogatory is an appropriate method of requesting evidence located in a foreign state. *See* Vienna Convention on Consular Relations Art. 5(j), Apr. 24, 1963, 596 U.N.T.S. 261, 268-69 (1967), *available at* https://treaties.un.org/doc/Publication/UNTS/Volume%20596/volume-596-I-8638-English.pdf.

It is well established that the federal district courts have authority to issue a Letter Rogatory, seeking assistance from a foreign state to obtain evidence in a U.S. proceeding. *See* 28 U.S.C. §§ 1651, 1781(b)(2) (allowing the state department "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner"); Fed R. Civ. P. 28(b) (incorporating letters rogatory as a proper method for taking depositions abroad).

DuPont's request that the U.S. District Court for the District of Columbia issue the attached Letters Rogatory is, therefore, fully consistent with the applicable authority and precedent.

## II. Fuso is in Possession of Relevant Documents and Information in Japan.

DuPont believes that Fuso is in possession of substantial information highly relevant to the claims and defenses at issue in Investigation No. 337-TA-1204 before the ITC. Fuso has documents in its possession, custody, and control concerning the subject matter of Investigation No. 337-TA-1204, specifically, U.S. Patent No. 9,449,721 (the "Asserted Patent"). Fuso's information concerns colloidal silica abrasive particles as well as samples of these particles relating to, *inter alia*, the first sale or offer for sale, first public use, first disclosure, inventorship, relating to at least the validity of the Asserted Patent. DuPont also believes that Fuso is most knowledgeable about these same issues and thus, can provide relevant deposition testimony as well as produce relevant documents and samples.

4

Administrative Law Judge Shaw found that discovery from Fuso is warranted because it is clear that Fuso likely has this relevant information. *See* Exhibit 1. Each of the asserted claims of the Asserted Patent recites chemical mechanical planarization slurries comprising colloidal silica abrasive particles and properties of these particles. Some examples of the Asserted Patent are based on Fuso particles. Fuso has manufactured and continues to manufacture colloidal silica abrasive particles used in chemical mechanical planarization slurries. Before the ITC, Cabot seeks a permanent limited exclusion order against both chemical mechanical planarization slurries of the claims and the unclaimed colloidal silica abrasive particles thereof, including those of Fuso. Exhibit 4, Attachment D at ¶¶ 1.8, 5.3, 6.2.

**III.    The Letter Rogatory is Necessary to Obtain Relevant Documents and Information from Fuso that Are Unobtainable Without the Assistance of the Appropriate Judicial Authority of Japan, and Confirm to the Required Procedural Safeguards**

The attached Letter Rogatory should issue for several reasons. First, the information sought in the attached document requests and deposition topics are highly relevant to at least DuPont's invalidity positions with respect to the Asserted Patent in the ITC Investigation. However, Fuso is in Japan and, thus, outside the jurisdiction of the ITC's normal subpoena powers.

Second, DuPont's Letter Rogatory is narrowly tailored to elicit technical information and samples, which are only available from Fuso.

Third, DuPont has already exhausted all other means available to it to obtain the information sought by the Letter Rogatory. Because Cabot  represented that information concerning the colloidal silica abrasive particles is not within its possession, custody, or control, DuPont subpoenaed the U.S. subsidiary of Fuso, PMP Fermentation Products, Inc. ("PMP"). However, on September 18, 2020, counsel for PMP informed DuPont that it does not have this information. *See* Exhibit 2 (Response & Objections to Subpoena); see also, Exhibit 3 (Declaration

5

of PMP President). As such, the only remaining avenue to obtain said documents, samples, and deposition testimony is through Fuso Chemical Co., Ltd. in Japan.

Fourth, any documents and samples produced, and testimony provided pursuant to the Letter Rogatory will be subject to a Protective Order (Exhibit 4, Attachment C), ensuring that Fuso's interests are adequately protected.

DuPont is prepared to fully comply with the procedural requirements to obtain the requested documents, samples, and deposition testimony from Fuso, which include the following steps:

- Obtain a Letter Rogatory with the signature of a U.S. District Judge and the seal of the District Court;

- Include in the Letter Rogatory: a statement that a request for international judicial assistance is being made in the interests of justice; a brief synopsis of the case, including identification of the parties and the nature of the claim and relief sought to enable the foreign court to understand the issues involved; the type of case; the nature of the assistance required; name, address and other identifiers, such as corporate title, of the person overseas to be served or from whom evidence is to be compelled, documents to be served; a list of questions to be asked, where applicable, generally in the form of written interrogatories; a list of documents or other evidence to be produced; a statement from the requesting court expressing a willingness to provide similar assistance to judicial authorities of the receiving state; a statement that the requesting party is willing to reimburse the judicial authorities of the receiving state for costs incurred in executing the requesting court's letter rogatory. *See* U.S. Department of State, Preparation of Letters Rogatory, https://travel.state.gov/content/travel/en/legal/

6

travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-

Letters-Rogatory.html;

- The Letter Rogatory has been translated into Japanese; and

- Transmit the Letter Rogatory and accompanying documents to the Judicial Assistance

   Officer at the State Department for transmittal to the Appropriate Judicial Authority of

   Japan and eventual enforcement in a Japanese court. *Id.* The Japanese court will serve

   the requests on Fuso.

## IV.    Conclusion

For the reasons set forth above, DuPont respectfully requests that this Court grant DuPont's

motion and issue the concurrently filed Letter Rogatory to Japan.

Date: September 24, 2020                                  Respectfully submitted,

                                                          *[signature]*

                                                          Laura Masurovsky (D.C. Bar No. 385081)
                                                          Mareesa A. Frederick
                                                          Mark Feldstein
                                                          Anthony A. Hartmann
                                                          Andrew Renison
                                                          Olivia Martzahn
                                                          Paul Townsend
                                                          FINNEGAN, HENDERSON, FARABOW,
                                                           GARRETT & DUNNER, L.L.P.
                                                          901 New York Avenue, N.W.
                                                          Washington, D.C. 20001
                                                          Telephone: (202) 408-4000
                                                          Facsimile: (202) 408-4400

                                                          Charles Lipsey
                                                          FINNEGAN, HENDERSON, FARABOW,
                                                           GARRETT & DUNNER, L.L.P.
                                                          1875 Explorer Street
                                                          Suite 800
                                                          Reston, VA 20190
                                                          Telephone: (571) 203-2700
                                                          Facsimile: (571) 203-2777

7

*Counsel for the Respondents DuPont de
Nemours, Inc., Rohm and Haas Electronic
Materials CMP Inc., Rohm and Haas Electronic
Materials CMP Asia Inc. (d/b/a Rohm and Haas
Electronic Materials CMP Asia Inc., Taiwan
Branch (U.S.A.)), Rohm and Haas Electronic
Materials Asia-Pacific Co., Ltd., Rohm and
Haas Electronic Materials K.K., and Rohm and
Haas Electronic Materials LLC.*

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DuPont de Nemours, Inc., Rohm and Haas Electronic
Materials CMP Inc., Rohm and Haas Electronic
Materials CMP Asia Inc. (d/b/a Rohm and Haas
Electronic Materials CMP Asia Inc., Taiwan Branch
(U.S.A.)), Rohm and Haas Electronic Materials Asia-
Pacific Co., Ltd., Rohm and Haas Electronic Materials
K.K., and Rohm and Haas Electronic Materials LLC

                 Plaintiffs (ITC Respondents),

    v.

Cabot Microelectronics Corp.

                 Defendants (ITC Complainant).

**Civil Action No. Misc. \_\_\_\_\_**

## REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE
## (LETTER ROGATORY)

The United States District Court for the District of Columbia presents its compliments to

the Appropriate Judicial Authority of Japan, and requests international judicial assistance to obtain

evidence to be used in an administrative proceeding before the United States International Trade

Commission in Investigation No. 337-TA-1204, Certain Chemical Mechanical Planarization

Slurries and Components Thereof. The trial in that matter is tentatively scheduled to begin in

February 2021. This Court has authority to submit this Letter Rogatory under 28 U.S.C. §§ 1651

and 1781(b)(2).

The Court requests the international judicial assistance described herein as necessary in the

interests of justice. Specifically, this Court requests the assistance of the Appropriate Judicial

Authority of Japan, by the proper and usual process of Japan's courts, to compel the below-named

third-party to produce the documents and samples requested in **Attachment A** and to be examined under oath through the person most knowledgeable about the topics in **Attachment B**:

> Fuso Chemical Co., Ltd.
> Nissei Fushimi-machi Bldg.
> Shinkan, 3-10, Koraibashi 4-chome,
> Chuo-ku, Osaka 541-0043
> +81-6-6203-4771

Based on representations made by Defendant/Complainant Cabot Microelectronics Corporation ("Cabot"), this Court believes that justice cannot be served between the parties in the above-captioned matter unless the evidence requested herein is made available by the Appropriate Judicial Authority of Japan for use in an investigation being conducted by the International Trade Commission into the validity of Cabot's U.S. Patent No. 9,499,721. Cabot asserts that Plaintiffs/Respondents DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Inc., Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC (collectively, "DuPont") infringe claims by importing slurries that comprise "colloidal silica abrasive particles" and by importing "colloidal silica abrasive particles," including those alleged to be made by the Fuso Chemical Co., Ltd. **Attachment D** (Complaint) at ¶¶ 5.3, 6.2. Cabot seeks an order barring entry of Accused Products and colloidal silica abrasive particles, such as of the Fuso Chemical Co., Ltd. *Id.* at ¶¶ 1.8, 5.3.1.8. 6.2. This court believes that Fuso Chemical Co., Ltd., as a manufacturer of colloidal silica abrasive particles, is in possession of unique documents and things and has unique knowledge regarding material facts that are relevant for the proper prosecution of the above-referenced administrative proceeding, and cannot be obtained without the assistance of the Appropriate Judicial Authority of Japan.

2

## I.    FACTS

The name of the proceeding for which the discovery requested is *In the Matter of Certain*

*Chemical Mechanical Planarization Slurries and Components Thereof*, Investigation No. 337-TA-

1204 ("the Investigation"). The Defendant is the Complainant in the Investigation:

> Cabot Microelectronic Corporation
> 870 N. Commons Drive
> Aurora, IL 60504 U.S.A.

The Plaintiffs are Respondents in the Investigation:

> DuPont de Nemours, Inc.
> 974 Center Road, Building 730
> Wilmington, DE 19805-1269 U.S.A.

> Rohm and Haas Electronic Materials CMP Inc.
> 451 Bellevue Road
> Newark, DE 19713-3431 U.S.A.

> Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas
> Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.))
> 4F., NO.6, LN. 280, Zhongshan N. Rd.
> Dayuan Dist., Taoyuan City 337017 Taiwan

> Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd.
> 6, Kesi 2nd Rd.
> Chunan, Miaoli 350401 Taiwan

> Rohm and Haas Electronic Materials K.K.
> Sanno Park Tower, 2-11-1
> Nagata-cho, Chiyoda-ku,
> Tokyo 100-0014 Japan

> Rohm and Haas Electronic Materials LLC
> 455 Forest Street
> Marlborough, MA 01752-3001 U.S.A.

Other parties to the Investigation include:

> Thomas Chen
> Office of Unfair Import Investigations
> United States International Trade Commission
> 500 E Street SW

Washington, DC 20436 U.S.A.

The Investigation is an administrative proceeding being conducted by the United States Trade Commission ("the ITC") under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 based on a Complaint filed by Cabot on June 1, 2020 (**Attachment D**). The Tariff Act of 1930 prohibits importing goods into the United States for which unfair methods of competition or unfair acts have been used. Cabot's Complaint alleges infringement of U.S. Patent No. 9,499,721 ("the Asserted Patent") by DuPont. Cabot seeks an exclusion order barring the importation of accused products that are found to infringe the Asserted Patent and the components thereof, such as Fuso's colloidal silica abrasive particles. **Attachment D** at ¶¶ 1.8, 5.3, 6.2, 7.1-7.6. The accused products are characterized generally as chemical mechanical planarization compositions formulated with certain colloidal silica abrasive particles. *Id.*

The ITC instituted the Investigation on July 1, 2020, with publication of a Notice of Investigation in the Federal Register shortly thereafter. Upon institution, the Investigation was assigned to Administrative Law Judge David P. Shaw to preside over pre-hearing matters, conduct an evidentiary hearing, and issue an initial determination on the merits. The initial and recommended determinations are subject to possible review by the ITC, with a right to appeal to the United States Court of Appeals for the Federal Circuit.

DuPont seeks foreign discovery from Fuso because it is the manufacturer of colloidal silica abrasive particles for use in slurries, which Cabot alleges have been imported into the United States. Fuso was also the source of colloidal silica abrasive particles described in the Examples of the Asserted Patent. DuPont believes Fuso possesses unique documents, samples, and information concerning the colloidal silica abrasive particles relating to, *inter alia*, the first sale or offer for

4

sale, first public use, first disclosure, inventorship, and numerous other issues relating to at least
the validity of the Asserted Patent.

## II.    DISCOVERY REQUESTED

It is respectfully requested that the Appropriate Judicial Authority of Japan compel Fuso
to produce copies of documents and samples, as described in **Attachment A**. It is additionally
requested that the Appropriate Judicial Authority of Japan compel Fuso to make available for
examination under oath the person most knowledgeable to provide testimony regarding deposition
topics set forth in **Attachment B**. The requested documents and deposition testimony will provide
important evidence related to the Asserted Patent. **Attachment A** and **Attachment B** also include
certified Japanese translations thereof. The Complaint, including a certified Japanese translation
thereof, is **Attachment D** to this Letter Rogatory.

This Court understands the confidential nature of the documents and testimony requested
from Fuso. There is a protective order in this case to protect the confidentiality of any documents
that Fuso produces and testimony that Fuso provides. The protective order, including a certified
Japanese translation thereof, is **Attachment C** to this Letter Rogatory.

## III.   SPECIAL METHODS AND PROCEDURES REQUESTED TO BE FOLLOWED

To the extent permitted by the applicable laws of Japan, this Court respectfully requests
that the Appropriate Judicial Authority of Japan require that the following methods and
procedures be followed in connection with the deposition and document production requested
herein.

With regard to the production of documents identified in **Attachment A**, in the event any
document called for by these documents is withheld in whole or in part on the basis of any
applicable privilege under Japanese law, it is requested that Fuso furnish a privilege log that

5

identifies each document for which any privilege is claimed and that provides, with respect to each document, the following information:

1. The date the document was created and last modified;

2. The subject matter of the document;

3. The person(s) who prepared the document;

4. All persons to whom the document was distributed, shown, or explained;

5. The document's present custodian; and

6. The nature of the privilege asserted.

Additionally, it is respectfully requested that each document described in **Attachment A** be produced or provided for inspection and copying in its entirety, without abbreviation or redaction, as maintained in the ordinary course of business, at least ten (10) days before the examination.

With regard to the deposition, it is respectfully requested that an examiner or other appropriate judicial officer of Japan, or consular officer at the United States embassy and/or consulate in Japan direct that the witness be duly sworn in accordance with the applicable procedures of Japan, and that the testimony be taken and transcribed by a qualified court reporter and videographer chosen by DuPont's representatives.

To the extent permitted by the applicable laws of Japan, this Court respectfully requests that the Appropriate Judicial Authority of Japan require that the following methods and procedures be followed in connection with the examination and document production requested herein:

1. Fuso be required to designate one or more knowledgeable officers, directors, managing agents, employees, or other person(s) to testify on behalf of Fuso;

6

2.  Fuso be required to identify the person or persons who will testify pursuant to this Request and the matter or matters about which each person will testify;

3.  The examination be conducted orally;

4.  The parties' legal representative or their designees (such as their attorneys), interpreters, and an Official Court Reporter and Videographer be permitted to be present during the examination;

5.  There be excluded from the examination all persons other than those individuals permitted under bullet 4 and any official of the court of Japan or staff of the United States embassy and/or consulate required to be present during such proceedings;

6.  The Official Court Reporter and Videographer be permitted to record verbatim the examination;

7.  The Official Court Reporter and Videographer be permitted to record the examinations by audiovisual means;

8.  The attorneys from the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, acting as legal representatives of DuPont, or their designees, be permitted to conduct the examination;

9.  The person conducting the examination be permitted to: (a) ask questions regarding the topics in **Attachment B**;

10. Ten and a half (10.5) hours be allotted for the examination of each witness who requires a translator, and seven (7) hours be allotted for the examination of each English speaking witness;

11. The witnesses be examined as soon as practicable; and

7

12.    The documents be provided by Fuso no later than ten business days before the

deposition at a convenient location to be determined.

Finally, it is requested that the individuals identified below be furnished as soon as

practically possible with a copy of the executed Letter Rogatory and be informed as soon as

practicable of the time and place for examination of the witnesses.

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

## III.    URGENCY

A response is requested by January 22, 2021, or as soon as practicable. The reason for

such urgency is that under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337,

investigations in the ITC must be completed "at the earliest practicable time." Th The hearing for

this investigation is set to begin on February 3, 2021. Expedient treatment of this request will

allow the parties and the witnesses to arrange a mutually agreeable date for testimony and avoid

disruption to the witnesses' business or personal plans.

## IV.    RECIPROCITY

The United States District Court for the District of Columbia is willing to provide similar

assistance to judicial tribunals of Japan.

## V.    REIMBURSEMENT FOR COSTS

To the extent that there are expenses associated with providing assistance in response to

this Letter Rogatory, the fees and costs incurred will be borne by Respondents. Requests for

reimbursement may be submitted to Respondents' counsel via email to: FH-DuPont-

ITC@finnegan.com or via U.S. mail to:

Mareesa A. Frederick
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

| Date of Request: | Signature and Seal of Requesting Authority: |
|---|---|
| 8th of October 2020 | [signature]<br><br>The Honorable Ketanji Brown Jackson<br>United States District Judge<br>United States District Court for the District of Columbia<br>Washington, D.C., United States of America |

# EXHIBIT 3

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of** ) | |
| ) | |
| **CERTAIN CHEMICAL MECHANICAL** ) | **Investigation No. 337-TA-1204** |
| **PLANARIZATION SLURRIES AND** ) | |
| **COMPONENTS THEREOF** ) | |
| ) | |

## RESPONDENTS' PETITION FOR REVIEW
## OF THE FINAL INITIAL DETERMINATION

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

**Table of Contents**

I.     Introduction ................................................................................................1

II.    Statement of Issues for Which Review is Sought ............................................1

III.   Standard of Review ........................................................................................2

IV.    Background ....................................................................................................2

       A.     The Parties ........................................................................................2

       B.     U.S. Patent No. 9,499,721 and Overview of the Technology ................2

       C.     Accused Products ...............................................................................3

V.     Claim Construction .......................................................................................3

       A.     The ID Erred in Construing "Wherein the Colloidal Silica Particles Have a
              Permanent Positive Charge of at Least [15 or 13] mV" (Claims 1, 19-21,
              26, 28, 38) ..........................................................................................3

              1.     Background ..............................................................................3

              2.     The ID Erred in Identifying the Source of the Claimed Minimum
                     Positive Charge ........................................................................5

       B.     The ID Erred in Construing The Negative Limitation of Claim 1 ....................17

       C.     The ID Erred By Failing to Find the Claim Preamble Limiting ("A
              chemical mechanical polishing composition comprising" (Claims 1, 26)) ..........18

VI.    The ID Erred in Asserting ITC Jurisdiction Based on Satisfaction of the
       Importation Requirement ...............................................................................19

       A.     The ID Erred as a Matter of Fact By Failing to Take into Account the
              Extent and Nature of DuPont's Domestic Activities ...........................19

       B.     The ID Erred in Concluding that the Shipments of Record Constituted an
              "Importation" Recognized by Section 337 ..........................................20

              1.     Return of Optiplane™ 2300 for ██████ ...........................................21

              2.     Importation of Particles Manufactured and Sold by Third-Party.............24

VII.   The ID's Infringement Analysis Is Clearly Erroneous ....................................27

       A.     The ID Should Have Found the Accused Products Do Not Infringe Under
              DuPont's Claim Construction..............................................................27

i

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER

B.    The ID Improperly Shifted the Burden of Proof to Respondents .........................28

C.    The ID Failed to Consider the Accused Products Separately..............................28

D.    Infringement Testing..............................................................................................30

E.    The ID Erred In Finding That DuPont Had The Requisite Knowledge For Indirect Infringement ..........................................................................................35

F.    The ID Further Erred In Finding That DuPont Contributed to Infringement .......39

VIII.   The ID Erred in Finding the DI Technical Prong Met ....................................................41

A.    The ID Erred in Concluding that the DI Products Practice the PPC Limitations Under DuPont's Claim Construction ................................................42

B.    The ID Erred In Finding that the DI Products Meet the Negative Limitation .............................................................................................................43

C.    The ID Erred in Finding that the DI Products Meet the "Aminosilane" Limitation .............................................................................................................43

IX.   The ID Erred in Finding Written Description and Enablement ......................................44

A.    The "Chemical Species" Limitation .....................................................................44

1.    The ID should have found claims 14 and 36 invalid for lack of written description and enablement..........................................................45

2.    The ID should have found the broader claims invalid for lack of written description and enablement..........................................................52

B.    The "Permanent Positive Charge" Limitation ......................................................58

C.    The "Aminosilane" Limitation .............................................................................60

X.    The ID Erred in finding Claims Definite .......................................................................62

A.    The ID Erred in Finding "Permanent Positive Charge" Definite .........................62

1.    The Patent Fails to Inform a POSA Which Device to Use......................64

2.    The Patent Fails to Inform a POSA Which Calculation Theory to Use.........................................................................................................67

B.    ID's Construction Leads to Indefiniteness of "Permanent Positive Charge"........70

C.    The ID Erred in Finding the "Removal Rate" Method Claims Definite..............70

ii

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

XI.   The ID Erred in Finding Claims Nonobvious ................................................................72

    A.    The ID Erred by Treating Fuso's Particle Sales As Not Being Prior Art ............73

    B.    The ID Erred Regarding Inherency.......................................................................77

    C.    The ID Made Erroneous Findings About The Prior Art ......................................78

    D.    Motivation to Combine and A Reasonable Expectation of Success....................80

    E.    Further Errors in Obviousness Analysis As Applied ...........................................83

        1.    [1c] and [26c] - "a chemical species incorporated in the colloidal silica abrasive particles internal to an outer surface thereof wherein the chemical species is a nitrogen containing compound or a phosphorus containing compound" an [1f] "wherein the chemical species is not an aminosilane or a phosphonium silane".........................84

        2.    [1d] and [27] - "a pH range from about 3.5 to about 6"...........................87

        3.    [1e] and [26e] and [28] "the colloidal silica particles have a permanent positive charge of at least [15 or 13 mV]".............................88

        4.    Claim 3 - buffering agent having a pKA from about 3.5 to about 5.5 ........................................................................................................89

        5.    Claims 4-5, 9, 29 and 34 - particle size ...................................................90

        6.    Claims 6 and 31 - weight percent of silica...............................................90

        7.    Claims 7-8 and 32-33 - aggregated primary particles ..............................90

        8.    Claims 10-11, 13-14 and 35-36 - chemical species..................................91

        9.    Claims 15-16 - core shell .........................................................................91

        10.    Claim 17 - conductivity ............................................................................91

        11.    Claim 18 - density ....................................................................................92

        12.    Claims 19-21, 23 and 38-39 - combination of elements...........................92

        13.    Claim 24 - silicon polishing accelerator ..................................................92

        14.    Claim 37 - bonded with silanol group ......................................................92

        15.    Claims 40-44 and 46 - method claims ......................................................93

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

F.    The ID Erred In Finding a Nexus Between the '721 Patent and Purported Objective Indicia of Nonobviousness ................................................................93

XII.    The ID Erred in Finding proper Inventorship .................................................95

XIII.    The ID Erred in Recommending a Remedy and Bond ....................................98

    A.    Expansive Remedial Orders Are Unwarranted Here ...........................98

    B.    The ID Erred in Recommending the Bond at 100% ...........................98

XIV.    Conclusion .....................................................................................................100

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

## I.    INTRODUCTION

Pursuant to 19 C.F.R. § 210.43, DuPont Respondents petition for review of the Final Initial Determination finding a Section 337 violation. The deadline for petitions had been extended to July 29, 2021. EDIS Doc. ID 747104. This petition is accompanied by a summary of the petition.

## II.    STATEMENT OF ISSUES FOR WHICH REVIEW IS SOUGHT

The complaint alleged that DuPont infringed U.S. Patent No. 9,499,721 ("the '721 patent") by importing, selling for importation, and/or selling after importation into the U.S. Optiplane™ CMP slurries and components thereof. The ID's finding of violation is erroneous.

As detailed more fully in the pages below, DuPont seeks review and reversal of only the following specific issues because they are based on clearly erroneous findings of fact, erroneous legal conclusions and application of law, and/or negatively affect Commission policy:

- The finding of jurisdiction, based on importation of a domestically manufactured Accused Product and a component thereof.

- The claim construction of the terms "wherein the colloidal silica particles have a permanent positive charge of at least [15 or 13] mV" and "wherein the [internal nitrogen] chemical species is not an aminosilane or a phosphonium silane."

- The finding that the preamble ("A chemical mechanical polishing composition comprising") is not limiting.

- The finding that DuPont directly and/or indirectly infringes claims 1, 3-4, 6, 10-11, 13-14, 17-20, 24, 26-29, 31, 35-37, 39-44, and 46 ("Asserted Claims").

- The finding that Complainant satisfies the technical prong of the DI requirement.

- The finding that the claims are not obvious in view of prior art particles that had been on sale, or that objective evidence weighs against a finding of obviousness.

1

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

- The finding that the claims have written description and enabling support for the "chemical species," "permanent positive charge," and "aminosilane" limitations.

- The finding that the claims are not indefinite for "permanent positive charge" and "removal rate" limitations.

- The finding that the '721 patent is not invalid for improper inventorship.

- To the extent that the Commission finds that an Exclusion Order should issue, DuPont seeks review of the ID's determination on bond.

## III.    STANDARD OF REVIEW

Pursuant to 19 C.F.R. § 210.43(b)(1), the Commission may review an ID if it concludes: "(i) That a finding or conclusion of material fact is clearly erroneous; (ii) That a legal conclusion is erroneous, without governing precedent, rule or law, or constitutes an abuse of discretion; or (iii) That the determination is one affecting Commission policy." A petition will be granted review "if it appears that an error or abuse of the type described in paragraph (b)(1) of this section is present or if the petition raises a policy matter connected with the initial determination, which the Commission thinks it necessary or appropriate to address." 19 C.F.R. § 210.43(d)(2).

## IV.    BACKGROUND

### A.    The Parties

Complainant CMC is a manufacturer of chemical mechanical planarization ("CMP") slurries. DuPont is a global leader in the CMP slurry market and supplies its domestically made slurries to major domestic and international players in the semiconductor manufacturing industry.

### B.    U.S. Patent No. 9,499,721 and Overview of the Technology

*See* EDIS Doc ID 720513 (Joint Tech Stip.). CMP is used to manufacture semiconductor chips, smoothing and flattening layer surfaces by removing excess, unevenly-surfaced material

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO PROTECTIVE ORDER*

pad made of polymer materials and slurry composed of nano-scale abrasives, **have large influences** on the material removal rate."), 20 ("but also other important input parameters including the wafer hardness, pad hardness, pad roughness, abrasive size and abrasive geometry.").

Rather the ALJ's findings rely on testimony that a POSA could determine RR "of a given CMP process" and that DuPont makes RR determinations. ID at 233 (citing CX-0229C (Dauskardt RWS) at QA 864-70). However, that is legal error, as a limitation may be indefinite "even though the patentee's expert … testified that someone skilled in the art could determine which method was the most appropriate." *Dow Chem.*, 803 F.3d at 635. Notably, the ALJ cited no evidence that even suggests that different skilled artisans, including the parties, determine RR under the same conditions, let alone obtain comparable RR values. Rather, like *Teva*'s molecular weight limit, there is no dispute that the claimed RR can be "calculated in different way[s] and [each] would typically yield a different result for a given [] sample." *Teva,* 789 F.3d at 1338, 1341. Given the impact of these factors on RR, they are not minor details or inconsequential source of imprecision. *C.f., Koninklijke Philips N.V. v. Zoll Med. Corp.,* 656 F. App'x 504, 526 (Fed. Cir. 2016).

Accordingly, the ID's finding that claims 40-44 are definite is not supported by the facts or the law and should be reversed.

## XI.    THE ID ERRED IN FINDING CLAIMS NONOBVIOUS

Under the ALJ's broad claim constructions, the asserted claims would have been obvious under 35 U.S.C. § 103 through the combination of the '073 Publication and Fuso ██, BS-2H, and HL-2 particles, and the ALJ erred in finding otherwise.  These particles were commercially contracted for and sold by Fuso long before the '721 patent's earliest effective filing date, necessarily putting them in the prior art, contrary to the ALJ's legally erroneous contrary conclusion.  That these particles contained an internal nitrogen species is confirmed by ██

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

███████, by █████ admission for BS-2H, by ██████████████ and documents about internal aminosilane in ████, and by █████ not contesting the presence of ██████████ n HL-2, all fully consistent with the ALJ's finding that catalyst will be trapped in colloidal silica particles prepared by the prior art "Stober" method. The prior art further taught aminosilane coupling agents bonded to such particles to obtain 20-30 mV positively charged particles for use in acidic CMP slurries. (*See*, *e.g.*, RX-0230 ('073 Publication) at ¶¶ [0015], [0018], [0058]-[0060]; RX-0232 (JP '910) at Tbl. 1) This expedient was old and obvious, and its application to Fuso BS-2H and HL-2 particles would have been obvious. Another obvious use with the '073 Publication would have been Fuso particle █████, which has nitrogen-containing aminosilane both internal and bonded to its surface. Showing the permanence of such bonds, █████ was used in "Control" Polishing Composition 10B of the patent to attain "a permanent positive charge of about 41 mV." (JX-0001 ('721 patent) at col. 3:52-53) For these reasons and as explained below, the Commission should review the ALJ's findings that the asserted claims would not have been obvious.

### A.    The ID Erred by Treating Fuso's Particle Sales As Not Being Prior Art

The ALJ erred by finding that Fuso particles █████ to █████ were not in the prior art because they were allegedly ██████████ ID at 182-88. The Supreme Court held in *Helsinn* that under the AIA, the "sale of an invention to a third party who is obligated to keep the invention confidential can qualify as prior art under § 102(a)." *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.,* 139 S. Ct. 628, 634 (2019). *Helsinn* confirmed pre-AIA law, which had similarly defined the on-sale bar. *See In re Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985) ("[S]ales or offers by one person of a claimed invention will bar another from obtaining a patent if the sale or offer to sell is made over a year before the latter's filing date."(citations omitted)). The Court noted that its two-pronged test under *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55 (1998) for determining if an invention was

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**
**SUBJECT TO PROTECTIVE ORDER**

on-sale—whether it was the subject of a commercial offer for sale and ready for patenting—also had not "require[ed] that the sale make the details of the invention available to the public." *Helsinn*, 139 S. Ct. at 633. Neither confidentiality obligations nor ██████████████████████ with Fuso's particles █████████ can override their on-sale, prior art status as a matter of law.

The ALJ further erred on the facts, finding that particles sold by Fuso, ████████ by █████, and cited in DuPont's obviousness combinations were "███████████████████████████ ████████████████████████████████████████. There is no evidence to the contrary." ID at 183. In actuality, no Fuso witness so testified, and DuPont cited CMC's █████████████ with ████, as well as CMC's internal records documenting ███████████████ ████████████████████████████, as proof of particle sales. The Fuso PL-Cation particles (PL-3C and/or ██████) were being promoted by Fuso to ███████████████ JX-0296C (Fuso Pres.) at 22; CX-0218C (Fuso Pres.) at 28), as were the HL-2 and BS-2H particles (JX-0293C (Fuso Pres.) at 8-10 and 14-16; RX-0522C (Fuso High Purity Elec. Mat'ls) at 40-43). The sales by Fuso were in the ordinary course of its business of offering its wares to, *inter alia*, CMP manufacturers. The cited evidence on this record shows that Fuso conducted its regular business activities in the CMP space in confidence, which was not a reflection that the offered products were experimental in Fuso's hands.

The underlying ███████████ agreement recites all the attributes of a commercial offer for sale, including (1) stating that "████████████████████████████████" certain "colloidal silica particles," (2) indicating that these particles would be supplied based on specifications agreed upon by the parties, (3) identifying "purchase orders" as the method of placing orders, (4) specifying that prices would be agreed to on a yearly basis, and (5) requiring payment terms to be "██████████████████████████████████████." RX-

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

0039C (First Am. ▆▆▆ Agmt.) at 2-3; *see also Merck & Cie v. Watson Labs., Inc.*, 822 F.3d 1347, 1350 (Fed. Cir. 2016) (commercial offers for sale should be analyzed under general contract law principles). For ▆▆▆▆▆▆▆▆▆▆ of Fuso particles BS-2H and ▆▆▆, ▆▆ also amended the ▆▆ agreement on ▆▆▆▆, to obtain ▆▆▆▆ ▆▆▆▆ over those products, with the amendment reciting ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆. *See* RX-0110C (First Am. ▆▆▆ Agmt., Am. 1) at 1-5. Nonetheless, the ALJ mistakenly found that confidentiality ▆▆▆▆ between ▆▆ and ▆▆ "support[] the samples' ▆▆▆▆" and "▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆," the Fuso particles "are [not] prior art." ID at 183.

The ALJ's particle-by-particle analysis failed to rebut these on-sale events and clearly erred in reviewing the record, including by relying on a mistaken timeline date, finding that "Fuso's confidential ▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆.' *See* JX-0080C (Fuso, dated May 13, 2015) at 20281; *see also* CX-0218 (Fuso Presentation dated May 25, 2012.) at 92053." ID at 184. Cited page 20281 of JX-0080C contains a ▆▆▆ bearing a Fuso copyright date ***from 2012*** that cannot describe the status of ▆▆ particles in ▆▆ and ▆▆. Nor can Fuso Presentation CX-0218, also from 2012. The ALJ repeated these same errors when analyzing ▆▆ and HL-2 particles. ID at 186-87, 189.

The ALJ confused the ▆▆▆▆ of particles ▆▆▆▆ by ▆▆ with the Fuso particles themselves always being ▆▆▆▆ ID at 184. For instance, CX-0257C describes the ▆▆ of ▆▆▆▆ particles versus particles from ▆▆▆▆ of ▆▆, and CX-0254C compares ▆▆ slurry ▆▆▆▆ for lots of ▆▆ originating in two different factories, using ▆▆▆▆ as a control. CX-0257C (▆▆ Emails) at 3; CX-0254C (Size Study) at 2, 10. Also, "[i]t is settled law that the experimental sale exception does not

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

apply to experiments performed with respect to nonclaimed features of an invention," *In re Theis*, 610 F.2d 786, 793 (C.C.P.A. 1979), yet the ALJ cited no evidence of ███ to Fuso BS-2H particles, or to any other Fuso particles, involving the claimed features of the '721 patent. *See* CX-0227C (Grumbine RWS) at QA 21 (███ changed the structure of ███ particles "█████████ ██████████████").

CMC's documents also undercut the ALJ's conclusion that all ██████ of BS-2H were anything short of commercial sales. Fuso distinguished when it was providing █████████, versus when it expected ████████████████. *Compare* CX-0257C (CMC Emails) at 2 ("████████████" ██████████████████████.") and 4 ("█████ ████████████████████████████████████") *with id.* at 3 ("████████████████████████████████████████ ████████████████████"). Confirming their commercial status, ████████ █ a total of ████████████████ for ██████████ of ███ particles (████████████ ████████████████), with a ████████████████ all prior to ██████████. *See* RX-1436C (Forecast); RX-0032C (Purchase Volume & Forecast) at "List". This pricing of between █████ and █████ aligns with the ████████████ pursuant to ████████ ████████████████ (RX-0110C (First Am. ███ Agmt., Am. 1) at 2), contradicting the ALJ's finding that "[a]ny [████████████] did not reflect commercial marketing or commercial value" (ID at 184). *See also* RX-1436C (Forecast); RX-0032C (Purchase Volume & Forecast) at "List" (showing comparable PL-2L commercial pricing of █████).

For █████ particles, the result is no different. Under the ████████████, █████████ █████████, █ was a "████████████████████████████████████ ████████████████████" JX-0111C (Agmt) at 4. CMC █████ ███ lot █████ of

***CONTAINS CONFIDENTIAL BUSINESS INFORMATION***
***SUBJECT TO PROTECTIVE ORDER***

 particles in ███████, and ████ sent a ██████████ of it to CMC that month. CX-0269C (CMC Emails) at 2. The documents cited in the ID, such as CX-0250C (New Particle Perf.), CX-0252C (CMC Emails), and CX-0253C (CMC Emails) (*see* ID at 186), discuss analysis of other ██████████ of ████, not of the ████ material. CMC ████ a total of ██████ (over ██████) for ████████ of ████ particles (██████████ and including ██████ ██████, with an ██████████ of ████. *See* RX-1436C (Forecast); RX-0032C (Purchase Vol. & Forecast) at "List". This compares with pricing of between ██████ and ██████ for ██ particles for ████████████ under the ████████████. *See* RX-0110C (First Am. ████ Agmt., Am. 1) at 2. The ALJ's finding that "Any ██████████████████ by CMC did not reflect commercial marketing or commercial value" (ID at 186-87) is clearly erroneous.

For HL-2 particles, the ALJ also incorrectly found that ██████ ████ to ████ were ██████████. ID at 187-88. First, the evidence shows that Fuso had been promoting HL-2 since at least ████, years before the ██████████. *See* RX-0522C at 40, 43, 46. Moreover, inventor Grumbine testified that CMC "████████████████████████████████████████" CX-0227C (Grumbine RWS) at QA23. While ██████████ ████ HL-2 particles than the others, CMC still ██████████████ for ████████ of HL-2 particles ██████████), with an ██████████████. *See* RX-1436C (Forecast); RX-0032C (Purchase Vol. & Frcst).

**B.    The ID Erred Regarding Inherency**

The ALJ criticized DuPont's obviousness analysis for reliance on internal CMC testing and documents about the properties of particles purchased from Fuso: "None of these confidential and 'internal' documents are part of the 'scope and content of the prior art' upon which the obviousness analysis must be based because they were not available to public." ID at 173.

*CONTAINS CONFIDENTIAL BUSINESS INFORMATION*
*SUBJECT TO PROTECTIVE ORDER*

Date: July 29, 2021

Respectfully submitted,

*/s/ Mareesa A. Frederick*

Mareesa A. Frederick
Mark Feldstein
Eric Fues
Anthony Hartmann
Andrew Renison
Paul Townsend
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Charles Lipsey
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1875 Explorer Street, Suite 800
Reston, VA 20190
Telephone: (571) 203-2700
Facsimile: (571) 203-2777

*Counsel for the Respondents DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials CMP Asia Inc. (d/b/a Rohm and Haas Electronic Materials CMP Asia Inc., Taiwan Branch (U.S.A.)), Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC.*

**CERTAIN CHEMICAL MECHANICAL PLANARIZATION SLURRIES AND COMPONENTS THEREOF**

**Inv. No. 337-TA-1204**

## CERTIFICATE OF SERVICE

I, Isabella P. Downey, hereby certify that on July 29, 2021, copies of the foregoing were filed with and served upon the following as indicated:

| | |
|---|---|
| **The Honorable Lisa R. Barton**<br>Secretary, Office of the Secretary<br>U.S. INTERNATIONAL TRADE COMMISSION<br>500 E Street, S.W., Room 112-F<br>Washington, DC 20436<br>(202) 205-2000 | ☐ Via First Class Mail<br>☐ Via Courier (FedEx)<br>☐ Via Hand Delivery<br>☐ Via Email (PDF File)<br>☒ Via EDIS |
| **Pyong Yoon**<br>Attorney Advisor<br>U.S. INTERNATIONAL TRADE COMMISSION<br>500 E Street, S.W.<br>Washington, DC 20436<br>(202) 205-2000<br>Pyong.Yoon@usitc.gov<br>Shaw337@usitc.gov | ☐ Via First Class Mail<br>☐ Via Courier (FedEx)<br>☐ Via Hand Delivery<br>☒ Via Email (PDF File)<br>☐ Via EDIS |
| **Thomas Chen**<br>Office of Unfair Import Investigations (OUII)<br>U.S. INTERNATIONAL TRADE COMMISSION<br>500 E Street, S.W., Suite 401<br>Washington, DC 20436<br>(202) 205-2000<br>Thomas.Chen@usitc.gov | ☐ Via First Class Mail<br>☐ Via Courier (FedEx)<br>☐ Via Hand Delivery<br>☒ Via Email (PDF File)<br>☐ Via EDIS |
| **Counsel for Complainant CMC Materials Inc.**<br><br>Robert C. Scheinfeld<br>Robert L. Maier<br>Margaret M. Welsh<br>Frank Zhu<br>**BAKER BOTTS L.L.P.**<br>30 Rockefeller Plaza<br>New York, NY 10112<br>Telephone: 212-408-2500<br><br>Lisa M. Kattan<br>Katharine M. Burke<br>Thomas C. Martin<br>**BAKER BOTTS L.L.P.**<br>700 K Street, N.W.<br>Washington, DC 20001<br>Telephone: 202-639-7701<br><br>via  DLCMCITC@BakerBotts.com | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Via Overnight Courier<br>☒ Via Electronic Mail<br>☐ Via EDIS |

*/s/ Isabella P. Downey*
Isabella P. Downey
ITC Litigation Legal Assistant
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000 (Telephone)
(202) 408-4400 (Facsimile)
isabella.downey@finnegan.com

# EXHIBIT 4

CONFIDENTIAL VERSION

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### Washington, D.C.

In the Matter of

**CERTAIN CHEMICAL MECHANICAL PLANARIZATION SLURRIES AND COMPONENTS THEREOF**

**Investigation No. 337-TA-1204**

## COMMISSION OPINION

### Table of Contents

I. Introduction ........................................................................................................... 3

II. Background ............................................................................................................. 3

    A. Procedural History ............................................................................................. 3

    B. Overview of the Technology .............................................................................. 7

    C. The Accused Products ........................................................................................ 8

    D. Domestic Industry Products ............................................................................... 9

III. Analysis of Issues Under Review .......................................................................... 9

    A. Importation ......................................................................................................... 9

        1. Complete Optiplane™ 2300 and 2600 Slurries ............................................ 10

        2. BS-3 Particle (Component) ........................................................................... 11

    B. Infringement ....................................................................................................... 13

        1. Findings Related to Violation Based on Direct Infringement ........................ 13

        2. Findings Related to Violation Based on Indirect Infringement ..................... 15

    C. Economic Prong Requirement of Domestic Industry ........................................ 19

    D. Conclusion Regarding Violation ........................................................................ 21

IV. REMEDY ............................................................................................................... 21

    A. Limited Exclusion Order .................................................................................... 22

        1. The Parties' Submissions ............................................................................... 23

        2. The Appropriate Remedy ............................................................................... 25

    B. Cease and Desist Orders ..................................................................................... 27

    C. The Public Interest ............................................................................................. 29

        1. The Parties' and Intel's Submissions ............................................................. 30

**CONFIDENTIAL VERSION**

2. The Public Interest Warrants a One-Year Delay for Current Ongoing Semiconductor Chip Fabrication Development Projects in the United States ................................................................................................ 42

    <u>i.</u>   Public Health and Welfare ........................................................ 43

    <u>ii.</u>  Competitive Conditions in the United States Economy ........................ 44

    <u>iii.</u> The Production of Like or Directly Competitive Articles in the United States ........................................................................................ 50

    <u>iv.</u> United States Consumers .......................................................... 51

    <u>v.</u>  Conclusion ............................................................................ 52

    <u>vi.</u> Certification Process to Qualify for the One Year Exemption for Ongoing Semiconductor Chip Fabrication Development ........................ 53

D.   Bond ...................................................................................................... 54

V.  CONCLUSION ................................................................................................ 55

CONFIDENTIAL VERSION

## I.    INTRODUCTION

On September 22, 2021, the Commission determined to review in part the final initial determination ("ID") issued by the presiding administrative law judge ("ALJ") on July 8, 2021. 86 Fed. Reg. 53674-76 (Sept. 28, 2021).  On review, the Commission has determined to affirm, with modifications, the ID's finding that there has been a violation of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337.  Having found a violation of section 337, the Commission has determined to issue a limited exclusion order and cease and desist orders as set forth *infra*.  The Commission finds that the public interest does not preclude the issuance of remedial orders, but warrants a delay of up to one year to allow entities currently using the infringing products in an ongoing semiconductor chip fabrication development project adequate time to switch to a non-infringing alternative.  The Commission sets a bond in the amount of one hundred percent of entered value for infringing products imported during the period of Presidential review.

This opinion sets forth the Commission's reasoning in support of that determination.  The Commission adopts the remainder of the ID that is not inconsistent with this opinion.

## II.    BACKGROUND

### A.    Procedural History

On July 7, 2020, the Commission instituted this investigation based on a complaint filed by Cabot Microelectronics Corporation ("CMC") of Aurora, Illinois.  85 Fed. Reg. 40685-86 (July 7, 2020).  The complaint, as supplemented, alleged violations of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain chemical mechanical planarization ("CMP") slurries and components thereof, including colloidal silica abrasive particles, by reason of infringement of one or more of claims 1, 3-6, 10, 11, 13, 14, 18-20, 24, 26-29, 31, 35-37, and 39-44 of U.S. Patent No.

**CONFIDENTIAL VERSION**

discovery regarding pricing, precluding any reliable determination of an appropriate bond amount. *See id.* at 19.

The ALJ recommended that the Commission set a bond in the amount of one hundred (100%) percent of entered value for products imported during the period of Presidential review. ID/RD at 330-31. In making this recommendation, the ALJ stated that "CMC has shown that (1) competitive harm could occur during the Presidential review period; ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Id.*

The Commission finds that the record evidence supports the ALJ's recommendation and has determined to set the bond in the amount of one hundred (100%) percent of entered value for infringing products imported during the 60-day period of Presidential review.

## V.    CONCLUSION

For the reasons detailed above, the Commission has determined to affirm the ID's finding of a violation of section 337. Regarding the issues under review, the Commission has determined to affirm the ID's importation, infringement, and domestic industry findings with the modifications described above. Regarding remedy, the Commission has determined to: (1) issue a limited exclusion order prohibiting the unlicensed importation of chemical mechanical planarization slurries that include colloidal silica abrasive particles and colloidal silica abrasive particles that infringe one or more of claims 1, 3–6, 10, 11, 13, 14, 18–20, 24, 26–29, 31, 35–37, and 39–44 of the '721 patent that are manufactured abroad by or on behalf of, or imported by or on behalf of, DuPont, or their affiliated companies, parents, subsidiaries, or other

**CONFIDENTIAL VERSION**

related business entities, or their successors or assigns, from entry for consumption into the United States; (2) issue cease and desist orders directed to the domestic DuPont respondents, *i.e.*, DuPont de Nemours, Inc. of Wilmington, Delaware; Rohm and Haas Electronic Materials CMP, LLC of Newark, Delaware; and Rohm and Haas Electronic Materials LLC of Marlborough, Massachusetts; (3) find that the public interest does not preclude the issuance of remedial orders but warrants a one-year delay to allow entities currently using the infringing products in an ongoing semiconductor chip fabrication development project adequate time to switch to a non-infringing alternative; and (4) set the bond in the amount of one hundred percent (100%) of the entered value of the imported infringing products during the period of Presidential review.

By order of the Commission.

Lisa R. Barton
Secretary to the Commission

Issued: December 16, 2021

CERTAIN CHEMICAL MECHANICAL PLANARIZATION    Inv. No. 337-TA-1204
SLURRIES AND COMPONENTS THEREOF

## CONFIDENTIAL CERTIFICATE OF SERVICE

I, Lisa R. Barton, hereby certify that the attached **COMMISSION OPINION** has been served via EDIS upon the Commission Investigative Attorney, **Thomas Chen, Esq.**, and the following parties as indicated, on **December 16, 2021.**

Lisa R. Barton, Secretary
U.S. International Trade Commission
500 E Street, SW, Room 112
Washington, DC  20436

### On Behalf of Complainant CMC Materials, Inc.:

Lisa M. Kattan, Esq.
**BAKER BOTTS L.L.P.**
700 K Street, N.W.
Washington, D.C. 20001
Email: Lisa.Kattan@bakerbotts.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification of Availability for Download

### On Behalf of Respondents DuPont de Nemours, Inc., Rohm and Haas Electronic Materials CMP Asia Inc., Rohm and Haas Electronic Materials Asia-Pacific Co., Ltd., Rohm and Haas Electronic Materials CMP, LLC, Rohm and Haas Electronic Materials K.K., and Rohm and Haas Electronic Materials LLC:

Mareesa Frederick, Esq.
**FINNEGAN, HENDERSON, FARABOW GARRETT & DUNNER, LLP**
901 New York Avenue, N.W.
Washington, D.C. 20001
Email: Mareesa.Frederick@finnegan.com

☐ Via Hand Delivery
☐ Via Express Delivery
☐ Via First Class Mail
☒ Other: Email Notification of Availability for Download

# EXHIBIT 5

| | |
|---|---|
| **From:** | Gant, Dustin W |
| **To:** | Hartmann, Anthony |
| **Cc:** | FSIA-LR; FSIA-LR; Gant, Dustin W |
| **Subject:** | RE: Closed Letters Rogatory Request |
| **Date:** | Friday, April 22, 2022 11:59:01 AM |
| **Attachments:** | image001.png |

**EXTERNAL Email:**

Please excuse my mistake earlier, I should have addressed to Mr. Hartmann.

**Dustin Gant**
Management Analyst
L/CA/POG
Contractor, Contracting Resources Group, Inc.
(Office) 202.485.6017 (Cell) 931.980.5152
dgant@contractingrg.com
GantDW@state.gov
SA-17, 10.205A

 **U.S. DEPARTMENT** *of* **STATE**

**From:** Gant, Dustin W
**Sent:** Friday, April 22, 2022 11:57 AM
**To:** Hartmann, Anthony <anthony.hartmann@finnegan.com>
**Cc:** FSIA-LR <FSIA-LR@state.gov>; FSIA-LR <FSIA-LR@state.gov>
**Subject:** RE: Closed Letters Rogatory Request

Mr. Finnegan,

Happy Friday! I just wanted to let you know that we sent back your documents and check via certified mail today. Your USPS tracking number is 70183090000136414124. Please let me know if you have any questions or concerns.

**Dustin Gant**
Management Analyst
L/CA/POG
Contractor, Contracting Resources Group, Inc.
(Office) 202.485.6017 (Cell) 931.980.5152
dgant@contractingrg.com
GantDW@state.gov
SA-17, 10.205A

 **U.S. DEPARTMENT** *of* **STATE**

**From:** Hartmann, Anthony <anthony.hartmann@finnegan.com>
**Sent:** Tuesday, April 19, 2022 3:57 PM
**To:** Gant, Dustin W <GantDW@state.gov>
**Cc:** FSIA-LR <FSIA-LR@state.gov>
**Subject:** RE: Closed Letters Rogatory Request

Dear Sirs,

Thank you for the communication. We respectfully request that the materials and checks be sent back to us at the below address, care of my attention.

Best regards,

**Anthony A. Hartmann**
Of Counsel
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
+1 202 408 4275 | fax +1 202 408 4400 | anthony.hartmann@finnegan.com | www.finnegan.com

**FINNEGAN**

**From:** Gant, Dustin W <GantDW@state.gov>
**Sent:** Friday, April 15, 2022 4:01 PM
**To:** Hartmann, Anthony <anthony.hartmann@finnegan.com>
**Cc:** FSIA-LR <FSIA-LR@state.gov>; Gant, Dustin W <GantDW@state.gov>

**Subject:** Closed Letters Rogatory Request

*EXTERNAL* **Email:**

Mr. Hartmann,

Happy Friday!  I have recently been asked to assist with reducing our backlog of letters rogatory requests caused by the COVID-19 pandemic.  I am contacting you today because I have found a letters rogatory request from your firm that LexisNexis recently has listed as a "closed" case.  It is listed below:

| Case Name | Docket Number | Country of Destination |
|---|---|---|
| Dupont de Nemours, Inc., Rohm and Haas Electronic materials….. | 1:20-cv-00091 | Japan |

Because this case is closed, would you like us to send the materials and checks back to you or would you prefer that we shred them?

**Dustin Gant**
Management Analyst
L/CA/POG
Contractor, Contracting Resources Group, Inc.
(Office) 202.485.6717/ (Cell) 931.980.5152
dgant@contractingrg.com
GantDW@state.gov
SA-17, 10.105A

 U.S. DEPARTMENT *of* STATE

# EXHIBIT 6

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| | | | | |
|---|---|---|---|---|
| P000020 | LRP 2014 - ████████████, March 2014 | CMC_DEL00145682 | CMC_DEL00145699 | |
| P000021 | ██████ Status and Decision Meeting | CMC_DEL00155476 | CMC_DEL00155488 | |
| P000022 | Email thread RE: ████████s, 01/24/2012 | CMC_DEL00170303 | CMC_DEL00170305 | |
| P000023 | Email thread RE: ███████, 03/08/2012 | CMC_DEL00170332 | CMC_DEL00170337 | |
| P000024 | Email from ████ to ██████ et al., Subject: ████ Integration, ████ | CMC_DEL00170397 | CMC_DEL00170397 | |
| P000025 | ████ Integration ████.pptx | CMC_DEL00170398 | CMC_DEL00170402 | |
| P000026 | ████████ Electronic Materials Presentation, October 16, 2012 | CMC_DEL00170476 | CMC_DEL00170511 | |
| P000027 | Email from ████ to ██████ et al., Subject: ████████, 10/19/2012 | CMC_DEL00170512 | CMC_DEL00170512 | |
| P000028 | ████ mtg 10.16.12.pptx | CMC_DEL00170513 | CMC_DEL00170550 | |
| P000029 | Email thread RE: ███████████g, 06/27/2013 | CMC_DEL00170607 | CMC_DEL00170612 | |
| P000030 | Dielectrics LRP: ███████████ | CMC_DEL00197182 | CMC_DEL00197209 | |
| P000031 | FY14 ██████ History | CMC_DEL00203094 | CMC_DEL00203094 | |
| P000032 | ████████ | CMC_DEL00218604 | CMC_DEL00218604 | |
| P000033 | Email dated July 19, 2013 from ██████ to ████████ ████████t | CMC_DEL00234655 | CMC_DEL00234655 | |
| P000034 | Standard Oeprating Procedure, ████████████ | CMC_DEL00236335 | CMC_DEL00236341 | |
| P000035 | FY18 ████████ | CMC_DEL00237252 | CMC_DEL00237329 | |
| P000036 | Email dated July 12, 2013 from ██████ to ████ re ████████ | CMC_DEL00243325 | CMC_DEL00243327 | |
| P000037 | FW:Re: ████ 2014 | CMC_DEL00243490 | CMC_DEL00243490 | |
| P000038 | Email from ████ to ██████, Subject: ████████ | CMC_DEL00243540 | CMC_DEL00243540 | |
| P000039 | Email from ████ to ██████ et al., Subject: "████████" | CMC_DEL00243544 | CMC_DEL00243544 | |
| P000040 | ████████, Document May 25, 2012 | CMC_DEL00248391 | CMC_DEL00248442 | |
| P000041 | ████████ | CMC_DEL00255346 | CMC_DEL00255346 | |
| P000042 | "Subject: ████████" email thread, 28 June 2012 | CMC_DEL00282210 | CMC_DEL00282212 | |
| P000043 | Email dated December 4, 2013 from ██████ to ████ re ████████ | CMC_DEL00289673 | CMC_DEL00289679 | |

| P000265 | ██████ Summary - ██████ | CMC00024625 | CMC00024714 | JX-0115C |
| P000266 | Fundamentals of CMP & Slurry | CMC00024786 | CMC00024786 | JX-0117C |
| P000267 | Succinic Acid (PubChem) | CMC00024787 | CMC00024839 | JX-0118C |
| P000268 | U.S. Patent No. 10,464,188 | CMC00024840 | CMC00024847 | JX-0119C |
| P000269 | Certificate of Analysis for iDiel D9228 | CMC00024848 | CMC00024848 | JX-0120C |
| P000270 | Certificate of Analysis for iDiel D9225 | CMC00024849 | CMC00024849 | JX-0121C |
| P000271 | Meeting Summary ██████, 2012 | CMC00024897 | CMC00024897 | JX-0129C |
| P000272 | 10/16/2012 ████ Meeting | CMC00024898 | CMC00024935 | JX-0130C |
| P000273 | The New Standard of ██████████ Solution | CMC00024936 | CMC00024962 | JX-0131C |
| P000274 | Dielectrics iDIEL D9228 | CMC00024963 | CMC00024963 | JX-0132C |
| P000275 | Mechanistic Understanding of ██████████ | CMC00024989 | CMC00025013 | JX-0134C |
| P000276 | Particle Density | CMC00025017 | CMC00025017 | JX-0135C |
| P000277 | D9228 Introduction, 2018 | CMC00025022 | CMC00025066 | JX-0137C |
| P000278 | ██████████ reprint | CMC00025403 | CMC00025404 | |
| P000279 | | CMC00025405 | CMC00025406 | |
| P000280 | April 2018 ███ update | CMC00026105 | CMC00026117 | |
| P000281 | ISO+13099-1-2012.pdf | CMC00031281 | CMC00031314 | JX-0139C |
| P000282 | ISO 13099-3, Colloidal systems - Methods for zeta-potential determination - Part 3: Acoustic methods | CMC00031341 | CMC00031368 | JX-0141C |
| P000283 | Email from ██████████ to ██████████ | CMC00031835 | CMC00031840 | CX-0210C |
| P000284 | ██████ response to the 2012 CMC email | CMC00032057 | CMC00032060 | CX-0211C |
| P000285 | Email from ██████████ to ██████████ | CMC00032554 | CMC00032560 | CX-0269C |
| P000286 | Update to ██████████ | CMC00032561 | CMC00032568 | CX-0250C |
| P000287 | Email from ██████████ to ██████████ | CMC00034193 | CMC00034194 | |
| P000288 | Presentation for CMC | CMC00035826 | CMC00035862 | |
| P000289 | Email from ██████████ to ██████████ | CMC00035864 | CMC00035868 | CX-0212C |
| P000290 | ██████ Technology Map | CMC00038944 | CMC00038950 | JX-0142C |
| P000291 | ██████████ studies | CMC00039311 | CMC00039311 | CX-0230C |
| P000292 | Email from ██████████ to ██████████ | CMC00039392 | CMC00039392 | |
| P000293 | ██████████ April 2012 | CMC00039393 | CMC00039407 | |
| P000294 | Presentation for ██████ | CMC00039483 | CMC00039534 | |
| P000295 | Email from ██████████ to ██████████ | CMC00040057 | CMC00040060 | |
| P000296 | Email from ██████████ to ██████ | CMC00040117 | CMC00040121 | CX-0252C |
| P000297 | Email from ██████████ to ██████ | CMC00040158 | CMC00040158 | |

# EXHIBIT 7

| | | | | |
|---|---|---|---|---|
| DTX-0449 | | [REDACTED] Summary of [REDACTED] | CMC00024897 | CMC00024897 |
| DTX-0450 | 10/16/12 | [REDACTED] Update Meeting [REDACTED] | CMC00024898 | CMC00024935 |
| DTX-0451 | 8/16/16 | Understanding Key Parameter of [REDACTED] | CMC00024989 | CMC00025013 |
| DTX-0452 | 11/16/05 | Zeta Potential in [REDACTED] | CMC00025113 | CMC00025134 |
| DTX-0453 | 11/16/05 | Excerpts of Zeta Potential in [REDACTED] Presentation (Exhibit 54) | CMC00025113 | CMC00025129 |
| DTX-0454 | 5/8/03 | Christina Graf et al., *A General Method To Coat Colloidal Particles with Silica*, 19 Langmuir 6693-700 (2003) | DUPONT1204_0028896 | DUPONT1204_0028903 |
| DTX-0455 | | Exhibit Withdrawn | | |
| DTX-0456 | | Zeta potential theory, Chapter 13, pgs. 13-1 - 13-12 | CMC00025319 | CMC00025330 |
| DTX-0457 | 11/11/05 | [REDACTED] Agreement between [REDACTED] and [REDACTED] | CMC00025361 | CMC00025388 |
| DTX-0458 | 2/27/14 | Straight [REDACTED] for [REDACTED] | CMC00025403 | CMC00025404 |
| DTX-0459 | 9/17/00 | [REDACTED] Request Details for [REDACTED] | CMC00025405 | CMC00025406 |
| DTX-0460 | 5/1/15 | [REDACTED] and C [REDACTED] Agreement, | CMC00025659 | CMC00025675 |
| DTX-0461 | 4/6/18 | Email from [REDACTED] to [REDACTED] re April [REDACTED] update (with attachment, | CMC00026104 | CMC00026117 |
| DTX-0462 | 2/2/18 | Feb 2, 2018, [REDACTED] email re [REDACTED] Forecast | CMC00026804 | CMC00026804 |
| DTX-0463 | 2/2/2018 | [REDACTED] to [REDACTED] and [REDACTED] Subject: [REDACTED] Forecast with attachments incl. Native - Excel ([REDACTED] | CMC00026804 | CMC00026808 |
| DTX-0464 | 1/1/19 | [REDACTED] Presentation | CMC00026806 | CMC00026808 |
| DTX-0465 | 8/24/17 | Aug. 24, 2017, [REDACTED] email string re [REDACTED] | CMC00027275 | CMC00027276 |
| DTX-0466 | 4/1/18 | [REDACTED] update Presentation | CMC00027564 | CMC00027567 |
| DTX-0467 | 1/22/18 | Email from [REDACTED] o [REDACTED] Subject: RE: A Happy New Year | CMC00028383 | CMC00028386 |
| DTX-0468 | 6/15/12 | ISO 13099-1 International Standard, First Edition, Colloidal Systems - Methods for zeta-potential determination - Part 1: Electroacoustic and electrokinetic Phenomena | CMC00031281 | CMC00031314 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

| DTX-0469 | 6/15/12 | ISO 13099-2 International Standard, First Edition, Colloidal Systems - Methods for zeta-potential determination - Part 2: Optical Methods | CMC00031315 | CMC00031340 |
|---|---|---|---|---|
| DTX-0470 | 7/1/14 | ISO 13099-3 International Standard, First Edition, Colloidal Systems - Methods for zeta-potential determination - Part 3: Acoustic Methods | CMC00031341 | CMC00031368 |
| DTX-0471 | 12/25/12 | Email from ████████ to ████████ | CMC00032057 | CMC00032060 |
| DTX-0472 | 6/25/13 | ████████ Analyticals: Quanitative Characterization of ████ | CMC00032512 | CMC00032535 |
| DTX-0473 | 8/22/13 | Email from ████████ to ████████ Subject: Re: Reminder for Feedback of ████████ with attachment | CMC00032554 | CMC00032568 |
| DTX-0474 | 3/15/13 | Email from ████████ to ████ Re: < ████ Advice> ████ in ████ | CMC00033913 | CMC00033915 |
| DTX-0475 | 4/7/14 | Email from ████████ to ████ Fw: ████ Status Update + ████ request | CMC00034193 | CMC00034194 |
| DTX-0476 | 10/23/12 | ████████ Presentation October 2012 ████████ | CMC00035826 | CMC00035862 |
| DTX-0477 | 12/7/12 | ████ to ████ Subject: RE: ████████ Summary | CMC00035864 | CMC00035868 |
| DTX-0478 | 9/1/16 | Email from ████ to ████ re: ████ (with attachment, Native - Excel) | CMC00036264 | CMC00036265 |
| DTX-0479 | 5/10/18 | Email from ████ to ████ s re ████ Ideas for ████ (with attachment, ████ ) | CMC00038943 | CMC00038950 |
| DTX-0480 | | Native Excel File | CMC00039311 | CMC00039311 |
| DTX-0481 | 4/18/12 | Email from ████ to ████ FW: ████ Update and Path Forward | CMC00039392 | CMC00039407 |
| DTX-0482 | 3/8/13 | Email from ████ to ████ Subject: < ████ Advice > ████ with attachment ████ to ████ ) | CMC00040052 | CMC00040056 |
| DTX-0483 | 3/8/13 | Email from ████ to ████ Re: < ████ Advice> ████ | CMC00040057 | CMC00040060 |
| DTX-0484 | 4/19/13 | Email from ████ to ████ Subject: << ████ > | CMC00040117 | CMC00040121 |
| DTX-0485 | 4/25/13 | Apr. 25, 2013, ████ email re ████ & ████ both display ████ | CMC00040129 | CMC00040130 |
| DTX-0486 | 5/8/13 | Email from ████ to ████ Subject: ████ eview ppt. (with attachment) | CMC00040158 | CMC00040159 |
| DTX-0487 | 5/22/13 | Email from ████ to ████ , Subject: ████ of ████ | CMC00040161 | CMC00040161 |

# EXHIBIT 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CMC MATERIALS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 20-738-JLH |
| DUPONT DE NEMOURS, INC., et al., | |
| Defendants. | |

# EXPERT REPORT OF MATTHEW LYNDE, PH.D.

March 27, 2024

HIGHLY CONFIDENTIAL

**Table of Contents**

I.      Qualifications ................................................................................................ 1

II.     Assignment and Case Background ............................................................... 2

        A.      Assignment ....................................................................................... 3

        B.      The Parties ........................................................................................ 4

                1.      CMC ....................................................................................... 4

                2.      DuPont ................................................................................... 5

        C.      Non-Party Fuso Chemical Co. ......................................................... 5

III.    Summary of Opinions .................................................................................. 6

IV.     The CMP Slurry Industry ............................................................................ 8

        A.      CMP Slurries and Features That Drive Their Demand in the Semiconductor Industry ........................................................................................... 9

                1.      CMP Slurries and Key Features Driving the Demand for CMP Slurries ... 9

                2.      The Slurry Qualification Process Introduces Switching Costs that Impede the Adoption of New Slurry Products ....................................... 12

                3.      CMP Slurry Manufacturers .................................................. 13

        B.      Colloidal Silica Particles ................................................................ 16

V.      The Challenged Conduct ............................................................................ 19

        A.      ███████████████████████ .................................................... 20

        B.      Sham Patent Litigation to Enforce the Fraudulently Obtained '721 Patent .......... 23

VI.     CMC Exercised and Continues to Exercise Market Power in the Market for Acidic ILD Slurries for Advanced Nodes ............................................................................... 24

        A.      Framework for Determination of the Relevant Antitrust Market ........................ 25

        B.      The Relevant Antitrust Market Is the Worldwide Market for Acidic ILD Slurries for Advanced Nodes ................................................................................. 28

                1.      The Testimony of CMC, DuPont, and CMP Slurry Buyers Demonstrates That Acidic ILD Slurries for Advanced Nodes Comprise a Relevant Antitrust Market .................................................................................... 28

                2.      Analysis Based on The Merger Guidelines Framework Establishes that Acidic ILD Slurries for Advanced Nodes Comprise a Relevant Antitrust Market .................................................................................... 30

        C.      CMC Obtained, Exercised, and Continues to Exercise Market Power in the Relevant Antitrust Market ................................................................................. 34

VII.    CMC's Conduct Harmed Competition in the Market for Acidic ILD Slurries for Advanced Nodes ........................................................................................................ 37

        A.      CMC's ███████████████ ██ ██ Harmed Competition in the Relevant Market .................................................................................... 38

1. The Economics of ████ ████ .................................................. 38

2. Assessing the Competitive Impact of ████████████ ... 41

3. CMC's █████████████ ██ ██ Foreclosed DuPont's Supply of Ultra-High Purity Particles and Delayed Competition from DuPont Products ................................................................. 43

B. CMC's Use of Sham Patent Litigation Excluded DuPont from the Relevant Antitrust Market .................................................................................. 49

C. Additional Market Outcomes Consistent with CMC's Market Power and Anticompetitive Effects ................................................................................. 50

VIII. Damages ................................................................................................................ 52

A. Damages Caused by ████████████ ..................................... 53

B. Damages Caused by Sham Patent Litigation to Enforce the '721 Patent ............. 55

C. Time Value of Money, Prejudgment Interest, and Attorney's Fees ...................... 58

IX. Signature ............................................................................................................... 59

## I.        Qualifications

1.       My name is Matthew R. Lynde.  I am an economist and a Senior Vice President of
Cornerstone Research, an economic and financial consulting firm with offices in San Francisco,
Menlo Park, Los Angeles, Chicago, Washington D.C., New York, Boston, London, and Brussels.
My work address is Two Embarcadero Center, San Francisco, CA, 94111.

2.       I have over 35 years of experience as a practicing applied economist in academia,
government, and business.  I earned both a B.A. and a Ph.D. in economics from the University of
California at Berkeley.  As an undergraduate at Berkeley, I studied electrical engineering as well
as economics.  During the interval between degrees, I worked in the federal government in
Washington D.C., attached to the President's Council on Wage and Price Stability, and at the
Brookings Institution.

3.       At Brookings, I worked on studies of small business formation and its importance to
innovation and employment growth.  My dissertation research for my Ph.D. at Berkeley
concerned an empirical, econometric investigation of the impact of technological innovation on
international competition.  Following my doctorate, I was on the faculty of the City University of
New York where I continued my research on innovation economics, as well as taught
microeconomics, trade, corporate finance, and econometrics courses.

4.       In 1992, I joined Price Waterhouse in New York as a senior economist.  I worked on
litigation support assignments, including coordinating valuation matters across practices and
with the London office.  I began serving as an expert witness in many types of disputes.  I
ultimately became a Partner and was responsible for leading the intellectual property practice in
San Francisco and Menlo Park.

5.       In 2001, I joined Cornerstone Research as the founding partner for its San Francisco
office.  I have served the firm as head of that office, as well as heading up the Intellectual
Property practice for a number of years.  I have served on the advisory boards of both Berkeley
Law's Center for Law and Technology and Stanford Law's Program in Law, Science, and
Technology.  I spearheaded the firm's research efforts as one of the founding supporters of the
Stanford Intellectual Property Clearinghouse in conjunction with Professor Mark Lemley and
serve as an advisor to its primary descendant, the LexMachina intellectual property database.

*Exhibit 7*

*DuPont's Estimated Damages from a Two-Year Delay in Entry to the Market for Acidic ILD Slurries for Advanced Nodes Due to CMC's* ███████████████████████ *2015–2021*



Source: ████████████████████████████████████████████████

Note:

[1] Actual Gross Profit is calculated by multiplying the Reported Sales Revenue for DuPont's Optiplane CMP slurry products by DuPont's average gross profit margin. DuPont's average gross profit margin is calculated as the average of DuPont's projected annual gross profits margin for its Optiplane 2600 slurry product in 2019, 2020, 2021, 2022, and 2023.

[2] From 2015 to 2019, Gross Profit ███████████████ is calculated by assuming DuPont's Gross Profits for █████ were realized ████. For 2020 and 2021, Gross Profit ████████████████) is calculated by assuming DuPont's Gross Profit ████) for ████ grew at an annual rate of █████████████ compound annual growth rates for the dielectric slurry market).

[3] For each calendar year, Additional Gross Profit, New Customers (Absent Delayed Entry) is calculated by multiplying DuPont's average gross profit margin by the sum of DuPont's lost revenue from new customers within all quarters of that calendar year. For each quarter, DuPont's lost revenue from new customers is calculated by multiplying the sum of CMC's and DuPont's revenues from the sale of acidic ILD slurries for advanced nodes by DuPont's lost market share within that market. For each quarter from ████████████ DuPont's lost market share is calculated as its actual market share from the same quarter ████████████████, DuPont's market share across its ████ year of sales of Optiplane, which extended from Q4 2020–Q3 2021) minus its actual market share from the present quarter. For each quarter from ████████, DuPont's lost market share is calculated as ████ (DuPont's market share across its ████ year of sales of Optiplane, which extended from █████████) minus DuPont's actual market share from the present quarter. The calculation of both DuPont's actual market share and DuPont's lost market share is restricted to not fall below ████ for any quarter.

## B.    Damages Caused by Sham Patent Litigation to Enforce the '721 Patent

114.    DuPont alleges that CMC obtained the '721 Patent fraudulently and enforced it in bad faith against DuPont before the ITC and in this matter.[182]  I assume for purposes of estimating damages that the Court finds that DuPont's allegations are correct, and that the ITC would lift its

---

[182] Counterclaim, ¶¶ 111, 119–121.

orders and allow DuPont to sell Optiplane products in 2025, following the trial.  I estimate the damages that DuPont sustained through the date of trial and following the trial.

115.    DuPont's damages through the date of trial can be measured as the difference between its actual Optiplane sales and the sales it would have made but for CMC's conduct with respect to the '721 Patent.  Using projections that DuPont prepared in ███████ to assess the financial impact of the ITC ruling,[183] I estimate that the value of DuPont's lost profits from January 2022 (when the ITC's orders took effect) through October 2024 (the expected trial date) is ███████. **Exhibit 8** presents my calculations.

*Exhibit 8*

***Estimated Damages Through Trial Due to Sham Patent Litigation 2022–2024***

| Year | Lost Revenue[2] | Lost Gross Profit[3] |
|---|---|---|
| | [a] | [b] = [a] * ███ |
| 2022 | ███████ | ███████ |
| 2023 | ███████ | ███████ |
| 2024[1] | ███████ | ███████ |
| **Total** | ███████ | ███████ |

Source:  "Revenue Forecasts based on ITC ruling," DUPONTDEL_00051295; "OP2600 Rev Forecasts," DUPONT1204_00003536

Note:

[1] Figures for 2024 reflect revenue through 10/24/24, the expected trial date.

[2] Lost Revenue represents ██████████████████ from the sale of its Optiplane CMP slurry products to ███ ██████████.  Lost Revenue for the partial year of 1/1/24–10/24/24 (expected trial date) is calculated as ██████ from the sale of Optiplane slurry products to ████████████ in 2024, prorated by the partial year's proportion of the total year.

[3] Lost Gross Profit is calculated by multiplying the Lost Revenue for DuPont's Optiplane slurry products by DuPont's average gross profit margin.  DuPont's average gross profit margin is calculated as the average of DuPont's projected annual gross profit margin for its Optiplane 2600 slurry product in ████████████ and ████.

116.    Assuming that DuPont's allegations are true, CMC's conduct would also cause damages following the trial.  If DuPont reentered the relevant market following the trial, its Optiplane profits would be less than the the profits it would have realized absent CMC's conduct.  I therefore estimate DuPont's damages as the present value of the difference between its projected

---

[183] "Revenue Forecasts based on ITC ruling," DUPONTDEL_00051295.

post-trial profits from the sale of Optiplane absent CMC's conduct and its projected post-trial profits with CMC's conduct.

117.    To implement this framework, I make the following assumptions:

- Absent CMC's conduct, Optiplane's share of the relevant market following the trial would be equivalent to its observed average market share of ▮ in the last four calendar quarters before the ITC's orders took effect.[184] This is a conservative assumption:  DuPont projected that Optiplane would capture ▮ ▮ of the relevant market,[185] and DuPont's market share in the broad slurry market was ▮ in ▮ DuPont would likely be able to grow Optiplane's share of the relevant market beyond ▮.

- Optiplane's market share after re-entering the relevant market would follow the same growth trajectory as its observed market share from the fourth quarter of ▮ when Optiplane entered the market, to the third quarter of 2021, the last quarter before the ITC ruled against DuPont.  Based on the historical data, I estimate that DuPont's market share in the first and second years after reentry would be ▮.  It would then increase to ▮ in the third year and reach ▮ only in the fourth year.

- DuPont would not realize sales revenue for at least one year after the trial, due to the time necessary for its clients to qualify DuPont's acidic ILD slurries for advanced nodes.[187]  Therefore, DuPont would not realize profits from the sale of Optiplane products until 2026.

- The post-trial damages period ends in ▮, in the first month in which Optiplane's projected share reaches the assumed steady-state value of ▮.

---

[184] I exclude Q4 2021 from these calculations because due to the ITC order, DuPont's sales in that quarter may be not representative of its typical business behavior.

[185] DuPont, "Project Update – Advanced ILD Slurry," ▮, DUPONTDEL_00035925–43 at 26.

[186] CMC Materials, "Dielectric Market Plan Bulk Oxide Silica," ▮ CMC_DEL00472957–88 at 65.

[187] See **Section IV.A.2** for a discussion of the duration of the necessary qualification period.

HIGHLY CONFIDENTIAL                                    57

118.    Given these assumptions, I estimate the present value of lost profits in the post-trial period as a result of CMC's conduct to be ▮▮▮▮ (see **Exhibit 9**).

*Exhibit 9*

*Estimated Damages Post-Trial Due to Sham Patent Litigation* ▮▮▮▮

| Year | Actual Market Share[2] [a] | Actual Sales Revenue [b] = [a] * [e] / [d] | Actual Gross Profit[3] [c] = [b] * ▮ | Absent Sham Patent Litigation Market Share[4] [d] | Absent Sham Patent Litigation Sales Revenue[5] [e] | Absent Sham Patent Litigation Gross Profit[3] [f] = [e] * ▮ | Lost Gross Profit [g] = [f] - [c] | Value as of Date of Trial[6] [h] |
|---|---|---|---|---|---|---|---|---|
| 2025 | | | | | | | | |
| 2026 | | | | | | | | |
| 2027 | | | | | | | | |
| 2028 | | | | | | | | |
| 2029 | | | | | | | | |
| **Total** | | | | | | | | |

Source: "OP Sales Data ▮▮▮," DUPONTDEL_00001141; "Revenue Forecasts based on ITC ruling," DUPONTDEL_00051295; "OP2600 Rev Forecasts," DUPONT1204_00003536; "▮▮▮▮ Summary," CMC_DEL00505454; CMC Materials, "Dielectric Market Plan Bulk Oxide Silica," ▮▮▮▮, CMC_DEL00472957–88; *Refinitiv*

Note:

[1] Damages Post-Trial Due to Sham Patent Litigation represent damages arising from DuPont rebuilding its market share post-trial from ▮ to its pre-ITC ruling market share of ▮▮▮ which is projected to occur by the end ▮▮▮

[2] It is assumed that after a one-year qualification period in 2025, DuPont will re-enter the market for acidic ILD slurries for advanced nodes at the beginning of 2026. During its first four years after re-entering the market, it is assumed that DuPont's Market Share in each year will mirror its share in each of its first ▮ years as a participant in that market, which ▮▮▮.

[3] Gross Profit is calculated by multiplying the Sales Revenue for DuPont's Optiplane slurry products by DuPont's average gross profit margin. DuPont's average gross profit margin is calculated as the average of DuPont's projected annual gross profit margin for its Optiplane 2600 slurry product in ▮▮▮.

[4] Market Share (Absent Sham Patent Litigation) assumes that if not for the sham patent litigation, DuPont would have maintained its market share from its fourth year participating in the market for acidic ILD slurries for advanced nodes, which began in ▮▮▮.

[5] In ▮▮, Sales Revenue (Absent Sham Patent) represents DuPont's internal projection of revenue from the sale of its Optiplane CMP slurry products to ▮▮▮. For all following years, it is assumed that Sales Revenue (Absent Sham Patent Litigation) will grow at ▮▮▮ (the average of CMC's predicted ▮▮▮ compound annual growth rates for the dielectric slurry market).

[6] For each period, Value as of Date of Trial is calculated as the present value of Lost Gross Profit at the end of ▮▮ using a rate of ▮▮ (the average of DuPont's weighted average cost of capital from ▮▮▮.

### C.    Time Value of Money, Prejudgment Interest, and Attorney's Fees

119.    Note that while the estimates provided above reflect the impact of antitrust injury that DuPont sustained as early as ▮▮ more than ▮▮ years before the date of trial, they do not reflect any adjustment to account for the time value of money, nor do they include attorney's fees and other costs that DuPont incurred in defending itself against CMC's infringement claims

before the ITC or this court.[188]   If DuPont prevails in this matter and the Court so allows, I will provide calculations for the time value of money, prejudgment interest, and attorney's fees and costs.

## IX.    Signature

120.    I reserve the right to supplement or amend my opinions in response to additional opinions expressed by CMC's expert(s), or in light of any additional evidence, testimony, discovery or other information that may be provided to me after the date of this report.  I also reserve the right to rely on visual aids or demonstratives that demonstrate my opinions at trial.  I have not yet prepared any visual aids or demonstratives other than those included with this report, but I expect to do so.

_____

Matthew R. Lynde, Ph.D.

Dated: <u>March 27, 2024</u>

---

[188] Note that all future lost profit damages caused by CMC's alleged sham patent litigation are discounted to the date of trial.